# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AFL-CIO, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DEPARTMENT OF LABOR, *et al*, <br><br> *Defendants*. | Case No. |

## DECLARATION OF RUSHAB SANGHVI

I, Rushab Sanghvi declare as follows:

1. I am the General Counsel of the American Federation of Government Employees ("AFGE"). I submit this declaration in support of Plaintiffs' application for a temporary restraining order in this matter. The statements made in this declaration are based on my personal knowledge, materials I have reviewed, and information made available to me pursuant to my duties.

2. The American Federation of Government Employees (AFGE) is the largest federal employee union proudly representing 800,000 federal and D.C. government workers nationwide and overseas. Workers in virtually all functions of government at every federal agency depend upon AFGE for legal representation, legislative advocacy, technical expertise and informational services.

3. AFGE represents thousands of employees at the Department of Labor, at various DOL components across the country. Of the several thousand employees at DOL represented

1

by AFGE, over 5,000 have chosen to become AFGE members

4. In particular, AFGE represents approximately 3,000 bargaining unit employees through its affiliate AFGE Local 12, in the Washington, DC area, including at DOL headquarters at 200 Constitution Ave NW, Washington, DC.

5. On February 4, 2025, one of AFGE's members who works in the headquarters of the Department received an instruction from Department leadership that Elon Musk and his DOGE team would be accessing Department of Labor headquarters beginning around 4 p.m. on February 5, 2025. This member and other employees were told by Department leadership that when Mr. Musk and his team visit, they are to do whatever they ask, not to push back, not to ask questions. They were told to provide access to any DOL system they requested access to and not to worry about any security protocols; just do it. Based on their statements, the employee believed they could face termination if they did not comply.

6. This member reported these statements to AFGE leadership. I have personally confirmed with the member these statements in the preceding paragraph.

7. AFGE's members, like all federal employees, may be injured on the job, entitling them to workers compensation. Injuries may be traumatic, like a fall, or an occupational disease, a medical condition that developed due to work activities.

8. When our members are injured and entitled to workers compensation, they must file claims through the Federal Employees' Compensation Act Claims Administration. Doing so requires submitting private medical and financial information, including about injuries

and illness, prognosis, long term effects, medical appointments treatment plans, and corresponding benefits determinations.

9. AFGE assists dues paying members with submitting workers compensation claims to FECA. In 2024 we assisted with approximately 1,500 claims on behalf of these members, although that represents a small fraction of the total claims that our members have submitted. It is reasonable to estimate that AFGE has thousands of members with workers compensation claims pending at FECA.

10. Permitting DOGE to access FECA records will reveal highly personal, private medical and benefits information of AFGE members as well as all federal employees with workers compensation claims.

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 5, 2025, in Washington, DC

*/s/ Rushab Sanghvi*
Rushab Sanghvi