# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS, et al., | Case No1:25-cv-00339-JDB |
| Plaintiffs, | Judge John D. Bates |
| v. | |
| DEPARTMENT OF LABOR, et al., | |
| Defendants. | |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER

**TABLE OF CONTENTS**

BACKGROUND ............................................................................................................. 2

    I.      The U.S. DOGE Service and the Department of Labor ........................................... 2

    II.     Plaintiffs' Allegations ............................................................................................ 3

    III.   Procedural History ................................................................................................ 4

LEGAL STANDARD ..................................................................................................... 4

ARGUMENT .................................................................................................................. 5

    I.      Plaintiffs Cannot Demonstrate Irreparable Harm ................................................. 5

    II.     Plaintiffs Are Unlikely to Succeed on the Merits of Their Claims ......................... 6

        A.     Plaintiffs Have Not Alleged Article III Standing For Their Claims Against
        DOL and U.S. DOGE Service. ............................................................................... 6

            1.      The Plaintiffs Lack Representational Standing .............................. 7

            2.      Plaintiffs Lack Standing To Sue On Their Own Behalf ................. 8

        B.     Plaintiffs Have Not Properly Alleged APA Claims Against DOL and the
        U.S. DOGE Service. .............................................................................................. 10

            1.      Plaintiffs Cannot Use The APA To Circumvent The Privacy Act's
            Carefully Drawn Limitations Regarding The Type Of Relief That May Be
            Sought. ................................................................................................ 10

            2.      Plaintiffs Have Not Identified An Agency Action, Much Less A
            Final Agency Action, To Challenge. ..................................................... 12

        C.     Detailees from USDS Working At DOL Are Not Operating *Ultra Vires*. 14

        D.     DOL May Share Information With Its Employees Consistent With The
        Privacy Act ............................................................................................................. 14

        E.     Defendants Will Comply With All Applicable Laws, Including The
        Privacy Act, In Sharing Information Outside DOL ............................................... 15

    III.   The Balance Of Equities Favors Defendants ....................................................... 15

    IV.   The Court Should Refrain From Entering A Sweeping, "Follow the Law" – Type
    Injunction ................................................................................................................. 16

CONCLUSION .............................................................................................................. 17

## INTRODUCTION

Since its creation in 2014 by President Obama, the United States Digital Service ("USDS") has worked with agencies across the Executive Branch to, among other things, improve the federal government's information technology and data organization systems. That mandate was recently revived through an Executive Order issued by President Trump, which redesignated USDS as the U.S. DOGE Service. Employees at USDS have been detailed to the U.S. Department of Labor ("DOL") to help DOL carry out the policy mandates of the Executive Order. Plaintiffs, a group of labor unions and a public interest organization, seek to impede this Presidential directive. They have moved for a temporary restraining order that would impose a sweeping injunction on DOL, preventing it from granting any individuals affiliated with USDS any access to its systems or information.

The motion should be denied. Plaintiffs cannot establish standing, much less irreparable harm, to challenge  the sharing of unstated categories of information from unidentified records systems to unknown individuals working in the Executive Branch. They have not identified members of their organizations who will be harmed by these as-yet-untaken actions, and can only speculate as to how actions that have yet to take place might harm their own missions. As to the merits, Plaintiffs' motion improperly skirts the remedial strictures of the Privacy Act by raising claims pursuant to the Administrative Procedure Act ("APA"). Even if the APA were an appropriate vehicle for this suit, Plaintiffs do not allege a final agency action that is subject to APA review. Assuming the Court even reaches the merits, the status of USDS employees as DOL detailees largely resolves any pressing concerns about violations of the Privacy Act. Finally, the proposed "follow the law" injunction proposed by Plaintiffs provides inadequate notice under Civil Rule 65, and is not appropriately tailored to the speculative harms they assert.

For these reasons, the Court should deny Plaintiffs' motion.

