## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AFL-CIO, *et al.*, | |
| *Plaintiffs*, | |
| v. | Case No. 1:25-cv-00339 |
| DEPARTMENT OF LABOR, *et al.*, | |
| *Defendants*. | |

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiffs have demonstrated ample entitlement to a temporary restraining order. Contrary to Defendants' arguments, Plaintiffs have standing to bring their claims, face irreparable harm, and have demonstrated a likelihood of success on the merits. Moreover, Defendants' reassurance that all is well because DOGE[1] personnel who have been granted broad access to the Department of Labor's systems have been detailed to that agency is both cold comfort and legally insufficient. As a consequence of DOGE's establishment as a free-floating component within the Executive Office of the President, it lacks the requisite authority to detail its personnel to federal agencies and, for the same reason, agencies may not receive those detailees.

Accordingly, the violations causing Plaintiffs irreparable harm, including under the Privacy Act, will persist, absent intervention from the Court.

---

[1] Plaintiffs refer to the U.S. DOGE Service and U.S. DOGE Service Temporary Organization, collectively, as "DOGE."

**ARGUMENT**

**I.     Granting DOGE personnel universal access to Department of Labor systems constitutes final agency action.**

The Department of Labor's decision to grant universal system access to DOGE personnel constitutes final agency action: it "mark[s] the consummation of the agency's decisonmaking process," and is an action "by which rights or obligations have been determined, or from which legal consequences will flow." *U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 578 U.S. 590, 597 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-178 (1997)).

Agency instruction to employees to comply without question with system access requests or face potential termination is a "discrete" act, *Norton v. S. Wilderness All.*, 542 U.S. 55, 64 (2004), and, despite Defendants' assertion to the contrary, is plainly "an actual decision to grant access," *Defs' Opp.* 12, ECF No. 16. A *decision* to grant access occurs when the *decision* is made, not when a system is subsequently accessed. Defendants recognize as much with their acknowledgment that the Equal Employment Opportunity Commission undertook final agency action when it "affirmatively adopted a policy" regarding information disclosure. *Id.* 13 (citing *Venetian Casino Resort, LLC v. EEOC*, 530 F.3d 925 (D.C. Cir. 2008)).

Nor does the action's lack of reference to specific systems bear on its finality. Defendants observe that the instruction was given possibly before any Department of Labor employees knew what systems DOGE personnel would seek to access, but an instruction to "do whatever they ask . . . provide access to *any* DOL system they requested access to and not worry about any security protocols," Decl. Of Rushab Sanghvi ¶ 5, ECF No. 2-3 (emphasis added), makes clear that the decision had already been made with regard to all systems. The order determined access rights by DOGE personnel to all systems, making it final, regardless of whether DOGE personnel would subsequently opt not to access a few of those systems.

**II.      Plaintiffs are likely to suffer irreparable harm.**

Defendants provide no authority for the position that sharing sensitive, personal information without consent is not an irreparable injury, nor could they.  *See Defs' Opp.* 6. Unauthorized disclosure of such information is a prototypical irreparable harm; once released, it is "a bell that one cannot unring," *Senior Executives Ass'n v. United States*, 891 F. Supp. 2d 745, 755 (D. Md. 2012). *See Council on Am.-Islamic Rels. v. Gaubatz*, 667 F. Supp. 2d 67, 76–77 (D.D.C. 2009) (granting injunction and finding that access to "confidential employee personal information" is a "particular concern" constituting irreparable harm); *Morgan Stanley DW Inc. v. Rothe*, 150 F. Supp. 2d 67, 77 (D.D.C. 2001) (finding irreparable harm if "extremely private and sensitive data" were lost); *Hirschfeld v. Stone*, 193 F.R.D. 175, 187 (S.D.N.Y. 2000) ("The harm at issue here—disclosure of confidential information—is the quintessential type of irreparable harm that cannot be compensated or undone by money damages.").  Indeed, Defendants submit no case law refuting the irreparable nature of any of Plaintiffs' harms, including the chilling of First Amendment-protected reporting to the Department, *Elrod v. Burns*, 427 U.S. 347, 373 (1976), or impairment to Plaintiffs' abilities to pursue their missions to protect workers via invoking the Department's protections, reliance interests that will be upset by the sweeping, *ultra vires* changes to the Department's work and responsibilities that are likely to occur if the unfettered access DOGE personnel have been granted persists, *Dep't of Homeland Sec. v. Regents of the Univ. of Calif.*, 591 U.S. 1, 30-33 (2020).

