# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AFL-CIO, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DEPARTMENT OF LABOR, *et al*, <br><br> *Defendants*. | Case No. 1:25-cv-00339-JDB |

## DECLARATION OF MATTHEW GINSBURG, AFL-CIO

I, Matthew Ginsburg, declare as follows:

1. I am the General Counsel of the American Federation of Labor and Congress of Industrial Organizations ("AFL-CIO"). I submit this declaration in support of Plaintiffs' application for a temporary restraining order in this matter. The statements made in this declaration are based on my personal knowledge, materials I have reviewed, and information made available to me pursuant to my duties at the AFL-CIO.

2. The AFL-CIO is a federation of 63 national and international labor organizations with a total membership of 15 million working men and women. The AFL-CIO is committed to the idea that all working people deserve good jobs.

3. The AFL-CIO and its affiliate unions routinely engage with the Department of Labor and its agencies and programs in pursuit of the mission to ensure good jobs for all working people.

1

4. The AFL-CIO's affiliate unions routinely bring complaints and claims on their own behalf and on behalf of individual workers under the various minimum working condition statutes enforced by the Department of Labor, including the Fair Labor Standards Act (minimum wages and overtime), to the Wage and Hour Division, and the Occupational Safety and Health Act, to the Occupational Safety and Health Administration.

5. Frequently these claims are brought on behalf of vulnerable workers who, without the Department of Labor's assistance, would be deprived of even minimum wages and safe working conditions.

6. When we or our affiliates assist union members or other workers with these claims, we are able to assure those workers that the Department of Labor will keep their identities and their complaints confidential. This assurance is vital because fear of employer retaliation is a powerful deterrent to employees from seeking assistance from the Department to enforce their workplace rights.

7. For many workers, this confidentiality is essential to the decision to come forward. They reasonably fear retaliation by their employer otherwise. And because many of these workers are economically vulnerable, they cannot risk any loss of income or other retaliation.

8. DOGE's access to other government systems has been well publicized.  And DOGE is identified with Elon Musk, who is the owner of major U.S. employers subject to regulation by the Department of Labor.  Even brief access by DOGE to the Department of Labor's records will show the workers we serve that they cannot trust the Department of Labor to keep the sensitive information they submit confidential, deterring them from

seeking relief or assistance from the Department.

9. If DOGE is allowed to access the Department of Labor's records concerning complaints and investigations, the willingness of workers to raise complaints to the Department of Labor will be chilled.

10. Members and retirees of the AFL-CIO's affiliate unions also routinely submit claims under programs administered by the Office of Workers' Compensation Programs at the Department of Labor. In addition to the Federal Employees' Compensation Program, private sector employees submit claims under other programs administered by the Department. These include the Black Lung Program, which provides benefits to coal miners disabled by pneumoconiosis arising out of coal mining employment pursuant to the Black Lung Benefits Act, and the Energy Workers Program, which compensates former employees of the Department of Energy who are diagnosed with cancer or other diseases as a result of exposure to radiation or other toxic exposure while employed at certain Department of Energy facilities or mining operations pursuant to the Energy Employees Occupational Illness Compensation Program Act.

11. If DOGE is allowed to access these claims, highly personal medical information will be disclosed in violation of claimants' privacy interests and also creating a risk that workers who may be entitled to benefits under the Federal Employees' Compensation Act, the Black Lung Benefits Act, and the Energy Employees Occupational Illness Compensation Program Act will be chilled from submitting such claims in the future.

12. The Department of Labor's Office of Labor Management Standards (OLMS) administers parts of the Labor-Management Reporting and Disclosure Act, 42 U.S.C. § 401 et seq.

13. The OLMS routinely conducts audits of both local and national unions. The AFL-CIO as well as many of its national affiliates and their local unions have been subject to such audits. OLMS conducts hundreds of audits of unions every year. *See CAP Closing Letters 2024*, https://www.dol.gov/agencies/olms/audits/2024 (list of unions audited in 2024).

14. In the course of such an audit, OLMS agents routinely review and collect the union's financial records, including, for example, information about union officers, employees, vendors, consultants, investments and employers with whom the unions bargain. These financial records include, for example, individual employee expenses and reimbursements. The records OLMS reviews and collects are not public and are highly confidential.

15. Disclosure of those records would be highly damaging to unions. It could, for example, reveal that a union has sent organizers to a particular city, alerting employers to an incipient organizing drive and permitting them to respond by attempting to persuade their employees not to join a union before the organizing drive can even begin.

16. The OLMS also investigates protests arising out of the election of union officers. Many of the AFL-CIO's national affiliates and their local unions have been subject to such investigations.

17. In the course of such an investigation, OLMS agents routinely review records and collect data on union membership, participation in officer elections, and the individual identity of union members. The records reviewed include union membership lists, which include members' names, addresses, employer or union identification numbers, and social security numbers. The records OLMS reviews and collects are not public and are highly confidential.

4

18. Disclosure of those records would be highly damaging to unions. Membership data, including union membership lists, and data concerning union member participation in officer elections might reveal the strength or weakness of the union and thus advantage employers in an organizing drive or in the collective bargaining process.

19. The AFL-CIO and its affiliates also sponsor employee retirement and health benefit plans that are subject to ERISA. These plans are overseen by the Employee Benefits Security Administration (EBSA) at the Department of Labor. In response to EBSA investigations, such plans have had to turn over sensitive information about union employees, members, retirees, and their family members covered by the plans to the Department, including names, social security numbers, dates of birth, health status, and pay statuses. If DOGE is allowed to access this information, the AFL-CIO, its affiliates, and their employees, members, and retirees will face significant harm.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 11, 2025, in Washington, DC

        /s/ Matthew Ginsburg
         Matthew Ginsburg