# EXHIBIT L

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AFL-CIO, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>DEPARTMENT OF LABOR, *et al.*,<br><br>*Defendants*. | Case No. 1:25-cv-00339-JDB |

### DECLARATION OF STEVEN K. URY, SEIU

I, Steven K. Ury, declare as follows:

1. I am the General Counsel of the Service Employees International Union ("SEIU"). I submit this declaration in support of Plaintiffs' application for a temporary restraining order in this matter. The statements made in this declaration are based on my personal knowledge, materials I have reviewed, and information made available to me pursuant to my duties at SEIU.

2. SEIU represents approximately two million members in healthcare, the public sector, and property services. SEIU has over 150 affiliates across the United States, Canada, and Puerto Rico. Our work is guided by our vision for a just society where all workers are valued and all people respected—no matter where we are from or the color of our skin, where all families and communities can thrive, and where we leave a better and more equitable world for generations to come. *See* SEIU 2024 Constitution and Bylaws, SEIU Mission Statement 5, available at https://www.seiu.org/cards/what-you-should-know-

1

about-our-constitution-and-leaders/you-can-read-it-yourself/p3.

3. To achieve this vision, SEIU's work is centered on forging a multiracial labor movement that builds worker power through unions, raises standards in workplaces and in communities, and—crucially—seeks to end poverty wages forever. *Id*.

4. SEIU represents members and organizes workers in traditionally underpaid and undervalued—but essential—sectors of our economy, including janitors, retail workers, restaurant workers, and fast food workers. Wage theft is rampant in these and other low-wage industries. *See, e.g.*, Margaret Poydock and Jiayi Zhang, *More than $1.5 Billion in Stolen Wages Recovered for Workers Between 2021 and 2023*, Economic Policy Institute 3 (Dec. 20, 2024), available at https://www.epi.org/publication/wage-theft-2021-23/. Indeed, even the U.S. Department of Labor ("DOL") has found that low-wage workers in the food service, retail, construction, and health care sectors contend with "high rates of wage theft." *Id*. A 2022 worker survey conducted by SEIU revealed that 85% of respondents in fast food jobs in California reported experiencing wage theft. *Skimmed & Scammed: Wage Theft from California's Fast Food Workers*, SEIU (May 2022), https://fastfoodjusticeahora.com/wp-content/uploads/2022/05/May-2022-Skimmed-and-Scammed-Wage-Theft-in-CA-Fast-Food-.pdf. Workers in low-wage industries are also at greater risk of exposure to workplace hazards and occupational risks. *Low Wage Jobs are Hazardous*, UC Berkeley, https://racismharmshealth.berkeley.edu/work/low-wage-jobs-are-hazardous/.

5. Women, workers of color, and immigrant workers are disproportionately impacted because they are disproportionately represented in these jobs. *See, e.g., id.*; *see also* Ihna

Mangundayao, et al., *More than $3 Billion in Stolen Wages Recovered for Workers Between 2018 and 2020*, Economic Policy Institute 2 (Dec. 22, 2012), available at https://www.epi.org/publication/wage-theft-2021/.

6. SEIU relies on government agencies, such as the DOL, to enforce wage theft and workplace safety laws. Between 2021 and 2023, the DOL recovered almost $700 million in stolen wages on behalf of over 510,000 workers. Economic Policy Institute, *supra* ¶ 4. Meanwhile, the Occupational Safety and Health Administration ("OSHA") conducted over 34,000 inspections in fiscal year 2024, and imposed millions of dollars in penalties in enforcement cases. *Commonly Used Statistics*, OSHA, https://www.osha.gov/data/commonstats (last visited Feb. 12, 2025); *see also Enforcement Cases with Initial Penalties of $40,000 or Above*, OSHA, https://www.osha.gov/enforcement/toppenalties/bystate (last visited Feb. 12, 2025).

