# EXHIBIT W

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AFL-CIO, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DEPARTMENT OF LABOR, *et al.*, <br><br> *Defendants*. | Case No. 1:25-cv-00339 |

**DECLARATION OF** ███████████████████

I, ███████████████, hereby declare under penalty of perjury as prescribed in 28 U.S.C. § 1746 that the following is true and correct:

1. I am over eighteen years old, of sound mind, and fully competent to make this declaration. This declaration is based on my personal knowledge, information, and belief. I submit this declaration in support of the Plaintiffs' Renewed Motion for a Temporary Restraining Order.

2. I am a board-certified emergency physician in ███████, Colorado. I have been a doctor since 1992, a board-certified physician since 1996, and have worked in Colorado for over twenty years. In my practice, I treat all types of patients—across backgrounds, age groups, and socioeconomic status—for all types of health care needs. We treat anyone who walks in our doors 24-7, every day of the year.

3. As an emergency physician, it is my job to identify emergency medicine conditions in my patients, which are threats to life or limb. Their injuries run the gamut from chest pain to stroke to infectious disease to broken limbs or wounds to vital organs from motor vehicle accidents. I see pregnant patients, including those who present emergency conditions

1

(such as ectopic pregnancies) and conditions that might become emergencies (such as vaginal bleeding), and patients with medical concerns that might have associated stigmas (such as injuries resulting from violence in relationships).

4.  I have been a dues-paying member of the Communications Workers of America (CWA) since 2021 and am active in my local's doctors' caucus. CWA works for health and safety protections, equitable wages, benefits and working conditions, as well as increased public funding, for healthcare workers. That, in turn, allows me to provide the best care to my patients as possible.

5.  As a doctor, I receive a significant amount of private information, including health information protected under federal law, from my patients, which I enter into the hospital's electronic health records system. I also undertake a yearly privacy training as required by federal law; conduct my practice in a way that maximally protects patient information, for example by ensuring I interview patients in privacy; and am required to abide by other privacy protections, for example by only having access to medical records containing private medical information for specific purposes such as direct patient care or research purposes as determined by the Institutional Review Board.

6.  It is my understanding that the hospital at which I work regularly submits information, including health information protected under federal law, to the Department of Health and Human Services (HHS), either directly or through intermediaries. For example, through an intermediary, my hospital submits information to the Centers for Medicare and Medicaid Services for insurance reimbursements. This information may include a patient's name, medication, medical history, date of birth, and billing codes describing the purpose of a

visit, among other identifying information. As an organ transplant center, my hospital also reports sensitive information to the Health Resources and Services Administration.

7. When a patient comes into the emergency department, they have an understanding that the information they tell me will be kept confidential. And I affirmatively communicate to my patients that, barring the few instances in which I am required to report something under state law (e.g., information around gun injuries), I will keep the information they tell me private, and that my hospital will do the same. Blanket assurances of confidentiality are even more important in the context of emergency care, where I may not have as much time to build up patient trust.

8. Confidentiality is a critical component of my ability to provide my patients with the care they need. Without confidentiality protections, my patients may not tell me the information I need to know. That is especially true with regard to sensitive topics such as sexual relationships, familial relationships, domestic violence, and mental health information. And without confidentiality protections, patients may not even show up to receive the care that they need. That may cause harms to the community I serve more broadly, especially concerning the prevention of disease and infection.

9. If DOGE or other unequipped employees have access to the sensitive personal information and protected health information at HHS, it will have an enormous impact on my ability to do my job and it will be life-threatening for my patients. Without assurances of confidentiality, many patients will not come to the hospital. Those that do will be discouraged from providing me with accurate information.

10. Physicians have long faced hurdles to obtaining patient trust—trust that has been threatened more than ever over the last few years. It is integral that patient information be protected by health care providers and, just as importantly, the federal government, so as to not

undermine the provision of healthcare in America.  If DOGE has access to sensitive information, it would be damaging to me as a physician because it would interfere with my ability to practice emergency medicine to the best of my ability.

Executed on February 10, 2025

