UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AFL-CIO et al., | |
| *Plaintiffs*, | |
| vs. | Case No. 1:25-cv-00339-JDB |
| U.S. Department of Labor et al., | |
| *Defendants*. | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR RENEWED MOTION FOR A TEMPORARY RESTRAINING ORDER**

In opposing Plaintiffs' renewed motion for a temporary restraining order, Defendants paint a rosy picture in which personnel from DOGE are engaged in the orderly and "entirely unremarkable" exercise of implementing the President's vision for improving the Government's information technology systems. Defs.' Mem. in Opp. to Pls.' Renewed TRO ("Defs.' Renewed TRO Opp.") at 5, ECF No. 31. But that version of events is impossible to square with the public record, which shows that DOGE's barnstorming through the federal Government is anything but "unremarkable." *See* Pls.' Renewed TRO Br. at 2-14, ECF No. 29-1. To the contrary, DOGE is acting as "the wood chipper for bureaucracy," as it was designed to.[1]

But, even in Defendants' distorted depiction of reality, they do not deny that DOGE personnel are authorized to access agency systems of records, including those containing sensitive personal and health information and confidential complaints.[2] Instead, Defendants

---

[1] Elon Musk (@elonmusk), X (Feb. 3, 2025, 7:59 PM), https://x.com/elonmusk/status/1886625632836104529?lang=en.

[2] Defendant the Department of Labor avers that "[a]s of this date, there is one relevant worker who is now a DOL employee." Declaration of Ricky J. Kryger ("Kryger Decl.") ¶ 13, ECF No. 31-1. Mr. Kryger does not explain what happened to Adam Ramada and his two DOGE

1

contend that such access is permissible because the DOGE personnel are, in their view, "employees" of the host agencies and may therefore lawfully assist with normal agency functions. Defs.' Renewed TRO Opp. at 24 (quoting 5 U.S.C. ¶ 552a(b)(1)), ECF No. 31. DOGE has no basis in statute, however, and cannot exercise any authority, including that of entering into contracts with the Defendant agencies to provide goods and services. With that understanding, it is clear that the DOGE personnel detailed to Defendant agencies are not "employees" of their hosts, but something else: interlopers whose very presence violates the law.

And even absent this threshold violation, Defendants have violated the law in their cavalier treatment of the sensitive data they maintain. Defendants' declarations should not provide the Court with confidence that sensitive material will be appropriately handled.[3]

Defendants also seek to wave away the harms that their unlawful conduct causes Plaintiffs, at times disclaiming responsibility for the consequences of Defendants' actions, and at other times downplaying the injuries suffered by Plaintiffs and their members. Neither of these obfuscations changes the fact that Defendants' unlawful conduct has directly injured Plaintiffs in concrete ways and continues to do so. Plaintiffs thus meet all the requirements for Article III standing.

The Court should decline Defendants' invitation to close its eyes to the reality in front of it and grant Plaintiffs' request for a temporary restraining order.

---

colleagues, who were "currently detailed to the Department of Labor" as of February 6. Declaration of Adam Ramada ¶ 5, ECF No. 16-1.

[3] *See, e.g.*, David Ingram, *DOGE software approval alarms Labor Department employees*, NBC News (Feb. 13, 2025), https://www.nbcnews.com/tech/security/doge-software-approval-alarms-labor-department-employees-data-security-rcna191583 (reporting that DOGE "has received approval from the Labor Department to use . . . remote-access and file-transfer software, known as PuTTY," which "could allow it to transfer vast amounts of data out of Labor's systems").

