UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

*AFL-CIO, et al.*,

    *Plaintiffs*,

    *vs.*

*Department of Labor, et al.*,

    *Defendants*.

Case No. 1:25-cv-00339-JDB

**PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY**

In the last two weeks, Plaintiffs have sought emergency relief to ameliorate ongoing privacy violations resulting from DOGE access to protected agency records. This access harms Plaintiffs, their members, their affiliates, and the populations they serve. At the same time, the facts before the Court regarding DOGE access to those records have been in flux and are quickly evolving. These facts—particularly the scope of DOGE personnel's ongoing access to protected systems of records, and the nature and authority of DOGE—are critical to assessing Plaintiffs' irreparable injuries. These facts are also solely in Defendants' possession. Tailored discovery into those limited questions will enable the Court to evaluate Plaintiffs' forthcoming motion for a preliminary injunction on a record that answers some of the questions outstanding at the last hearing.

Assessing Plaintiffs' irreparable injuries depends on the scope of any disclosures by Defendant agencies of sensitive material stored on their systems. Defendants have proffered declarations regarding how DOGE employees may access their records. ECF Nos. 16-1, 31-1, 31-2, 31-3). But those declarations have tensions and inconsistencies with one another and with public reporting, and leave open substantial additional questions about Defendants' ongoing

1

treatment of the sensitive records in their care. As the Court has observed, this is "a fast-moving fluid situation," Transcript of TRO Motion Hearing, ECF No. 41 at 6.

Granting limited, expedited discovery into these issues would be an appropriate exercise of this Court's discretion to manage discovery. These issues are well-suited to limited discovery; further, the nature of Plaintiffs' claims (challenging unwritten, unacknowledged policy changes by Defendant Agencies) mean that no administrative record currently exists about key issues to facilitate judicial review. Order, ECF No. 43 at 1-2 ("some evidence of defendants' decisionmaking process" is necessary to assess defendants' actions). And the limited factual discovery sought by Plaintiffs will enable this Court to assess the need for a preliminary injunction on a more complete record when that issue is briefed

Proceeding to such limited discovery will also be in the interests of judicial economy. After two rounds of TRO briefing and hearings, Plaintiffs believe that PI briefing without the benefit of additional factual development is unlikely to meaningfully advance this Court's ability to assess this case. Order, ECF No. 43 at 2 ("Limited discovery could also benefit the Court by helping it decide additional factual questions necessary to resolving other critical legal issues."). Consistent with the Court's order from earlier today, Plaintiffs respectfully request that the Court grant leave to Plaintiffs to take limited, expedited discovery as set forth below..

**BACKGROUND AND PROCEDURAL HISTORY**

The White House created DOGE and has given it a sweeping mandate that includes, at least,

- "[M]odernizing Federal technology and software to maximize governmental efficiency and productivity," E.O. 14158 § 1;

- Overseeing hiring of federal employees at each agency, including assessing whether any "vacancies for career appointments . . . should not be filled," E.O. 14210 § 3(b)(ii);

- "[R]educing waste, fraud, and abuse," ECF No. 31 at 1;

- Overseeing the elimination of federal agencies;[1]

- Ensuring that "presidential executive orders are actually carried out;"[2]

To carry out this mandate, the White House ordered that DOGE be given "full and prompt access to all unclassified agency records, software systems, and IT systems" throughout the federal government. EO 14158 § 4(b).

The unclassified records held at federal agencies contain vast amounts of sensitive information collected about nearly every American. When DOGE began to seek access to Defendants Department of Labor ("DOL"), Department of Health and Human Services ("HHS"), and Consumer Financial Protection Bureau ("CFPB"), Plaintiffs initiated (and amended) this case to try and protect themselves, their members, their affiliates, and the Americans they serve from unlawful and damaging disclosures of sensitive records. Plaintiffs seek to ensure that sensitive personal medical and financial information, confidential records reflecting cooperation with federal law enforcement, competitively sensitive union records, and other data remain subject to critical legal safeguards. *See* ECF No. 21 ¶¶ 170-225; ECF No. 29-1 at 18-22, 37-41.

