**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS, et al., | Case No. 1:25-cv-00339-JDB |
| Plaintiffs, | Judge John D. Bates |
| v. | |
| DEPARTMENT OF LABOR, et al., | |
| Defendants. | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR EXPEDITED
DISCOVERY**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

ARGUMENT .................................................................................................................. 5

I.     Plaintiffs' Requests Violate Procedural Norms ..................................................... 5

     A.    The Federal Rules of Civil Procedure, And This Court's Local Rules, Generally Prohibit Discovery Prior To A Rule 26(f) Conference. .......................... 5

     B.    Discovery Is Generally Not Permitted In APA Cases, Particularly Where The Administrative Record Has Not Been Served. ................................................ 6

II.    Plaintiffs Cannot Demonstrate That Expedited Discovery Is Warranted Here. ................. 7

     A.    Plaintiffs' Requests Run Far In Advance Of The Typical Discovery Process. ........................................................................................................... 8

     B.    No Request For Emergency Injunctive Relief Is Pending, And This Court Has Already Denied Two Such Requests.................................................... 11

     C.    Plaintiffs' Purposes For Seeking Expedited Discovery Do Not Align With Their Requests ...................................................................................... 12

     D.    Plaintiffs' Proposed Discovery is Incredibly Burdensome. .................................. 14

     E.    The Proposed Discovery Requests Are Inappropriate Because They Are Extremely Broad In Scope. ................................................................................. 17

III.   If The Court Is Inclined to Permit Discovery, The Scope Of Discovery Should Be Extremely Limited. ............................................................................................ 18

     A.    Discovery Should Be Limited To Jurisdictional Discovery.................................. 19

     B.    If The Court Is Inclined To Order Merits Discovery, It Should Be Limited To An Administrative Record. ............................................................................. 20

CONCLUSION.............................................................................................................. 22

## INTRODUCTION

The standard operating procedure in a challenge to decisions made by administrative agencies is well established.  After the defendants are served, and after they have had an opportunity to litigate threshold issues such as standing and reviewability, the defendants lodge an administrative record justifying their decision, and the Court evaluates whether those decisions comport with the Administrative Procedure Act ("APA").  On occasion, plaintiffs seek preliminary, emergency relief, but that consideration must still mirror the rules and standards that govern Plaintiffs' merits claims.  Discovery is not permitted at all in such cases unless narrow, circumscribed exceptions apply.  And *expedited* discovery, which is exceedingly rare even in civil litigation contexts where discovery more generally is the norm, is almost unheard of.

Yet that is precisely what Plaintiffs have proposed here.  Their Motion for Expedited Discovery, ECF No. 44 ("Mot."), seeks to leapfrog the normal course of litigation in an APA case (and in civil litigation more generally) to gather extensive discovery before the Court has had an opportunity to adjudicate whether it has jurisdiction to hear this dispute.  That alone is reason to deny the motion.  And close analysis of the factors under which courts in this district analyze motions for expedited, pre-answer discovery does Plaintiffs' request no favors.  Plaintiffs have already brought two unsuccessful motions for preliminary relief, and now seek discovery before they decide whether or not to file a third one.  This order of proceeding belies the urgency of Plaintiffs' request, and deprives Defendants of a full opportunity to object to the scope, purpose, and burden of Plaintiffs' proposed discovery.  Plaintiffs have also ignored the Court's admonition to propose discovery that is appropriately narrow in form and substance.  They seek to jam a full civil case's worth of discovery into a period of less than a month, including four highly burdensome Rule 30(b)(6) depositions.  With the limited exception of some of Plaintiffs' requests for documents, this discovery has no connection to the putative administrative record that Defendants

would lodge to justify their decision to permit certain of their employees to access their systems in order to carry out work specified by the President's Executive Order establishing the United State DOGE Service ("USDS"). The court should reject Plaintiffs' requests outright. At most, the Court should limit discovery to what is necessary to resolve Defendants' forthcoming motion to dismiss, or to materials that would be part of the putative administrative record. But it should not sanction Plaintiffs' unorthodox, burdensome, and unnecessary discovery proposal.

Accordingly, the Court should deny Plaintiffs' motion.

## BACKGROUND

Plaintiffs filed suit on February 5, 2025. Compl., ECF No. 1 ("Original Complaint"). The Original Complaint included seven causes of action directed solely against the Department of Labor ("DOL") and the USDS:[1] two advancing *ultra vires* claims (Counts One and Two) and four pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 706 (Counts Three through Seven). On the same day, Plaintiffs filed their Memorandum of Law in Support of Plaintiffs' Motion for a Temporary Restraining Order, ECF No. 2, and Motion for a Temporary Restraining Order, ECF No. 3 ("First TRO Mot."). The First TRO Motion sought an order enjoining DOL, among other things, "from granting DOGE-affiliated personnel access to Department of Labor systems or information, except as consistent with all applicable law, or otherwise allowing DOGE-affiliated personnel to take action in excess of statutory authority." First TRO Mot. at 1. The Court held a hearing on the Motion on February 7, 2025, and denied the Motion in an order entered later that day on standing grounds. *See* Order, ECF No. 18 ("Order Denying First TRO").

