## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AFL-CIO, et al.,

    *Plaintiffs*,

  *vs.*        Case No. 1:25-cv-00339-JDB

U.S. DEPARTMENT OF LABOR, et al.,

    *Defendants*.

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR EXPEDITED DISCOVERY

Plaintiffs in this case challenge Defendants' policies granting DOGE staff unfettered access to sensitive data stored on their systems. Plaintiffs contend that this access violates a number of laws and amounts to widespread unlawful disclosure of sensitive information.

Consistent with this Court's February 19 Order, Plaintiffs intend to move in short order for a preliminary injunction to halt this access. But Defendants have argued previously, and will almost certainly argue again, that no unlawful disclosures have taken place that could harm Plaintiffs. And Defendants have introduced evidence intended to support their contention that no such disclosures are or could be taking place. But the record remains unclear as to two questions that are necessary to assessing any harms occurring from unlawful disclosures: What is DOGE? And what access to sensitive systems have Defendants granted them?

Expedited discovery is appropriate to build a record to facilitate resolution of these factual disputes in the Court's assessment of the forthcoming motion for a preliminary injunction. Granting expedited discovery now, as sought by the Plaintiffs, is in the interests of judicial economy, consistent with the urgency of Plaintiffs' claims, and necessary to enable judicial review. And the narrow discovery requests proposed by Plaintiffs seek only to resolve

factual disputes that are necessary for assessing a forthcoming preliminary injunction motion. Defendants' objections to Plaintiffs' proposals are untethered from the purpose of discovery, and would frustrate judicial review of the core issues in this case.

**I.      Discovery is appropriate at this stage of this case.**

Plaintiffs' motion for limited expedited discovery comes after this Court has already reviewed six dispositive briefs and held two hearings to consider the parties' jurisdictional and merits arguments. Discovery is appropriate at this stage to assist the Court in evaluating a forthcoming preliminary injunction motion, and will promote judicial economy.

Defendants are critical of Plaintiffs' seeking "to use expedited discovery to develop a preliminary injunction motion" that is not yet before the Court. Defs.' Opp'n to Mot. Expedited Disc. 11, ECF No. 45. But the primary purpose of expedited discovery is to develop a factual record to assist in considering a preliminary injunction motion. *See*, *e.g.*, *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97-98 (D.D.C. 2014) (noting that expedited discovery permits plaintiffs to "flesh[] out a preliminary injunction motion" and evaluating whether discovery requests are "narrowly tailored to reveal information related to the preliminary injunction"); *see also Legal Tech. Group, Inc. v. Mukerji*, No. 17-cv-631, 2017 WL 7279398, at *3 (D.D.C. June 5, 2017) (finding that a motion for expedited discovery prior to filing a motion for a preliminary injunction weighed in favor of granting the motion, because "the very purpose of [Plaintiff's] motion for expedited discovery is to support its anticipated motion for a preliminary injunction").

To the extent that Defendants' concerns are about the timing rather than the purpose of Plaintiffs' motion, Plaintiffs concede that they have not yet filed a motion for a preliminary injunction. Pursuant to this Court's February 19 Order, ECF No. 43, Plaintiffs intend to file that motion on April 1. But under the unique circumstances of this case, it is appropriate for this Court to exercise its discretion to arrange discovery as it did in last week's order.

In a typical expedited discovery case, the parties would file briefs on a preliminary injunction, after which the court would rule on a motion for expedited discovery, then, if granted, seek supplemental preliminary injunction briefs from the parties after discovery is complete. *See*, *e.g.*, *Afghan and Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Pompeo*, No. 18-cv-01388 (D.D.C.) (ECF Nos. 34, 32, 44 (Plaintiffs' motion for a preliminary injunction, Defendants' response, Plaintiffs' reply); ECF No. 49 (Order granting expedited discovery); ECF Nos. 68, 70, 71 (post-discovery supplemental briefing, response, and reply on motion for preliminary injunction)).

