UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF LABOR, et al., <br><br> Defendants. | Civil Action No.  25-0339 (JDB) |

**ORDER**

Before the Court is [44] plaintiffs' motion for expedited discovery.  Whether to grant the motion is a close question, but the Court concludes it will grant the motion in part.  Although this in an Administrative Procedure Act ("APA") case, the discovery plaintiffs request is proper because it is necessary to determine the contours of the agency actions that plaintiffs challenge.  The limited expedited discovery plaintiffs request is also reasonable.  With some modest alterations by the Court, the discovery is narrowly tailored to the issues that this Court has already indicated would be essential to deciding plaintiffs' impending preliminary injunction motion.  And the limited discovery will not overly burden defendants: the written discovery largely seeks only individuals' identities, dates, and names of systems, as well as documents that defendants' own declarations have referenced, and the four depositions—which the Court will cap at lasting eight hours in the aggregate—are limited to three properly-scoped topics.

1

## BACKGROUND

Plaintiffs initiated this lawsuit—then against only the Department of Labor ("DOL") and the United States DOGE Service ("USDS")[1]—on February 5, 2025. See Mem. Op. & Order [ECF No. 18] ("First TRO Order") at 4. Along with their complaint, plaintiffs moved for a temporary restraining order ("TRO") to enjoin USDS employees from accessing, and DOL from granting USDS employees access to, individual information protected by the Privacy Act of 1974. See id. at 2. But the Court denied that TRO motion because plaintiffs failed to demonstrate a substantial likelihood of Article III standing. Id. at 9.

The next week, plaintiffs filed an amended complaint, which added two nonprofits and an additional union as plaintiffs and the Department of Health and Human Services ("HHS") and the Consumer Financial Protection Bureau ("CFPB") as defendants. Am. Compl. [ECF No. 21]. Plaintiffs filed another TRO motion two days later, seeking to enjoin all defendants from, inter alia, sharing personally identifiable information with USDS employees. Pls.' Mot. Renewed TRO [ECF No. 29]. But the Court denied that motion too, because plaintiffs failed to show they were likely to succeed on the merits of their Privacy Act (or any other) claim. See Mem. Op. & Order [ECF No. 34] ("Second TRO Order") at 2–10. Specifically, the Court determined that plaintiffs did not adequately demonstrate that USDS employees working at the defendant agencies are not "employees of the agency" within the meaning of the Privacy Act, meaning plaintiffs failed to demonstrate that the USDS employees were prohibited by law from viewing the relevant data. Id. at 5–8.

In accordance with the Court's order, see id. at 11, the parties then filed a proposed briefing schedule, see Joint Statement by Parties Concerning Scheduling [ECF No. 42]. Plaintiffs notified

---

[1] The Court uses USDS to refer to both United States DOGE and the United States DOGE Service Temporary Organization.

the Court that they planned to file a motion for expedited discovery to gather evidence prior to the preliminary injunction motion they also intend to file, and requested that the Court thus set a discovery schedule and preliminary injunction briefing schedule. Id. at 1–4. Defendants countered that they would oppose any motion for expedited discovery and that the Court should not permit plaintiffs to file a preliminary injunction before the Court resolves the motion to dismiss defendants intend to file. Id. at 4–5. The Court struck a middle ground: it indicated limited expedited discovery may be appropriate in this case, set a preliminary injunction briefing schedule to account for possible discovery, and set a motion to dismiss briefing schedule that concludes prior to the start of the preliminary injunction briefing. See Order [ECF No. 43] ("Scheduling Order") at 1–3. Plaintiffs then filed the instant motion for expedited discovery, Pls.' Mot. Expedited Disc. [ECF No. 44] ("Disc. Mot."), which defendants opposed, Defs.' Opp'n Pls.' Mot. Expedited Disc. [ECF No. 45] ("Disc. Opp'n"), and plaintiffs later replied, Pls.' Reply in Supp. Mot. Expedited Disc. [ECF No. 46] ("Reply").

## ANALYSIS

Plaintiffs seek expedited discovery for the purpose of finding facts "critical to assessing [p]laintiffs' irreparable injuries." Disc. Mot. at 1. Specifically, they ask the Court to permit them to submit to defendants limited interrogatories and requests for production of documents, and to conduct four depositions (one for each agency and one for USDS) pursuant to Federal Rule of Civil Procedure 30(b)(6).[2] Pls.' Proposed Interrogs. & Reqs. for Produc. of Docs. [ECF No. 44-2] ("Proposed Disc.") at 1–7.