## BACKGROUND

### I.    The U.S. DOGE Service and the Department of Labor

On January 20, 2025, President Trump signed Executive Order 14,158, which directs changes to the USDS designed to implement the President's agenda of "improv[ing] the quality and efficiency of government-wide software, network infrastructure, and information technology (IT) systems." 90 Fed. Reg. 8441, § 4 (Jan. 20, 2025) ("USDS EO"). The USDS EO also redesignated the United States Digital Service as the United States DOGE Service. *Id.* § 3(a). Similarly, it established a "U.S. DOGE Service Temporary Organization" within the Executive Office of the President pursuant to 5 U.S.C. § 3161, which will terminate on July 4, 2026. *Id.* § 3(b).

The USDS EO directs USDS to collaborate with Executive agencies to modernize the technology and software infrastructure of the federal government to increase efficiency and productivity. *Id.* § 4. To that end, the USDS EO directs USDS to work with relevant agency heads, and vice versa, to ensure USDS has access to "unclassified agency records, software systems, and IT systems" to the "extent consistent with law[.]" *Id.* § 4(b). At all times, the USDS EO instructs, USDS must "adhere to rigorous data protection standards." *Id.*

The Department of Labor ("DOL") is an Executive Branch agency and, pursuant to the USDS EO, is in the process of collaborating with the USDS to allow USDS to carry out its mission. To that end, three USDS employees are currently detailed to DOL (the "DOL Detailees"). *See* Decl. of Adam Ramada ¶ 5, ECF No. 16-1 ("Ramada Decl."). DOL Detailees report directly to the Acting Secretary of Labor and his designees and follow the directions and guidance of DOL's senior leadership, just as all DOL employees do and must. *Id.* ¶ 7.

2

DOL, like all government agencies, houses a vast array of information in numerous databases and governmental systems. This data is sometimes interconnected, sometimes disparate, sometimes relevant to certain employees, and often not relevant to many employees. As Plaintiffs reference, this includes such dissimilar stores of information as federal workers' compensation claims to the Federal Employees' Compensation Act Claims Administration, Compl. ¶¶ 79–82, ECF 1 ("Compl."), Wage and Hour Division complaints in the Wage & Hour Investigative Support & Reporting Database (coined "WHISARD"), *id.* ¶¶ 83–86, Occupational Safety and Health Administration claims, *id.* ¶¶ 87–90, and sensitive Bureau of Labor and Statistics market information, *id.* ¶¶ 91–101.

DOL Detailees are required to be familiar with the legal rules governing access to DOL's data systems and are required to comply with those rules. *See* Ramada Decl. ¶ 6. When DOL Detailees obtain access to subsets of the data of interest to their work, they will be required to comply with the relevant rules governing the use of information contained in DOL's systems to ensure that they comply with the law in all respects. *Id.* ¶ 9. Further, when DOL Detailees share information garnered from their work duties within the Executive Branch, they are required to comply with all applicable laws and regulations. *Id.* ¶ 8; *see also* USDS EO § 4(b). The DOL Detailees affirm that they understand their obligation to act within the bounds of all relevant privacy and information sharing laws, Ramada Decl. ¶¶ 6–9, as the USDS EO and those laws and regulations require, USDS EO § 4(b).

## II.    Plaintiffs' Allegations

Prior to the USDS-DOL meeting—and prior to any access by DOL Detailees to any DOL systems—Plaintiffs allege that an unnamed DOL employee was told by an unidentified member of DOL management that, upon arrival of USDS representatives, the unnamed employee was to

"do whatever they ask, not to push back, not to ask questions."  Compl. ¶ 66; *see also* Decl. of Rushab Sanghvi ¶ 5, ECF No. 2-3.  The unnamed employee claims they were told to provide USDS representatives with access to any DOL system requested.  Compl. ¶ 66.  According to the employee's understanding, they believed that failure to heed this direction could lead to their termination.  *Id.*

## III.    Procedural History

Plaintiffs filed suit on February 5, 2025.  *See* Compl.  The Complaint includes seven causes of action: two advancing *ultra vires* claims (Counts One and Two) and four pursuant to the Administrative Procedures Act, 5 U.S.C. § 706 (Counts Three through Seven).[1]  Shortly thereafter, Plaintiffs filed their Memorandum of Law in Support of Plaintiffs' Motion for a Temporary Restraining Order, ECF No. 2 ("TRO Memo"), and Motion for a Temporary Restraining Order, ECF No. 3 ("Mot.").  The Motion sought same-day relief.  Mot. at 3.