Defendants imply in passing that Plaintiffs' harms are not "sufficiently imminent," *Defs' Opp.* 6, but this belies factual reality and controlling law.  This court has found imminence where there is a "reasonable probability" of the injury coming to pass, *Olympic Fed. Sav. & Loan Ass'n v. Dir., Off. of Thrift Supervision*, 732 F. Supp. 1183, 1200 (D.D.C. 1990), as well as on timelines more elongated than the one at play here, *Gomez v. Trump*, 485 F. Supp. 3d 145, 200

(D.D.C. 2020) (finding imminent, irreparable harm if diversity visa applicants did not receive final determinations within several weeks of the court's decision); *Am. Rivers v. U.S. Army Corps of Eng'rs*, 271 F. Supp. 2d 230, 259 (D.D.C. 2003) (finding that harms to wildlife later "this summer" were sufficiently imminent to merit an injunction). Here, Plaintiffs were mere moments away from Defendants unlawfully disclosing their sensitive data. As confirmed by counsel for Defendants during the parties' telephonic conference with the Court on February 5, DOGE representatives were in the Department of Labor building. *Cf.* Feb. 5, 2025 Order , ECF No. 5. The harm that DOGE personnel have caused by gaining access to information systems at other agencies has been well documented.[2] *See* Compl. ¶¶ 39-75. Accordingly, it is hardly speculative to suggest that, in the absence of an order from this Court restraining Defendants, similar damage will be wrought at the Department where data concerns the American workforce and similar harms that have occurred in other agencies will befall Plaintiffs.

## III.    Plaintiffs have sufficiently established their standing.

Plaintiffs have adequately established both associational and organizational standing for this stage of the case. Contrary to Defendants' insistence that Plaintiffs must "identify" individual "members of their organizations who will potentially be harmed" by DOGE's actions,

---

[2] *See, e.g.*, Andrew Duehren et al., *Elon Musk's Team Now Has Access to Treasury's Payments System*, N.Y. Times (Feb. 1, 2025), https://www.nytimes.com/2025/02/01/us/politics/elon-musk-doge-federal-payments-system.html; Jennifer Hansler, *Elon Musk said Donald Trump agreed USAID needs to be 'shut down'*, CNN (Feb. 3, 2025), https://www.cnn.com/2025/02/02/politics/usaid-officials-leave-musk-doge/index.html; Michael Sainato, *Doge staffers enter Noaa headquarters and incite reports of cuts and threats*, The Guardian (Feb. 4, 2025), https://www.theguardian.com/us-news/2025/feb/04/doge-noaa-headquarters; Laura Meckler et al., *Trump preps order to dismantle Education Dept. as DOGE probes data*, Wash. Post (Feb. 3, 2025), https://www.washingtonpost.com/education/2025/02/03/trump-education-department-dismantling-executive-order-draft/; Isaac Stanley-Becker, *Musk's DOGE agents access sensitive personnel data, alarming security officials*, Wash. Post (Feb. 6, 2025), https://www.washingtonpost.com/national-security/2025/02/06/elon-musk-doge-access-personnel-data-opm-security/.

*Def. Opp.* 7, associational standing can be "apparent from the administrative record." *Cf. Advocs. For Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*, 41 F. 4th 586, 593-94 (D.C. Cir. 2022) (finding that the "lack of an affidavit" about harms to an "individual driver" was "not fatal to the Teamsters' standing" because it was apparent from evidence that "the Teamsters' membership includes short-haul and long-haul drivers . . . directly regulated by the Final Rule").

Plaintiffs have provided ample evidence to support their associational standing. First, Plaintiffs will be harmed by disclosures to DOGE. "Withholding of statutorily mandated" procedure combined with a "concrete interest" "easily establishes the requisites for an imminent injury in fact." *Gomez*, 485 F. Supp. 3d at 171. The Privacy Act contains a statutorily mandated procedure—notice to and consent of the individual whose record is disclosed—and Plaintiffs have a substantive concrete interest—privacy of those records. 5 U.S.C. § 552a(b). As the declaration submitted as part of this emergency petition show, many of Plaintiffs' members are among the vast group of individuals whose sensitive personal data will be compromised if the Department begins unlawfully disclosing records to DOGE. *See, e.g.,* Sanghvi Decl. ¶¶ 7-10 (In 2024 AFGE assisted 1,500 members with workers compensation records stored at FECA and is aware of thousands more); Ury Decl. ¶ 5 (SEIU routinely files wage-and-hour and OSHA complaints with confidential member information, including, recently, on behalf of individuals in the Union of Southern Service Workers).