7. SEIU educates workers on their legal rights and helps them gather the evidence needed to make successful claims before these and other agencies. SEIU and our affiliates also assist workers and members in pursuing violations of various minimum working-conditions statutes enforced by the DOL, including reporting Fair Labor Standards Act ("FLSA") (minimum wages and overtime) violations to the Wage and Hour Division, and Occupational Safety and Health Act violations to OSHA. SEIU and our affiliates routinely participate in filing complaints to these agencies. In certain circumstances, SEIU and our affiliates file complaints on workers' behalf and, in others, workers indicate in their complaints that the union is the workers' representative in the case.

8. For example, in September 2024, SEIU filed a 14-page wage and hour complaint with 68

pages of exhibits on behalf of the Union of Southern Service Workers ("USSW"), a campaign of SEIU, against Waffle House for violations of the FLSA's tip credit requirements. That complaint is based on interviews with 20 current and former Waffle House servers. It includes the identities of individual union members employed by Waffle House and the precise information they shared with us about their unlawful working conditions. These workers are economically vulnerable, struggling to make ends meet, and cannot afford to experience any retaliation by their employer, which is why many sought to remain anonymous.

9. Two of these workers have submitted declarations in connection with this lawsuit. They asked not to be identified by name because they are afraid of retaliation, but could be identified in an *in camera* proceeding, if needed. SEIU knows the identities of these individuals and has verified their membership status. I affirm that we submitted the complaint against Waffle House on behalf of these and other workers, and it is currently pending at the DOL.

10. When we or our affiliates assist workers with these claims, we are able to assure them that the DOL will keep their identities and their complaints confidential. The DOL will ask workers for permission before sharing their names with their employer. The promise of confidentiality is an essential condition to encourage workers to come forward to share their experiences with union organizers, and to agree to have their names included in complaints filed with government agencies such as the DOL.

11. If workers' names are publicized, are accessible by their employer, or are disseminated to third parties, this disclosure will chill workers from coming forward to report violations

of wage and hour laws, as well as other labor laws enforced by the DOL. Even the mere threat of improper access or disclosure of confidential information leaves workers without the protections or peace of mind that they would otherwise have. Either situation can have cascading and devastating consequences for workers, especially low-wage workers, and for SEIU.

12. As the DOL itself has recognized, "[i]llegal retaliation against workers exercising their federally protected workplace rights is a pervasive problem." *Anti-Retaliation Initiative to Protect Workers Who Face Illegal Retaliation When They Organize and Exercise Their Workplace Rights*, U.S. Department of Labor, available at https://www.dol.gov/general/labortaskforce (last visited Feb. 12, 2025). "Retaliation is particularly acute for the most vulnerable workers, including low-wage workers, workers of color, and immigrant workers" and "keeps already-exploited workers from having the power to improve their working conditions." *Id.* In one survey of 275 workers in the Chicago metro area, 24 percent made a complaint to a government agency and the vast majority—80 percent—of those complainants experienced retaliation. Laura Huizar, *Exposing Wage Theft Without Fear: States Must Protect Workers from Retaliation*, NELP 5 (June 2019), available at https://www.nelp.org/app/uploads/2019/06/Retal-Report-6-26-19.pdf (last visited Feb. 12, 2025.

13. With respect to Waffle House, in particular, workers' concerns about retaliation are well-founded. Waffle House has retaliated against many workers for engaging in protected concerted activity under the National Labor Relations Act ("NLRA"). *See* Declaration of Benjamin Wilkins, ¶¶ 13, 21, ECF 23, *Waffle House, Inc. v. NLRB*, No. 3:24-cv-06751-MGL (D.S.C.) (the ULP charge referenced *infra* ¶ 14 is the subject of a pending federal

5

lawsuit). Waffle House has taken a range of retaliatory action against its employees in response to federally-protected activities, including reducing workers' hours, assigning workers less desirable shifts, intimidating workers, imposing new and onerous work rules at stores with significant organizing activity, and even terminating workers. *Id*. at ¶ 21. These actions violate the NLRA.