I.       **DOGE lacks authority to enter into agreements under the Economy Act and, as a result, DOGE detailees are not employees "of the" Defendant agencies.**

The crux of Defendants' argument that their respective DOGE Access Policies are lawful is their assertion that the DOGE personnel who are embedded at their agencies are "'employees of the agency which maintains the record.'" Defs.' Renewed TRO Opp. at 24 (quoting 5 U.S.C. § 552a(b)(1)), ECF No. 31. Plaintiffs do not dispute that DOGE personnel are "employees" under Title 5. *See* 5 U.S.C. § 2105(a)(1). But Plaintiffs *do* dispute that these employees can lawfully be "of the agency which maintains the record." 5 U.S.C. § 552a(b)(1). That dispute turns on whether the mechanism by which DOGE purported to send its employees to the Defendant agencies—i.e., agreements under the Economy Act—was available to them. As Plaintiffs have previously explained, it was not. *See* Renewed TRO Br. at 34-37, ECF No. 29-1.

The parties agree that the Economy Act's definition of "agency" comes from 31 U.S.C. § 101, which defines that term as including "a department, agency, or instrumentality of the United States Government." Defendants argue that DOGE may enter into Economy Act agreements because it is an "instrumentality of the United States Government." *See* Defs.' Renewed TRO Opp. at 26 (citing 31 U.S.C. § 101), ECF No. 31. But DOGE is no more an "instrumentality" than it is an "agency" or "department. *See* 31 U.S.C. § 101. Although 31 U.S.C. § 101 does not define "instrumentality," that term must be "known by the company it keeps." *Yates v. United States*, 574 U.S. 528, 543 (2015). Here, the accompanying terms "agency" and "department" are paradigmatic statutory creatures. Applying "instrumentality" to entities that, like DOGE, have no statutory connection risks "'ascribing . . . a meaning so broad that it . . . giv[es] unintended breadth to the [Economy Act].'" *Id.* (quoting *Gustafson v. Alloyd Co.,* 513 U.S. 561, 575 (1995)).

Defendants also point to *Citizens for Responsibility & Ethics in Washington v. Office of Administration* ("*CREW*"), 559 F. Supp. 2d 9 (D.D.C. 2008) and *Application of the Government Corporation Control Act and the Miscellaneous Receipts Act to the Canadian Softwood Lumber Settlement Agreement*, 30 Op. OLC 111, 117 (Aug. 22, 2006) ("OLC Memo") to support their argument. *See* Defs.' Renewed TRO Opp. at 26-27. Neither source does.

In *CREW*, the Court found that the Office of Administration was not an "agency" subject to the Freedom of Information Act ("FOIA"), despite the fact that it had entered into "inter-agency agreements" under the Economy Act, because the Court understood the statutes to have different definitions. 559 F. Supp. 2d at 16, 30. The Court in *CREW* was considering only the meaning of FOIA, however, not whether the Office of Administration was an "agency" under the Economy Act. *See id.* at 29-30. Moreover, the Economy Act agreements the Office of Administration formed were to provide administrative support, such as "voice systems operation and maintenance" to agencies on the White House complex. *Id.* at 16. The Office's functions were strictly to "perform[] tasks of a non-substantive nature." *Id.* at 24. Thus, the purpose of the agreements in *CREW* was for the Office, a component of EOP, to provide direct assistance to EOP's mission. *See id.* at 16. This is not the case with the agreements DOGE has unlawfully executed, which purport to allow DOGE to carry out wholly distinct *agencies'* missions.

The Office of Legal Counsel ("OLC") memorandum Defendants cite is also of no help to their case. As an initial matter, OLC's views have no more than "persuasive value." *Ctr. for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.*, 77 F.4th 679, 689 (D.C. Cir. 2023) ("OLC's views are not binding, nor are they entitled to deference." (citation omitted)). If OLC's views are persuasive here, they cut in Plaintiffs' favor because the "four-factor test" OLC uses to define "instrumentality" specifically considers "whether the entity was created by the government"—

4

"namely, by statute," and considers whether an entity has a "statutory mandate or purpose." *See* OLC Memo at 117-18.

## II.     Plaintiffs have standing to bring their claims.

Plaintiffs have established both organizational and associational standing—though either is sufficient by itself. Defendants argue that Plaintiffs have failed to establish injury-in-fact and a causal connection between their unlawful conduct and that injury, *see* Defs.' Renewed TRO Opp. at 7-11, ECF No. 31, but Defendants wholly ignore the actual bases for Plaintiffs' standing in favor of a strawman.