---

[1] Elon Musk (@elonmusk), X, (Feb. 3, 2025, 1:54 AM ET), https://x.com/elonmusk/status/1886307316804263979 (Mr. Musk says he spent the weekend "feeding USAID into the woodchipper"); Elon Musk (@elonmusk), X (Feb. 7, 2025, 4:41 PM), https://x.com/elonmusk/status/1887979940269666769 ("CFPB RIP").

[2] *Interview of President Trump and Elon Musk by Sean Hannity, 'The Sean Hannity Show,'* White House (Feb. 18, 2025), https://www.whitehouse.gov/remarks/2025/02/interview-of-president-trump-and-elon-musk-by-sean-hannity-the-sean-hannity-show/.

I.  **Factual uncertainty Defendants' data protections and the resulting scope of Plaintiffs' injuries**

The likelihood, immediacy, scope, and nature of the harms suffered by Plaintiffs are partially obscured by uncertainty in the current record concerning the nature of DOGE's access to agency records and the nature of DOGE itself. *See* Order, ECF No. 43 at 2 ("For example, plaintiffs have thus far asserted theories of standing, likelihood of success on the merits, and irreparable harm that turn on whether individuals not permitted under the Privacy Act to view personal information are viewing or will view that information.")

Defendants have wielded that uncertainty as a tool to question the harms Plaintiffs are or will suffer from DOGE's access to sensitive records. Defendants argue that without more specificity about alleged violations of systems access protocols, Plaintiffs cannot show that they are being harmed by improper disclosures of sensitive information. *See* ECF No. 31 at 11. Defendants contend that this "is not a data breach case," and that Plaintiffs have not "explain[ed] what specific protocols" Defendants are ignoring in granting systems access to DOGE staff. ECF No. 31 at 10-11.

Defendants also deny the existence of any reviewable agency action. *See* ECF No. 31 at 17-20. They argue that DOGE Access Policies only reflect existing agency policies being followed. *See id.* at 20 ("Plaintiffs cannot claim that every time a policy is followed that it is final agency action.").

But Defendants' own statements and actions amplify factual uncertainty in this Court and elsewhere. For example, while they deny the existence of any reviewable agency action, Defendants also submitted declarations that expressly identify new policies accounting for the entry of DOGE into agency systems. *See, e.g.*, Decl. of Ricky J. Kryger, ECF No. 31-1 ¶ 8 ("[G]uidelines have been established for employees carrying out the Executive Order, to protect

4

the integrity of DOL's information systems."); Decl. of Garey Rice, ECF No. 31-2 ¶ 7 (describing the "detail agreement that is in place between USDS and HHS" that governs DOGE's access to HHS's systems); Decl. of Adam Martinez, ECF No. 31-3 ¶ 8 ("To the best of my knowledge, there are written agreements or certifications in place governing the detail of the six detailees to CFPB.").

Defendants argue that any DOGE Employees should be considered employees of agencies to which they are detailed, sidestepping the question of whether disclosure to DOGE constitutes disclosure outside the host agency. ECF No. 31 at 25-26. But DOGE Employees also represent to courts that they work at multiple agencies, raising questions about whether they can validly be considered employees of any agency. *See* Declaration of Adam Ramada, ECF 16-1 ¶¶ 1, 5 (representing that Mr. Ramada is "employed at [DOGE]" but has been "detailed to the Department of Labor"); Supplemental Declaration of Adam Ramada, *Univ. of Calif. Student Assoc. v. Carter*, 1:25-cv-00354, ECF No. 18-2 ¶¶ 3-4 (D.D.C. Feb. 16, 2025) (representing that Mr. Ramada is "on detail" to the Department of Education, where he spends "50-60 hours per week working at Department [of Education] facilities.").