Plaintiffs subsequently amended their complaint on February 11, 2025, adding new plaintiffs as well as two new agency defendants, the Consumer Finance Protection Bureau

---

[1] The USDS is comprised of two entities: the U.S. DOGE Service and the U.S. DOGE Service Temporary Organization. For ease of reference, Defendants refer to both, combined, as USDS.

("CFPB") and Department of Health and Human Services ("HHS"), and their respective leaders. First Am. Compl., ECF No. 21 ("FAC"). The FAC raises an *ultra vires* claim, three APA claims, and a claim under the Privacy Act. *Id.* Plaintiffs then renewed their motion for a temporary restraining order on February 12, 2025. Mem. of Law in Support of Pls.' Renewed Mot. for a TRO, ECF No. 29-1 ("Second TRO Mot."). Plaintiffs sought an injunction that would, *inter alia*, "temporarily restrain[] Agency Defendants from providing DOGE personnel access to systems containing non-public information or the records contained therein." *Id.* at 42. The Court denied that Motion in an order dated February 14, 2025. ECF No. 34 ("Order Denying Second TRO").

With respect to both motions, Defendants made numerous threshold arguments as to the availability of relief in this case. First, Defendants argued that Plaintiffs lacked Article III standing, both in their own right and on behalf of their members. Defs.' First TRO Opp., ECF No. 16 at 6–10; Defs.' Second TRO Opp., ECF No. 31 at 7–15. Second, Defendants argued that Plaintiffs, are precluded from asserting violations of the Privacy Act through the APA because the Privacy Act provides an adequate, alternative remedial scheme that does not encompass the sort of broad, programmatic injunction against system access Plaintiffs seek in this case. Defs.' First TRO Opp. at 10–12; Defs.' Second TRO Opp. at 20–24. Third, Defendants argued that Plaintiffs have not demonstrated that providing access to government systems is a "final agency action" that is reviewable under the APA. Defs.' First TRO Opp. at 12–14; Defs.' Second TRO Opp. at 17–20.

Because Defendants have not yet had an opportunity to lodge a motion to dismiss, the Court has not had an opportunity to fully address these threshold issues. The Court's order denying the initial motion for a TRO agreed that Plaintiffs had failed to demonstrate Article III standing. Order Denying First TRO at 4–9. The Court's order denying the renewed motion for a TRO also agreed there was no standing because the issue was "intertwined" with the question of whether the

disclosures in question were lawful, and it assumed, without deciding, that "plaintiffs have a cause of action under the APA."  Order Denying Second TRO at 3 nn. 1–2.

Prior to providing Defendants and the Court time to brief and decide these threshold issues, Plaintiffs announced that they intended to submit a Motion for Expedited Discovery and an additional Motion for a Preliminary Injunction.  *See* Joint Statement by the Parties Concerning Scheduling in This Matter, ECF 42 at 1–4.  Defendants opposed this request and offered to file a motion to dismiss on an expedited basis to advance resolution of this matter.  *Id.* at 4–5.  The Court issued an order on February 19 setting a schedule for the briefing of this motion, Defendants' forthcoming motion to dismiss, and Plaintiffs' possible motion for a preliminary injunction motion all between February 19, 2025, and April 11, 2025.  *Id.*.  ECF No. 43.  The order contemplates an exceedingly narrow window of discovery, beginning February 28, and ending less than four weeks later on March 24.  *Id.*  It stressed that any discovery ordered would be "properly limited not only in duration, but in scope and form"; "focused on the factual issues it would help to resolve at this stage"; and take the shape of "primarily—if not exclusively—written discovery."  *Id.* at 2

Plaintiffs then submitted their Motion for Expedited Discovery on February 19, 2025. Mot., ECF No. 44.  The Motion seeks leave to propound (1) an interrogatory with eight subparts directed to each of the three agency Defendants, (2) an interrogatory with nine subparts directed at USDS; (3) seven requests for production of documents directed at both the USDS and the agency Defendants; and (4) four Rule 30(b)(6) depositions from representatives of the USDS and each of the agency Defendants.  Proposed Disc. Requests, ECF No. 44-2.

## ARGUMENT

**I.    Plaintiffs' Requests Violate Procedural Norms**

### A.  The Federal Rules of Civil Procedure, And This Court's Local Rules, Generally Prohibit Discovery Prior To A Rule 26(f) Conference.

Both the Federal Rules of Civil Procedure and the Local Rules of this Court provide that, absent unusual circumstances not present here, discovery should not proceed before the parties have conferred as required by Federal Rule of Civil Procedure 26(f).  The Federal Rules provide that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order."  Fed. R. Civ. P. 26(d)(1) (emphasis added).   Similarly, this Court's Local Rules mandate that "[e]xcept in categories of proceedings exempted from initial disclosure . . ., or when authorized under these rules or by order or agreement of the parties, a party may not seek discovery from any sources before the parties have conferred as required by Fed. R. Civ. P. 26(f)."  Local Civ. R. 26.2(a).