Such an extended briefing schedule may be necessary when a court requires preliminary injunction briefing to be able to assess the need for, and relevance of, potential expedited discovery. But given this Court's familiarity with the record and legal issues at issue, it is well-positioned to consider Plaintiffs' expedited discovery motion now, only ordering one set of preliminary injunction briefs that can incorporate a more developed record. The alternative—ordering the parties to brief a preliminary injunction motion that would be largely duplicative of previous briefing before considering any motion for expedited discovery—would not promote judicial economy.[1]

Finally, Defendants object to discovery prior to a motion to dismiss. *See* ECF No. 45 at 8-11. As described above, the unique procedural history of this case weighs in favor of allowing expedited discovery to proceed rather than be delayed by a motion to dismiss. And while a pending or forthcoming motion to dismiss may be one factor that weighs against granting expedited briefing, it is not dispositive. *See*, *e.g.*, *Garnett v. Zeilinger*, No. 17-cv-01757, 2017

---

[1] Such a schedule would also delay the availability of relief to Plaintiffs, contrary to Defendants' assertion that "[t]his order of proceeding belies the urgency of Plaintiffs' request." ECF No. 45 at 1.

WL 8944640, at *2-3 (D.D.C. Dec. 15, 2017) (granting expedited discovery despite the early

stage of the case "weigh[ing] against granting Plaintiffs' request" because the early stage was

"outweighed" by the other considerations. Defendants' Motion to Dismiss was later filed on July

17, 2018, ECF No. 71); *see also Strategic Analysis, Inc. v. U.S. Dep't of Navy*, No. 96-cv-0300,

1996 WL 294262, at *1-2 (D.D.C. May 29, 1996) (granting expedited discovery in an APA case,

prior to Defendants' June 26, 1996 Motion to Dismiss, ECF No. 33).

**II.    Plaintiffs' discovery requests are appropriate.**

   A.    <u>Plaintiffs' requests are narrowly tailored to issues necessary to resolve its
         forthcoming preliminary injunction motion.</u>

Plaintiffs allege that Defendants' grant of universal access to all systems of records to

DOGE constitutes a disclosure of Plaintiffs' sensitive information that irreparably harms them.

As detailed in Plaintiffs' original motion, *see* Pls.' Mot. Expedited Disc. 4-9, ECF No. 44,

Defendants argue that Plaintiffs cannot show irreparable harm for a variety of reasons, each of

which speaks to the need for further factual development.

Defendants argue that Plaintiffs have not adequately specified deficiencies in the

agencies' access protocols. *See* ECF No. 31 at 11. But these protocols are only attested to by

cursory declarations from the agencies, that contain inconsistencies and appear to be drafted by

individuals who lack firsthand knowledge of DOGE's actual work at Defendant Agencies. *See*

ECF No. 44 at 5-7.

Defendants argue that Plaintiffs have not identified a final agency action that could be

causing them harm. *See* ECF No. 31 at 17-20. But Defendants' declarations appear to identify

new policies in places to account for DOGE systems access. *See* ECF No. 44 at 4-5.

Finally, Defendants argue that Plaintiffs cannot be injured by legal, intragovernmental

disclosure of sensitive records. *See* ECF No. 31 at 10-11, 24-27 But the structure and nature of

DOGE are opaque and seemingly constantly shifting, and this Court has noted the need for further development about the legality of DOGE's detail arrangements. *See* Order Denying Temporary Restraining Order, ECF No. 34 at 8.

Ultimately, Defendants' arguments that Plaintiffs have not shown irreparable injury turn on two questions: (1) What is DOGE? And (2) What actual access have Defendants granted them? Plaintiffs' discovery is narrowly tailored to answering those questions before this Court rules on a preliminary injunction motion. The two multi-part interrogatories proposed by Plaintiffs are structured to clarify answers to those two questions, and the proposed depositions under Federal Rule of Civil Procedure 30(b)(6) closely follow those interrogatories. Finally, the proposed requests for document production narrowly target discrete documents relevant to those two questions that Defendants have already identified as existing at one or more agencies.

B.    Discovery extending beyond a hypothetical administrative record is permissible.

Defendants argue that discovery should be limited to material that would be "plausibly a part of the contemporaneous administrative record." *See* ECF No. 45 at 16. But, as Plaintiffs previously explained, courts have repeatedly found that in cases challenging unannounced and unacknowledged agency policy changes an "administrative record" is likely to be inadequate to enable judicial review. *See* ECF No. 44 at 11 (collecting cases).

While discovery in APA cases is the exception rather than the rule, its core purpose is to develop the factual record before the court in situations where the administrative record is "so bare that it prevents effective judicial review." *Commercial Drapery Contractors, Inc. v. U.S.*, 133 F.3d 1, 7 (D.C. Cir. 1998) (internal citations and quotations omitted). The touchstone of discovery in APA cases is facilitating effective judicial review, not simply replicating the administrative record. Defendants' attempts to tightly circumscribe discovery within its narrow conception of the administrative record ignores the purpose of discovery in APA litigation.