---

[2] In relevant part, Rule 30(b)(6) states that

In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must designate one or more officers, directors, or managing

3

Generally, Federal Rule of Civil Procedure 26(d)(1) prohibits discovery until after the parties' Rule 26(f) conference, Fed. R. Civ. P. 26(d)(1); see also Local Civ. R. 26.2(a), which has yet to happen in this case. But Rule 26(d)(1) also gives courts discretion to make exceptions. See Guttenberg v. Emery, 26 F. Supp. 3d 88, 97 (D.D.C. 2014). That said, the rule is silent as to "a standard to apply when determining whether expedited discovery is appropriate." Id. As a result, this Court has adopted the so-called reasonableness approach. Id. at 98. Under that approach, "the Court considers the 'reasonableness of the request in light of all of the surrounding circumstances,' which include: '(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made.'" Id. (quoting In re Fannie Mae Derivative Litig., 227 F.R.D. 142, 142–43 (D.D.C. 2005)). These factors, however, do not form a hard-and-fast rule. Rather, they "are only guidelines for the exercise of the Court's discretion." Id.; cf. Nixon v. Freeman, 670 F.2d 346, 363 (D.C. Cir. 1982) ("A district court has broad discretion over . . . discovery.").

I.    **Administrative Procedure Act**

Before turning to the reasonableness factors, the Court addresses defendants' overarching argument: that the Court should not permit discovery at all because this is an APA case. See Disc. Opp'n at 6. Defendants correctly state that a "[c]ourt must generally base its review in an APA case 'on the full administrative record that was before the [agency] at the time [it] made its decision,' not on a record generated by the parties through the discovery process." Id. (alterations in original) (quoting Am. Bioscience, Inc. v. Thompson, 243 F.3d 579, 582 (D.C. Cir. 2001)).

---

agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify.

Fed. R. Civ. P. 30(b)(6).

4

Defendants argue that means plaintiffs are not permitted to seek discovery prior to defendants' submission of an administrative record, and even then, only if plaintiffs were to make "a strong showing of bad faith or improper behavior or" it is evident that "the record is so bare that it prevents effective judicial review." Id. (quoting Com. Drapery Contractors, Inc. v. United States, 133 F. 3d 1, 7 (D.C. Cir. 1998)).

Defendants' argument glosses over the fact that, as the Court noted in its earlier order, this is not an ordinary APA case. See Scheduling Order at 1–2. The agency action challenged here is unlike the actions normally challenged in APA cases, such as a promulgated regulation or a grant or denial of an application. Rather, plaintiffs challenge the agency defendants' "policies" to "grant [USDS] employees access to information systems," which plaintiffs say amount to a new policies of permitting unlawful disclosures of protected information. See Mem. in Supp. Pls.' Renewed Mot. TRO [ECF No. 29-1] ("Second TRO Mot.") at 23. Defendants counter that the USDS employees are in fact employees of the defendant agencies and thus the agencies' choices to give them access to information systems are not new "policies," but merely standard "agency[] decision[s] to give . . . employee[s] access to [those] systems." See Defs.' Mem. Opp'n Pls.' Renewed Mot. TRO [ECF No. 31] at 18. In other words, a key question in this case is "whether the alleged disclosure policy in fact exists." See Venetian Casino Resort, LLC v. EEOC, 409 F.3d 359, 360 (D.C. Cir. 2005). And, thus far, the parties' arguments and the record in this case have "not clarif[ied] matters" regarding the alleged policies' scope. See id.; Second TRO Order at 8 (explaining the lack of clarity on the issue of whether USDS employees are agency employees). Further, the scope of the alleged policy also impacts the scope of the harm to plaintiffs—for, if the Privacy Act permits the USDS employees to view the individual information at issue, the theory of harm plaintiffs have thus far asserted fails. See Second TRO Order at 3 n.1.