The Parties proceeded with a phone call with Chambers.  As a result, the Court ordered Defendants to submit a Response to Plaintiffs' Motion no later than close of business of February 6, 2025.  Order, ECF No. 5.  The Court also set a hearing for Friday, February 7, 2025, to hear arguments on the Motion.  *Id.*

## LEGAL STANDARD

A temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  To obtain such extraordinary relief, a plaintiff "must show (1) 'he is likely to succeed on the merits,' (2) 'he is likely to suffer irreparable harm in the absence of preliminary

---

[1] Plaintiffs' Complaint includes two Count Sixes.  *See* Compl. at 31–32.  Defendants refer to the second Count Six as Count Seven.

relief,' (3) 'the balance of equities tips in his favor,' and (4) 'an injunction is in the public interest.'"

*Hanson v. District of Columbia*, 120 F.4th 223, 253 n.11 (D.C. Cir. 2024) (quoting *Winter*, 555

U.S. at 20); *see also Chef Time 1520 LLC v. Small Bus. Admin.*, 646 F. Supp. 3d 101, 109 (D.D.C.

2022) ("The decision of whether to award a TRO is analyzed using the same factors applicable to

preliminary injunctive relief[.]" (cleaned up)). When "the Government is the opposing party," the

assessment of "harm to the opposing party" and "the public interest" merge. *Nken v. Holder*, 556

U.S. 418, 435 (2009).

Plaintiffs bear the burden of showing subject-matter jurisdiction. *See Lujan v. Defs. of

Wildlife*, 504 U.S. 555, 561 (1992). Because "standing is not dispensed in gross[,]" Plaintiffs must

"demonstrate standing for each claim that they press and for each form of relief that they seek."

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

## ARGUMENT

### I.    Plaintiffs Cannot Demonstrate Irreparable Harm

There is a "high standard for irreparable injury." *Chaplaincy of Full Gospel Churches v.

England*, 454 F.3d 290, 297 (D.C. Cir. 2006). Any alleged irreparable harm "must be both certain

and great; it must be actual and not theoretical." *Id.* It also must be "of such *imminence* that there

is a clear and present need for equitable relief." *Id.* (citing *Wisc. Gas Co. v. FERC*, 758 F.2d 669,

674 (D.C. Cir. 1985) (per curiam)) (emphasis in original). Plaintiffs' Motion can be denied solely

on the basis that they have failed to demonstrate irreparable injury. *See id.* ("A movant's failure to

show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction, even

if the other three factors entering the calculus merit such relief." (citing *Sea Containers Ltd. v.

Stena AB*, 890 F.2d 1205, 1210–11 (D.C. Cir. 1989))).

Plaintiffs cannot demonstrate irreparable harm. Their brief asserts irreparable harm arising from (1) unauthorized access to sensitive employee health and disability data; (2) an inability to ensure worker privacy; (3) a chilling effect on their ability to report legal violations by other employers to DOL; and (4) harm in the form of ill-considered changes to DOL's operations. TRO Memo at 29-34. But as explained below, Plaintiffs have not even succeeded in demonstrating a sufficiently imminent and concrete injury-in-fact to establish Article III standing, much less an irreparable injury. And even if Defendants were to concede that Plaintiffs' allegations just barely clear the Article III standing hurdle, that "does not necessarily satisfy the more demanding burden of demonstrating irreparable injury." *See Cal. Ass'n of Priv. Postsecondary Schs. v. DeVos*, 344 F. Supp. 3d 158, 170 (D.D.C. 2018). Plaintiffs' allegations that they will be harmed by the sharing of unspecified information, sourced from one of dozens of systems that Plaintiffs fail to identify, under the baseless assumption that Defendants will simply act with no regard for the law whatsoever, does not meet the weighty burden of showing certain, actual, and significant harm that can only be redressed through emergency relief.