Many of Plaintiffs' members will be chilled from reporting legal violations by their employers and prevented from exercising their rights to seek the Department's protections if they know that records memorializing their complaints may no longer be secure on Department servers (and, indeed, may be made freely available to individuals concurrently serving as executives of companies subject to Department enforcement). *See* Sanghvi Decl. ¶¶ 4-8,

Ginsburg Decl. ¶¶ 4-10, Ury Decl. ¶¶ 4-7. And Plaintiff AFGE represents thousands of employees at the Department of Labor, including one identified member who has already directly received unlawful threats of adverse action to facilitate DOGE's work. *See* Sanghvi Decl. ¶¶ 3-5. The Department's order to provide DOGE with access to all records subjects them to the impossible and harmful choice of complying with an unlawful demand or termination.

Similarly, Plaintiffs have adequately pled organizational standing, explaining that their viability depends upon their ability to invoke the Departments' protections for their members via submitting confidential complaints, a mission that will be deeply impaired by the loss of confidentiality of member identity. *See* Sanghvi Decl. ¶¶ 6-9, Ginsburg Decl. ¶¶ 3-9, Ury Decl. ¶¶ 3-9. Ultimately, Defendants' arguments about standing are about the actual likelihood of harm to Plaintiffs and their members, rather than whether those harms would suffice to underpin standing. *See*, *e.g.*, Defs' Opp. 7-8 ("Plaintiffs offer only speculation as to which of the dozens of record systems DOL maintains will be accessed by" DOGE staff).

But as described in the previous section, each Plaintiff is suffering irreparable harm, and each has also suffered injury for purposes of Article III standing. *In re Navy Chaplaincy*, 516 F. Supp. 2d 119, 125 (D.D.C. 2007) ("In the bulk of cases, a finding of an irreparable injury a fortiori signals the existence of an injury-in-fact sufficient to confer standing."), *aff'd*, 534 F.3d 756 (D.C. Cir. 2008); *League of Women Voters of United States v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016) (holding that where the challenged action "make[s] it more difficult for the [plaintiff] to accomplish their primary mission . . . they provide injury for purposes both of standing and irreparable harm").

Nor do the assurances by the Department's declarant ameliorate any of these injuries---it provides no detail regarding measures taken to understand or instruct DOGE personnel on the

Department's many record systems and their respective confidentiality levels, even within the agency. The speed with which DOGE has overtaken other agencies' records, as described in the Complaint, belies any reasonable expectation that such rigorous and time-consuming instruction will occur. And the statement that DOGE personnel report to the Department's senior leadership is meaningless given Plaintiffs' evidence that that leadership have abdicated all responsibility for maintaining the confidentiality of sensitive records in the face of DOGE's anticipated takeover of Department systems. At a minimum, this declaration creates issues of fact that must be resolved prior to exposing Plaintiffs to the irreparable injuries described above.

## IV.    DOGE lacks authority to detail its personnel to the Department.

Defendants argue that, because DOGE personnel at the Department have been "detailed" from DOGE to the Department, those individuals are functioning as employees of the Department and, accordingly, may lawfully perform Department functions and access Department systems. *See Defs' Opp.* 14. But DOGE is not authorized to detail its personnel to the Department, or any federal agency, and the Department was not authorized to accept their services.