14. We currently have unfair labor practice charges pending at the National Labor Relations Board ("NLRB") in connection with Waffle House's unlawful retaliation against its employees. In early July 2023, Waffle House employees presented a petition to their employer and some went on a three-day strike to demand worker safety, consistent and fair scheduling, better pay, and an end to the company's mandatory meal deduction policy. *Id.* at ¶¶ 10-11. In response, Waffle House unlawfully interrogated workers about their protected activities, threatened workers with reprisals (including threats to call the police and press criminal charges and to sue the workers), engaged in surveillance, reduced workers' hours, and imposed retaliatory discipline. *Id.* at ¶ 13. Waffle House's retaliation had a substantial chilling effect on the organizing activity at that location, and organizing activity by workers stopped completely. *Id.* at ¶ 15.

15. Unauthorized access to DOL systems and/or disclosure of DOL data or information to third parties therefore presents a real, imminent, and potentially irreparable threat to SEIU's work and harm to our members. Members whose information is improperly disclosed or exposed, including Waffle House workers, risk retaliation from their own employers and, potentially, future employers. The threat of improper exposure or disclosure, in and of itself, is a tangible harm to workers. It creates fear, anxiety, and a sense of betrayal by the union organizers and government agents who assured workers

that their personal information would be protected in accordance with the law and DOL's policies.

16. Moreover, workers talk to each other, especially about employer threats and retaliation. They also follow the news. Even workers who do not presently have information on file with the DOL will be deterred from seeking help from the DOL and other agencies due to reports that the Department of Government Efficiency ("DOGE") and non-government employees are seeking broad access to sensitive personal information stored at and through a wide range of government agencies.

17. Access to systems and information, and the mere threat of such access, thus inhibit SEIU's efforts to enforce American labor laws, which makes it more difficult for SEIU to fulfill its mission of advocating for workers, ending poverty wages, and ensuring safe workplaces. When workers are deterred or intimidated from exercising their rights, it is substantially harder for SEIU to build the worker power necessary to achieve our organizational vision, at a macro level, or for workers in a particular workplace to establish the majority support necessary to win union representation, on a micro level.

18. SEIU, in turn, will need to work to prevent the erosion of worker trust at Waffle House locations and other workplaces. Unions work hard to gain workers' trust to encourage them to come forward to share their stories, and this trust will be broken if the confidentiality commitment is violated and workers' names and personal information are disclosed in any manner. Once that trust is lost, union organizers and organizing co-workers may never regain it. This has a detrimental impact on SEIU, our membership, and union organizing campaigns.

19. If employers are able to identify workers who have filed complaints with the DOL, we expect to see retaliation, as has been the case at Waffle House with respect to other protected activities. If employers retaliate by cutting hours, interrogating workers, surveilling workers, disciplining workers, or terminating workers, that is a violation of the NLRA. As a result, SEIU will need to devote significant staff and financial resources to educating both impacted and non-impacted workers about NLRA rights, to retaining legal counsel, and to helping workers submit unfair labor practices, compile evidence, and prepare for and participate in NLRB proceedings. Those resources could otherwise be used for organizing other workers or for servicing other SEIU members. Worse yet, even if the retaliation is unlawful, it can nonetheless have its intended effect: stopping organizing activity by workers altogether, either because they have been fired or because they have been intimidated by their employers' misconduct. It is difficult to overstate how damaging that is to an organizing campaign and to our nation's labor relations framework.

20. DOGE's access to other government systems has been broadly publicized. Access to the DOL's systems, data, and records will be devastating for the workers we represent and will impair SEIU's ability and capacity to help them seek the protections of the country's basic labor protections. This harm will occur even if DOGE is given access to the DOL's records concerning complaints and investigations for a short period of time.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 12, 2025, in Washington, DC.

8

                                                                               */s/ Steven K. Ury*
                                                                                       Steven K. Ury