Defendants characterize Plaintiffs' associational standing as relying on their members' reasonable expectations of privacy in the information they submitted to the government. Not so. Plaintiffs' members have suffered injury-in-fact not because they had reasonable expectations of privacy, but because their private and sensitive information was disclosed unlawfully, and that disclosure has consequences. For example: that disclosure sometimes exposes employees who have reported workplace violations to retaliation by their employers. *See, e.g.*, Ex. C ¶¶ 6-7 (AFL-CIO, associational, DOL), ECF No. 29-5; Ex. D ¶¶ 6-7 (AFL-CIO, associational, DOL), ECF No. 29-6; Ex. O ¶ 8 (SEIU, associational, DOL), ECF No. 29-17.[4] And it sometimes makes patients reluctant to have frank discussions with their medical providers. *See, e.g.*, Ex. R ¶ 7 (SEIU, associational, HHS), ECF No. 29-20; Ex. S ¶ 7 (SEIU, associational, HHS), ECF No. 29-21; Ex. T ¶ 7 (SEIU, associational, HHS), ECF No. 29-22. These are "concrete,"

---

[4] The threat of retaliation has a powerful chilling effect on workers' future willingness to report violations—and arises even if there is only a *perception* among workers that their confidentiality will not be protected. *See, e.g.*, Ex. V ¶ 7 (CWA, associational, DOL) ("If my members and I no longer believe that [this] information is confidential . . . . that will mean that members—including myself—may not be willing to come forward and report on instances in the future."), ECF No. 29-24.

"particularized," and "actual" injuries to Plaintiffs' members, *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992), and Defendants have not suggested otherwise. Nor is there any reasonable question that Defendants' unlawful disclosure has directly caused these injuries. *See* Defs.' Renewed TRO Opp. at 11, ECF No. 31. For example, several declarants have been clear that the disclosure of sensitive medical information to *anyone* without a need for it discourages them from candid discussion with care providers. *See, e.g.*, Ex. R ¶ 7 (SEIU, associational, HHS), ECF No. 29-20.[5]

Defendants also variously mischaracterize Plaintiffs' organizational injuries as abstract or too attenuated to sustain standing. *See* Defs.' Renewed TRO Opp. at 12-15, ECF. No. 31. Defendants again misunderstand the basis for Plaintiffs' standing. As just one example, "working incrementally harder at a job they must already do," *id.* at 13, constitutes concrete injury when it means that Plaintiffs will need to "devote more time, and ultimately money," Ex. X ¶ 16 (VPLC, organizational, CFPB), ECF. No. 29-26, to their work, or where the added drain will force the organization "to take on fewer cases and divert resources from other core functions," Ex. F ¶ 19 (AFGE, organizational, DOL), ECF No. 29-8; *see, e.g.*, Ex. U ¶ 17 (CWA, organizational, DOL), ECF No. 29-23. And again, there is no question that Defendants' unlawful conduct has directly caused these harms. For example, by eliminating the confidentiality that previously characterized the CFPB's consumer complaint function, Defendants' action has made the resource unusable in

---

[5] Defendants separately suggest Plaintiffs lack associational standing because Privacy Act actions contemplate actual damages sustained by individuals and thus requires participation by Plaintiffs' members. *See* Defs. Renewed TRO Opp. at 11, ECF No. 31. But Plaintiffs do not seek monetary relief here; there is no "hazard of litigating [the] case . . . only to find the [Plaintiffs] lacking detailed records or the evidence necessary to show the harm with sufficient specificity." *United Food & Com. Workers Union*, 517 U.S. 544, 556 (1996). And, in any event, Defendants do not argue that any of Plaintiffs' other claims require their members' participation.

some contexts, *see e.g.*, Ex. X ¶¶ 17-19, ECF No. 29-26, directly forcing Plaintiffs who rely on it to divert resources.[6]

### III. Defendants' declarations do not provide meaningful assurances.

Defendants submit three additional declarations, but none provides adequate assurances that sensitive information within the Defendants' control will be handled appropriately.