Declarations filed by Defendant Agencies also reveal inconsistencies between agencies, and with the agencies' own policies. For example, at the Department of Labor, DOGE Employees are apparently required to "provide 24 hours' notice before seeking access to each DOL IT system to allow DOL an opportunity to meet its obligations" to protect sensitive systems. Kryger Decl., ECF No. 31-1 ¶ 9. HHS does not purport to have any similar system-by-system approval regime in place. *See* Rice Decl., ECF No. 31-2.

There is also ambiguity about the number of DOGE personnel at Defendant Agencies. At DOL, the Deputy Chief Information Officer responsible for overseeing DOL's systems security

5

is personally aware of the single DOL employee working on the President's DOGE Agenda, *see* Kryger Decl., ECF No. 31-1 ¶ 2, 13, although the role described ("budget review") is different from that described by Mr. Ramada the week prior regarding to his work at DOL. *See* Ramada Decl. ECF. No. 16-1 ¶ 5 ("improving its information technology and data organization systems and in obtaining accurate and complete data to inform policy decisions."). Mr. Ramada had also told the Court that three USDS employees were detailed to DOL, not one. *Id.* ¶ 5. At HHS, the Principal Deputy Assistant Secretary for Operations in the Office of the Assistant Secretary for Financial Resources merely indicates that he "understand[s] that *at least* one [DOGE] employee" has been detailed to HHS. *See* Rice Decl., ECF No. 31-2 ¶ 5 (emphasis added).

At HHS, the declarant offered by the government explained the contours of the detail arrangement in place between HHS and DOGE. *See* Rice Decl. ECF No. 31-2 ¶ 7. At CFPB, the Chief Operating Officer simply stated that, to the best of his knowledge, there are written agreements or certifications in place governing the detail of DOGE employees to the CFPB, but did not purport to have reviewed them or attempt to describe their contents. *See* Martinez Decl., ECF No. 31-3 ¶ 8.

The CFPB declarant paints a picture of orderly DOGE access to CFPB systems that is consistent with CFPB policies, noting CFPB's compliance with "all established procedures to . . . provide access to the detailees," and that all access to CFPB systems has been undertaken "pursuant to CFPB processes." *See id.* ¶¶ 6, 10. But as the attached declaration from CFPB's former Chief Technologist shows, these claims are, at a minimum, implausible. Ex. 1. For example, Ms. Meyer explains that in her 14 year history at the CFPB, she is not aware of *any* employee who has been granted the sort of universal access offered to DOGE staff. Ex. 1 ¶ 8.

6

She calls granting such broad access "an unprecedented and very substantial change to Bureau policies."

She also explains that the speed with which DOGE staff gained access to CFPB systems is not compatible with the extensive training CFPB employees are required to undertake prior to accessing *each sensitive system* hosted at CFPB. *See id.* ¶¶ 10-17. She calls the CFPB's assertion that access to DOGE systems were pursuant to CFPB processes and procedures, ECF No. 31-3 ¶ 9, "not plausible based on my experiences and knowledge of the CFPB." Ex. 1 ¶ 29. And she notes her doubts that DOGE employees would have complied with required financial and ethical obligations designed to avoid conflicts of interest at CFPB. *Id.* ¶¶ 25-28.

This Court previously credited the information in Defendants' declarations, finding "on the record before it" Plaintiffs had not established that DOGE was likely to "inappropriately access confidential business information," or that DOGE's access to Defendant Agency systems likely constituted a new routine use under the Privacy Act. *See* ECF No. 34 at 1, 8-10. But many open questions and contradictions remain about the actual policies in place governing DOGE's access to agency data, and the adequacy of those policies. And this Court has continued to express "serious concerns about the privacy concerns raised by this case, and those concerns are all the graver now that the data includes information on all Americans who rely on Medicare and Medicaid, as well as countless consumers." *Id.* at 1.

II.    **Ongoing uncertainty about the nature and structure of DOGE**

A critical point of uncertainty in the record is whether DOGE is the kind of entity that can detail employees to Defendant Agencies under the Economy Act (and thus treat them as internal to the agencies for the purposes of evaluating whether unlawful disclosures are occurring). *See* ECF No. 29-1 at 34-37; ECF No. 31 at 24-27; ECF No. 34 at 7-8.