Plaintiffs' request for expedited discovery thus "arrives before this Court has held an initial scheduling conference with the parties pursuant to Federal Rule of Civil Procedure 16(b) and discussed the parameters of discovery."  *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 319 F. Supp. 3d 70, 101 (D.D.C. 2018).   "Generally such expedited discovery is not permissible, though the Court may grant an exception."  *Id.* at 102.  As explained below, Plaintiffs fail to justify an exception.

Moreover, the Court's Local Rules establish that civil cases in which "defendants have not yet answered" are exempt from "[t]he requirements of" Rule 26(f)."  Local Civ. R. 16.3(b).  Therefore, in this District, when the defendants have not yet answered, they are not required to participate in a Rule 26(f) conference and, accordingly, are not required to participate in discovery.

The Local Rules establish the sensible general rule that discovery should not proceed when a motion to dismiss is pending that could dispose of the case. *See Chavous v. D.C. Fin. Resp. & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2001) (citing the "eminently logical" principle that "discovery is generally considered inappropriate while a motion that would be thoroughly dispositive of the claims in the Complaint is pending") (citation omitted).

### B. Discovery Is Generally Not Permitted In APA Cases, Particularly Where The Administrative Record Has Not Been Served.

Discovery is also rare in APA cases. The Court must generally base its review in an APA case "on the full administrative record that was before the [agency] at the time [it] made its decision," not on a record generated by the parties through the discovery process. *Am. Bioscience, Inc. v. Thompson*, 243 F.3d 579, 582 (D.C. Cir. 2001) (second alteration in original) (quoting *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)). The only situations where courts in this Circuit permit discovery to supplement an administrative record certified by the agency are "when there has been a strong showing of bad faith or improper behavior or when the record is so bare that it prevents effective judicial review." *Com. Drapery Contractors, Inc. v. United States*, 133 F. 3d 1, 7 (D.C. Cir. 1998); *Off. of Foreign Assets Control v. Voices in Wilderness*, 382 F. Supp. 2d 54, 63 (D.D.C. 2005) (denying motion for discovery in an APA case). This exception assumes (1) that the Court has resolved the threshold question of whether the action is reviewable under the APA at all; (2) that the government has had an opportunity to lodge what it considers the administrative record to be with the Court and the plaintiffs; and (3) that the parties have had an opportunity to brief the issue of whether the record should be supplemented, by discovery or otherwise. This standard is, necessarily, a demanding one. Were it otherwise, "every challenge to administrative action would turn into a fishing expedition into the motives of the defendant agency." *Off. of Foreign Assets Control*, 382 F. Supp. 2d at 63.

## II.    Plaintiffs Cannot Demonstrate That Expedited Discovery Is Warranted Here.

Courts in this District examine motions for expedited discovery under a "reasonableness" standard. *See Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97–98 (D.D.C. 2014); *see also, e.g.*, *Pinson v. U.S. Dep't of Just.*, No. 18-cv-486 (RC), 2021 WL 3418954, at *4 (D.D.C. Aug. 5, 2021) (applying reasonableness test outlined in *Guttenberg*).[2]   Under this approach, courts primarily examine five factors, although the list of factors is not exhaustive: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Guttenberg*, 26 F. Supp. 3d at 98 (quoting *In re Fannie Mae Derivative Litig.*, 227 F.R.D. 142, 143 (D.D.C. 2005)).   Thus, expedited discovery, as Plaintiffs here request, is "not the norm[,]"and reserved for unique circumstances. *Id.* at 97.   For example, courts permit limited, expedited discovery when it is needed to determine the identities of Doe defendants. *See Attkisson v. Holder*, 113 F. Supp. 3d 156, 161 (D.D.C. 2015); *Landwehr v. F.D.I.C.*, 282 F.R.D. 1, 3 (D.D.C. 2010).

These factors weigh heavily against the expedited discovery Plaintiffs request.  Plaintiffs' requests come well in advance of when discovery would typically be available in civil litigation, in a context where discovery is rarely authorized, and before Defendants have been able to litigate any of their threshold defenses on the merits (factor 5).  There is no pending preliminary injunction motion after Plaintiffs have had not one, but two motions for emergency relief rejected, and Plaintiffs are under no obligation to move for a preliminary injunction once discovery is complete (factor 1).  The purpose of the discovery sought is also largely divorced from the actual relief

---

[2] The alternative test is one announced in *Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y. 1982).  *See Guttenberg*, 26 F. Supp. 3d at 97–98.  Plaintiffs have not, however, evoked this standard.  *See* Mot. at 9–10.  As such, Defendants similarly apply the reasonableness standard.

Plaintiffs seek in this case—a categorical prohibition on the ability of USDS employees to access any non-public systems at three federal agencies (factor 3). To the extent that Plaintiffs seek discovery that would not be part of a putative administrative record to challenge Defendants' provision of access to these employees, the scope of these requests far exceeds what would be proper (factor 2). Finally, the requests, and particularly Plaintiffs' request for four separate Rule 30(b)(6) depositions to take place in a manner of weeks, will place enormous burdens on Defendants, with no corresponding benefits to the resolution of the case (factor 4). Accordingly, the Court should deny Plaintiffs' motion.