Courts have applied this principle even in the context of expedited discovery, for example where expedited discovery could "shed light on the completeness of the record before the agency and assist the Court in assessing the rationality of the agencies reliance on the facts that were before it," *Strategic Analysis, Inc*, 1996 WL 294262, at *2.

In another case challenging an unannounced policy, a court found expedited discovery appropriate precisely because the record would not suffice for review. *Neema v. Renaud*, No. 5:21-cv-9, 2021 WL 6803282 at *2 (D. Vt. Mar. 4, 2021). The court rejected Defendants' attempts to limit discovery beyond the administrative record, noting that the administrative record "of each plaintiff's application will not bring the parties any closer to the questions actually at issue in this case and in similar filings.". *Id.* Here, too, discovery that clarifies the facts this Court needs to rule on a preliminary injunction motion will promote efficient resolution of the case.

      C.    <u>Plaintiffs' discovery requests are not unduly burdensome.</u>

Defendants argue that Plaintiffs' proposed discovery requests amount to seeking "hiring and onboarding documentation, training information, permissions, accesses, daily usage, reporting structures, and conflicts and financial disclosures for an untold number of employees, including potentially for employees not employed at the agency Defendants in this case." ECF No. 45 at 16.

These objections are either confusing or unavailing. Defendants claim that Plaintiffs seek information about an "untold number of employees," but as Plaintiffs noted in their opening motion, Defendants have identified only five DOGE employees detailed to Defendant Agencies. ECF No. 44 at 14.

Defendants also object to a request for information about "employees not employed at the agency Defendants in this case," but Interrogatory No. 1 limits itself to DOGE Employees with

access (past, present, or pending) to systems at Defendant Agencies, and Defendants have taken the position that all DOGE employees with systems access are employees of Defendant Agencies. Defs.' Resp. Br. to Renewed Mot. for TRO 25, ECF No. 31. There is no reason that gathering the requested information should be unduly burdensome.

To the extent that Defendants' underlying concern is that the true number of DOGE Employees with systems access may be larger than what they previously represented (or "untold", as they say), ECF No. 44 at 14, Plaintiffs believe any additional burden is amply justified. Perhaps more than the five DOGE employees identified in the declarations actually have access to Defendant Agencies' systems, or perhaps large numbers of DOGE Employees are rapidly rotating in and out of Defendant Agencies (or serving at multiple agencies concurrently). Either way, developing those facts will help this Court understand how Defendants are categorizing individuals as "employees" to whom Agency records may be disclosed without harm.

Further, Defendants' objections to the scope of Plaintiffs' interrogatories mischaracterize some of Plaintiffs' requests. Plaintiffs requests do not include "daily usage" or "conflicts and financial disclosures" for all DOGE employees. Plaintiffs requests do seek a "summary of the actual usage" of sensitive systems by DOGE staff, but that does not amount to a log of daily usage. *See* ECF No. 44-2 at 3. Similarly, Plaintiffs' requests do not on their face call for any "conflicts and financial disclosures" from DOGE staff.[2]

---

[2] Plaintiffs concede that it is possible that such materials could be included in "certifications . . . signed by DOGE Employees or their supervisors in order to grant them access to Sensitive Systems," ECF No. 44-2 at 5, but at this stage Plaintiffs are not in a position to state whether Defendants have required such disclosures in order to grant DOGE Employees access to sensitive systems.

Finally, Defendants oppose Plaintiffs' request for depositions. Defendants state that "Plaintiffs have come forward with no cases permitting depositions pursuant to a motion for expedited discovery." ECF No. 45 at 15. But Plaintiffs cited *Afghan & Iraqi Allies* in its original motion, noting that that case permitted 30(b)(6) depositions as part of expedited discovery. *See* ECF No. 44 at 13-14, citing 2019 WL 9598404 at *2-3. Other cases have also permitted depositions during expedited discovery in APA litigation. *See*, *e.g.*, *Strategic Analysis*, 1996 WL 294262 at *2; *Neema*, 2021 WL 6803282 at *2. In any event, a decision to permit depositions at this stage is well within the Court's authority. Permitting limited, tailored 30(b)(6) depositions should resolve questions raised or left outstanding by the document discovery requested by Plaintiffs, promoting efficiency in advancing this litigation.