5

In such situations, a court may depart from the default APA no-discovery rule. See Venetian Casino Resort, 409 F.3d at 360. For example, in Hispanic Affairs Project v. Acosta, plaintiffs brought a claim under the APA alleging that the Department of Homeland Security had a "practice of habitually approving and extending H-2A visas for lengthy periods of time." 901 F.3d 378, 388 (D.C. Cir. 2018). Homeland Security argued—much like defendants here have argued—plaintiffs did not adequately allege a challengeable agency action but rather a "programmatic challenge." Id. at 387–88. The D.C. Circuit disagreed, determining that the plaintiffs alleged a "particular practice" that would be challengeable if found to exist. See id. at 388. So the Circuit remanded to the district court, explaining that, "[o]n remand, the district court [wa]s free to exercise its discretion to permit further discovery to ascertain the contours of the precise policy at issue." Id. (internal quotation marks omitted); see also Venetian Casino Resort, 409 F.3d at 360.

This Court may exercise that same discretion here. The "contours of the precise policy at issue" are far from defined. See Hispanic Affairs Proj., 901 F.3d at 388. As such, the discovery requested here is appropriate, for it is not so much "fact-finding" as it is "filling in gaps . . . to determine what the agency actually did." Marshall Cnty. Health Care Auth. v. Shalala, 988 F.2d 1221, 1227 (D.C. Cir. 1993). Nor does the Court find it evident that there exists a standard administrative record that defendants could submit—defendants have so far only relied on declarations taken after the alleged policies or decisions took effect,[3] whereas the relevant parts of an administrative record are typically the facts before the agency and reasons the agency gave ex ante, see Grace v. Barr, 965 F.3d 883, 903 (D.C. Cir. 2020); Strategic Analysis, Inc. v. U.S. Dep't of Navy, Civ. A. No. 96-300 (PLF), 1996 WL 294262, at *1–2 (D.D.C. May 29, 1996) (granting

---

[3] See Decl. of Adam Ramada [ECF No. 16-1]; Decl. of Ricky J. Kryger [ECF No. 31-1]; Decl. of Garey Rice [ECF No. 31-2]; Decl. of Adam Martinez [ECF No. 31-3].

expedited discovery in APA case). In short, this case merits an exception to the general prohibition of discovery in APA cases. So the fact that this is an APA case does not preclude the Court from granting plaintiffs' motion for expedited discovery.

### II.     Reasonableness Approach

Seeing no initial barrier to permitting expedited discovery here, the Court now assesses the five factors of the reasonableness approach, albeit somewhat out of order. In the end, the Court determines that, taken together, the factors weigh in favor of granting—in part—plaintiffs' motion for expedited discovery.

### A.     Whether a Preliminary Injunction Motion is Pending

The first reasonableness factor is whether a preliminary injunction motion is pending. Guttenberg, 26 F. Supp. 3d at 98. The literal answer to this question is no: there is no preliminary injunction motion currently on the docket. But, contrary to defendants' argument otherwise, see Disc. Opp'n at 11, that does not mean that this factor weighs in favor of denying plaintiffs' motion. Plaintiffs not only intend to file a preliminary injunction motion imminently, but the Court has ordered them to do so by not later than April 1, 2025. See Scheduling Order at 3. Garnering support for that anticipated preliminary injunction motion is "the very purpose of [plaintiffs'] motion for expedited discovery." Legal Tech. Grp., Inc. v. Mukerji, Civ. A. No. 17-631 (RBW), 2017 WL 7279398, at *3 (D.D.C. June 5, 2017); Disc. Mot. at 1 ("Tailored discovery . . . will enable the Court to evaluate Plaintiffs' forthcoming motion for a preliminary injunction."). And, as discussed more below, plaintiffs' two TRO motions have revealed the factual and legal issues critical to the impending preliminary injunction motion. As a result, "the parameters of relevant discovery are [not] difficult to determine at this juncture in the case." See 4SIGHT Supply Chain Grp., LLC v. Kent, Civ. A. No. 2:19-12476 (WHW) (CLW), 2019 WL 13235533, at *2 (D.N.J. June 27, 2019) (explaining why the lack of a pending preliminary injunction motion can warn

against granting discovery); Reply at 3. The first factor thus weighs somewhat in favor of granting plaintiffs' motion for expedited discovery. See Legal Tech Grp., 2017 WL 7279398, at *3.[4]