## II.    Plaintiffs Are Unlikely to Succeed on the Merits of Their Claims

### A.    Plaintiffs Have Not Alleged Article III Standing For Their Claims Against DOL and U.S. DOGE Service.

Plaintiffs have failed to establish the necessary Article III standing to bring this suit. The doctrine of standing, an essential aspect of the Article III case-or-controversy requirement, demands that a plaintiff have "a personal stake in the outcome of the controversy [so] as to warrant his invocation of federal-court jurisdiction." *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (citation omitted). This inquiry must be especially rigorous when a plaintiff seeks to enjoin the executive branch, in order to prevent the Court from exercising "general legal oversight of the other branches of Government." *Murthy v. Missouri*, 66 U.S. 43, 76 (2024) (cleaned up). At its "irreducible

constitutional minimum," the doctrine requires a plaintiff, as the party invoking the Court's jurisdiction, to establish three elements: (1) a concrete and particularized injury-in-fact, either actual or imminent, (2) a causal connection between the injury and defendants' challenged conduct, and (3) a likelihood that the injury suffered will be redressed by a favorable decision. *Lujan*, 504 U.S. 555, 560 (1992).

Plaintiffs in this case are five labor unions and an economic think tank. Three of the unions (SEIU, AFL-CIO, and AFGE) have submitted declarations from representatives in support of this motion. Although the complaint and motion for a temporary restraining order do not articulate precisely what theory of standing the Plaintiffs are proceeding upon in this case, they need to demonstrate either representational standing on behalf of their members, or organizational standing in their own right. They fall short of this standard.

### 1. The Plaintiffs Lack Representational Standing.

To establish representational standing (or as it is sometimes referred to, associational standing), an organization must demonstrate that "its members would otherwise have standing to sue in their own right[.]" *Ass'n of Flight Attendants—CWA, AFL-CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 464 (D.C. Cir. 2009) (citation omitted). To meet this standard, the organization must "identify members who have suffered the requisite harm[.]" *See Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). In addition, an organizational plaintiff must demonstrate that "the interests it seeks to protect are germane to the organization's purpose" and "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Ass'n of Flight Attendants*, 564 F.3d at 464.

Plaintiffs fail to identify any members of their organizations who will potentially be harmed by putatively unlawful disclosure of information to DOL's USDS team members. Nor could they; Plaintiffs only offer speculation as to which of the dozens of record systems DOL maintains will

be accessed by the DOL Detailees. U.S. Dep't of Labor, *System of Records Notices*, https://www.dol.gov/general/privacy/sorn#universal (last accessed Feb. 6, 2025). And even if the systems to be accessed were known and the universe of individuals that could potentially be impacted were defined, Plaintiffs would still need to identify individual members that had sustained "physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American courts" arising from that disclosure to obtain standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) (rejecting standing of plaintiffs whose credit files were not disseminated to any potential creditors, even though the files contained inaccurate information that violated the Fair Credit Reporting Act).

The declarations of SEIU and AFL-CIO allege that there may be a "negative impact" on some members of their organization if information is shared with the DOL Detailees, but neither declaration identifies any actual members of the union who claim they are being harmed by the alleged actions in the complaint. Only one of the three submitted declarations, from AFGE, even mentions an individual member of one of the plaintiff labor unions. That member, who is not identified, provides the only allegation in this case as to actual activities of the DOL Detailees: that the employee was directed to provide those team members access to whatever DOL systems those individuals requested. Sanghvi Decl. ¶ 5. But this union member is not alleged to be a putative victim of any disclosure of information by DOL or USDS. This is a data privacy suit, not a whistleblower protection case. As such, the declaration fails to demonstrate that AFGE has standing to sue to vindicate the interest of any individual member in potential violations of the Privacy Act or other privacy laws.