Inter-agency personnel details are governed by the Economy Act of 1932, which provides that, under certain circumstances, "[t]he head of an agency or major organizational unit within an agency may place an order with a major organizational unit within the same agency or *another agency* for goods or services[.]" 31 U.S.C. § 1535(a) (emphasis added).  DOGE is purely a creature of executive order, however, and therefore cannot be an agency.  *See Nat'l Fed. Of Indep. Bus. v. OSHA*, 595 U.S. 109, 117 (2022).  President Trump's Executive Order establishing DOGE provides that the U.S. DOGE Service would exist within the Executive Office of the President (EOP) and report directly to the White House Chief of Staff. *See* E.O. § 3.  While DOGE's predecessor organization, the U.S. Digital Service, existed as a subcomponent of the

Office of Management and Budget, that arrangement was terminated when the office was reconstituted as DOGE.[3] Indeed, public reporting suggests that DOGE was intentionally created without ties to OMB, and instead constituted as a free-floating office within EOP, to avoid any obligations it would otherwise have under the Freedom of Information Act.[4]

Because DOGE is not constituted as an agency, it lacks authority to detail its personnel to the Department and, for the same reason, the Department may not accept DOGE personnel as detailees.[5] Accordingly, the legal violations Defendants purport to cure with this "detailee" arrangement remain ripe for this Court's review.

## V.    The APA provides relief for Plaintiffs' claims.

As Defendants note, the Privacy Act contemplates monetary damages to remedy unlawful disclosure of information covered by the Act but does not explicitly provide for injunctive relief to *prevent* unlawful disclosure. *See* 5 U.S.C. § 552a(g)(4). However, given the APA's provision for judicial review of "final agency action for which there is no other adequate remedy in a

---

[3] *See* U.S. Digital Service, Report to Congress (2016), https://www.usds.gov/report-to-congress/2016/ (explaining that "[a]t its creation, USDS was administratively placed within the Office of the Federal CIO," but later reorganized within OMB and directly supervised by "the Deputy Director of Management"). The fact that the E.O. created separation from OMB is also apparent by comparing DOGE's apportionment—i.e., its approved budgetary resources, 31 U.S.C. § 1513(b)—to that of the U.S. Digital Service. Whereas U.S. Digital Service apportionments flowed into an OMB account for "General Departmental Management," DOGE receives apportionments directly. *Compare* General Departmental Management, OpenOMB (accessed on Feb. 6, 2025), https://openomb.org/file/11293991, *with* United States DOGE Service, OpenOMB (accessed on Feb. 6, 2025), https://openomb.org/file/11409329.
[4] *See* Jason Koebler et al., *DOGE Employees Ordered to Stop Using Slack While Agency Transitions to a Records System Not Subject to FOIA*, 404 Media (Feb. 5, 2025), https://www.404media.co/doge-employees-ordered-to-stop-using-slack-while-agency-transitions-to-a-records-system-not-subject-to-foia/.
[5] Although a DOGE employee attested that, as a detailee to the Department of Labor, he "report[s] to the Acting Secretary of Labor and her [sic] designees," Decl. of Adam Ramada ¶ 7, ECF No. 16-1, his declaration is notably silent as to whether he *also* reports to his principal employer, the United States DOGE Service and how he is expected to prioritize among instructions from the Department and DOGE or resolve conflicts between instructions from each.

court," 5 U.S.C. § 704, many courts, including in this Circuit, have acknowledged the APA as a mechanism for injunctive relief against prohibited disclosures. The Supreme Court has noted that the "inattention" of the Privacy Act's text to the "standards of proof governing equitable relief that may be open to victims of adverse determinations or effects . . . may be . . . explained by the general provisions for equitable relief within the" APA. *See Doe v. Chao*, 540 U.S. 614, 619 n.1 (2004).

In *Doe v. Stephens*, the D.C. Circuit considered a claim that the Veterans Administration improperly disclosed medical records in violation of the Privacy Act. 851 F.2d 1457, 1460-61, 1463 (D.C. Cir. 1988). After finding that the "Privacy Act [did] not by itself authorize the injunctive relief sought by Doe," the Court went on to explain that such relief nevertheless *was* available under the APA, because Doe's "clearly [was] a case of agency action 'not in accordance with law' within the meaning of 5 U.S.C.  706(2) . . . [where] the disclosure of Doe's psychiatric records violated the Veterans' Records Statute, as amended by the Privacy Act." *Id.* at 1463, 1466.

In another case in this Court, a plaintiff sought injunctive relief under the APA after a data breach at the IRS that they alleged violated the Privacy Act and the Internal Revenue Code. *Welborn v. Internal Revenue Serv.*, 218 F.Supp.3d 64, 72 (D.D.C. 2016). While the court ultimately dismissed the plaintiff's claims for prospective relief under the APA, it did so because plaintiff had not adequately "alleg[ed] that the IRS continues to allow access to their personal identifying information." *Id.* at 81.