The Kryger Declaration, regarding the DOL, admits that DOL intends to permit access to additional non-DOL personnel in the future. Kryger Decl. ¶ 6, ECF No. 31-1. It does not describe how those personnel will be vetted. It does not guarantee that the DOL supervisor of these personnel will have final authority with respect to information access. *See id.* ¶ 7. While it discusses "guidelines" for access, it does not commit to treating these guidelines as binding or to enforcing them in the face of requests for access by DOGE personnel. *Id.* ¶¶ 11, 12 (not identifying under which circumstances the DOL OCIO would permit external sharing of DOL data accessed by DOGE personnel and discussing a "right to deny access" by DOL not a commitment to do so). DOL's procedures continue to be rushed, arbitrary, and insufficient: following a request for access by DOGE personnel, DOL will have only 24 hours (not even a business day) during which it will have only "an opportunity to meet its obligations." *Id.* ¶ 9. If, within those 24 hours, DOL cannot "ascertain and mitigate any conflicts of interest; establish confidentiality protocols; and identify and account for any system that may contain legally protected information" DOL does not commit to refusing access. *Id.* ¶ 9. The declaration does not discuss how the "need to know" for any particular access request will be evaluated; nor does it explicitly commit to rejecting requests for access without a "need to know." *Id.* ¶ 9. While the

---

[6] In the interest of brevity, this discussion addresses only a few of the independent bases for Plaintiffs' standing. *See Town of Chester v. Laroe Estates*, 581 U.S. 433, 439 (2017) ("At least one plaintiff must have standing to seek each form of relief requested in the complaint.").

declaration hinges on a form that DOGE personnel will sign prior to access, it does not attach that form for the Court's review, and is vague about what, if any, explicit requirements DOGE personnel agree to comply with in signing the form. *Id.* ¶ 10 (stating that the requestor will "acknowledge a list of certifications"). The declaration makes no commitments regarding vetting or training of DOGE personnel prior to providing them with this form, nor any ongoing vetting of compliance with the restrictions apparently articulated in the form. It does not explain why none of the DOGE staff that were detailed to DOL last week are apparently no longer at the agency, *see* Declaration of Adam Ramada ¶ 5, ECF No. 16-1, nor does it provide assurances that those staff have returned or destroyed copies of any agency records they possessed, or that they or DOL removed any software they installed on agency systems. The declaration should provide no comfort to the Court that the DOL's information will remain meaningfully secure.

The declaration as to HHS is similarly deficient. It fails to say specifically how many DOGE personnel are operating within the agency. Rice Decl. ¶ 5 ("I understand that at least one USDS employee. . . ha[s] been detailed to HHS."), ECF No. 31-2. It does not describe any process for vetting or training DOGE personnel. It describes systems to which DOGE personnel have been provided access but does not state that those are the exclusive systems to which DOGE personnel have access, nor that DOGE personnel's access is prohibited beyond auditing programs "for waste, fraud, and abuse." *Id.* ¶ 6. It provides no commitment that DOGE personnel will be prohibited from accessing any category of information systems and suggests the opportunity for expansive access. *Id.* ¶ 7 (describing potential purposes as "including but not limited to IT modernization, the facilitation of HHS operations, and the improvement of Government efficiency"). It describes a detailed agreement between USDS and HHS regarding DOGE personnel, but does not provide that agreement for the Court's review. *Id.* ¶ 7. Nor does

the description provide adequate assurances: it provides no commitment that DOGE personnel will be informed of the content of this agreement prior to being permitted access to HHS systems, will be trained on various privacy and other information handling protocols, or will be required to promise to follow those protocols. HHS makes no commitments regarding enforcement of this agreement or whether it is enforceable against DOGE requests for access. While HHS states "all HHS work" will be done with HHS equipment, it makes no commitments about whether DOGE personnel may install and operate other software, such as AI programs, on that equipment or HHS networks. *Id.* ¶ 9.