Plaintiffs argued that DOGE is not an "agency" for the purposes of the Economy Act, that it exists purely to advise the President and does not possess any organic statutory authority that would permit it to enter into Economy Act agreements with Defendant agencies. ECF No. 29-1 at 34-37. Defendants argue that DOGE is not an "agency," but does constitute an "instrumentality" that may permissibly enter into Economy Act agreements. *See* Transcript of TRO Motion Hearing, ECF No. 41 at 32. This Court concluded that, based on the information before the Court about DOGE's functional activities, DOGE most resembles an agency, but expressly noted the limitations of the current record and briefing to date. ECF No. 34 at 6-7 ("While the record isn't crystal clear as to these allegations, it is apparent that USDS is coordinating teams across multiple agencies with the goal of reworking and reconfiguring agency data, technology, and spending."), 7-8 (focusing on the "action" performed by DOGE).

The facts about how DOGE is structured are arguably becoming *less* clear with time. On February 17, 2025, the White House stated for the first time that Elon Musk is not an employee of DOGE nor is he the U.S. DOGE Service Administrator. Declaration of Joshua Fisher, *State of New Mexico v. Elon Musk*, 1:25-cv-00429, ECF No. 24-1 (D.D.C. Feb. 17, 2025). On February 18, the White House declined to state who the current administrator or leader of DOGE is.[3] The same day, another judge in this courthouse expressed concerns about "what appears to be the unchecked authority of an unelected individual and an entity that was not created by Congress and over which it has no oversight." *New Mexico*, 1:25-cv-00429, ECF No. 29 at 9 (D.D.C. Feb.

---

[3] *See* Alayna Treene (@alaynatreene), X (Feb. 18, 2025, 1:58 PM EST) https://x.com/alaynatreene/status/1891925163425317214 (reporting that the White House Press Secretary "did not answer directly" who is currently the administrator or leader of DOGE).

8

18, 2025). And today (February 19, 2025), President Trump reiterated that Elon Musk is (or at least was) in charge of DOGE.[4]

Discovery about the functional structure of DOGE—including who has decision-making authority over it—is directly relevant to being able to evaluate its status as an agency or instrumentality to whom Plaintiffs' sensitive data may be disclosed without causing injury.

### III. Plaintiffs' Proposed Discovery Requests

As described above, the record as it stands in this case leaves substantial questions open as to (1) what procedures are in place within Defendant Agencies to ensure data in sensitive systems is protected during DOGE's reviews of agency operations; (2) whether these procedures represent departures from existing agency policies; (3) the extent of DOGE employees actual access to Defendant Agencies' systems; and (4) the nature of the DOGE office and its relationship to and authority over DOGE detailees at Defendant Agencies.

To that end, Plaintiffs move for limited expedited discovery to bolster the factual record in this case. Plaintiffs have attached proposed interrogatories, requests for production, and limited depositions under Fed. R. Civ. P. 30(b)(6) to this motion as Exhibit 2.

## LEGAL STANDARD

Parties may obtain discovery into nonprivileged matters relevant to their claims and defenses in a case, but the scope of discovery must be

> proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

---

[4] *See* Anna Bower (@AnnaBower), X (Feb. 19, 2025, 6:13 PM EST), https://x.com/AnnaBower/status/1892351833630212494 (video clip of President Trump today saying "I signed an order creating the Department of Government Efficiency and put a man named Elon Musk in charge.").

Fed. R. Civ. P. 26(b)(1).

District courts have "broad discretion over the structure, timing, and scope of discovery." *Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1208 (D.C. Cir. 2020). The Federal Rules of Civil Procedure typically provide for discovery pursuant to a discovery plan, developed after the parties confer prior to a scheduling conference in a case. *See* Fed. R. Civ. P. 26(f). However, courts may in their discretion grant expedited discovery without a Rule 26(f) conference, where the court concludes such discovery is reasonable. *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97-98 (D.D.C. 2014).