### A. Plaintiffs' Requests Run Far In Advance Of The Typical Discovery Process.

*Guttenberg* explained that the "most important" consideration in the Court's reasonableness analysis was "the pendency of defendants' motion to dismiss." 26 F. Supp. 3d at 99; *see also True the Vote, Inc. v. Internal Revenue Serv.*, No. CV 13-734 (RBW), 2014 WL 4347197, at *8 (D.D.C. Aug. 7, 2014) (finding expedited discovery prior to resolution of motion to dismiss "premature."). Expediting discovery in the face of a dispositive motion drains resources, burdens the Defendants, and creates inefficiencies as it requires "expend[ing] significant resources responding to discovery requests in a case where plaintiffs did not have a viable cause of action." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) ("[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court.") (cleaned up)); *see also In re United States*, 583 U.S. 29, 32 (2017) (per curiam) (vacating and remanding to the district court with instructions to rule on the government's threshold arguments regarding jurisdiction and reviewability under the APA which "likely would eliminate the need for the District Court to examine a complete administrative record.").

Indeed, "[a]s courts in this district have repeatedly emphasized, 'discovery typically occurs after the resolution of motions to dismiss,' because 'requiring defendants to comply with an order for expedited discovery when the case may later be dismissed for failure to state a claim . . .'" is inefficient. *In re Quinteros*, No. 19-br-195 (SMT), 2021 WL 3674727, at *13 (D.D.C. Aug. 13, 2021), *aff'd sub nom. Matter of Quinteros*, No. 21-cv-7087, 2022 WL 3970927 (D.C. Cir. Sept. 1, 2022) (quoting *Attkisson*, 113 F. Supp. 3d at 165). Courts in this District have even denied motions to expedite discovery where no motion to dismiss was filed, but the Government—in an APA case—raised jurisdictional issues. *See Hemp Indus. Ass'n v. U.S. Drug Enf't Admin.*, No. CV 20-2921 (JEB), 2020 WL 12918344, at *2 (D.D.C. Dec. 15, 2020).

So too here. Defendants have already raised numerous threshold issues that do not turn on factual disputes which would resolve this case. In response to both of Plaintiffs' motions seeking a temporary restraining order, Defendants raised Article III standing, APA reviewability, and Privacy Act preclusion issues that, if resolved in Defendants' favor, would require dismissal of the claims upon which they seek expedited relief. All three of these arguments raise questions of law that can be resolved without fact discovery by Defendants. But under the Court's current schedule, Defendants—as well as Plaintiffs and the Court—must initiate discovery, resolve any discovery disputes, and brief a motion for a preliminary injunction, all while these threshold issues the parties have briefed multiple times remain unresolved.

These threshold, legal arguments for dismissal do not require any factual development. Defendants' principal standing argument is that whatever intangible injuries may arise from the disclosure of government information to officials who work for the President (as opposed to a data leak to those outside the government) and are performing work at agencies subject to the guidance and direction of their leadership, those injuries lack a "historical or common-law analog."

9

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 434 (2021) (quoting *Owner-Operator Indep. Drivers Assn., Inc. v. U.S. Dep't of Transp.*, 879 F.3d 339, 344 (D.C. Cir. 2018)). "Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* at 427. Even if one assumes, for purposes of the standing analysis, that the disclosures violated the Privacy Act, Congress cannot authorize a lawsuit by plaintiffs who lack an injury-in-fact in the first place. *Id.* at 428-29. To the extent that issue is "intertwined with the merits," as the Court has suggested, it does not rest on disputed factual questions necessary to address Defendants' standing arguments.

The same goes for Defendants' threshold APA arguments. The question of whether Plaintiffs can even leverage the APA to assert Privacy Act claims, when the Privacy Act explicitly provides for some forms of injunctive relief, but not the form Plaintiffs seek here is a pure question of law. The question of whether the provision of system access is the type of action that a court has jurisdiction to review under the APA is also a pure question of law. Courts have, on rare occasions, recognized that a district court may permit discovery to "ascertain the contours of the precise policy at issue" in an APA case. *Hispanic Affairs Proj. v. Acosta*, 901 F.3d 378, 388 (D.C. Cir. 2018). That type of discovery is irrelevant to the Defendants' Privacy Act preclusion arguments. It is also not applicable to Defendants' final agency action arguments because Plaintiffs have sought to challenge Defendants' actions at a level of generality where there are no contours to ascertain. Defendants wish to give certain employees access to systems at their agencies, in accordance with procedures they prescribe. Plaintiffs believe that is illegal, and have sought to stop those employees from having any "access to systems containing non-public information or the records contained therein." Second TRO Mot. at 42. Whether Plaintiffs can make that the

topic of judicial review via the APA is something the Court can, and should, decide before it authorizes highly irregular pre-answer discovery on an expedited basis.

### B. No Request For Emergency Injunctive Relief Is Pending, And This Court Has Already Denied Two Such Requests.

Plaintiffs concede *Guttenberg*'s first factor weighs against them, as there is no preliminary injunction motion pending. *See* Mot. at 10. This concession is significant. Requests for expedited discovery typically arise out of the need to support such a motion. *See, e.g.*, *Guttenberg*, 26 F. Supp. 3d at 97 ("Plaintiffs also move for expedited discovery so they can make a record to support their pending motion for a preliminary injunction"); *see also Ent. Tech. Corp. v. Walt Disney Imagineering*, No. CIV.A. 03-3546, 2003 WL 22519440, at *3 (E.D. Pa. Oct. 2, 2003); *Onan Corp. v. United States*, 476 F. Supp. 428, 434 (D. Minn. 1979).