D.    Defendants' counterproposals would not enable judicial review.

Defendants' counterproposal—a narrow production of the documents that they would consider part of an "administrative record" in this case, ECF No. 45 at 20-21—does not meet the need identified by the Court for expedited discovery in this matter.

As described above, APA discovery explicitly serves a purpose that is different from simply mirroring the administrative record. Defendants have not pointed to any caselaw to support their contention that discovery must be limited to an administrative record. Courts may order discovery in APA cases when the administrative record is "so bare that it prevents effective judicial review." *Commercial Drapery Contractors, Inc.,* 133 F.3d at 7 (internal citations and quotations omitted). In such cases, limiting discovery to an administrative record as Defendants suggest would be self-defeating.

Defendants' counterproposal does not make any mention of the need to facilitate judicial review, does not consider where the existing record is inadequate, or grapple with the open factual and legal disputes necessary to evaluating the need for preliminary relief. Their limited

8

proposed document productions would not shed any light on "whether individuals not permitted under the Privacy Act to view personal information are viewing or will view that information." ECF No. 43 at 2.

And despite this Court's acknowledgement that the existing record obscures the nature of DOGE and its ability (or lack thereof) to detail employees to access agencies' data, *see* ECF No. 34 at 8, Defendants brush aside the need for clarity. They simply offer to produce "publicly available documents that describe the structure and purpose of USDS," without acknowledging that information that has been publicly available to date entirely frustrates judicial review.[3]

As described above and in Plaintiffs' original motion, judicial review of Plaintiffs' claims for preliminary relief turns in large part on the nature and scope of any ongoing disclosures of sensitive information from Defendant Agencies' systems. Defendants' counterproposals are not reasonably crafted to facilitate that review.

---

[3] As an example, in recent days, the White House has provided three separate answers as to who the leader of DOGE is; first saying simply that it is not Elon Musk, then saying that it is Mr. Musk, and yesterday stating that the Acting DOGE Administrator is Amy Gleason, while reiterating that Mr. Musk is "overseeing" DOGE. *See* Declaration of Joshua Fisher, *State of New Mexico v. Elon Musk*, 1:25-cv-00429, ECF No. 24-1 (D.D.C. Feb. 17, 2025) (stating that Mr. Musk is not the head of DOGE); Anna Bower (@AnnaBower), X (Feb. 19, 2025, 6:13 PM EST), https://x.com/AnnaBower/status/1892351833630212494 (video clip of President Trump saying Mr. Musk is in charge of DOGE); Nicholas Nehemas et al., *A Mystery Solved: Amy Gleason, a Former Health Care Executive, Is Running DOGE*, N.Y. Times (Feb. 25, 2025), https://www.nytimes.com/2025/02/25/us/politics/amy-gleason-doge-administrator.html (noting that Ms. Gleason has been announced as the acting DOGE Administrator); Roger Sollenberger (@SollenbergerRC), X (Feb. 25, 2025, 1:55 PM EST), https://x.com/SollenbergerRC/status/1894461219072827743 (video clip of White House Press Secretary stating that Mr. Musk is "overseeing" DOGE).

News reporting has suggested that Ms. Gleason was unaware of this announcement. *See* Nehemas et al. ("Ms. Gleason . . . was scheduled to be on vacation in Mexico on Tuesday and told associates that she was not aware ahead of time that the White House planned to make public her role.").

## CONCLUSION

For the aforementioned reasons, Plaintiffs request that this Court grant its motion for expedited discovery, with the discovery period to begin on February 28 as contemplated in its February 19 Order. ECF No. 43.

Dated: <u>February 26, 2025</u>

Respectfully submitted,

<u>/s/ Aman T. George</u>

Mark B. Samburg (D.C. Bar No. 1018533)
Aman T. George (D.C. Bar No. 1028446)
Benjamin Seel (D.C. Bar No. 1035286)
Rachel F. Homer (D.C. Bar No. 1045077)
Robin F. Thurston (D.C. Bar No. 462679)
Somil B. Trivedi (D.C. Bar No. 1617967)
Skye L. Perryman (D.C. Bar No. 984573)

DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
Telephone: (202) 448-9090
Fax: (202) 796-4426
msamburg@democracyforward.org
ageorge@democracyforward.org
bseel@democracyforward.org
rhomer@democracyforward.org
rthurston@democracyforward.org
strivedi@democracyforward.org
sperryman@democracyforward.org

*Counsel for Plaintiffs*