### B. The Purpose for Requesting Expedited Discovery

That brings the Court to plaintiffs' purpose for requesting expedited discovery. As stated, plaintiffs seek expedited discovery to support their impending preliminary injunction motion. See Disc. Mot. at 1. But unlike in other cases in which the Court has denied motions for expedited discovery, plaintiffs' purpose is to "reveal information related to the preliminary injunction as opposed to the case as a whole." See Guttenberg, 26 F. Supp. 3d at 98 (denying expedited discovery that nominally sought to support a preliminary injunction motion but in fact went primarily to the merits); Damus v. Nielson, 328 F.R.D. 1, 4 (D.D.C. 2018). Plaintiffs focus their discovery requests on the dispositive preliminary injunction issue of irreparable harm. See Disc. Mot. at 4–7. They explain that, as elucidated through the litigation on their two TRO motions, the facts that bear on irreparable harm remain opaque. See id. These include the structure of USDS and the scope of its authority, which the Court has said are not only unclear on the current record, but also critical to deciding the question of whether USDS is an agency within the meaning of the Economy Act of 1933—and thus whether its employees are permitted by the Privacy Act to view individual information. Second TRO Order at 8; see also id. at 3 n.1 (explaining that plaintiffs' asserted harm rests on Privacy Act claim).

---

[4] Defendants also argue that this factor weighs against granting plaintiffs' motion because plaintiffs failed to seek expedited "discovery before either of their two prior motions for emergency relief." Disc. Opp'n at 11. It's true that "demonstrated lack of urgency in seeking expedited discovery" weighs against granting a motion for expedited discovery. See Guttenberg, 26 F. Supp. 3d at 98. But the Court cannot say that plaintiffs who do not seek discovery to support a TRO show a lack of urgency. TROs are "the pinnacle of emergency relief meant to preserve the status quo for a limited period of time until the Court has an opportunity to pass on the merits of the demand for a preliminary injunction." M.G.U. v. Nielson, 316 F. Supp. 3d 518, 520 (D.D.C. 2018). It's hard to imagine even expedited discovery could be completed within a TRO's typical lifespan. See Fed. R. Civ. P. 65(b)(2) (explaining that a TRO expires after 14 days unless a court orders otherwise). Not to mention, defendants' argument is self-defeating. If, as defendants argue, it is now too early for plaintiffs to be seeking discovery, see Disc. Opp'n at 8–11, surely it was too early for plaintiffs to seek discovery for their TROs.

Another point is worth mentioning. Plaintiffs seek discovery on these issues in part because defendants already put into the record some facts relevant to the issues. The declarations defendants filed with their oppositions to plaintiffs' TRO motions—all of which were prepared well after the challenged agency actions—introduced before-unknown information—some of which conflicted—on how USDS is operating at the defendant agencies: from the number of USDS employees working at each defendant agency, to the training and agreements put in place for those employees, to the access those employees are given. See generally Decl. of Adam Ramada [ECF No. 16-1] ("Ramada Decl."); Decl. of Ricky J. Kryger [ECF No. 31-1] ("Kriger Decl."); Decl. of Garey Rice [ECF No. 31-2] ("Rice Decl."); Decl. of Adam Martinez [ECF No. 31-3] ("Martinez Decl."). It would be strange to permit defendants to submit evidence that addresses critical factual issues and proceed to rule on a preliminary injunction motion without permitting plaintiffs to explore those factual issues through very limited discovery.

Considering that (1) the Court itself stated that further information on the topics on which plaintiffs seek discovery would be vital to resolving a preliminary injunction motion and (2) defendants' declarations teed up the factual questions plaintiffs seek to plumb, the Court cannot say that plaintiffs' request is merely "a thinly veiled attempt to circumvent the normal litigation process." In re Fannie Mae, 227 F.R.D. at 143. Quite the opposite. The purpose factor thus weighs in favor of granting plaintiffs' motion for expedited discovery.