## 2. Plaintiffs Lack Standing To Sue On Their Own Behalf

An organization asserting standing on its own behalf must demonstrate that it has suffered a "concrete and demonstrable injury to [its] activities—with [a] consequent drain on [its]

8

resources—constitut[ing] . . . more than simply a setback to the organization's abstract interests." *Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 11 (D.C. Cir. 2011) (quoting *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1433 (D.C. Cir. 1995)). "'[T]he organization must allege that discrete programmatic concerns are being directly and adversely affected' by the challenged action." *Nat'l Taxpayers*, 68 F.3d at 1433 (quoting *Am. Legal Found. v. FCC*, 808 F.2d 84, 92 (D.C. Cir. 1987)). "An organization's ability to provide services has been perceptibly impaired when the defendant's conduct causes an 'inhibition of [the organization's] daily operations.'" *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015) (quoting *People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1094 (D.C. Cir. 2015)).

The three labor union plaintiffs who submitted declarations aver that the risk of data sharing with DOL's USDS team members will have a chilling effect on their ability to represent their members in disputes before DOL sub-agencies such as the Wage and Hour Division, the Occupational Safety and Health Administration, and the Office of Workers' Compensation Programs. Ury Decl. ¶¶ 4-9; Ginsburg Decl. ¶¶ 3-7; Sanghvi Decl. ¶¶ 8-9. But the evidence proffered does not demonstrate an imminent risk that DOL Detailees will be reviewing the record systems that contain this information. The general allegation that these DOL Detailees will be accessing DOL systems does not demonstrate, as Supreme Court case law requires, a "certainly impending" injury due to the disclosure of information on systems of interest to the Plaintiffs. *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1989) (citation omitted). Even assuming, for the sake of argument, that Plaintiffs have demonstrated an "objectively reasonable likelihood" of their interests being harmed, that is "too speculative" for purposes of Article III standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013).

**B. Plaintiffs Have Not Properly Alleged APA Claims Against DOL and the U.S. DOGE Service.**

   **1. Plaintiffs Cannot Use The APA To Circumvent The Privacy Act's Carefully Drawn Limitations Regarding The Type Of Relief That May Be Sought.**

The APA provides a vehicle for review only in circumstances where "there is no other adequate remedy." 5 U.S.C. § 704. That premise does not hold true for the Privacy Act, which provides a "comprehensive remedial scheme" for injuries arising out of the inappropriate dissemination of private information about individuals. *Wilson v. Libby*, 535 F.3d 697, 703 (D.C. Cir. 2008) (citing *Chung v. DOJ*, 333 F.3d 273, 274 (D.C. Cir. 2003)). On multiple occasions, this Court has held that an independent APA claim cannot be predicated on a Privacy Act violation. *Wilson v. McHugh*, 842 F. Supp. 2d 310, 320 (D.D.C. 2012) (collecting cases). The Court should follow suit here.

Section (g) of the Privacy Act provides for a limited subset of civil remedies, and Plaintiffs' allegations do not fall within these carefully demarcated limits. Civil remedies are available—and thus the United States' sovereign immunity has been waived—in four circumstances: (1) when the agency "makes a determination . . . not to amend an individual's record in accordance with his request," (an "Amendment Action"), 5 U.S.C. § 552a(g)(1)(A), (2) when the agency refuses to comply with an individual's request for access to her records, (an "Access Action"), *id.* § 552a(g)(1)(B), (3), when the agency fails to maintain an individual's records "with such accuracy, relevance, timeliness, and completeness" as is necessary for a government action and "consequently a determination is made which is adverse to the individual," (a "Benefits Action"), *id.* § 552a(g)(1)(C), or (4) where the government "fails to comply with any other provision of this