The key question for this Court is whether an "adequate remedy in a court" exists in the Privacy Act that precludes equitable relief for Plaintiffs under the APA. 5 U.S.C. § 704. The answer is no—the Privacy Act's scheme of retroactive monetary damages is not an adequate

remedy for Plaintiffs' claims. 5 U.S.C. § 552a(g)(4). Plaintiffs collectively represent millions of members who stand to be affected by a willful and unlawful disclosure of sensitive data from the Department. Unlike many other instances of government data breaches, any unlawful disclosure here would be by high-level government officials under the color of law; the government would not inform affected individuals that their data had been unlawfully disclosed or accessed. It is unclear whether, when, or how affected individuals would even receive notice that their data was compromised and why.

Retroactive damages cannot substitute for equitable relief where, as here, access to statutory relief is impractical and made uncertain by the government's "failure . . . to abide by the letter and spirit" of the law. *Cf. Payne Enterprises, Inc. v. U.S.*, 837 F.2d 486, 494 (D.C. Cir. 1988) (equitable relief was warranted when a government agency repeatedly and unlawfully denied a FOIA requester's requests, despite the fact that administrative review of those denials was available and the plaintiff had repeatedly prevailed in them). The fact that a statutory scheme allows a plaintiff to "eventually obtain" some form of relief "provides scant comfort" when the relief is "stale" and "of little value" due to the government's "illicit practice" of ignoring the law. *Cf. Welborn*, 218 F.Supp.3d at 71-72.

## VI. Defendants have no meaningful response to the Non-Privacy Act violations asserted by Plaintiffs.

Importantly, Plaintiffs have established a likelihood of success on the merits of their non-Privacy Act-related claims as well, including DOGE's ultra vires nature and actions, Mot. at 25-28, its likely violation of laws protecting against financial conflicts of interest and promoting competition, Mot. at 29, as well as its unlawful and process-free overriding of existing agency confidentiality requirements and the arbitrary and capriciousness of the records access decision,

including as it impacts federal ethics requirements and upends reliance interests. Defendants have no meaningful answer to these violations.

## VII.     Plaintiffs seek narrow and clearly articulated relief.

Plaintiffs seek specific relief which provides more than fair notice to Defendants of the prohibited conduct.

They ask that the Department of Labor be prohibited from: (1) providing DOGE personnel with *unlawful* access to Department of Labor systems;[6] (2) otherwise allowing DOGE personnel to take action in excess of statutory authority; and (3) taking adverse employment actions (a term of art well understood by government employees, especially those tasked with administering federal labor law) against employees for refusing to grant unlawful access to Department of Labor systems. Plaintiffs further ask that all Defendants be (1) prohibited from providing clearly-described non-public information that would provide unfair business advantage to the recipient; and (2) required to report at regular intervals for the duration of a temporary restraining order on the specific access DOGE personnel have to systems.

These are specific prohibitions and requirements, each of which protects the particular identified interests of Plaintiffs and are appropriate under the circumstances of this case. In any event, Federal Rule of Civil Procedure 65(d) does not contemplate denying injunctive relief because a proposed order lacks adequate specificity or detail. Should this Court conclude that greater clarity is necessary to comply with the requirements of the Rule, Plaintiffs stand ready to submit a revised proposed order.

---

[6] Not, as Defendants assert all such access. *See Defs' Opp.* 12, 17.

Furthermore, nothing about Plaintiffs' requested relief is inconsistent with the presumption of regularity afforded to Government agencies, *Defs' Opp.* 15, particularly because the presumption of regularity does not require courts to give dispositive weight to "an official's promise that the challenged conduct will not recur." *Crowley Gov. Servs., Inc. v. G.S.A.*, 21-cv-2298 (BAH), 2023 WL 4846719 at *12 (D.D.C. July 28, 2023). Instead, a court is entitled to make its own determination, "based on the totality of the circumstances" that the government is "unlikely to" continue engaging in unlawful behavior. *Id.* There is good reason for the Court to exercise its judgment here, instead of resting on presumptions. Defendants actions have been far from regular.