The declaration as to the CFPB is similarly deficient. The declarant appears not to have personal knowledge of, much less reviewed, the written agreements or certifications regarding the current personnel at the CFPB, nor are those agreements attached for the Court's review. Martinez Decl. ¶ 8, ECF No. 31-3. While the declaration describes a nondisclosure agreement and privacy and cyber security training for DOGE personnel and other agency detailees, it does not promise to require these steps in the future. *Id.* ¶ 6. Nor, beyond the nondisclosure agreement (which, as with the DOL and HHS agreements, are not attached for the Court's review, leaving the permissible bounds of disclosure unknown), and a single, highly general, statement that one of six detailees has signed the requisite forms, does it describe specific promises by DOGE personnel regarding the handling of sensitive information. *Id.* ¶¶ 6, 8. It does not say that the CFPB will require any certifications by other DOGE personnel. And it fails to make any forward-looking commitments as to training, vetting, or scope of access. *Id.* ¶ 9 (providing that "[a]ll accesses... *were* authorized..." (emphasis added)).

And none of these declarations provide any assurances that staff detailed from DOGE won't be purporting to be serving as "employees" of multiple agencies concurrently.

## CONCLUSION

For the foregoing reasons, as well as those set forth in Plaintiffs' opening brief, the Court should grant Plaintiffs' motion for a temporary restraining order.

Dated: February 14, 2025                Respectfully submitted,

*/s/ Aman T. George*

Aman T. George (D.C. Bar No. 1028446)
Benjamin Seel (D.C. Bar No. 1035286)
Mark B. Samburg (D.C. Bar No. 1018533)
Rachel F. Homer (D.C. Bar No. 1045077)
Robin F. Thurston (D.C. Bar No. 462679)
Somil B. Trivedi (D.C. Bar No. 1617967)
Skye L. Perryman (D.C. Bar No. 984573)*
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
Telephone: (202) 448-9090
Fax: (202) 796-4426
ageorge@democracyforward.org
bseel@democracyforward.org
msamburg@democracyforward.org
rhomer@democracyforward.org
rthurston@democracyforward.org
strivedi@democracyforward.org
sperryman@democracyforward.org
*Counsel for Plaintiffs*

Teague P. Paterson (D.C. Bar No. 144528)
Matthew S. Blumin (D.C. Bar No. 1007008)
AMERICAN FEDERATION OF STATE,
COUNTY, AND MUNICIPAL EMPLOYEES,
AFL-CIO
1625 L Street N.W.
Washington, DC 20036
Telephone: (202) 775-5900
Facsimile: (202) 452-0556
tpaterson@afscme.org
mblumin@afscme.org

*Counsel for American Federation of State, County, and Municipal Employees, AFL-CIO (AFSCME)*

Rushab B. Sanghvi (D.C. Bar No. 1012814)
AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO
80 F Street N.W.
Washington, DC 20001
Telephone: (202) 639-6426
Facsimile: (202) 329-2928
SanghR@afge.org
*Counsel for Plaintiff American Federation of Government Employees, AFL-CIO (AFGE)*

Steven K. Ury (D.C. Bar 1643947)**
SERVICE EMPLOYEES INTERNATIONAL UNION
1800 Massachusetts Avenue, NW,
Legal Department, 6th Floor,
Washington, DC 20036
Telephone: (202) 730-7428
steven.ury@seiu.org
*Counsel for Plaintiff Service Employees International Union*

Matthew Holder***
COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO
501 Third Street N.W.
Washington, D.C. 20001
Telephone: (202) 215-6788
mholder@cwa-union.org
*Counsel for Plaintiff Communications Workers of America*, AFL-CIO

\* Admitted *pro hac vice*
\*\* Motion for admission forthcoming
\*\*\* Motion for admission *pro hac vice* forthcoming