Reasonableness is a discretionary inquiry, to be considered "in light of all of the surrounding circumstances." *Id.* at 98 (internal citations and quotations omitted). Five circumstances that are relevant to a court's inquiry are: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Id.* (internal citations and quotations omitted).

## ARGUMENT

Plaintiffs briefly address the first and fifth of the reasonableness considerations before fuller discussion of the others. With regards to the first factor, currently, no preliminary injunction is pending, although as previously noted, this Court has twice considered motions for a temporary restraining order, and anticipates a forthcoming motion. ECF 34 at 11, ECF 42 at 3. With regards to the fifth factor, Plaintiffs acknowledge that this motion is filed in advance of the typical discovery process. The remaining factors strongly support granting the limited expedited discovery that Plaintiffs seek.

**I.      The breadth of the proposed discovery requests is appropriate at this stage.**

Plaintiffs' proposed discovery requests are "narrowly tailored to reveal information related to the preliminary injunction as opposed to the case as a whole." *Guttenberg*, 26 F. Supp. 3d at 98. Plaintiffs' proposed discovery requests seek to identify the scope, likelihood, and magnitude of ongoing potential disclosures of information by Defendants of sensitive information. *See* Exhibit 11. This information is critical to assessing irreparable injury for the purpose of assessing Plaintiffs' anticipated motion for a preliminary injunction.

The discovery requests also narrowly seek to provide a record for this Court's review of Plaintiffs' preliminary injunction motion in the absence of any administrative record. In cases where the government denies that reviewable agency action exists, a district court may "exercise its discretion to permit [] discovery to ascertain the contours of the precise policy at issue." *Hispanic Affairs Project v. Acosta*, 901 F.3d 378, 388 (D.C. Cir. 2018) (internal quotations and citations omitted). Such an approach is appropriate when "[t]he parties' litigation positions . . . obscure[] the issues in [the] case, so it is impossible to discern whether the alleged . . . policy in fact exists." *Venetian Casino Resort, LLC v. EEOC*, 409 F.3d 359, 360 (D.C. Cir. 2005); *see also Florida v. United States*, 3:21-cv-1066, 2022 WL 2431442 at *2 (N.D. Fla. June 6, 2022) ("[B]ecause Defendants deny the existence of the non-detention policy, [Plaintiffs] cannot be constrained by an administrative record as to that alleged policy.") (order on motion to supplement administrative record); *National Law Center on Homelessness and Poverty v. U.S. Dep't of Veterans Aff's*, 842 F. Supp. 2d 127, 130-31 (D.D.C. 2012) (In an APA case "where no administrative record was ever filed . . . plaintiffs would likely be entitled to some discovery to enable meaningful judicial review.").

Permitting limited discovery at this point, prior to the production of an administrative record by Defendants', is also efficient for the Court and the parties. The temporary restraining

11

order briefing and arguments have made clear the key issues in the current factual record. And the agency action is so novel that creating the administrative record will take effort by defendants and may itself be the subject of dispute about scope and contents.

The limited requests Plaintiffs proffer to "ascertain the contours" of Defendants' policies are substantially narrower than the sorts of broad requests that have been found to be overbroad for expedited discovery. *See, e.g.*, *Plaintiffs' Expedited Request for Production of Documents to Defendant*, *Guttenberg*, No. 13-cv-2046, ECF No. 7-3 (D.D.C. Jan. 21, 2014) (requesting "All documents that refer, relate, or regard the Plaintiffs."); *Attkisson v. Holder*, 113 F. Supp. 3d 156, 163 (D.D.C. 2015) (criticizing as overbroad interrogatories that, for example, "require the identification of 'any person who has knowledge' of particular information, "ask for the identification of individuals with knowledge of the existence of various technologies, untethered from any knowledge regarding the factual allegations raised in this case," and "seek[] to obtain information regarding the White House, despite the complete lack of allegations in the Complaint regarding the White House or any White House involvement in the matters that are the subject of this case."). Indeed, Plaintiffs' requests focus narrowly on discovery to confirm the representations made in declarations that Defendants have filed with this Court.