Plaintiffs assert that they are similarly situated to a party moving for a preliminary injunction, arguing they require additional factual support to establish their irreparable injury. *See* Mot. at 1. But the difference between a party that has a motion pending, and one that does not, is actually significant for several reasons. First, a "demonstrated lack of urgency in seeking expedited discovery" weighs against permitting it. *See Guttenberg*, 26 F. Supp. 3d at 98. Plaintiffs did not seek this discovery before either of their two prior motions for emergency relief, so it is wrong, at this stage, to say that they have sought this discovery with any sort of urgency, even if they have done so in a short period of time in absolute terms. Second, this order of operations deprives Defendants of a full opportunity to effectively oppose the relief sought here. Without a pending motion, Defendants cannot effectively critique whether the information sought is for a purpose germane to Plaintiffs' request for emergency relief or how the scope aligns with the type of relief Plaintiffs seek. Plaintiffs should not be able to use expedited discovery to develop a preliminary injunction motion that will not be due until April, at which point Defendants will no

longer be able to object to whether the discovery was necessary to support, and properly tailored to, Plaintiffs' third motion for preliminary relief.

This Court rejected the concept of plaintiffs using expedited discovery as a way of building their case in *Hemp Industries Association* case, where businesses involved in the production and sale of hemp products filed for declaratory relief to determine whether two necessary byproducts constituted controlled substances under the Controlled Substances Act.  2020 WL 12918344. Plaintiffs sought expedited discovery to "whether there [was] a case or controversy."  *Id.* at *2. The Court rejected the approach, noting that the action subverted the APA as "any party, simply by filing a lawsuit and quickly propounding interrogatories, could force the agency to develop a policy position and support it with legal arguments."  *Id.*  So too here.  Plaintiffs have sought extensive and intrusive discovery before the Court has even determined it can even properly entertain the case, and without a pending request for injunctive relief.  The Court should conclude this factor weighs heavily against expedited discovery.

## C. Plaintiffs' Purposes For Seeking Expedited Discovery Do Not Align With Their Requests

Plaintiffs' motion repeatedly claims the facts they seek to discover "are critical to assessing [their] irreparable injuries," because such "injuries depend[] on the scope of any disclosures by Defendant agencies of sensitive material stored on their systems." Mot. at 1.   But assessing the mere "scope" of Defendants' access is not a legitimate basis for the departure from procedural norms Plaintiffs propose here.  For starters, Plaintiffs have twice failed to make even the threshold showing of Article III standing, much less irreparable harm, and discovery on that topic is premature until the Court concludes there is jurisdiction to hear this matter.  Second, the relief Plaintiffs seek, which should track the harms they seek to remedy, does not concern issues at the level of granularity at which they seek discovery.  Plaintiffs could have sought to enjoin access to,

or certain uses of, a handful of systems of concern to their members. They instead chose to seek a prohibition on all "non-public" system access, even if the employees are authorized to work on the systems by Defendants, as they indisputably have been here. If, as Plaintiffs aver, any system access by any USDS employee is an irreparable harm to Plaintiffs' members that the Court must enjoin before it occurs, expedited discovery is not necessary to show that harm.

Defendants acknowledge that the Court has indicated "properly-limited" expedited discovery would be beneficial to elucidating issues of standing, likelihood of success on the merits, and irreparable harm. Order, ECF No. 43 at 1. That statement must be read consistent with this Court's precedents. Expedited discovery that seeks "relatively broad discovery on issues going to the merits of the case" that is not "narrowly tailored to reveal information related to the preliminary injunction" should not be authorized. *Guttenberg*, 26 F. Supp. 3d at 98; *see also Legal Tech. Grp., Inc. v. Mukerji*, No. 17-cv-631 (RBW), 2017 WL 7279398, at *3 (D.D.C. June 5, 2017); *Attkisson*, 113 F. Supp. 3d at 162. This authority should be even more tightly circumscribed in an APA case, where review is cabined by the administrative record and any discovery is disfavored. The cases Plaintiffs rely upon only stand for the proposition that Courts are "free to exercise [their] discretion" to permit discovery to "ascertain the contours of the precise policy at issue," Mot. at 11 (quoting *Hispanic Affairs Project v. Acosta*, 901 F.3d 378, 388 (D.C. Cir. 2018)), and, as noted above, there is no genuine confusion here as to what "policy" Plaintiffs seek to enjoin.