**C. The Breadth of the Discovery Requests**

Now onto the question of whether plaintiffs' proposed discovery sweeps too broadly for its purpose. Plaintiffs supplied the Court with the interrogatories, document-production requests, and deposition topics they seek from defendants. To summarize, plaintiffs seek to (1) submit to defendants two interrogatories (with subparts); (2) submit to defendants a short set of document

9

requests, and (3) conduct four Rule 30(b)(6) depositions, one for USDS and one for each agency defendant. Proposed Disc. at 1–7. The first interrogatory—containing eight subparts—is mainly directed to the defendant agencies. Id. at 3. The second—containing five subparts, one with four additional sub-subparts—is directed mainly at USDS. Id. at 3–4. The proposed request for document production contains seven requests directed at agency defendants that seek documents referenced in the declarations defendants submitted in support of their opposition to plaintiffs' second TRO motion. See id. at 5. Lastly, the proposed Rule 30(b)(6) depositions for the agency defendants and USDS are each scoped to cover three multiprong topics and would be limited in duration to three and a half hours. Id. at 6–7.

In defendants' view, these requests are not properly scoped to clarify the agencies' actions as needed for ruling on a preliminary injunction in this case. See Disc. Opp'n at 17–18. The Court disagrees. With the caveats stated below, the scope of plaintiffs' discovery request is tailored to determining the contours of the agencies' actions that are necessary for deciding a preliminary injunction motion, primarily irreparable harm.[5] Start with the interrogatories. The interrogatories to the agencies seek information about the extent of access to sensitive systems agencies have given USDS employees, who at the agencies authorized such access, and any training USDS employees received. See Proposed Disc. at 3. As the Court has explained, this information goes to irreparable harm because, if USDS employees are not permitted by the Privacy Act to view these systems, plaintiffs argue they are injured. Similarly, the interrogatories to USDS focus on facts relevant to irreparable harm: the structure, chain of command, and sharing policies of USDS

---

[5] Defendants argue that plaintiffs' proposed discovery extends beyond what would in the administrative record, and thus they seek to limit any discovery the Court allows to topics and documents defendants believe constitute an administrative record. See Disc. Opp'n at 17–18, 20–21. But the Court determines that the information plaintiffs seek regarding the scope of USDS employees' access to sensitive systems and the authority and structure of USDS is necessary for determining the question the contours of defendant agencies' policies and actions—a question for which discovery can be appropriate in an APA case. See Venetian Casino Resort, 409 F.3d at 360; Marshall Cnty. Health Care Auth., 988 F.2d at 1227.

10

go to the question of whether USDS is an agency permitted to detail employees to the three agency defendants.

It is even clearer that the document requests are properly scoped. Each of the seven document requests is for a document defendants' declarants mentioned when discussing the procedures and policies surrounding USDS employees and operations at defendant agencies. See id. at 5 (each of the seven requests referencing one or more of the three declarations defendants submitted with their opposition to plaintiffs' second TRO motion). Like the USDS interrogatories, these documents are relevant to the scope of USDS employees' assignments, their relationship to the defendant agencies at which they're working, and USDS's authority to detail them. See id. Plus, defendants acknowledged these documents were relevant to the resolution of plaintiffs' second TRO motion, and the impending preliminary injunction motion will rest on the same issues the TRO motion did.

Lastly, the Rule 30(b)(6) depositions are properly scoped as well. The Court recognizes that, as defendants point out, the nature of Rule 30(b)(6) depositions make them susceptible to becoming overly broad and freewheeling. See Disc. Opp'n at 14. However, plaintiffs here have put forward three specific topics to which each deposition will be limited. For the agency defendants, the Rule 30(b)(6) topics focus on how, if at all, the agencies' systems-access procedures changed following USDS's creation, the role of USDS employees at the agencies, and those employees' use of sensitive systems. Proposed Disc. at 6. And like the interrogatories, the topics for the Rule 30(b)(6) deposition of USDS focus on USDS's structure and authority, as well as the role and responsibilities of USDS employees working at defendant agencies. Id. at 7.

While plaintiffs' proposed discovery is predominately properly scoped, there are two proposals the Court determines go beyond the issues relevant to the impending preliminary

11

injunction motion. The first is plaintiffs' definition of "Sensitive Systems," a definition on which much of their proposed discovery relies. See id. at 2–7. Plaintiffs propose to define the term as "any system of records that contains Personally Identifiable Information (PII), Personal Health Information (PHI), trade secrets, or confidential business information." Id. at 2. However, the Privacy Act—the act on which plaintiffs have largely rested their case, including the harm they allegedly suffered—only protects individual information. See 5 U.S.C. § 552a(a)(4) (defining "record" as "information about an individual that is maintained by an agency"). The Court thus amends plaintiffs' definition of Sensitive Systems to refer only to "any system of records that contains Personally Identifiable Information (PII) or Personal Health Information (PHI)."