section . . . in such a way as to have an adverse effect on an individual," (an "Other Action") *id.* §
552a(g)(1)(D).   Limited injunctive relief is available for an Amendment Action or an Access
Action.  *Id.* § 552a(g)(2), (3).  For Benefits Actions or Other Actions, a plaintiff may be liable for
"actual damages sustained by the individual as a result of the refusal or failure," subject to a $1,000
statutory minimum, but <u>only</u> if the "agency acted in a manner which was intentional or willful"
<u>and</u> if that plaintiff could prove "actual damages," which is "limited to proven pecuniary or
economic harm."  *FAA v. Cooper*, 566 U.S. 284, 299 (2012).

In light of the Privacy Act's comprehensive remedial scheme, this Court has previously
held that a plaintiff cannot bring an independent APA claim predicated on a Privacy Act violation.
*Wilson*, 842 F. Supp. 2d at 320.  That is consistent with the principle that "where [a] statute provides
for certain special types of equitable relief but not others, it is not proper to imply a broad right to
injunctive relief."  *Parks v. IRS*, 618 F.2d 677, 684 (10th Cir. 1980) (citing *Cell. Assocs., Inc. v.
Nat'l Insts. of Health*, 579 F.2d 1155, 1161-62 (9th Cir. 1978)).  This is especially true with the
Privacy Act because Congress "link[ed] particular violations of the Act to particular remedies in a
specific and detailed manner[,]" which "points to a conclusion that Congress did not intend to
authorize the issuance of [other] injunctions."  *Cell Assoc.*, 579 F.2d at 1158–59.  Indeed, as the
Ninth Circuit concluded, were injunctive relief available for violations of the Privacy Act
generally, "the detailed remedial scheme adopted by Congress would make little sense.  We think
it unlikely that Congress would have gone to the trouble of authorizing equitable relief for two
forms of agency misconduct and monetary relief for all other forms if it had intended to make
injunctions available across the board."  *Id.* at 1160.  Accordingly, Plaintiffs' efforts to obtain an
agency-wide injunction on both information sharing and personnel actions by channeling Privacy
Act claims through the APA should be rejected.

**2.  Plaintiffs Have Not Identified An Agency Action, Much Less A Final Agency Action, To Challenge.**

The APA makes only final agency action judicially reviewable.  5 U.S.C. § 704.  Statutorily excluded from review are "preliminary, procedural, or intermediate agency action[s] or ruling[s]." *Id.*  Based on the definition of "agency action" within the APA, *see* 5 U.S.C. § 551(13) (including a specific "rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act"), Plaintiffs must challenge a "discrete" act, rather than leveling a "broad programmatic attack," *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).  Finality, in turn, is judged on two criteria: whether the action (1) "marks the consummation of the agency's decisionmaking process," *Bennett v. Spear*, 520 U.S. 154, 156 (1997) (citing *Chicago & S. Air Lines v. Waterman S. S. Corp.*, 333 U.S. 103, 113 (1948)), and (2) whether "legal consequences will flow," from that action, *id.* (quoting *Port of Bos. Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)).  The APA is not intended to allow a court to review an agency's "day-to-day operations."  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 899 (1990).

Here, Plaintiffs can neither show an "agency action," much less that such action is final as contemplated by *Bennett v. Spear*.  That is because the entirety of their claims relies on the unverified, unspecific comment made by an alleged member of DOL management to an unspecified employee.  Compl. ¶ 66.

First, action.  Based on the supervisor's comment to the employee, nothing happened.  No actual decision to grant access was taken, no determination made, no rule promulgated, no order issued, or relief granted or denied.  None of the APA contemplated reviewable actions took place. *See* 5 U.S.C. § 551(13).