Plaintiffs filed their complaint in this action less than 48 hours ago. Since then, public reporting has confirmed that DOGE personnel gained access to systems in at least three new agencies,[7] in addition to those mentioned in Plaintiffs' complaint, and suggests that the Administration publicly misrepresented the level of access a DOGE employee had to sensitive Treasury systems, including to a judge in this District.[8] Together with the serious deficiencies in DOGE's legal authority, the "totality of the circumstances" provide ample reason for this Court

---

[7] Ella Nilsen, *Trump energy secretary allowed 23-year-old DOGE rep to access IT systems over objections from general counsel*, CNN (Feb. 6, 2023), https://www.cnn.com/2025/02/06/climate/doge-energy-department-trump/index.html; Dan Diamond et al., *DOGE broadens sweep of federal agencies, gains access to health payment systems*, Wash. Post (Feb. 5, 2025), https://www.washingtonpost.com/health/2025/02/05/doge-health-agencies-labor/; Patricia Kime, Elon Musk Aide Is Now Working at VA and Accessing Its Computer Systems, Military.com (Feb. 5, 2025), https://www.military.com/daily-news/2025/02/05/elon-musk-aide-now-working-va-and-accessing-its-computer-systems.html.
[8] *Compare* Joint Proposed Order, *Alliance for Retired Americans v. Bessent*, 25-cv-00313-CKK (D.D.C. Feb. 6, 2025), ECF No. 12-1 (representing that the Department of Treasury would provide only provide "read only" access to then-DOGE employee, Marko Elez), *with* Vittoria Elliott, *The US Treasury Claimed DOGE Technologist Didn't Have 'Write Access' When He Actually Did*, Wired (Feb. 6, 2025), https://www.wired.com/story/treasury-department-doge-marko-elez-access/ (reporting that Mr. Elez "did in fact have write access" to Treasury's payment system).

12

to grant relief that will produce clarity about DOGE's operations and legal authority. *See Crowley Gov. Servs., Inc.*, 2023 WL 4846719 at *12.

## CONCLUSION

For the foregoing reasons, as well as those set forth in Plaintiffs' memorandum of law in support of Plaintiffs' motion for a temporary restraining order, ECF No. 2, the Court should grant Plaintiffs' motion and enter a temporary restraining order.

Dated: February 7, 2025

Respectfully submitted,

*/s/ Mark B. Samburg*

Mark B. Samburg (D.C. Bar No. 1018533)
Aman T. George (D.C. Bar No. 1028446)
Benjamin Seel (D.C. Bar No. 1035286)
Rachel F. Homer (D.C. Bar No. 1045077)
Robin F. Thurston (D.C. Bar No. 462679)
Somil B. Trivedi (D.C. Bar No. 1617967)
Skye L. Perryman (D.C. Bar No. 984573)*
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
Telephone: (202) 448-9090
Fax: (202) 796-4426
msamburg@democracyforward.org
ageorge@democracyforward.org
bseel@democracyforward.org
rhomer@democracyforward.org
rthurston@democracyforward.org
strivedi@democracyforward.org
sperryman@democracyforward.org
*Counsel for Plaintiffs*

Teague P. Paterson (D.C. Bar No. 144528)
Matthew S. Blumin (D.C. Bar No. 1007008)
AMERICAN FEDERATION OF STATE,
COUNTY, AND MUNICIPAL EMPLOYEES,
AFL-CIO
1625 L Street N.W.
Washington, DC 20036
Telephone: (202) 775-5900
Facsimile: (202) 452-0556

tpaterson@afscme.org
mblumin@afscme.org
*Counsel for American Federation of State,*
*County, and Municipal Employees, AFL-CIO*
*(AFSCME)*

Rushab B. Sanghvi (D.C. Bar No. 1012814)
AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES, AFL-CIO
80 F Street N.W.
Washington, DC 20001
Telephone: (202) 639-6426
Facsimile: (202) 329-2928
SanghR@afge.org
*Counsel for Plaintiff American Federation*
*of Government Employees, AFL-CIO (AFGE)*

Steven K. Ury (D.C. Bar 1643947)
SERVICE EMPLOYEES INTERNATIONAL
UNION
1800 Massachusetts Avenue, NW,
Legal Department, 6th Floor,
Washington, DC 20036
Telephone: (202) 730-7428
steven.ury@seiu.org
*Counsel for Plaintiff Service Employees*
*International Union*

* Motion for admission *pro hac vice*
forthcoming

14