II.     **Plaintiffs seek discovery for a permissible purpose.**

The purpose inquiry "supports a motion for expedited discovery when the plaintiff seeks to gain evidence to get the court to preserve the status quo." *Attkisson*, 113 F. Supp. 3d at 164. On the other hand, the purpose inquiry is undercut where movants have not acted with appropriate urgency to seek discovery. This Court has previously found a movant lacked urgency when they failed to seek expedited discovery shortly after filing a case, instead waiting until "three weeks after defendants filed their motion to dismiss." *See Guttenberg*, 26 F. Supp. 3d at 98-99. Under those facts, this Court concluded that the motion could plausibly be read as an

12

attempt to "find off a renewed motion to dismiss" rather than "bolster the viability of their preliminary injunction motion." *Id.* at 99.

Here, the purpose of discovery is to develop a concrete, consistent record of how information stored within sensitive systems at Defendant Agencies is being accessed and used. Plaintiffs' injuries, and the irreparable harm to Plaintiffs and their members, are caused by the disclosure of sensitive information by Defendant Agencies to individuals outside of the Agencies and/or on terms nor contemplated by applicable laws concerning data access. *See* ECF No. 29-1 at 18-22, 37-41 (describing harms). Developing a record of the actual access to sensitive systems and agreements and policies that govern systems access will allow for a more concrete assessment of the ongoing irreparable harm to Plaintiffs.

Further, Plaintiffs have moved with all practicable urgency to file this motion. This Court denied Plaintiffs' previous motion for a temporary restraining order on February 14. The next business day, Plaintiffs provided notice to Defendants and to this Court of this forthcoming motion, which was then filed the following day. Plaintiffs have no interest in delaying resolution of their claims in this case, as evidenced by Plaintiffs' successive motions for temporary restraining orders and Plaintiffs' immediate movement for expedited discovery untethered to any pending motion to dismiss. Rather, Plaintiffs believe that expedited discovery is necessary for this Court to adequately address any forthcoming motion for a preliminary injunction, and are moving quickly to build the record needed.

### III. The proposed requests do not pose an excessive burden to Defendants.

Expedited discovery requests are not excessive burdensome where the court lacks a basis to find the burden of discovery "any different from the typical burden of an expedited discovery request." *Afghan and Iraqi Allies Under Serious Threat Because of their Faithful Service to the United States v. Pompeo*, No. 18-cv-1388, 2019 WL 9598404 at *2-3 (D.D.C. Jan. 30, 2019)

13

(granting expedited discovery, including requests for production and depositions pursuant to Fed. R. Civ. P. 30(b)(6)). Courts have found expedited discovery requests to be overly burdensome when requests were not "narrowly tailored," or when the allegations at issue were "extaordinar[ily] vague[]". *Landwehr v. F.D.I.C.*, 282 F.R.D. 1, 4 (D.D.C. 2010); *see also Attkisson*, 113 F. Supp. 3d at 165 (finding discovery burdensome where the requests were "overly broad and would require significant time and resources to address."). Expedited discovery has also been found too burdensome where movants sought "depositions of former high-level executives (with, presumably, very busy schedules) living in different parts of the country," *Landwehr*, 282 F.R.D. at 4, and where movants' proposed interrogatories contained "more discrete subparts . . . than the maximum of 25 allowed for merits discovery under" Fed. R. Civ. P. 33(a)(1). *Attkisson*, 113 F. Supp. 3d at 165.

Plaintiffs' requests would not represent an unreasonable burden on Defendants. Plaintiffs propose a limited set of interrogatories and requests for production, and a small number of abridged depositions pursuant to Fed. R. Civ. P. 30(b)(6).