The discovery Plaintiffs seek here fails to accord with the Court's standards. For example, Plaintiffs seek information related to the merits and seeming propriety of granting informational access to USDS detailees to the agencies. *See, e.g.*, Pls. [Proposed] Interrogs. And Requests for Production of Documents, ECF No. 44-2 at 3 ("Pls.' Proposed Expedited Discovery") (Interrogatories 1(d) and 1(e)). They also advance topics seemingly unrelated to either the decision

to grant access to individual detailees or their irreparable injury. *See, e.g.*, *id* at 3–4 (seeking information of USDS's leadership and structure, software usage, information systems for which Detailees have been denied access, which agencies USDS intends to detail employees to in the future, etc.). The breadth of these requests belies Plaintiffs' contention that they seek only limited, expedited discovery for permissible purposes recognized by the caselaw. Instead, their expedited discovery motion is an attempt to short-circuit the normal path of civil litigation and reach the merits of the case before the court can address Defendants' threshold arguments.

### D. Plaintiffs' Proposed Discovery is Incredibly Burdensome.

In its scheduling order, the Court repeatedly admonished Plaintiffs that any discovery authorized must be "expedited, targeted, and limited." Sched. Order at 2. The Court also emphasized that, "[i]n terms of form, the discovery should be primarily—if not exclusively—written discovery." *Id.* Those admonitions were reflected in the schedule the Court established. Expedited discovery, if authorized, is to begin on February 28, and conclude on March 24, a period of slightly less than a month. *Id.* at 3. Plaintiffs' proposed discovery, which seeks four Rule 30(b)(6) depositions in addition to written discovery, pays little heed to the Court's guidance.

Start with the request for depositions, which the Court should reject in full. Unlike standard fact depositions, Rule 30(b)(6) depositions "can impose considerable burdens on the opposing party" because preparation of the witness "extends to all information reasonably available to the responding organization." 8A Charles Alan Wright et. al., Federal Practice and Procedure § 2103 (3d ed.). It is therefore "considerably more challenging" to prepare individuals to testify in response to a Rule 30(b)(6) notice than an ordinary deposition. *Id.* The burden of preparing representatives to give not one, but four such depositions, and to provide the necessary written discovery that would precede such depositions, in less than a month, would alone create an enormous burden on Defendants that is inconsistent with the Court's order.

Such a burden is also completely unnecessary. Depositions given by agency officials fall well outside the administrative record that the Court is supposed to review in adjudicating the merits of this dispute (assuming there is a final agency action at all). Even if such extra-record inquiries were permissible and directed at proper topics (and Defendants do not concede that they are), the proposed topics are either already addressed, or can be addressed, through less burdensome forms of written discovery, as the Court contemplated. Indeed, "[w]hen the proposed deposition topics are complex and highly technical, or involve legal issues that require the assistance of an attorney"—such as the topics Plaintiffs propose about Defendants' system access policies, organizational structure, and system usage—"the interrogatory is the preferred device" for obtaining discovery. *Memory Integrity, LLC v. Intel Corp.*, 308 F.R.D. 656, 661 (D. Ore. 2015).

On this point, Plaintiffs' sole caselaw support is easily distinguishable. Plaintiffs cite *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Pompeo*, No. 18-CV-01388 (TSC), 2019 WL 9598404 (D.D.C. Jan. 30, 2019), for the proposition that the "court lacks a basis to find the burden of discovery any different from the typical burden of an expedited discovery request." Mot. at 13. But squeezing four Rule 30(b)(6) depositions into a one-month timeframe is certainly a burden above the "typical burden of expedited discovery," as Plaintiffs have come forward with no cases permitting depositions pursuant to a motion for expedited discovery. Indeed, *Afghan & Iraqi Allies* actually hurts Plaintiffs' claims as (1) the defendants in that case had offered no explanation as to the burdens of the proposed discovery, 2019 WL 9598404 at *2, where, here, Defendants do, and (2) the Court in *Afghan & Iraqi Allies* had already ruled on a motion to dismiss, *id.* at * 1. The other two cases mentioned in this section of Plaintiffs' brief both denied plaintiffs' motions for expedited discovery due, in part, to the burden on the defendants. *See Landwehr*, 282 F.R.D. at 4; *Attkisson,* 113 F. Supp. 3d at 165.

Plaintiffs' written discovery requests also impose significant burdens. Through their interrogatories and requests for documents, they seek hiring and onboarding documentation, training information, permissions, accesses, daily usage, reporting structures, and conflicts and financial disclosures for an untold number of employees, including potentially for employees not employed at the agency Defendants in this case. *See* Pls.' Proposed Expedited Discovery at 3 (seeking "a complete list of the federal agencies in which the DOGE Employees are or have been detailed."). Plaintiffs are, effectively, seeking a full civil case's worth of discovery in less than a month. This is best illustrated by Plaintiffs' proposed interrogatories. The burden of responding to interrogatories is substantial because interrogatory responses, unlike documents, are not plausibly a part of the contemporaneous administrative record that should cabin this Court's decision in an APA case, and therefore lack even potential overlap with the issues the Court must eventually decide. Plaintiffs Interrogatory 1, with eight subparts alone, would have to be answered by each of the agency Defendants in this case. Combined with the eight-subpart interrogatory Plaintiffs seek to lodge against USDS itself, Defendants would be responsible for answering 32 interrogatories on an accelerated timeline under Plaintiffs' proposal, which is seven more than the Federal Rules of Civil Procedure would allow to be lodged against a single party across an entire civil case. Fed. R. Civ. P. 33(a)(1).