The second overbroad proposal is question 1(f) of plaintiffs' proposed interrogatories. That question asks for "[a] complete list of the federal agencies to which the [USDS] Employees are or have been detailed since January 20, 2025." Proposed Disc. at 3. The issues in front of this Court are limited to USDS's presence at the agencies that are defendants in this case. Which other agencies may be hosting USDS employees is not relevant to the resolution of plaintiffs' impending motion to preliminarily enjoin USDS, DOL, HHS, and CFPB. The Court will thus eliminate question 1(f).

In sum, with the two alterations mentioned, the Court determines the scope of plaintiffs' proposed discovery weighs in favor of granting their motion.

### D. The Burden on the Defendants to Comply with the Requests

Going hand in hand with whether plaintiffs' proposed discovery is properly scoped is whether complying with those requests places too high a burden on the defendants. Where the scope of discovery sweeps too broadly, that discovery can unduly burden defendants. See True the Vote, Inc. v. IRS, No. CV 13-734 (RBW), 2014 WL 4347197, at *7–8 (D.D.C. Aug. 7, 2014).

As the Court has determined, that's not the case here. But, as defendants argue, even properly scoped discovery has the potential of being overly burdensome depending how that discovery will occur and how much information the requests seek. See Disc. Opp'n at 14.

Here, there is no such undue burden. Each form of discovery—interrogatories, document requests, and Rule 30(b)(6) depositions—is narrowed in a way that will impose a minimal burden on defendants. Defendants argue that the interrogatories and document requests are unduly burdensome because of the number of subparts and the focus on agency structure, training, and systems usage. Disc. Opp'n at 16. But looking closer at the questions and document requests, one sees that the burden does not stretch that far. Of the seven subparts of the interrogatories directed at defendant agencies (as narrowed by the Court), two ask only for identities of individuals, three ask for only the name and description of training programs, systems, and software, and one asks only for dates. See Proposed Disc. at 3. The remaining subpart extends to the usage of systems by USDS employees. Id. Similarly, of the five subparts of the interrogatories directed at USDS, four ask only for identities of individuals and, at most, those individuals' responsibilities. Id. at 3–4. Providing this number of names and dates is not so burdensome, especially when one considers that none of this information would require going back farther than January 20, 2025, the date President Trump renamed USDS. See First TRO Order at 2.

As for the document production requests, the Court already explained that the documents plaintiffs seek are limited to documents referenced by three of defendants' declarants in statements made less than two weeks ago. Proposed Disc. at 5 (requesting documents referred to in Kryger Decl., Decl. of Garey Rice, and Decl. of Adam Martinez). Obtaining these documents should thus not be overly burdensome.

13

Understandably, defendants argue most strongly against the Rule 30(b)(6) depositions. As they point out, the Court stated in its scheduling order that "the discovery should be primarily—if not exclusively—written discovery." Scheduling Order at 2; Disc. Opp'n at 14. And the nature of Rule 30(b)(6) depositions, defendants argue, makes the burden too heavy. Disc. Opp'n at 14. But, as stated earlier, the scope of the Rule 30(b)(6) depositions here is not as expansive—and thus the deposition will not require as much preparation and expense—as a typical Rule 30(b)(6) deposition. The Court emphasizes that the four depositions shall be limited only to the topics plaintiffs have identified in their proposed discovery order. See Proposed Disc. at 6–7. Anything beyond those topics is prohibited.

Additionally, given that each deposition shall cover only three topics, the Court thinks the three-and-a-half-hour limit plaintiffs propose is too high. To help ensure the depositions are limited to the proper topics, and to help decrease the burden on defendants, the Court will limit plaintiffs to a total of eight hours for their four depositions. Plaintiffs can allocate those eight hours between USDS and the agency defendants as plaintiffs see fit.

In sum, the Court determines the burden of the expedited discovery plaintiffs seek—taking into consideration the Court's alterations—is not unbearable. This factor thus weighs in favor of granting plaintiffs' motion.