12

Next, finality.  The alleged comment does not imply that any actual system access has been granted.  Indeed, at the point in time when the alleged comment was made, neither the employee, the manager, nor the DOL as a whole was certain what access the DOL Detailees would request.  The DOL-USDS meeting had not yet occurred.  *See* Sanghvi Decl. ¶ 5.  There were no outstanding requests to access any systems.  No protocols were established for ensuring access in compliance with the law, as required by the USDS EO.  In other words, there had been no final decision about what access to which systems anyone would have.  Thus, neither prong of the finality test is met: (1) there was no consummation of decisionmaking, as the decisionmaking process had not yet even begun, and (2) no legal consequences flowed, as the supervisor's comment did not culminate in the opening of informational gates without further departmental decisionmaking.

Plaintiffs' reliance on *Venetian Casino Resort, LLC v. EEOC*, 530 F.3d 925 (D.C. Cir. 2008) does not save Plaintiffs' APA claims.  That is because in *Venetian Casino* the Equal Employment Opportunity Commission had affirmatively adopted a policy to disclose the confidential information at issue, as laid out in the agency's Compliance Manual.  *See Venetian Casino Resort,* 530 F.3d at 929; *see also id.* at 931 ("the agency took final action by adopting the policy" of "disclosing confidential information without notice.").  Here, there is as-yet no disclosure policy. *Accord Pearl River Union Free Sch. Dist. v. Duncan*, 56 F. Supp. 3d 339, 368–371 (S.D.N.Y. 2014) (distinguishing *Venetian Casino* on the grounds that plaintiffs had failed to challenge an agency policy).

"The limitation" of APA claims to final agency action is intended to preclude "broad programmatic attack[s]" on an agency's operations. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).  Plaintiffs' claims underscore the importance of this limitation.  The present case is an axiomatic example of the sort of "programmatic attack" the APA does not permit, as Plaintiffs

seek to enjoin any USDS access to DOL information, regardless of the status of the DOL Detailees, the type of information sought, or the use of the information. The Court should accordingly reject Plaintiffs' APA claims.

### C.  Detailees from USDS Working At DOL Are Not Operating *Ultra Vires*.

Plaintiffs assert that Defendants are acting ultra vires, alleging that USDS has gone beyond its "limited function of advising and assisting the President" to perform other functions of government they are not authorized by law to perform.  TRO Memo at 23–27.  This allegation ignores the details of what is actually happening at DOL.  As the declaration of Adam Ramada states, USDS is detailing employees to the Department of Labor, where they "report to the Acting Secretary of Labor and her [sic] designees and are required to act in accordance with the directions and guidance of the Department's senior leaders—like any other employees of the Department of Labor."  Ramada Decl. ¶ 7.  Actions taken by these detailees are therefore properly considered actions of DOL, and are not ultra vires.

### D.  DOL May Share Information With Its Employees Consistent With The Privacy Act.

Next, Plaintiffs argue that the sharing of records with DOL Detailees violates the Privacy Act.  TRO Memo at 27–29.  The status of DOL Detailees to DOL as DOL employees, answerable to the Acting Secretary of Labor, largely resolves Plaintiffs' first-order concerns regarding the sharing of personal records with unauthorized persons.  The Privacy Act exempts disclosures "to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties."  5 U.S.C. § 552a(b)(1).  As employees of DOL who are answerable to the leadership of DOL, disclosures of information on DOL's systems to DOL employes who are detailed from USDS complies with the Privacy Act.

14

### E. Defendants Will Comply With All Applicable Laws, Including The Privacy Act, In Sharing Information Outside DOL

Plaintiffs' final merits argument is that a temporary restraining order should enter because Defendants are likely to violate a host of laws regarding financial conflict of interest and market competition. TRO Memo. 29. But there is no basis for a sweeping, prophylactic order on information sharing between DOL and the USDS based on Plaintiffs' rank speculation that DOL will violate the law in making such disclosures. USDS employees detailed to DOL are, like any government employees, required to comply with rules and regulations governing privacy and data access that apply to them, as well as laws governing financial conflicts of interest and rules designed to protect proprietary commercial information. Ramada Decl. ¶¶ 6, 8–9. Since there is a "presumption of regularity [that] attaches to the actions of Government agencies," *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001), those employees should be expected to follow the law, absent specific evidence to the contrary. Whether or not a particular effort to share specific types of information is lawful will depend upon the statutes and regulations that govern the use of those systems. There is no basis for concluding, at this juncture, that any violation of the Privacy Act is forthcoming.