Even counting all conceivable subparts, Plaintiffs propose to proffer eighteen interrogatories, well short of the maximum contemplated by the Federal Rules. Ex. 2. The information sought in Interrogatory 1 and its subparts concern a limited number of individuals—across all declarations submitted in this case, Defendants appear to have identified only five DOGE employees detailed to Defendant Agencies. Ramada Decl., ECF No. 16-1 ¶ 5 (identifying three DOGE detailees to DOL); Rice Decl., ECF No. 31-2 ¶ 5 (identifying one DOGE detailee to HHS); Martinez Decl., ECF No. 31-3 ¶ 5 (identifying one DOGE detailee to CFPB).

The information sought in proposed Interrogatory No. 1 also should not be overly burdensome for Defendants to assemble given their representations about the processes followed

14

in managing DOGE employees' access to sensitive systems. At DOL, the agency represents that any DOGE employees "will provide 24 hours' notice before seeking access to each DOL IT system" and "will review and sign all required access agreements for each process or system and complete a required request form to access DOL information systems." Kryger Decl., ECF No. 31-3 ¶ 9.

At CFPB, a detailee provided access to one database "signed all required forms with privacy statements required to be provisioned proper permissions and accesses," and DOGE employees access to CFPB systems was "authorized by the Chief Information Officer pursuant to CFPB processes and procedures with authorization from [the] Acting Director." Martinez Decl., ECF No. 31-3 ¶ 7, 9.

At HHS, agency leadership is required to supervise DOGE Employees "while performing HHS work at HHS facilities and on HHS systems," and DOGE Employees are required to "[c]omply with all rules, regulations, and restrictions of HHS." Rice Del., ECF No. 31-2 ¶ 7.

Existing agency procedures and documentation should substantially minimize any burdens on Defendants from responding to Plaintiffs' proposed Interrogatory No. 1. Moreover, since Plaintiffs seek information about Defendants' own declarations, Defendants have presumably already gathered much of the information that Plaintiffs now seek, in order to draft the declarations in the first instance.

Interrogatory No. 2 and its subparts are even less burdensome, only requiring Defendants to clarify basic aspects of DOGE's structure and processes.

Plaintiffs' seven proposed requests for the production of documents are similarly non-burdensome, and ask Defendants to produce discrete documentation referred to in the declarations they have already submitted in this case.

15

Finally, Plaintiffs requests for depositions pursuant to 30(b)(6) are not excessively burdensome. Plaintiffs are mindful of the Court's statement that "the discovery should be primarily—if not exclusively—written discovery," Order, ECF No. 43 at 2, and respectfully submit that they have tailored their deposition requests to make them as minimally burdensome as possible. Plaintiffs have limited the requested time for these depositions to half the permissible time limit under the Federal Rules, and simply seek one knowledgeable representative about each defendant to answer questions cabined to the narrow scope of Plaintiffs' existing interrogatories and document requests. Such limited depositions will serve the interests of judicial efficiency by advancing resolution of any factual issues left ambiguous following the production of written discovery.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court grant Plaintiffs' motion for expedited discovery and grant Plaintiffs leave to serve the attached proposed discovery requests upon Defendants.

Dated: February 19, 2025

        Respectfully submitted,

        */s/ Aman T. George*

        Mark B. Samburg (D.C. Bar No. 1018533)
        Aman T. George (D.C. Bar No. 1028446)
        Benjamin Seel (D.C. Bar No. 1035286)
        Rachel F. Homer (D.C. Bar No. 1045077)
        Robin F. Thurston (D.C. Bar No. 462679)
        Somil B. Trivedi (D.C. Bar No. 1617967)
        Skye L. Perryman (D.C. Bar No. 984573)

        DEMOCRACY FORWARD FOUNDATION
        P.O. Box 34553
        Washington, D.C. 20043
        Telephone: (202) 448-9090
        Fax: (202) 796-4426
        msamburg@democracyforward.org
        ageorge@democracyforward.org
        bseel@democracyforward.org
        rhomer@democracyforward.org
        rthurston@democracyforward.org
        strivedi@democracyforward.org
        sperryman@democracyforward.org

        *Counsel for Plaintiffs*