Courts in this District have found the sort of expedited discovery Plaintiffs propose to be "highly burdensome." *Landwehr*, 282 F.R.D. at 4 (noting that Plaintiffs' proposed discovery would include "serv[ing] discovery and receiv[ing] responses; meet[ing]-and-confer[ring] regarding any deficient responses and fil[ing] any resulting discovery motions; [and] coordinat[ing] depositions of former high-level executives (with, presumably, very busy schedules) . . ..."). And as explained above, this expedited discovery is not needed to resolve this

case.  As noted previously, this is an APA case, and APA cases are limited to the administrative record.  *See* 5 U.S.C. § 706.  While Defendants strongly contend that this case is not reviewable under the APA, to the extent that Plaintiffs claim there is an agency action, it is allegedly the act of granting certain government employees access to certain government information systems.  *See* FAC ¶¶ 239 (DOL DOGE Access Policy); 251 (CFPB DOGE Access Policy); 258 (HHS DOGE Access Policy).  The D.C. Circuit has previously held, for example, that the District Court does not err in refusing to compel production of the administrative record before deciding motion to dismiss, where the administrative record is not necessary to resolve the claims at hand.  *See Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 271 F.3d 262, 266-67 (D.C. Cir. 2001).  As courts in this District have noted, defendant agencies in APA cases need not be compelled to produce discovery prior to the Court resolving threshold issues on a motion to dismiss.  *Colorado Wild Horse & Burro Coal., Inc. v. Kempthorne*, 527 F. Supp. 2d 3 (D.D.C. 2007) (rejecting motion for discovery in face of motion to dismiss where Plaintiffs failed to show final agency action and cognizable AP A claim).

As such, the Court should not order expedited discovery where discovery is not needed to resolve Defendants' forthcoming motion, especially where Plaintiffs have proposed such burdensome discovery.

### E.  The Proposed Discovery Requests Are Inappropriate Because They Are Extremely Broad In Scope.

Courts disfavor broad expedited discovery, especially discovery requests that cut to the merits of a plaintiff's case.  *Guttenberg*, 26 F. Supp. 3d at 98; *see also True the Vote*, 2014 WL 4347197, at *7.  As outlined above, the breadth of Plaintiffs' request does not fit their stated purpose or, indeed, any permissible purpose.  Further, to the extent that Plaintiffs attempt to rely on caselaw for the proposition that they may seek materials outside of what would constitute the

administrative record to determine the scope of the administrative record, their reliance is misplaced. Mot. at 11. For example, Plaintiffs rely on *Hispanic Affairs Project v. Acosta* for the proposition that a district court may "exercise its discretion to permit further discovery 'to ascertain the contours of the precise policy at issue.'" 901 F.3d 378, 388 (D.C. Cir. 2018) (quoting *Venetian Casino Resort, L.L.C. v. E.E.O.C.*, 409 F.3d 359, 367 (D.C. Cir. 2005)). In both of those cases, however, the question was whether there was an agency action or policy, or what exactly that policy or action was. For example, in *Hispanic Affairs Project* the Court sought to determine whether the Department of Homeland Security's pattern and practice amounted to an agency policy of automatically extending H-2A visas beyond the regulatory definition of temporary employment. Factual determination was necessary to discovery the bounds of the pattern and practice. *Id.* at 388. In *Venetian Casino Resort*, the question surrounded what the exact contours of the EEOC's policies were, based on various litigating positions. 409 F.3d at 360.

Here, it is clear what Plaintiffs allege is the final agency action: the granting of access to informational systems to USDS detailees. *See* FAC ¶¶ 239, 251, 258. The question of whether this constitutes a reviewable final agency action is a legal question. No factual development is necessary to determine that question. Thus, expedited discovery beyond the scope of the Administrative Record is especially unwarranted.

## III.    If The Court Is Inclined to Permit Discovery, The Scope Of Discovery Should Be Extremely Limited.

Based on the foregoing, Defendants respectfully request that the Court deny Plaintiffs' motion for expedited discovery. Doing so aligns with the standard course of litigation, resolving threshold issues—and potentially the entire matter—before the burdensome and inefficient expenditure of resources on non-viable claims. But if the Court is inclined to authorize some further factual development, it should impose strict limits on that discovery. One way it could do

so is by limiting Plaintiffs to jurisdictional discovery. Because the Court must resolve its jurisdiction before it reaches any merits issues, it should not authorize any discovery beyond what is necessary to ascertain its ability to hear this case. Such discovery should only be ordered, if necessary, after the parties have briefed Defendants' motion to dismiss. Alternatively, if the Court concludes discovery beyond jurisdictional matters is necessary, it should limit Defendants to making available those documents that would likely be contained in an administrative record of Defendants' decision to provide system access to employees of USDS. (Again, Defendants do not concede at this stage that Plaintiffs have alleged the existence of a reviewable final agency action.) Both of these more limited approaches would be more compatible with the law, and with overarching principles about civil discovery and practice under the APA, than Plaintiffs' blunderbuss approach.