### E. How Far in Advance of the Typical Discovery Process the Request was Made

Finally, the Court turns to how far in advance of the typical discovery process plaintiffs have requested expedited discovery. Defendants argue that this factor heavily weighs in their favor and point to this Court's decision in Guttenberg for support. Disc. Opp'n at 8–11. There, the Court explained that the "most important" factor in the Court's decision to deny the motion for expedited discovery in that case was that there was a pending motion to dismiss, showing that

14

"plaintiffs' request for expedited discovery c[ame] 'well in advance of typical discovery.'" Guttenberg, 26 F. Supp. 3d at 99 (quoting Landwehr v. FDIC, 282 F.R.D. 1, 4 (D.D.C. 2010)). The Court explained that permitting expedited discovery when said motion was pending could require defendants "to expend significant resources in responding" to requests even though there was a chance the Court would "then grant defendants' motion to dismiss," making the expenditure all for nothing. See id. So, in that case, "reasonableness dictate[d] that the Court consider defendants' motion to dismiss before requiring . . . discovery." Id.

The Court acknowledges that Guttenberg and other cases have emphasized that a pending motion to dismiss cuts against granting a plaintiff's motion for expedited discovery. See Landwehr, 282 F.R.D. at 4; True the Vote, 2014 WL 4347197, at *8. The Court also acknowledges that, just as there is an impending motion for preliminary injunction in this case, there is an impending motion to dismiss. See Scheduling Order at 3 (ordering defendants file their motion to dismiss by not later than February 28, 2025). Defendants indicate that they intend to seek dismissal on the basis of "Article III standing, APA reviewability, and Privacy Act preclusion," issues which the defendants contend "do not require any factual development" and thus permitting expedited discovery could result in the situation Guttenberg warned against: ultimately unnecessary expensive and burdensome discovery. See Disc. Opp'n at 9–11.

Despite those facts, however, the Court concludes that this factor does not weigh strongly in defendants' favor. Just as this is not a run-of-the-mill APA case, this is not the standard civil case in which a motion to dismiss is filed before any legal or factual development. The briefing on plaintiffs' two TROs has produced a record, albeit minimal, and has revealed the parties' legal arguments. So this is not a case where the motion to dismiss will contain dispositive arguments the Court has yet to contemplate. As a result, while it's a close question, the Court cannot say

15

reasonableness demands prohibiting expedited discovery until the resolution of defendants' impending motion to dismiss.[6]

\*            \*            \*

Of the five reasonableness factors, the last is undoubtably the closest. But the other four weigh in favor of granting plaintiffs' motion in part. The Court thus determines that to whatever extent the final factor may slightly favor defendants, the other four factors outweigh it. Hence, the Court concludes that plaintiffs are entitled to the limited expedited discovery they request, subject to the further alterations and limitation the Court has detailed.

### CONCLUSION

For the reasons explained above, it is hereby **ORDERED** that [44] plaintiffs' motion for expedited discovery is **GRANTED** in part, subject to the alterations the Court has explained in this Order. It is further **ORDERED** that the expedited discovery shall take place in accordance with the schedule the Court set forward in [43] the Court's scheduling order.

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated: February 27, 2025

---

[6] The Court also notes that defendants have thus far not relied solely on legal arguments, but also on facts they put in the record. See supra, n.3. And this evidence goes to the very issues they seek to address in their motion to dismiss. For example, the declarations submitted with defendants' opposition to plaintiffs' second TRO motion indicate how many USDS employees, if any, are at each agency, the scope of their work, the procedures, policies, and agreements surrounding their purported detail, and their chain of command. See generally, e.g., Rice Decl. As noted, these facts go to plaintiffs' harm—implicating not only irreparable harm, but Article III standing and final agency action. In other words, the evidence defendants have thus far put in the record goes to the very issues on which plaintiffs seek discovery. Indeed, defendants argue that if the Court permits plaintiffs to conduct expedited discovery, the Court should limit the discovery to jurisdictional discovery. Disc. Opp'n at 19–20. This seems to recognize that the issues defendants contend are dispositive without factual development do rest in part on factual findings. Lastly, this all indicates that, while defendants intend to make legal arguments in their motion to dismiss, there is a possibility that defendants' motion to dismiss could rest on facts outside the pleadings, making discovery both beneficial and necessary. See Fed. R. Civ. P. 12(d).