### III. The Balance Of Equities Favors Defendants

Lastly, Plaintiffs cannot establish that the balance of equities and the public interest favor granting the extraordinary remedy of a temporary restraining order. These final two factors merge in cases where relief is sought from the government. *Nken*, 556 U.S. at 435; *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) (when the government is a party, these two factors merge and "are one and the same, because the government's interest *is* the public interest").

In arguing that the public interest weighs in their favor, Plaintiffs primarily rely on the notion that there is no public interest in the perpetuation of unlawful agency action. *See* TRO Memo at 34. But that is just a repackaged version of their merits arguments, and as previously discussed, none of the actions taken to date by Defendants are unlawful. Furthermore, an injunction here would effectively disable DOL from effectuating the President's agenda consistent with their constitutional and statutory authorities. "Any time a [government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (brackets and citation omitted). Particularly given the broad relief that Plaintiffs seek with respect to any information sharing between DOL and employees detailed from USDS (as discussed below), the harms to the Government would be significant. Thus, the balance of the equities weighs in favor of the government and relief should be denied.

## IV. The Court Should Refrain From Entering A Sweeping, "Follow the Law" – Type Injunction

Plaintiffs' proposed injunction underscores all of the problems with their merits theory, and is problematic on its own terms, as well. The proposed order would enjoin DOL "from granting DOGE-affiliated personnel access to Department of Labor systems, except as consistent with all applicable law, or otherwise allowing DOGE-affiliated personnel to take action in excess of statutory authority." Proposed Order at 2, ECF No. 2-4. The other prongs of the proposed injunction are similarly contingent on the *a priori* determination that actions being taken are "unlawful," or will violate financial conflict of interests laws. *Id.* Courts routinely reject this type of "follow the law" injunction as illusory and inadequate in terms of providing fair notice as to the conduct that is enjoined. *See Payne v. Travenol Lab'ys, Inc.*, 565 F.2d 895, 897 (5th Cir.

1978); *see also SEC v. Goble*, 682 F.3d 934, 949 (11th Cir. 2012); *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144 (2d Cir. 2011); *Gilday v. Dubois*, 124 F.3d 277, 287 (1st Cir. 1997). This type of vague injunction fails to comply with the requirements of Federal Rule of Civil Procedure 65(d), which provides that an injunction must "state its terms specifically" and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." *See Louisiana v. Biden*, 45 F.4th 841, 846 (5th Cir. 2022).

Finally, because a federal court's "constitutionally prescribed role is to vindicate the individual rights of the people appearing before it," "[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 138 S. Ct. 1916, 1933–34 (2018). If the Court were to find that Plaintiffs have shown that DOL Detailees access to certain systems would harm them, that is not a basis to enjoin them from access to all DOL systems. In any event, no such showing has been made, and no injunction should issue.

## CONCLUSION

For all the foregoing reasons, the Court should deny the Plaintiffs' Motion.

Dated: February 6, 2025

<div style="margin-left:40%">

Respectfully submitted,

BRETT A. SHUMATE
Acting Assistant Attorney General
Civil Division

MARCIA BERMAN
Assistant Branch Director
Civil Division, Federal Programs Branch

*/s/Michael J. Gerardi*
Michael J. Gerardi
Senior Trial Counsel (DC Bar No. 1017949)
Benjamin S. Kurland
Trial Attorney (D.C. Bar Reg. No. 1617521)
United States Department of Justice

</div>

Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Tel: (202) 598-7755
Fax: (202) 616-8460
E-mail: ben.kurland@usdoj.gov

*Counsel for Defendants*