**A. Discovery Should Be Limited To Jurisdictional Discovery.**

Courts occasionally permit a plaintiff to take discovery to establish the Court's jurisdiction over a particular case when there is a strong showing of good cause for the request. *See, e.g.*, *Malibu Media, LLC v. Doe*, 64 F. Supp. 3d 47, 48-49 (D.D.C. 2014) (permitting plaintiff to take discovery to establish the existence of personal jurisdiction and ascertaining the true identity of a group of "Doe" defendants). "Mere conjecture or speculation" is an insufficient basis for such a request. *Id.* (quotation omitted). As explained above, Defendants' threshold jurisdictional defenses are legal, not factual, in nature, and no factual development is necessary to rule in Defendants' favor on those questions. Nonetheless, to the extent the Court concludes that its jurisdiction over this matter is intertwined with issues of fact, it could limit discovery to what is necessary to resolve those threshold disputes. Such a decision would be best reserved until after the parties brief a motion to dismiss, at which point the presence or absence of any such disputed questions would become apparent, and any necessary discovery could be precisely targeted to

answering such question.  To facilitate this path, the Court should deny Plaintiffs' motion, without prejudice, and give them leave to raise the issue again after the completion of briefing on the motion to dismiss.

### B. If The Court Is Inclined To Order Merits Discovery, It Should Be Limited To An Administrative Record.

Alternatively, if the Court believes factual issues other than jurisdiction should be developed before Plaintiffs file their motion for a preliminary injunction, the Court should conform its relief to what it would typically consider in an APA case seeking review of agency action.  While there is some vagueness about the contours of precisely what Plaintiffs are challenging in this case, the alleged agency action Plaintiff are challenging is clear enough: Plaintiffs contest the legality of Defendants' decision to provide USDS employees with access to non-public systems and accordingly seek to prevent "Agency Defendants from providing DOGE personnel access to systems containing non-public information or the records contained therein."  Second TRO Mot. 42. Plaintiffs other concerns about USDS personnel—such as software being used on these systems, or how data is being used post-access—are all downstream of the access-provision decision that they actually seek to enjoin.  Defendants reiterate that provision of access, on its own, is not the sort of action that meets two-pronged test for final agency action set forth in *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997).  But to the extent the Court wished to review this provision-of-access decision, it could instruct Defendants to submit and certify, by a date certain, an "administrative record" supporting this decision that would contain:

(1)    Any documents setting forth the terms of employment by individuals employed by USDS and working at one of the three defendant agencies, *e.g.*, the agreements that "govern the details" of CFPB employees described at Martinez Decl. ¶ 8, the detail agreements described at Rice Decl. ¶ 7, the MOU described at Rice Decl. ¶ 8.

(2)    Any documents setting forth the terms by which those employed with USDS and working at one of the three defendant agencies can access either

general agency IT assets or specific records systems, to the extent not already captured by (1), *e.g.*, the agreement a CFPB detailee signed to gain access "to human capital, finance, and procurement systems containing CFPB data" described at Martinez Decl. ¶ 7, any signed authorizations to access CFPB systems described at Martinez Decl. ¶ 9; and any "request to access DOL Information Systems" executed by DOL as described in the Kryger Decl. ¶¶ 9-10.

(3)    Any general policy guidance promulgated by DOL, HHS, and CFPB on access to confidential / internal agency systems that agency employees must adhere to, and would be understood as being incorporated into the employment agreements of all employees.

(4)    Any publicly available documents that describe the structure and purpose of USDS, *e.g.*, Executive Order No. 14,158.

This approach would encompass much of what Plaintiffs' proposed requests for production seek, as those requests, by and large, track documents the declarants referred to in their declarations. It would also have the merit of tracking what a Court is actually permitted to consider in an APA case: "the agency's contemporaneous explanation" of its decision "in light of the existing administrative record." *Dep't of Com. v. New York*, 588 U.S. 752, 780 (2019). Such limitations are especially appropriate here, where Plaintiffs have embraced the APA as a way of evading the Privacy Act's limitations on injunctive relief. Having sought the APA's advantages, Plaintiffs must accept its limitations, too. Depositions and interrogatory responses, even if hypothetically relevant in a Federal Rule of Civil Procedure 23(b) sense, have no place in APA review, as "the focal point for judicial review [in an APA case] should be the administrative record *already in existence*, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 143 (1973) (emphasis added).

Defendants reiterate that the proper course for the Court here is denial of Plaintiffs' motion. But should it permit some record development prior to entertaining Plaintiffs' preliminary injunction motion, limitations of the sort spelled out above would be far more consistent with the procedural posture of this litigation and the nature of Plaintiffs' claims.

## CONCLUSION

For all the foregoing reasons, the Court should deny Plaintiffs' Motion for Expedited

Discovery.

Dated: February 24, 2025.                    Respectfully submitted,

ERIC HAMILTON
Deputy Assistant Attorney General
Civil Division

MARCIA BERMAN
Assistant Branch Director
Civil Division, Federal Programs Branch

*/s/Michael J. Gerardi*
Michael J. Gerardi
Senior Trial Counsel (DC Bar No. 1017949)
Benjamin S. Kurland
Trial Attorney (D.C. Bar No. 1617521)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Tel: (202) 616-0680
Fax: (202) 616-8460
E-mail: Michael.J.Gerardi@usdoj.gov

*Counsel for Defendants*