**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS, et al., | Case No. 1:25-cv-00339-JDB |
| Plaintiffs, | Judge John D. Bates |
| v. | |
| DEPARTMENT OF LABOR et al., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................... 2

I.      The United States DOGE Service ........................................................................ 2

II.     Procedural History ................................................................................................ 3

III.    The Amended Complaint ...................................................................................... 4

LEGAL STANDARD ....................................................................................................... 9

I.      Rule 12(b)(1) ........................................................................................................ 9

II.     Rule 12(b)(6) ........................................................................................................ 9

ARGUMENT .................................................................................................................. 10

I.      Plaintiffs' Suit Improperly Attacks The President's Article II Powers ............. 10

II.     Plaintiffs Lack Standing ..................................................................................... 12

        A.      Plaintiffs Lack Associational Standing ................................................... 13

                1.      Plaintiffs Have Not Pled That Any Of Their Members Have Article
                        III Standing ................................................................................... 13

                2.      The Participation Of Plaintiffs' Members In This Lawsuit Is
                        Necessary As To Their Privacy Act Claims ............................... 18

        B.      Plaintiffs Lack Organizational Standing ................................................. 19

III.    Plaintiffs Fail to State a Claim Upon Which Relief Can be Granted ............... 21

        A.      Plaintiffs Fail to Establish Reviewable Final Agency Action ................. 21

                1.      Access Decisions Are Not A Reviewable "Agency Action" .................... 22

                2.      Access Decisions Do Not Set The Rights And Obligations Of The
                        Regulated Public. ......................................................................... 23

        B.      Defendants' Decision to Grant Access To Agency Informational Systems
                Does Not Violate 5 U.S.C. § 706(2)(C) and (D) .................................... 25

                1.      Plaintiffs Cannot Assert Violations Of The Privacy Act On Behalf
                        Of Their Members Through The APA. ........................................ 25

i

2.    Provision of Access To USDS Personnel Is Not Contrary To The Privacy Act............................................................................ 28

3.    Access Is Not Contrary To Any Of The Identified Statutes or Regulations ............................................................................... 30

4.    Defendants Did Not Need To Engage In Notice-and- Comment Rulemaking To Provide Record System Access. ..................................... 30

C.    Plaintiffs Freestanding Privacy Act Claim Should Be Dismissed. ...................... 34

D.    Plaintiffs Fail to Plead the Exceedingly High Bounds of *Ultra Vires* Review.......................................................................................... 34

CONCLUSION.................................................................................................... 37

# TABLE OF AUTHORITIES

**Cases**

*Air Brake Sys., Inc. v. Mineta*,
   357 F.3d 632 (6th Cir. 2004) ................................................................. 24

*Air Transp. Ass'n of Am. v. Reno*,
   80 F.3d 477 (D.C. Cir. 1996) ................................................................ 18

*Al-Zahrani v. Rodriguez*,
   669 F.3d 315 (D.C. Cir. 2012) ............................................................... 9

*Am. Fed'n of Gov't Emps. v. Hawley*,
   543 F. Supp. 2d 44 (D.D.C. 2008) ......................................................... 18

*Am. Legal Found. v. FCC*,
   808 F.2d 84 (D.C. Cir. 1987) ................................................................ 19

*Am. Nat'l Ins. Co. v. FDIC*,
   642 F.3d 1137 (D.C. Cir. 2011) .............................................................. 9

*Arabzada v. Donis*,
   725 F. Supp. 3d 1 (D.D.C. 2024) ........................................................... 9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................ 10

*Ass'n of Flight Attendants—CWA, AFL-CIO v. U.S. Dep't of Transp.*,
   564 F.3d 462 (D.C. Cir. 2009) .............................................................. 13

*Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*,
   502 U.S. 32 (1991) .............................................................................. 35

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................ 10

*Bennett v. Spear*,
   520 U.S. 154 (1997) ............................................................................ 22

*Block v. Cmty. Nutrition Inst.*,
   467 U.S. 340 (1984) ............................................................................ 26

*Bowen v. Massachusetts*,
   487 U.S. 879 (1988) ............................................................................ 26

*Browning v. Clinton,*
    292 F.3d 235 (D.C. Cir. 2002) ........................................................................ 10

*Cal. Cmtys. Against Toxics v. EPA,*
    934 F.3d 627 (D.C. Cir. 2019) ........................................................................ 24

*Cell. Assocs., Inc. v. Nat'l Insts. of Health,*
    579 F.2d 1155 (9th Cir. 1978) ........................................................................ 27

*Chung v. Dep't of Justice,*
    333 F.3d 273 (D.C. Cir. 2003) ........................................................................ 26

*Ciralsky v. CIA,*
    689 F. Supp. 2d 141 (D.D.C. 2010) ................................................................ 29

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ...................................................................... 14, 16, 19, 20

*Cobell v. Kempthorne,*
    455 F.3d 301 (D.C. Cir. 2006) ........................................................................ 30

*Comm. In Solidarity with People of El Salvador ("CISPES") v. Sessions,*
    738 F. Supp. 544 (D.D.C. 1990), *aff'd,* 929 F.2d 742 (D.C. Cir. 1991) ............................ 18, 34

*Conley v. Gibson,*
    355 U.S. 41 (1957) .......................................................................................... 10

*Daimler Chrysler Corp. v. Cuno,*
    547 U.S. 332 (2006) ......................................................................................... 9

*Dew v. United States,*
    192 F.3d 366 (2d Cir. 1999) ........................................................................... 26

*Doe v. OPM,*
    25-cv-234 (RDM), 2025 WL 513268 (D.D.C. Feb. 17, 2025) ............................... 14

*Doe v. Stephens,*
    851 F.2d 1457 (D.C.Cir.1988) ........................................................................ 27

*Drake v. FAA,*
    291 F.3d 59 (D.C. Cir. 2002) ......................................................................... 32

*Elec. Privacy Inf. Ctr. v. U.S. Dep't of Com.,*
    928 F.3d 95 (D.C. Cir. 2019) ......................................................................... 13

*FDA v. All. for Hippocratic,*
   *Med.*, 602 U.S. 367 (2024) ................................................. 13, 19

*Fed. Exp. Corp. v. U.S. Dep't of,*
   *Com.*, 39 F.4th 756 (D.C. Cir. 2022) ................................................ 36

*Food & Water Watch, Inc. v. Vilsack,*
   808 F.3d 905 (D.C. Cir. 2015) ................................................ 9, 19

*Freeman v. EPA,*
   No. 02-0387, 2004 WL 2451409 (D.D.C. Oct. 25, 2004) ................ 29

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.,*
   460 F.3d 13 (D.C. Cir. 2006) ................................................ 21, 22

*Griffith v. Fed. Labor Relations Auth.,*
   842 F.2d 487 (D.C. Cir. 1988) ................................................ 35

*Harris v. D.C. Water & Sewer Auth.,*
   791 F.3d 65 (D.C. Cir. 2015) ................................................ 10

*Hearst Radio, Inc. v. FCC,*
   167 F.2d 225 (D.C. Cir. 1948) ................................................ 22

*Hecate Energy LLC v. FERC,*
   126 F.4th 660 (D.C. Cir. 2025) ................................................ 13

*Hill v. U.S. Dep't of the Interior,*
   699 F. Supp. 3d 1 (D.D.C. 2023) ................................................ 21

*Ho v. Garland,*
   106 F.4th 47 (D.C. Cir. 2024) ................................................ 10

*In re Dep't of Veterans Affs. Data Theft Litig.,*
   No. MDL 1796, 2007 WL 7621261 (D.D.C. Nov. 16, 2007) ................ 18

*In re OPM Data Sec. Breach Litig.,*
   928 F.3d 42 (D.C. Cir. 2019) ................................................ 15

*Indep. Equip. Dealers Ass'n v. EPA,*
   372 F.3d 420 (D.C. Cir. 2004) ................................................ 22

*Indus. Energy Consumers of Am. v. FERC,*
   125 F.4th 1156 (D.C. Cir. 2025) ................................................ 14

*Iowaska Church of Healing v. Werfel*,
 105 F.4th 402 (D.C. Cir. 2024) ........................................................................ 20

*Jenkins v. Howard Univ.*,
 123 F.4th 1343 (D.C. Cir. 2024) ......................................................................... 9

*Jones v. U.S. Dep't of Hous. & Urban Dev.*,
 No. 11 CIV. 0846 (RJD) (JMA), 2012 WL 1940845 (E.D.N.Y. May 29, 2012) .................... 26

*Jones v. U.S. Secret Serv.*,
 701 F. Supp. 3d 4 (D.D.C. 2023) ............................................................. 21, 22, 23

*Judicial Watch v. Dep't of Energy*,
 412 F.3d 125 (D.C. Cir. 2005) ........................................................................ 29

*Laible v. Lanter*,
 91 F.4th 438 (6th Cir. 2024).......................................................................... 29

*Laird v. Tatum*,
 408 U.S. 5 (1972)................................................................................. 17, 20

*Lee-Thomas v. LabCorp*,
 316 F. Supp. 3d 471 (D.D.C. 2018) .................................................................... 32

*Leopold v. Manger*,
 630 F. Supp. 3d 71 (D.D.C. 2022) ...................................................................... 9

*Lepre v. Dep't of Labor*,
 275 F.3d 59 (D.C. Cir. 2001) ......................................................................... 35

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
 572 U.S. 118 (2014).......................................................................... 29, 30, 37

*Logan v. Dep't of Veterans Affs.*,
 357 F. Supp. 2d 149 (D.D.C. 2004) .................................................................... 32

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555 (1992).............................................................................. 13, 14

*Lujan v. Nat'l Wildlife Fed'n*,
 497 U.S. 871 (1990).................................................................................. 21

*Mathews-Baker v. Reynolds & Assocs., Inc.*,
 282 F. Supp. 3d 251 (D.D.C. 2017) .................................................................... 32

*Micei Int'l v. Dep't of Commerce*,
  613 F.3d 1147 (D.C. Cir. 2010) ............................................................. 9

*Mount v. U.S. Postal Serv.*,
  79 F.3d 531 (6th Cir. 1996) ................................................................. 29

*Murthy v. Missouri*,
  603 U.S. 43 (2024) ............................................................................. 12

*Myers v. United States*,
  272 U.S. 52 (1926) ............................................................................. 18

*N. Am. Butterfly Ass'n v. Wolf*,
  977 F.3d 1244 (D.C. Cir. 2020) ............................................................ 10

*Nat'l Ass'n of Home Builders v. EPA*,
  667 F.3d 6 (D.C. Cir. 2011) ................................................................. 19

*Nat'l Min. Ass'n v. McCarthy*,
  758 F.3d 243 (D.C. Cir. 2014) .............................................................. 23

*Nat'l Taxpayers Union, Inc. v. United States*,
  68 F.3d 1428 (D.C. Cir. 1995) ............................................................. 19

*Norton v. S. Utah Wilderness All.*,
  542 U.S. 55 (2004) ....................................................................... 21, 23

*Nyunt v. Chairman, Broad. Bd. of Governors*,
  589 F.3d 445 (D.C. Cir. 2009) ............................................................. 35

*Oryszak v. Sullivan*,
  576 F.3d 522 (D.C. Cir. 2009) ............................................................. 32

*Parks v. IRS*,
  618 F.2d 677 (10th Cir. 1980) ............................................................. 27

*People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*,
  797 F.3d 1087 (D.C. Cir. 2015) ............................................................ 19

*Postal Police Officers Ass'n v. United States Postal Serv.*,
  719 F. Supp. 3d 56 (D.D.C. 2024) ........................................................ 10

*Pub. Emps. For Env't Resp. v. EPA*,
  926 F. Supp. 2d 48 (D.D.C. 2013) ........................................................ 34

*Public Citizen v. U.S. Dep't of Justice,*
    491 U.S. 440 (1989) ................................................................................................. 12

*Rimmer v. Holder,*
    700 F.3d 246 (6th Cir. 2012) .................................................................................. 26

*SAE Prods., Inc. v. FBI,*
    589 F. Supp. 2d 76 (D.D.C. 2008) ..................................................................... 18, 34

*Schroer v. Billington,*
    525 F. Supp. 2d 58 (D.D.C. 2007) ........................................................................ 35

*Sec'y of Labor v. Twentymile Coal, Co.,*
    456 F.3d 151 (D.C. Cir. 2006) ............................................................................... 32

*Seila Law, LLC v. CFPB,*
    591 U.S. 197 (2020) ................................................................................. 11, 12, 18

*Sierra Club v. EPA,*
    955 F.3d 56 (D.C. Cir. 2020) ................................................................................. 24

*Sierra Club v. Jackson,*
    648 F.3d 848 (D.C. Cir. 2011) ............................................................................... 32

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016) ............................................................................................... 14

*Sussman v. U.S. Marshals Serv.,*
    494 F.3d 1106 (D.C. Cir. 2007) ............................................................................. 27

*Thomas v. Principi,*
    394 F.3d 970 (D.C. Cir. 2005) ................................................................................. 9

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021) ..................................................................................... *passim*

*Travelers United, Inc. v. Hyatt Hotels Corp.,*
    No. 23-cv-2776 (CKK), 2025 WL 27162 (D.D.C. Jan. 3, 2025) ............................. 18

*U.S. Army Corps of Eng'rs v. Hawkes Co.,*
    578 U.S. 590 (2016) ............................................................................................... 23

*United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.,*
    517 U.S. 544 (1996) ............................................................................................... 18

*United States v. Nixon*,
    418 U.S. 683 (1974) ........................................................................................... 12

*Venetian Casino Resort, LLC v. EEOC*,
    530 F.3d 925 (D.C. Cir. 2008) ..................................................................... 24, 25

*Warth v. Seldin*,
    422 U.S. 490 (1975) ........................................................................................... 12

*Wilson v. Libby*,
    535 F.3d 697 (D.C. Cir. 2008) ......................................................................... 26

**Constitutional Provisions**

U.S. Const. art. II ............................................................................................... 11, 18

**Statutes**

5 U.S.C. § 101 ....................................................................................................... 29

5 U.S.C. § 102 ....................................................................................................... 29

5 U.S.C. § 551 ................................................................................................. 21, 22

5 U.S.C. § 551 *et seq.* ............................................................................................. 1

5 U.S.C. § 552a ............................................................................................. *passim*

5 U.S.C. § 701 ....................................................................................................... 32

5 U.S.C. § 704 ................................................................................................. 21, 26

5 U.S.C. § 706 ................................................................................................. 25, 34

5 U.S.C. § 2302 ..................................................................................................... 33

5 U.S.C. § 3161 ....................................................................................................... 3

31 U.S.C. § 1535 ............................................................................................. 29, 37

40 U.S.C. § 11303 ................................................................................................. 31

42 U.S.C. §§ 1320d–5–1320d–6 ........................................................................... 33

44 U.S.C. §§ 3551–58 ............................................................................................. 8

44 U.S.C. § 3551 ................................................................................................... 30

44 U.S.C. § 3553 ...................................................................................................... 31

44 U.S.C. § 3554 ...................................................................................................... 31

44 U.S.C. § 3561 ...................................................................................................... 32

44 U.S.C. § 3572 ................................................................................................. 8, 32

44 U.S.C.A. § 3551 .................................................................................................. 30

9

Federal Rule of Civil Procedure 12(b) ..................................................................... 1
Federal Rule of Civil Procedure 12(b)(1) ............................................................ 1, 9
Federal Rule of Civil Procedure 12(b)(6) ....................................................... 1, 2, 9

12

12 C.F.R §§ 1070.59 ........................................................................................... 8, 33
12 C.F.R. § 1070.4 .................................................................................................. 33
12 C.F.R. § 1070.41(a) ........................................................................................... 34
20 C.F.R. § 10.10 ............................................................................................... 8, 34
20 C.F.R. § 1010 ..................................................................................................... 33
45 C.F.R. part 5b .................................................................................................... 34

45 C.F.R. § 5b .................................................................................................... 8, 33

45 C.F.R. § 160.03 ................................................................................................... 8

Executive Order 14,158, 90 Fed. Reg. 8441 (Jan. 20, 2025) ............................ *passim*

**Other Authorities**

Delivering a Customer-Focused Government Through Smarter IT, WhiteHouse.gov (Aug. 11,
    2014), https://obamawhitehouse.archives.gov/blog/2014/08/11/delivering-customer-focused-
    government-through-smarter-it .................................................................................. 2

Gov't Accountability Off., 2024 Annual Report, GAO-24-106915 (May 2024),
    https://www.gao.gov/assets/gao-24-106915.pdf ...................................................... 11

## INTRODUCTION

This lawsuit attempts to restrict the President's constitutional prerogative to exercise politically accountable oversight of agency activities and to implement his policy priorities. Plaintiffs, a consortium of labor unions and not-for-profit organizations,[1] seek sweeping declaratory and injunctive relief that would bar employees of three separate agencies—the Department of Labor ("DOL"), the Consumer Financial Protection Bureau ("CFPB"), and the Department of Health and Human Services ("HHS")—whose responsibilities include liaising with the United States DOGE Service ("USDS") from accessing systems at these agencies which are necessary to perform their Presidentially-directed mandate of reducing waste, fraud, and abuse. Because the complaint fails to set out claims that can be properly adjudicated in this Court, and fails to show those claims are legally viable even if the Court had jurisdiction, the Court should dismiss the complaint in full pursuant to Federal Rule of Civil Procedure 12(b).

At the outset, Plaintiffs fail to properly allege standing—either associational or organizational—because alleged harms arising from the mere provision of access to other government employees are not the kind of injury that Article III of the Constitution contemplates being addressed in litigation. Plaintiffs allege no tangible harms arising from their allegations, and their vague assertions of intangible harm arising from the mere provision of access have no common-law analogue that would satisfy the Supreme Court's injury-in-fact test for standing.

Turning to the substance of the complaint, Plaintiffs fail to allege proper claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.* The complaint fails to allege the

---

[1] Plaintiffs are the American Federation of Labor and Congress of Industrial Organizations ("AFL-CIO"); American Federation of Government Employees, AFL-CIO ("AFGE")';American Federation of State, County, and Municipal Employees, AFL-CIO ("AFSCME"); Service Employees International Union, AFL-CIO ("SEIU"); Communication Workers of America, AFL-CIO ("CWA"); the Economic Policy Institute ("EPI"); the Virginia Poverty Law Center ("VPLC"); and the Economic Action Maryland Fund ("EAMF").

necessary "final agency action" for purposes of initiating APA review, for the provision of access is neither the sort of action the APA contemplates challenging, nor does it generate, on its own, the sort of consequences characteristic of a final agency action. Plaintiffs also cannot use the APA as a way to assert claims that would not be legally viable under the Privacy Act, 5 U.S.C. § 552a, a precisely defined remedial scheme that does not encompass the sort of broad, programmatic injunctive relief on behalf of organizations that Plaintiffs seek. Even if Plaintiffs had properly pled some type of Privacy Act claim, Defendants have fully complied with the Privacy Act and the APA, as well as the host of other statutes and regulations Plaintiffs point to in their First Amended Complaint. Finally, Plaintiffs cannot salvage the fundamental flaws in their APA and Privacy Act cases by bringing a freestanding *ultra vires* claim, as they do not fit into the narrow review window that theory leaves available to litigants.

Based on the foregoing, the Defendants respectfully request that the Court grant the instant motion and dismiss Plaintiffs' complaint under either Rule 12(b)(1) for lack of jurisdiction, or Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## BACKGROUND

### I.    The United States DOGE Service

The U.S. Department of Government Efficiency Service was originally founded as the U.S. Digital Service in 2014 under President Barack Obama with the goal of, among other things, improving the federal government's information technology and data organization systems. *See* Delivering a Customer-Focused Government Through Smarter IT, WhiteHouse.gov (Aug. 11, 2014), https://obamawhitehouse.archives.gov/blog/2014/08/11/delivering-customer-focused-government-through-smarter-it.

On January 20, 2025, President Donald Trump was sworn into office and issued Executive Order 14,158 renaming and reordering the U.S. Digital Service's priorities. Exec. Order No.

14,158, 90 Fed. Reg. 8441 (Jan. 20, 2025) ("USDS E.O."); *see also* First Am. Compl. ¶¶ 42–46, ECF No. 21 ("FAC"). Under the USDS Executive Order, the organization was renamed the U.S. Department of Government Efficiency Service ("USDS")[2] under the guidance of Administrator Amy Gleason. USDS E.O. §§ 3(a), 3(b). The President charged the newly rechristened USDS with instituting a "Software Modernization Initiative" to "improve the quality and efficiency of government-wide software, network infrastructure, and information technology (IT) systems." *Id.* § 4. To that end, USDS was directed to collaborate with Executive agencies to carry out its goal. *Id.* In doing so, the President admonished USDS to "adhere to rigorous data protection standards." *Id.* § 4(b). In turn, the Executive Order directs all agency heads to "take all necessary steps . . . to ensure USDS has full and prompt access to all unclassified agency records, software systems, and IT systems" to the "extent consistent with law." *Id.*

## II.    Procedural History

Plaintiffs filed suit on February 5, 2025. Compl., ECF No. 1 ("Original Compl."). Their Original Complaint named only one agency defendant, the Department of Labor ("DOL"), its Acting Secretary, and the two USDS organizations. Against these Defendants, Plaintiffs advanced seven causes of action: two *ultra vires* claims and five APA claims. Original Compl. ¶¶ 124–61. The same day, Plaintiffs filed a Motion for a Temporary Restraining Order. Mot. for a TRO, ECF No. 3; Mem. of Law in Support of Pls.' Mot. for a TRO, ECF No. 2 ("First TRO Mot.").

Defendants opposed the First TRO Motion. Defs.' Mem. in Opp'n to Pls.' Mot. for a TRO, ECF No. 16. The Court held a hearing on February 7, 2025, *see* Tr. of TRO Mot. Hr'g, ECF No. 19, and issued an order denying Plaintiffs' motion that same day, Order, ECF No. 18 ("Order

---

[2] The USDS Executive Order also created a "temporary organization" under 5 U.S.C. § 3161 entitled "the U.S. DOGE Service Temporary Organization." USDS E.O. § 3(b). For ease of reference, both the temporary and non-temporary organizations are referred to as "USDS."

Denying First TRO"). In its Order, the Court found that Plaintiffs were unlikely to succeed on the merits of their claim—and thus not entitled to emergency relief—because they failed to establish either associational or organization standing. Order Denying First TRO at 6–9.

In response, Plaintiffs filed their First Amended Complaint on February 11, 2025. FAC, ECF No. 21. In addition to adding several organizational plaintiffs, Plaintiffs also added two new agencies, the Department of Health and Human Services ("HHS") and the Consumer Finance Protection Bureau ("CFPB") (together with the DOL, "Agency Defendants"), as well as their acting leadership. *Id.* ¶¶ 15–23 (Plaintiffs); *id.* ¶¶ 24–31 (Defendants).

On February 12, 2025, Plaintiffs filed their second Motion for a Temporary Restraining Order. Pls.' Mot. for a Renewed TRO, ECF No. 29 ("Second TRO Mot."). Defendants opposed. Defs.' Mem. in Opp'n to Pls.' Renewed Mot. for a TRO, ECF No. 31. The Court held a hearing on February 14, 2025, Tr. of Mot. Hr'g, ECF No. 41, and again denied Plaintiffs' motion, Order, ECF No. 34 ("Order Denying Second TRO"). In its second order, the Court again found Plaintiffs had failed to establish likelihood of success on the merits of their claims as all the evidence gathered to date indicated that USDS employees were not "running rampant" at the Agency Defendants, and likely not violating the Privacy Act, APA, FISMA, or the other alleged statutes and regulations. *Id.* at 8–10.

## III.    The Amended Complaint

Despite its length, the pertinent allegations in the First Amended Complaint as to the Agency Defendants are succinct. As to the Labor Department, Plaintiffs allege that DOL employees were instructed "to provide access to any DOL system" the USDS-affiliated DOL personnel requested. FAC ¶ 69. The FAC incorporates the declaration of Mr. Adam Ramada. Ramada Decl., ECF No. 16-1. Mr. Ramada stated that, like any DOL employee, he "report[ed] to the Acting Secretary of Labor and [his] designees" and was "required to act in accordance with the

directions and guidance of the Department's senior leaders." *Id.* ¶ 7. He was also "required to be familiar with the legal rules governing access to Department of Labor data systems" and "to comply with those rules," consistent with the USDS E.O.'s data security mandate. *Id.* ¶ 6. Plaintiffs do not dispute these points, but instead only raise ancillary concerns which Mr. Ramada did not address. FAC ¶ 71.

Respecting HHS, Plaintiffs allege that USDS employees have been "on site at HHS locations since Monday, February 3," and "had access to [HHS] systems, including key payment and contracting systems," such as Centers for Medicare & Medicaid Services' ("CMS") Healthcare Integrated General Ledger Accounting System ("HIGLAS"). FAC ¶¶ 118–19 (quotation removed). Plaintiffs acknowledge that this access is being coordinated by senior, career staffers at CMS working to "ensur[e] appropriate access to CMS systems and technology." *Id.* ¶ 123 (quotation omitted). The FAC also alleges that USDS personnel have sought lists of probationary employees from the Centers for Disease Control and Prevention, as well as data on contracts awarded by the National Institutes of Health. *Id.* ¶¶ 126–27

As to CFPB, Plaintiffs allege that "three young men associated with DOGE" arrived at the agency on February 7, 2025 "and sought access to CFPB systems," including those that "manage the agency's human resources, procurement, and finance systems." *Id.* ¶ 147 (quotation omitted). As is the case at DOL and HHS, the current leadership of CFPB stated that USDS "personnel were authorized to begin work on all unclassified CFPB systems." *Id.* ¶ 150 (quotation omitted).

Plaintiffs allege a wide variety of purported injuries arising from the ability of USDS staff to access the Agency Defendants' informational systems. *Id.* ¶¶ 170–225. Those alleged injuries can be broken down into four categories.

5

*First*, Plaintiffs allege that USDS compromises their (and, by implication, their members') ability to present claims on behalf of their members. Most of these claims focus on systems maintained by DOL. For example, AFL-CIO "routinely brings complaints and claims under the Fair Labor Standards Act and the Occupational Safety and Health Act," as well as the Black Lung Benefits Act, and that these claims frequently include sensitive information. FAC ¶¶ 172, 176. They allege that "improper access" or "disseminat[ion]" of such information by USDS employees or information collected by DOL in the course of administering these programs "would cause irreparable injury to the AFL-CIO, its member organizations, and its members" because they might face "employment retaliation [] for providing this information to DOL, and others will be chilled from making such complaints in the future." *Id.* ¶ 175. The other union Plaintiffs make similar accusations about DOL systems.[3] The Virginia Poverty Law Center and Economic Action Maryland Fund also make similar allegations as to the ability of "consumers experiencing difficulties with financial products and services" to file complaints on CFPB's systems, alleging that "[if the integrity of the complaint system were compromised . . . [they] would not be able to recommend that consumers submit complaints that may contain confidential personal and financial data." Id. ¶¶ 222–23.

*Second*, four of the unions allege that USDS's activities at HHS put the data of medical patients at risk. SEIU's alleged harms encompass those of the Plaintiffs as a whole.[4] They have members who work in healthcare, who allege that "HHS's decision to recklessly grant access to its databases, which contain personal information and medical billing information puts" the privacy and confidentiality necessary to access quality health care at risk. *Id.* ¶¶ 196, 199, 202.

---

[3] FAC ¶¶ 182–85 (AFGE); ¶¶ 190–94 (SEIU); ¶¶ 203–04, 206–08 (CWA); ¶¶ 212–13 (AFT).
[4] *See also* FAC ¶¶ 187–88 (AFSCME); ¶¶ 209–10 (CWA); ¶¶ 214–16 (AFT).

They further allege that many of their members rely on the Medicaid program, and that HHS's "failure to safeguard" the information "will also chill some members from having candid discussions with their providers" about their care.  FAC ¶¶ 198, 201.

*Third*, some of the unions allege harms with respect to their own sensitive information retained by DOL as part of the statutory programs it administers.  For instance, AFL-CIO alleges that it submits information about its employee health benefit plan that may be subject to investigations by the Employee Benefits Security Administration ("EBSA"), which "collect[s] a wide range of sensitive information" about union employees and members; and that it is sometimes subject to investigation by DOL's Office of Labor-Management Standards ("OLMS").  *Id.* ¶¶ 177–78.  As to the latter, AFL-CIO alleges that "disclosure of these records would irreparably harm AFL-CIO" if information was provided "to unions' negotiating counterparts" or if the "PII of its members" was exposed.  *Id.* ¶ 178.  CWA makes similar allegations.  *Id.* ¶ 205.

*Finally*, Plaintiffs allege harm due to the loss of research information provided by Defendants.  Several Plaintiffs allege that they would be harmed by a loss, or compromise, of CFPB's public complaint database, as it is a valuable resource for information about consumer complaints.  *Id.* ¶¶ 217 (AFT), 224–25 (VPLC and EAMF).  Plaintiff Economic Policy Institute alleges that its work is reliant on "public government data from the Bureau of Labor Statistics, Bureau of Economic Analysis, and U.S. Census," and alleges that USDS's work could harm its mission by introducing "rapid, arbitrary, and ill-considered fundamental changes to [DOL's] work, responsibilities, and personnel." *Id.* ¶¶ 218–19.

Plaintiffs advance five causes of action: an *ultra vires* claim, three APA claims (one against each of the defendant agencies), and a Privacy Act claim.  *Id.* ¶¶ 226–69.  Specifically, FAC Count I is leveled at USDS, and alleges that USDS personnel are acting outside of their statutory bounds

by "direct[ing] operations or decisions at government agencies"—namely, by directing DOL, CFPB, and HHS employees to grant USDS personnel access to all informational systems at those agencies.  FAC ¶¶ 229–34.  Additionally, Plaintiffs claim USDS is exceeding its statutory authority by entering detail agreements sending USDS personnel to the Agency Defendants.  *Id.* ¶ 235.

The APA claims—Count II (DOL), Count III (CFPB), and Count IV (HHS)—are functionally the same, alleging that each agency has taken improper agency action by "chang[ing] its disclosure rules to allow for DOGE staff to access, at a minimum, all unclassified information systems within the" agency.  *Id.* ¶ 251.  Plaintiffs have dubbed each of these policies after their agency, *i.e.* the "DOL/CFPB/HHS DOGE Access Policy."  *Id.* ¶¶ 239 (DOL), 251 (CFPB), 258 (HHS).  According to Plaintiffs, these access decisions violate various privacy statutes and regulations, such as the Privacy Act, the Confidential Information Protection and Statistical Efficiency Act of 2002 ("CISPEA"), 44 U.S.C. § 3572(c)(1), the Federal Information Security Modernization Act of 2014 ("FISMA"), 44 U.S.C. § 3551–58, and internal regulations such as 20 C.F.R. § 10.10 (DOL); 12 C.F.R §§ 1070.59, 1070.40 (CFPB); and 45 C.F.R. §§ 5b, 160.103 (HHS).  FAC ¶¶ 241–45, 253–55, 260–62.

Finally, Count V is advanced against the Agency Defendants and USDS, and alleges a violation of the Privacy Act through improper disclosure from the Agency Defendants' systems of records to USDS.  *Id.* ¶ 267.

Based on these allegations, Plaintiffs seek a sweeping declaratory judgment that granting USDS personnel "access [to] agency systems and records containing sensitive information [is] unlawful."  *Id.* ¶ 270.  Plaintiffs seek an injunction requiring any USDS personnel granted access to an agency system to immediately return or destroy all copies of "unlawfully accessed . . . agency

systems and records;" remove any software they have installed; and instruct them to follow pre-existing laws regarding disclosure of information and conflicts of interest. *Id.* ¶¶ 270–76.

## LEGAL STANDARD

### I.    Rule 12(b)(1)

Federal courts are courts of "limited subject-matter jurisdiction" and have the power "to decide only those cases over which Congress grants jurisdiction." *Al-Zahrani v. Rodriguez*, 669 F.3d 315, 317 (D.C. Cir. 2012) (citing *Micei Int'l v. Dep't of Commerce*, 613 F.3d 1147, 1151 (D.C. Cir. 2010)). "Absent subject-matter jurisdiction over a case, the court must dismiss it." *Leopold v. Manger*, 630 F. Supp. 3d 71, 76 (D.D.C. 2022).

To survive a Rule 12(b)(1) motion, the party asserting subject matter jurisdiction—here Plaintiffs—bear "the burden of establishing it." *Jenkins v. Howard Univ.*, 123 F.4th 1343, 1347 (D.C. Cir. 2024) (quoting *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)). In considering assertions of subject matter jurisdiction, courts "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff[s] the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). At the same time, however, courts "need not accept inferences drawn by a plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept a plaintiff's legal conclusions." *Arabzada v. Donis*, 725 F. Supp. 3d 1, 9 (D.D.C. 2024) (citing *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015)).

### II.    Rule 12(b)(6)

Defendants also move to dismiss under Federal Rule of Civil Procedure 12(b)(6) for Plaintiffs' failure to state a claim upon which relief can be granted. The standard under Rule 12(b)(6) is a familiar one, in which a plaintiff must allege "sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, Rule 12(b)(6) "tests the legal sufficiency" of a plaintiff's claims, and dismissal is warranted where a plaintiff can prove "'no set of facts in support of his claim which would entitle him to relief.'" *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). In supporting their claims, plaintiffs must go beyond "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" as such barebones pleadings "do not suffice." *Ashcroft*, 556 U.S. at 678.

Movants—here Defendants—bear the burden of establishing Rule 12(b)(6) dismissal is appropriate. *Postal Police Officers Ass'n v. United States Postal Serv.*, 719 F. Supp. 3d 56, 61 (D.D.C. 2024). In reviewing a motion to dismiss, the Court takes "the operative complaint's well-pleaded factual allegations as true and draw[s] all reasonable inferences in the [plaintiff's] favor." *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020). But the Court's "'role is not to speculate about which factual allegations are likely to be proved after discovery.'" *Ho v. Garland*, 106 F.4th 47, 55 (D.C. Cir. 2024) (quoting *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 70 (D.C. Cir. 2015)). Rather, it is "to decide whether [a plaintiff's] 'alleged facts that, taken as true, render his claim . . . plausible.'" *Id.* (quoting *Harris*, 791 F.3d at 70).

## ARGUMENT

### I.    Plaintiffs' Suit Improperly Attacks The President's Article II Powers

By Executive Order on January 20, the President set in motion a "government-wide" initiative "to improve the quality and efficiency of . . . software, network infrastructure, and information technology (IT) systems." E.O. 14,158 § 4(a). The need for this urgent intervention is well documented. The Government Accountability Office's 2024 Annual Report identified the opportunity for the federal government to achieve billions of dollars in savings from implementing

various efficiency and effectiveness measures.  Gov't Accountability Off., 2024 Annual Report, GAO-24-106915 (May 2024), https://www.gao.gov/assets/gao-24-106915.pdf.  To meet that need, the Executive Order calls for federal employees in each federal agency to collaborate with USDS, an entity within the Executive Office of the President.  USDS E.O. § 4(b), (c).  As outlined in the attached declarations, federal employees are playing an important role in implementing the USDS E.O. at DOL, HHS, and CFPB.  Understood in the proper light, the implementation of the USDS E.O. is entirely unremarkable:  The President, as head of the Executive Branch, has identified a policy priority and has directed federal employees to implement it.  *See Seila Law, LLC v. CFPB*, 591 U.S. 197, 203–04 (2020) ("Under our Constitution, the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'  Because no single person could fulfill that responsibility alone, the Framers expected that the President would rely on subordinate officers for assistance." (quoting U.S. Const. art. II, § 1, cl. 1; *id.*, § 3)).

Plaintiffs have conjured a very different, more sinister, image of events.  The thrust of their narrative is that the federal employees implementing the USDS E.O. are actually outside those agencies and therefore not entitled to receive their information under the Privacy Act.  But that argument rests entirely on distinctions that do not exist in the relevant statutes.  As described in greater detail *infra*, the Privacy Act uses the term "employee" in establishing the parameters of access to personal information.  And the relevant employees are straightforwardly federal government employees of the three agencies named in the Amended Complaint.

Defendants explain below why Plaintiffs' claims fail for both threshold (jurisdictional, APA) and merits reasons.  Because this suit does not belong in federal court at all, there is no occasion for the Court to address the constitutional principles at which Plaintiff, seeking to impose its preferred policies through litigation, takes direct aim.  It is nevertheless appropriate to highlight

that those principles are, ultimately, implicated by the relief Plaintiffs seek. In particular, the United States Constitution requires that the federal bureaucracy be supervised and directed by political leadership that is ultimately accountable to the President. *Cf. Seila Law*, 591 U.S. at 223-24. Federal employees charged with carrying out executive functions may be called upon by the President to gather information, and to share that information with the President. *See United States v. Nixon*, 418 U.S. 683 (1974) ("The President's need for complete candor and objectivity from advisors calls for great deference from the courts."). An order restraining them from doing so would thus be an extraordinary interference with the President's ultimate constitutional obligation to oversee the Executive Branch.

If the statutes in question required such interference, they would raise serious constitutional questions. *Cf. Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440 (1989) (interpreting the Federal Advisory Committee Act to avoid separation of powers concerns). Because they do not require that result, *see infra*, the Court may leave these weighty questions for another day.

## II.    Plaintiffs Lack Standing

Standing is a central component of Article III's case-or-controversy requirement and demands that plaintiffs have "a personal stake in the outcome of the controversy [so] as to warrant his invocation of federal-court jurisdiction." *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (citation omitted). In cases seeking to enjoin government action, standing also serves important separation-of-powers concerns, as ensuring federal court jurisdiction prevents courts from exercising "general legal oversight of the other branches of Government." *Murthy v. Missouri*, 603 U.S. 43, 76 (2024) (cleaned up); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 423–24 (2021).

At its "irreducible constitutional minimum," the doctrine requires a plaintiff, as the party invoking the Court's jurisdiction, to establish three elements: (1) a concrete and particularized injury-in-fact, either actual or imminent, (2) a causal connection between the injury and

defendants' challenged conduct, and (3) a likelihood that the injury suffered will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The party invoking federal court jurisdiction "bears the burden of establishing each of those elements". *Hecate Energy LLC v. FERC*, 126 F.4th 660, 665 (D.C. Cir. 2025).

Plaintiffs in this case are labor unions or not-for-profit groups. As such, they must demonstrate that they possess either associational standing to bring claims on behalf of their members, or organizational standing to sue in their own right. The First Amended Complaint fails to establish either.

### A.  Plaintiffs Lack Associational Standing

To demonstrate associational standing, Plaintiffs must establish that "(1) at least one of [its] members has standing to sue in her or his own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires the participation of an individual member in the lawsuit." *Elec. Privacy Inf. Ctr. v. U.S. Dep't of Com.*, 928 F.3d 95, 101 (D.C. Cir. 2019) (citations omitted); *see also Ass'n of Flight Attendants—CWA, AFL-CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 464 (D.C. Cir. 2009). Plaintiffs fail to establish such standing. They have not demonstrated that their members have standing to bring litigation to challenge the provision of access to USDS personnel. Even if they could, they cannot demonstrate that the litigation could proceed without the participation of those members.

### 1.  Plaintiffs Have Not Pled That Any Of Their Members Have Article III Standing

To establish associational standing (and, indeed, any form of Article III standing), Plaintiffs must show that their individual members have suffered injury-in-fact—"actual or imminent, not speculative" harm, "meaning that the injury must have already occurred or be likely to occur soon." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). For injury to be imminent, it must

be "certainly impending"; mere "allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). In other words, injury cannot be established through "a 'highly attenuated chain of possibilities' predicated on 'guesswork as to how independent decisionmakers will exercise their judgment.'" *Indus. Energy Consumers of Am. v. FERC*, 125 F.4th 1156, 1163 (D.C. Cir. 2025) (quoting *Clapper*, 568 U.S. at 410).

An injury-in-fact must have a "close relationship" to a "harm traditionally recognized as providing a basis for a lawsuit in American courts[.]" *TransUnion*, 594 U.S. at 417, 424 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340–341 (2016)). While Congress "may elevate harms that exist in the real world before Congress recognized them to actionable legal status," at the same time, Congress "may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *Id.* at 426 (citations and quotations omitted). Congress may create "a statutory prohibition or obligation and a cause of action," but it may not override Article III's injury requirement. *Id.; see also Doe v. OPM*, 25-cv-234 (RDM), 2025 WL 513268, at *5 (D.D.C. Feb. 17, 2025) ("[N]ot every statutory violation results in the type of concrete injury-in-fact sufficient to support Article III standing.").

That need for an independent Article III injury is particularly important when considering intangible forms of injury, like the ones Plaintiffs assert in this case. Long before *TransUnion*, courts cautioned about according standing to those raising "only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large." *Lujan*, 504 U.S. at 573–74. *TransUnion* recognizes that "[v]arious intangible harms can . . . be concrete," but limits cognizable intangible injuries to those "with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American

courts," including when the plaintiff alleges harm related to the handling of her personal information. *TransUnion*, 594 U.S. at 425 (surveying common-law privacy torts and looking to "whether plaintiffs have identified a close historical or common-law analogue for their asserted injury").

Here, Plaintiffs' theory of injury-in-fact (for purposes of associational standing) is that their members have provided various forms of information to DOL, HHS, and CFPB with the expectation of confidentiality and privacy, and that Defendants' actions in allowing certain employees of the agency to access those records compromises the confidentiality of that arrangement in a way that injures them. Of course, *uses* of confidential information can give rise to standing. In the *TransUnion* decision, individuals who had a credit report that classified them as a terrorist disseminated to a third-party business were deemed to have Article III standing to press claims because they "suffered a harm with a 'close relationship' to the harm associated with the tort of defamation." 594 U.S. at 432–33. Another example would be an actual data breach, where individuals access confidential information without authorization. *See, e.g., In re OPM Data Sec. Breach Litig.*, 928 F.3d 42, 55 (D.C. Cir. 2019) (per curiam). Information in Defendants' systems could give rise to similar issues. For instance, SEIU's allegations touch upon a recently filed complaint against Waffle House. Plaintiffs allege that confidentiality is essential to such complaints because workers would otherwise fear retaliation by employers if their whistleblower status became known. FAC ¶¶ 191–92.

But Plaintiffs' challenge does not concern actual, or imminent, actions by Defendants that could be analogized to any of the situations noted above. They have not alleged that Defendants have released confidential information to injure or defame them, or intruded on the personal privacy of any particular individual, or that they have any intent to do so. Rather, their theory is

that the mere provision of access to their systems to USDS personnel creates a chilling effect on, *inter alia*, reporting violations and medical care such that the Court could enjoin the access of such personnel to all non-public systems at the defendant agencies.  The Court should reject that proposition.  The Supreme Court addressed a similar question in *TransUnion* by holding that inaccurate information on credit reports that were *not* shared with third parties was not, on its own, enough to give rise to Article III standing.  594 U.S. at 434.  And Defendants' arguments here are even stronger than the one that prevailed in *TransUnion*.  Access to Defendants' systems is being provided to individuals working to implement the President's USDS agenda across the federal government.  They are employees of the relevant agency, either directly or through a detail arrangement, and are working with the knowledge and approval of the leadership of those agencies. There is no injury, much less an injury that could be analogized to a common-law tort, that arises from the agency's mere provision of access, even if that access is contrary to the expectations of those who provided it to the agency.

Plaintiffs' complaint also raises concerns about how those working for USDS might use information once they access it, but these allegations rely on "a highly attenuated chain of possibilities," *Clapper*, 568 U.S. at 410, involving at least the following links: (1) Defendants give employees access to the particular systems that give rise to Plaintiffs' allegations of harm; (2) employees actually access the system to attain the sort of confidential information within those systems that give rise to Plaintiffs concerns; (3) employees use that information in a way that harms Plaintiffs' members, such as by leaking their confidential health information or tipping off an employer as to a whistleblower's identity.  Plaintiffs speculate that such a use of confidential information is more likely due to Defendants' actions, but "the mere existence, without more, of a governmental investigative and data-gathering activity that is alleged to be broader in scope than

16

is reasonably necessary for the accomplishment of a valid governmental purpose," is not enough for standing purposes. *Laird v. Tatum*, 408 U.S. 5, 10–11 (1972). In *Laird*, the plaintiffs alleged that a military database that had been collecting information to anticipate domestic disturbances had chilled their exercise of rights under the First Amendment by its mere existence. *Id.* at 10. The Supreme Court found plaintiffs lacked standing to bring this claim. If an alleged chilling effect "arise[s] merely from the individual's knowledge that a governmental agency was engaged in certain activities or from the individual's concomitant fear that, armed with the fruits of those activities, the agency might in the future take some *other* and additional action detrimental to that individual," it does not give rise to Article III standing. *Id.* at 11 (emphasis added).

Plaintiffs may counter that analogies to internal sharing of information do not hold as to individuals who were detailed from USDS to DOL, HHS, or CFPB because USDS does not have the legal authority to detail individuals to other agencies. But even if the Court assumes that Plaintiffs are correct that such details do not comply with the law (and they are not), it does not change the standing analysis. Under *TransUnion*, statutes cannot convert injuries that are not cognizable under Article III into the basis of a civil action. *TransUnion*, 594 U.S. at 426. USDS personnel are indisputably employees of the executive branch working to implement the USDS E.O. at the behest of the President and with the knowledge and approval of the leadership of the agencies. Whether or not the Economy Act permits USDS to provide detailees to the agencies does not change that fact. Plaintiffs are no more harmed, in real terms, by this arrangement than they would be if the USDS detailees were working for the agencies under another type of employment relationship. In the final analysis, agencies "wield executive power on [the President's] behalf," and the general proposition that information sharing with those advising the

President is actionable in federal court must be rejected.  *Seila Law LLC*, 591 U.S. at 204 (citing

U.S. Const. art. II and *Myers v. United States*, 272 U.S. 52 (1926)).

### 2.  The Participation Of Plaintiffs' Members In This Lawsuit Is Necessary As To Their Privacy Act Claims

The member-participation requirement for associational standing "guard[s] against the

hazard of litigating a case to the damages stage only to find the plaintiff lacking detailed records

or the evidence necessary to show the harm with sufficient specificity."  *United Food & Com.*

*Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 556 (1996); *see also Travelers United,*

*Inc. v. Hyatt Hotels Corp.*, No. 23-cv-2776 (CKK), 2025 WL 27162, at *12 (D.D.C. Jan. 3, 2025).

"The question" in these circumstances "is whether monetary relief can be awarded without

individualized proof."  *Travelers United*, 2025 WL 27162, at *12 (quoting *Air Transp. Ass'n of*

*Am. v. Reno*, 80 F.3d 477, 484 (D.C. Cir. 1996)).  The answer to that question is clearly "no" as to

Count V of the First Amended Complaint, which raises a direct Privacy Act claim.

Here, the Privacy Act establishes two constraints: (1) it is limited to "individuals" and not

organizations and (2) it provides only for damages, not injunctive relief.  5 U.S.C. § 552a(g)(4).

Courts have consistently found that organizational plaintiffs cannot maintain associational

standing on behalf of their members in Privacy Act claims.  *See Comm. In Solidarity with People*

*of El Salvador ("CISPES") v. Sessions*, 738 F. Supp. 544, 547 (D.D.C. 1990), *aff'd*, 929 F.2d 742

(D.C. Cir. 1991) ("[T]he Privacy Act does not confer standing upon organizations on their own or

purporting to sue on behalf of their members"); *see also SAE Prods., Inc. v. FBI*, 589 F. Supp. 2d

76, 83 (D.D.C. 2008); *Am. Fed'n of Gov't Emps. v. Hawley*, 543 F. Supp. 2d 44, 49–50 (D.D.C.

2008); *In re Dep't of Veterans Affs. Data Theft Litig.*, No. MDL 1796, 2007 WL 7621261, at *3

(D.D.C. Nov. 16, 2007).  Likewise, this Court should conclude that Plaintiffs lack standing to bring

any claims directly under the Privacy Act on their members' behalf.

**B. Plaintiffs Lack Organizational Standing**

Like an individual, an organization asserting standing on its own behalf must demonstrate that it has suffered a "concrete and demonstrable injury to [its] activities—with [a] consequent drain on [its] resources—constitut[ing] . . . more than simply a setback to the organization's abstract social interests." *Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 11 (D.C. Cir. 2011) (quoting *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1433 (D.C. Cir. 1995)). "'[T]he organization must allege that discrete programmatic concerns are being directly and adversely affected' by the challenged action." *Nat'l Taxpayers*, 68 F.3d at 1433 (quoting *Am. Legal Found. v. FCC*, 808 F.2d 84, 92 (D.C. Cir. 1987)). "An organization's ability to provide services has been perceptibly impaired when the defendant's conduct causes an 'inhibition of [the organization's] daily operations.'" *Food & Water Watch*, 808 F.3d at 919 (quoting *People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1094 (D.C. Cir. 2015)). Further, plaintiff organizations cannot "manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 402; *see also FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024).

Plaintiffs' allege a variety of injuries to their own interests as a result USDS personnel obtaining access to the defendant agencies' systems. None gives rise to standing.

*First*, some Plaintiffs allege that their own data, as opposed to that of their members, is put at risk by Defendants' access decisions, such as the data AFL-CIO provides about its employee benefit plans, or information about complaints against the unions retained by OLMS. But for the same reasons individuals do not have standing to challenge system-access decisions, the unions also lack standing to do so. The alleged harms are not concrete and are highly speculative. There is no standing based on mere "disagree[ment] with the judgments made by the Executive Branch with respect to the type and amount of information the [USDS] needs" and the mere allegation

19

"that the very existence of [USDS] produces a constitutionally impermissible chilling effect." *Laird*, 408 U.S. at 13.

*Second*, some Plaintiffs allege that Defendants' policies require them to divert their own resources to respond to fears of their members about a potential breach of confidentiality with respect to either claims against an employer or financial institution, or health-related information. For instance, VPLC and EAMF allege that if the "integrity" of CFPB's consumer complaint systems were "compromised," they may no longer be able to rely upon it, forcing them to "shift[] money and resources from [their] other core missions" in order to spend more time "providing direct assistance to their consumers" and "understanding emerging problems in the market." FAC ¶¶ 224–25. These latter roles are already part of those organizations' missions, such that exerting more effort towards them is not sufficient to demonstrate injury. *See Iowaska Church of Healing v. Werfel*, 105 F.4th 402, 412–13 (D.C. Cir. 2024). Moreover, these speculative arguments fall into the same legal obstacle as the first set of purported injuries: mere access provision, with the agency's authorization, is not actionable in federal court because it has no common-law analogue, *TransUnion*, 594 U.S. at 425, and the possibility that "the agency might in the future take some *other* and additional action detrimental to that individual" is not enough, on its own, to confer standing, *Laird*, 408 U.S. at 11 (emphasis added). Plaintiffs "cannot manufacture standing by choosing to make expenditures based on hypothetical future harm," and they certainly cannot do so based on speculation that they *might* make expenditures of time, effort, and money in the future to counteract those harms. *Clapper*, 568 U.S. at 402.

*Third*, AFT, EPI, VPLC, and EAMF all allege a form of informational injury, expressing concerns that databases maintained by DOL and CFPB in order to educate themselves about the economy or financial problems facing their members might be compromised. Even assuming that

type of injury is cognizable, those sorts of injuries are many steps removed from the access-provision decision at issue in this case.  The mere allegation of a heightened risk of information loss due to USDS personnel having theoretical access to these systems is not a basis to maintain a lawsuit in federal court as to all access by USDS personnel to all systems at these agencies.  These assertions of injury fail to establish standing for all the reasons noted above.

## III.    Plaintiffs Fail to State a Claim Upon Which Relief Can be Granted

### A.    Plaintiffs Fail to Establish Reviewable Final Agency Action

Only "final agency action" is reviewable under the APA.  5 U.S.C. § 704.  That requirement has two distinct parts.  *See Hill v. U.S. Dep't of the Interior*, 699 F. Supp. 3d 1, 18 (D.D.C. 2023).  First, the thing being challenged must be "agency action" recognized by the APA, which defines the term to include a specific "rule, order, license, sanction, relief, or the equivalent[.]"  5 U.S.C. § 551(13).  Such an action must be a "discrete" act, as plaintiffs are prohibited from leveling a "broad programmatic attack," *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004), against programs for which they are seeking "wholesale improvement . . . by court decree, rather than in the offices of the Department or the halls of Congress," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990).  As the *Lujan* Court explained, the APA is not intended to permit "general judicial review of the [an agency's] day-to-day operations."  *Id.* at 899; *see also Jones v. U.S. Secret Serv.*, 701 F. Supp. 3d 4, 17 (D.D.C. 2023) (quoting *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 19 (D.C. Cir. 2006)) ("the term [agency action] is not so all-encompassing as to authorize us to exercise judicial review over everything done by an administrative agency."), *appeal filed*, No. 23-5288 (D.C. Cir. Dec. 7, 2023).

Second, agency action must be "final."  The Supreme Court has laid out a two part test for finality, including that (1) "the action must mark the consummation of the agency's decisionmaking process," rather than being "of a merely tentative or interlocutory nature[;]" and

(2) "the action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow[.]" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). The APA expressly excludes "preliminary, procedural, or intermediate agency action[s] or ruling[s]." *Id.*

Plaintiffs allege final agency action in the form of Agency Defendants granting USDS personnel access to agency informational systems. *See* FAC ¶¶ 238 ("DOL has instructed employees to 'provide access to any DOL system they requested access to and not to worry about any security protocols'"); *id.* ¶ 251 ("CFPB has changed its disclosure rules to allow for DOGE staff to access, at a minimum, all unclassified information systems within the CFPB."); *id.* ¶ 258 ("HHS has similarly adopted a policy governing its authorization of DOGE personnel to access sensitive HHS systems and records"). Even taking these allegations as true, these actions do not constitute final agency action, as the mere granting of certain government employees access to informational systems does not fulfill any of these requirements.

### 1. Access Decisions Are Not A Reviewable "Agency Action"

The APA provides a list of five actions which it considers to be agency action: rules, orders, licenses, sanctions, and relief. 5 U.S.C. § 551(13). The Act further defines each of these terms. *Id.* §§ 551(4) ("rule"), (6) ("order"), (8) ("license"), (10) ("sanction"), (11) ("relief"). The issue for Plaintiffs is that, while construed expansively, these terms do not permit judicial review of the day-to-day operations of agencies. The D.C. Circuit has long recognized that this definition of agency action "is not so all-encompassing as to authorize us to exercise 'judicial review [over] everything done by an administrative agency.'" *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004) (quoting *Hearst Radio, Inc. v. FCC*, 167 F.2d 225, 227 (D.C. Cir. 1948)). For example, courts do not oversee agency training programs, *see Jones*, 701 F. Supp. 3d at 17, or "the common business of managing government programs," *Fund for Animals*, 460 F.3d at 20. Put another way, judicial review does not reach to the agency's "workaday" dealings. *Indep. Equip.*

*Dealers Ass'n*, 372 F.3d at 427.  The avoidance of such review implicates separation of powers concerns, but is also targeted at circumventing the "broad programmatic attacks" disfavored in agency review.  *Norton*, 542 U.S. at 64.  By limiting review to only certain things agencies do, the APA "'protect[s] agencies from undue judicial interference with their lawful discretion, and . . . avoid[s] judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve." *Jones*, 701 F. Supp. 3d at 17 (quoting *Norton*, 542 U.S. at 66).

Plaintiffs' alleged agency action is made up of decisions to grant individual employees access to their systems.  But agencies make thousands of such decisions every day, whenever they decide to open an e-mail account for an employee, staff an employee on a particular matter, or decide that an employee has the relevant training to access systems or participate in certain programs.  A court could not review such decisions without bringing within the scope of the APA virtually every aspect of an agency's relationship with its employees, a result the "final agency action" limitation of the APA is designed to prevent.  Interpreting the APA in this manner would mark a substantial intrusion on the prerogatives of the Executive Branch, *see supra* at Argument, § I, and the Court should reject a reading of the APA that requires such a result

### 2.  Access Decisions Do Not Conclusively Set The Rights And Obligations Of The Regulated Public

The First Amended Complaint also fails to demonstrate how providing a new employee with system access necessary to his or her functions "consummat[es]" the hiring agency's decisionmaking process in such a way that legal consequences flow to Plaintiffs.  *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016).  As the D.C. Circuit has explained, this prong of the *Bennet* test is measured by the "actual legal effect (or lack thereof) of the agency action in question on regulated entities." *Nat'l Min. Ass'n v. McCarthy*, 758 F.3d 243, 252 (D.C. Cir. 2014).  For example, the D.C. Circuit has found no final agency action where the challenged act

"impose[d] no obligations, prohibitions or restrictions on regulated entities," and "[did] not subject them to new penalties or enforcement risks[.]"  *Sierra Club v. EPA*, 955 F.3d 56, 63 (D.C. Cir. 2020).  The fact that such a decision may have significant *practical* consequences for the regulated public does not change the analysis.  Adverse effects "accompany many forms of indisputably non-final government action.  Initiating an enforcement proceeding against a company, for example, may have a devastating effect on the company's business, but that does not make the agency's action final."  *Air Brake Sys., Inc. v. Mineta*, 357 F.3d 632, 645 (6th Cir. 2004).

Here, the data access decisions alleged have no "direct and appreciable legal consequences" for any of the Plaintiffs.  *See Cal. Cmtys. Against Toxics v. EPA*, 934 F.3d 627, 640 (D.C. Cir. 2019).  Indeed, as explained above, such decisions do not even give rise to an Article III injury, much less the sort of "legal consequences" that could ground an APA action.  Plaintiffs would need to plead facts that demonstrate USDS personnel not only have a right to access their members' information, but that the information was actually disclosed to them and steps were taken with that information that had legal consequences on Plaintiffs and their members.  By analogy, an agency's decision to give an employee access to its systems is not itself final agency action, even if the employee might conceivably use the computer to effect final agency action (e.g., in approving or denying benefits) at some later date.  Plaintiffs' claim that they are potentially harmed by the mere provision of access does not undermine this analysis; many unreviewable government actions have a significant effect on the public.

*Venetian Casino Resort, LLC v. EEOC*, 530 F.3d 925 (D.C. Cir. 2008), on which Plaintiffs have previously relied, does not compel a contrary conclusion.  There, the EEOC was held to have a concrete policy (albeit informal) of *disclosing* confidential information, including trade secrets, without providing notice to the submitter.  *Id.* at 929–30.  The D.C. Circuit concluded that a

decision "to disclose [a regulated party's] confidential information without notice" satisfied the requirements for reviewable final agency action. *Id.* at 931. By contrast, the decision at issue in this case is about an agency giving information access to other government employees at the direction of the responsible, not third parties. Such access decisions as to those working with on agency business, with the agency's consent and approval, do not have legal consequences for Plaintiffs in the way that third-party disclosure of confidential commercial information would.

Rendering data access decisions "final agency action" would sweep swathes of routine agency business within the APA's ambit, even though such decisions have no legal consequences for Plaintiffs or their members without some further step by the agency. As such, the Court should dismiss the APA claims for failure to plead a reviewable "final agency action" pursuant to § 704.

### B. Defendants' Decision to Grant Access To Agency Informational Systems Does Not Violate 5 U.S.C. § 706(2)(C) and (D).

Plaintiffs allege that, by granting of access to USDS personnel to agency informational systems, the Agency Defendants have violated several statutes and regulations, and thus the APA. *See* FAC ¶¶ 241–45, 249 (DOL); 253–55, 257 (CFPB); 260–62, 264 (264) (citing 5 U.S.C. § 706(2)(C)). These statutes and regulations include the Privacy Act, CISPEA, FISMA, HIPPA, and various internal regulations. *See supra* at Background § III. In its order denying Plaintiffs' second motion for a temporary restraining, the Court found that Plaintiffs were unlikely to succeed on the merits of these claims. *See* Order Denying Second TRO at 7–10. For the same reasons, the Court should dismiss these claims pursuant to Rule 12(b)(6).

#### 1. Plaintiffs Cannot Assert Violations Of The Privacy Act On Behalf Of Their Members Through The APA.

Plaintiffs' central contention is that the Agency Defendants' decision to grant USDS personnel access to agency information systems runs contrary to the APA because it violates the Privacy Act. FAC ¶¶ 241, 253, 260. But Plaintiffs cannot use the APA to circumvent the Privacy

Act's carefully drawn limitations on the types of relief they can seek.  For this reason, both their APA and Privacy Act claims fail.  *See id.* ¶¶ 266–69, 270–76.

The APA provides a vehicle for review only in circumstances where "there is no other adequate remedy."  5 U.S.C. § 704; *see also Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) (Section 704 "also makes it clear that Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action.").  The Privacy Act provides a "comprehensive remedial scheme" for injuries arising out of the inappropriate dissemination of private information about individuals.  *Wilson v. Libby*, 535 F.3d 697, 703 (D.C. Cir. 2008) (citing *Chung v. Dep't of Justice*, 333 F.3d 273, 274 (D.C. Cir. 2003)).

This rule holds true where a statutory review scheme only provides for review of issues by certain parties; other parties are presumptively precluded from obtaining review of those issues under the APA.  *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349 (1984) ("[W]hen a statute provides a detailed mechanism for judicial consideration of particular issues at the behest of particular persons, judicial review of those issues at the behest of other persons may be found to be impliedly precluded."); *see also Dew v. United States*, 192 F.3d 366, 372 (2d Cir. 1999).  It is also true even where the plaintiff may not succeed on the merits of her claim under the alternative statutory review procedure; the existence of that procedure alone suffices.  *See Rimmer v. Holder*, 700 F.3d 246, 261–62 (6th Cir. 2012); *Jones v. U.S. Dep't of Hous. & Urban Dev.*, No. 11 CIV. 0846 (RJD) (JMA), 2012 WL 1940845, at *6 (E.D.N.Y. May 29, 2012) (reasoning that an alternative was adequate "whether or not relief is ultimately granted").

Section 552a(g) of the Privacy Act establishes the narrow causes of action for which an "individual may bring a civil action against the agency."  *See* 5 U.S.C. § 552a(g)(1).  These causes of actions are:

(1) when an agency "makes a determination . . . not to amend an individual's record in accordance with his request," ("Amendment Action"), *id.* § 552a(g)(1)(A);
(2) when an agency refuses to comply with an individual's request for access to her records, ("Access Action"), *id.* § 552a(g)(1)(B);
(3) when the agency fails to maintain an individual's records "with such accuracy, relevance, timeliness, and completeness" as is necessary for a government action and "consequently a determination is made which is adverse to the individual" ("Benefits Action"), *id.* § 552a(g)(1)(C); or
(4) where the government "fails to comply with any other provision of this section . . . in such a way as to have an adverse effect on an individual," ("Other Action") *id.* § 552a(g)(1)(D).

Plaintiffs purport to plead an "Other Action." FAC ¶ 268. But the Privacy Act only provides for monetary damages for Other Actions, and then only for individuals. *See* 5 U.S.C. § 552a(g)(4); *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1122 (D.C. Cir. 2007) (citing *Doe v. Stephens,* 851 F.2d 1457, 1463 (D.C.Cir.1988)) ("We have held that only monetary damages, not declaratory or injunctive relief, are available to § 552a(g)(1)(D) plaintiffs[.]"). Prospective relief, such as that sought by Plaintiffs, is reserved for Amendment or Access Actions. 5 U.S.C. § 552a(g)(2), (3). The Privacy Act does not permit organizations to sue for injunctive relief over a decision to provide access to particular government employees.

Plaintiffs' FAC concedes their claims and pleaded relief cannot be squeezed into this statutory scheme. *See* FAC ¶¶ 241, 253, 260 ("Although the Privacy Act provides a cause of action for money damages where an agency's noncompliance has "an adverse effect on an individual," *see* 5 U.S.C. § 552a(g)(1)(D), such relief is not available to Plaintiffs . . .."). But Plaintiffs cannot circumvent the Privacy Act's carefully drawn constraints by raising purported Privacy Act violations through the APA. Denying Plaintiffs' attempt to obtain broader relief than that provided by the Privacy Act is consistent with the bedrock principle that "where [a] statute provides for certain special types of equitable relief but not others, it is not proper to imply a broad right to injunctive relief." *Parks v. IRS*, 618 F.2d 677, 684 (10th Cir. 1980) (citing *Cell. Assocs., Inc. v.*

*Nat'l Insts. of Health*, 579 F.2d 1155, 1161-62 (9th Cir. 1978)). Accordingly, the Court should dismiss Plaintiffs' APA claims in Counts II, III, and IV to the extent they are premised on allegations that Defendants' actions violate the Privacy Act.

### 2. Provision of Access To Those Implementing the USDS EO Is Not Contrary To The Privacy Act

The Privacy Act establishes a general ban on the disclosure of the "records" of an "individual." *See* 5 U.S.C. §§ 552a(a)(2), (4) (defining "record" and "individual"); *id.* § 552a(b). But the Act broadly exempts from this rule disclosure to "those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties." 5 U.S.C. § 552a(b)(1). At the heart of Plaintiffs' suit is the erroneous allegation that individuals working to implement the USDS Executive Order are somehow outside this category of federal employees. The claim is unavailing.

As the USDS Executive Order establishes, agencies are to create so-called DOGE teams "*within* their respective Agencies." USDS E.O. § 3(c) (emphasis added). Thus, to the extent that Plaintiffs complain of access provision to these future teams, by their terms they comply with the Privacy Act's (b)(1) exception as being "employees *of the agency*." 5 U.S.C. § 552a(b)(1) (emphasis added). Members of these teams (which may include detailees), as well as other personnel tapped to implement the USDS Executive Order, also fall into the Privacy Act's definition of "employee." *See* Defs.' Mem in Opp'n to Pls.' Renewed Mot. for a TRO at 24–25, ECF No. 3. Indeed, Plaintiffs' FAC contains no allegation that "DOGE Personnel" are improperly hired, appointed, or are not "employees." *See generally* FAC, ECF No. 21.

Plaintiffs do not push the argument that, generally, detailees at an agency are not "of the" agencies. *See* Defs.' Mem in Opp'n to Pls.' Renewed Mot. for a TRO at 25–26, ECF No. 31. For good reason. As Courts have recognized, detailees qualify as employees of an agency. *See Judicial*

*Watch v. Dep't of Energy*, 412 F.3d 125, 131–32 (D.C. Cir. 2005); *Freeman v. EPA*, No. 02-0387, 2004 WL 2451409, at *4–5 (D.D.C. Oct. 25, 2004) (finding that disclosure of plaintiffs' drug testing schedules and results by EPA OIG to an EPA-hired DOD investigator did not violate Privacy Act because "according to the OMB 1975 Guidelines, an agency that hires a member of another agency to serve in a temporary task force or similar, cross-designated function can share otherwise protected information with that hired person and still satisfy exception (b)(1)"); *cf. Ciralsky v. CIA*, 689 F. Supp. 2d 141, 155 (D.D.C. 2010) (permitting disclosure to "a group of Agency contractors engaged specifically to conduct an official CIA investigation into allegations of anti-Semitism at the Agency"); *Mount v. U.S. Postal Serv.*, 79 F.3d 531, 532, 533 (6th Cir. 1996) (describing "physician under contract with [United States Postal Service]" as an employee or agent of Postal Service under § 552a(b)(1)); *Laible v. Lanter*, 91 F.4th 438, 442 (6th Cir. 2024) (local employee detailed to federal task force was a federal employee for purposes of the Westfall Act).

To the extent they dispute that those working to carry out the USDS EO are not employees, Plaintiffs claim that USDS does not have authority to send detailees in the first place, since it is not a statutorily created agency. See FAC ¶ 245. But USDS possesses authority to send details under the Economy Act of 1932, which permits entities within the Executive Branch to exchange goods and services with each other, including personnel. 31 U.S.C. § 1535(a). This authority extends to any "department, agency, or instrumentality of the United States Government," *id.* § 101, and includes an "instrumentality in the executive branch." *Id.* § 102.

Regardless of whether these detailing arrangements are proper, the Privacy Act is not a lever for a court to inquire into the personnel practices underlying a particular individual's employment. Plaintiffs do not stand within the zone of interests of statutes, such as the Economy Act, that regulate the relationship between different parts of the Executive Branch. *See Lexmark*

29

*Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014). For example, if a plaintiff could show that an agency failed to comply with competitive services procedures in hiring a particular employee, and then shared sensitive information with that employee, a court would not be justified in finding a Privacy Act violation on the ground that the individual was not a bona fide "employee." So too here. Plaintiffs, who lack the ability to bring Privacy Act claims in the first place because they are not "individuals," should not be permitted to use the APA to assert Privacy Act violations on behalf of individuals that are, in term, premised on violations of statutes that could not possibly "encompass[] [their] particular claim[s]" against the federal government. *Id.*

### 3.  Access Is Not Contrary To Any Of The Identified Statutes or Regulations

Plaintiffs also fail to plead actionable APA claims for violation of their other various statutes and regulations they cite in the First Amended Complaint.

*FISMA.* The D.C. Circuit has examined the statutory structure of FISMA and suggested in extensive dicta that the choices an agency makes in carrying out its FISMA obligations are not subject to judicial review. *See Cobell v. Kempthorne*, 455 F.3d 301, 314 (D.C. Cir. 2006) ("Notably absent from FISMA is a role for the judicial branch. We are far from certain that courts would ever be able to review the choices an agency makes in carrying out its FISMA obligations."). A close reading of the statute confirms the correctness of the D.C. Circuit's observations.

Congress passed FISMA to "provide a comprehensive framework for ensuring the effectiveness of information security controls over information resources that support Federal operations and assets." 44 U.S.C. § 3551(1). But Congress specifically "recognize[d] that the selection of specific technical hardware and software information security solutions should be left to individual agencies from among commercially developed products." 44 U.S.C.A. § 3551(6). Accordingly, while FISMA imposes general obligations on agencies to develop and implement information security protections, it offers no specific prescriptions for the tools or methods

required—which is unsurprising, considering the rapidly evolving nature of both technology and cyber threats. Instead, Congress vested agencies with broad discretion to adopt "security protections commensurate with the risk and magnitude of the harm" resulting from cyber threats. 44 U.S.C. § 3554(a)(1)(A).

FISMA gives agencies latitude to develop security policies and procedures that are "appropriate" and "cost-effectively reduce information security risks to an acceptable level." *Id.* § 3554(b)(2)(B). To achieve its goals, FISMA assigns exclusive responsibility for overseeing the management and security of information systems of civilian agencies to the Director of the Office of Management and Budget. FISMA mandates that the OMB Director "shall oversee agency information security policies and practices, including . . . overseeing agency compliance with the requirements of this subchapter [of FISMA.]" *Id.* § 3553(a)(5). FISMA specifically authorizes the OMB Director "to enforce accountability for compliance," id., through various mechanisms, including by "tak[ing] any action that the Director considers appropriate, including an action involving the budgetary process or appropriations management process." 40 U.S.C. § 11303(b)(5)(A). Additionally, the Director must review each agency's security programs at least annually and approve or disapprove them. 44 U.S.C. § 3553(a)(5). Finally, he must report to Congress annually on the "effectiveness of information security policies and practices during the preceding year." *Id.* § 3553(c).

On the whole, FISMA reflects Congress's judgment that agencies are best suited to determine what measures they should take to ensure compliance, and decisions by agencies as to its implementation are not subject to APA review. The APA explicitly excludes from judicial review those agency actions that are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). "Because the APA does not apply to agency action committed to agency discretion by

law, a plaintiff who challenges such an action cannot state a claim under the APA." *Oryszak v. Sullivan*, 576 F.3d 522, 525 (D.C. Cir. 2009). To determine whether a matter has been committed to agency discretion, the D.C. Circuit considers "the language and structure of the statute that supplies the applicable legal standards for reviewing that action" and "the nature of the administrative action at issue." *Sierra Club v. Jackson*, 648 F.3d 848, 855 (D.C. Cir. 2011) (citing *Sec'y of Labor v. Twentymile Coal Co.*, 456 F.3d 151, 156 (D.C. Cir. 2006)); *see also Drake v. FAA*, 291 F.3d 59, 70 (D.C. Cir. 2002).

*CISPEA.* In relation to Plaintiffs' CISPEA claim, Plaintiffs have not shown that the DOL employees have accessed any BLS data, let alone BLS data "acquired by an agency under a pledge of confidentiality for exclusively statistical purposes." 44 U.S.C. § 3572(c)(1). At most they allege that "[o]n information and belief, USDS personnel are likely to demand access to BLS data." FAC ¶ 243. Plaintiffs have not shown that the "disclosure" prohibited by § 3572(c)(1) includes the type of intra-government disclosure alleged here. Nor have they pled that the uses to which Defendants would put such information are "non-statistical" in nature. *See* 44 U.S.C. § 3561(8), (12) (defining "statistical" and "non-statistical" purpose). CISPEA is only violated if data is used for a purpose other than "the description, estimation, or analysis of the characteristics of groups, without identifying the individuals or organizations that comprise such groups." *Id.*

*HIPAA.* Numerous courts in this jurisdiction have found that HIPAA does not provide a private cause of action to individuals. *See Lee-Thomas v. LabCorp*, 316 F. Supp. 3d 471, 474 (D.D.C. 2018); *Mathews-Baker v. Reynolds & Assocs., Inc.*, 282 F. Supp. 3d 251, 254 n.3 (D.D.C. 2017); *Logan v. Dep't of Veterans Affs.*, 357 F. Supp. 2d 149, 155 (D.D.C. 2004). This is the case because HIPAA leaves enforcement to HHS and individual states' attorneys general. *See* 42 U.S.C. §§ 1320d-5–1320d-6. Thus, Plaintiffs' HIPAA claims fail for two reasons: first, as their members

could not bring a HIPAA cause of action for alleged improper disclosure of protected information, Plaintiffs likewise cannot bring claims on their behalf.  Second, because HIPAA provides a comprehensive enforcement scheme of its own, APA review is precluded.  5 U.S.C. § 704.

*Other Provisions.*  Plaintiffs' complaint also relies upon various privacy-related regulations promulgated by the agencies.  As to DOL, Plaintiffs rely upon 20 C.F.R. § 10.10, which provides that DOL claims for benefits "are considered confidential and may not be released . . . or otherwise disclosed[.]"  That command includes an exception: ". . . except as provided in . . . the Privacy Act of 1974[.]"  As shown above, provision of access to USDS personnel comports with Privacy Act Section 552a(b)(1).  The same goes for 12 C.F.R. § 1070.59 ("The CFPB will not disclose any record about an individual . . . unless the disclosure is authorized by 5 U.S.C. 552a(b).") and HHS's regulations implementing the Privacy Act, 45 C.F.R. § 5b.

As to 12 C.F.R. § 1070.4, which prohibits CFPB employees for disclosing records to "any person who is not an employee of the CFPB," Plaintiffs have failed to plead an extra-agency disclosure, as the relevant personnel are employees.  Plaintiffs also allege that DOL's access policy violates 5 U.S.C. § 2302(b)(9)(D), which prohibits threatening a federal employee with termination for "refusing to obey an order that would require the [employee] to violate a law . . .."  As explained above, Defendants' access policy does not violate the law because it has merely accorded employees access to its systems, which is not unlawful.

### 4.  Defendants Did Not Need To Engage In Notice-and-Comment Rulemaking To Provide Record System Access

Plaintiffs assert that the decision to give employees implementing the USDS EO access to agency systems effectively revoked their preexisting regulatory guidance about which individuals can access confidential information at an agency, a move that required Defendants to engage in notice-and-comment rulemaking first.  FAC ¶¶ 248, 256, 263.  The Court should simply dismiss

these claims.  Defendants have not disclaimed, formally or otherwise, their regulations about system access.  The sharing of confidential information with individuals working for the agency, consistent with the Privacy Act's exception for disclosures to government employees, is permitted under each agency's regulations.  *See, e.g.,* 20 C.F.R. § 10.10 (FECA information may not be released, inspected, copied, or otherwise disclosed except as provided in, inter alia, the Privacy Act); 12 C.F.R. § 1070.41(a) (prohibiting disclosure of confidential CFPB information to those without an employment, contracting, or consulting relationship to the agency and who lack a need to know the information); 45 C.F.R. part 5b (HHS's Privacy Act regulations).  As explained above, Defendants have an employment relationship with those carrying out the USDS EO.  As such, they have not withdrawn their guidance; they have merely applied it.  As such, the Court should dismiss Counts II, III, and IV to the extent they raise claims under 5 U.S.C. § 706(2)(D).

### C.  Plaintiffs' Freestanding Privacy Act Claim Should Be Dismissed.

Count V of the First Amended Complaint is a freestanding Privacy Act claim arising under § 552a(g)(1)(D).  FAC ¶¶ 265–69.  It must be dismissed for numerous reasons.  First, only "the *individual*" has the right to "bring a civil action against the agency" under the Privacy Act.  5 U.S.C. § 552a(g)(1).  "[C]orporations and other organizations do not generally have any Privacy Act rights," even when they purport to sue on behalf of their own members.  *SAE Prods.*, 589 F. Supp. 2d at 83); *see also Pub. Emps. For Env't Resp. v. EPA*, 926 F. Supp. 2d 48, 55 (D.D.C. 2013) (Privacy Act "extends no rights to organizations or corporations"); *CISPES*, 738 F. Supp. at 547 ("[T]he Privacy Act does not confer standing upon organizations on their own or purporting to sue on behalf of their members.").  Second, assuming a proper plaintiff, such actions are only available if a plaintiff can establish (1) "actual damages" and (2) that the agency acted in an "intentional or willful" manner, neither of which Plaintiffs allege in their First Amended Complaint.  *See* 5 U.S.C.

§ 552a(g)(4).  Finally, as discussed in Argument section II.B.2, *supra*, Plaintiffs have also failed to allege any actual violation of the Privacy Act.  Accordingly, Count V should be dismissed.

### D.  Plaintiffs Fail to Plead the Exceedingly High Bounds of *Ultra Vires* Review.

Ultra vires review is a "a doctrine of last resort," *Schroer v. Billington*, 525 F. Supp. 2d 58, 65 (D.D.C. 2007), and the equivalent of "a Hail Mary pass—and in court as in football, the attempt rarely succeeds," *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009).  More specifically, ultra vires review of agency action is only available when an agency's error is "patently a misconstruction of [statute;]" "when the agency has disregarded a specific and unambiguous statutory directive[;]" or "when the agency has violated some specific command of a statute."  *Griffith v. Fed. Labor Relations Auth.*, 842 F.2d 487, 493 (D.C. Cir. 1988) (internal citations and quotations omitted).  "Garden-variety errors of law or fact are not enough."  *Id.*

Both the Supreme Court and D.C. Circuit have made clear that an *ultra vires* claim is unavailable where an alternative remedial forum exists in which a plaintiff may pursue the challenge.  *See Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991) (non-statutory review is available only when a party would be "wholly deprive[d] . . . of a meaningful and adequate means of vindicating its statutory rights"*); Lepre v. Dep't of Labor*, 275 F.3d 59, 72 (D.C. Cir. 2001) (a "critical" requirement for ultra vires review is "the lack of any alternative means of judicial review for the plaintiffs"); *see also Nyunt*, 589 F.3d at 449.

Into this exceedingly difficult standard, Plaintiffs attempt to squeeze two alleged USDS actions which they claim exceed all permissible bounds: (1) while USDS has "no authority in law to direct operations or decisions at government agencies[,]" USDS personnel have, nevertheless, "direct[ed] DOL, CFPB, or HHS officials to grant DOGE personnel access to sensitive systems[,]" FAC ¶¶ 229, 233; and (2) USDS has detailed personnel to the Agency Defendants despite having "no authority to enter inter-agency personnel agreements[,]" *id.* ¶ 235.

Under this standard, Plaintiffs free-standing *ultra vires* claim fails for three reasons:

*First*, Plaintiffs' *ultra vires* claims merely repackage their claims under the APA and the Privacy Act. For the reasons explained above, Congress established a specific scheme for evaluating these claims. Because alternative forms of review were contemplated by Congress, *ultra vires* review is precluded.

*Second*, Plaintiffs have failed to plead a specific statutory bound which USDS has allegedly exceeded. The USDS Executive Order provides broad authority to request access to agency data, consistent with applicable law. *See* USDS E.O. § 4(b) ("Agency Heads shall take all necessary steps . . . to ensure USDS has full and prompt access to all unclassified agency records, software systems, and IT systems."). In any event, as discussed, the relevant employees at DOL, CFPB, and HHS are employed by those agencies. As the Plaintiffs point out in their FAC, all access is granted and approved by the Agency Defendants, not USDS. Plaintiffs have pointed to no statutory authority which prohibits asking for access. USDS has no authority to demand that agencies grant or deny access to the agencies' own employees, and Plaintiffs offer no support for their claim that USDS is acting outside the advisory role established in the executive orders. *See* USDS E.O. § 4.

*Third*, to the extent Plaintiffs claim the detailing of employees is *ultra vires*, this is far from the "extreme agency error where the agency has stepped so plainly beyond the bounds of its statutory authority, or acted so clearly in defiance of it, as to warrant the immediate intervention of an equity court*." Fed. Exp. Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 764 (D.C. Cir. 2022) (internal citations and quotations omitted). As explained above, Plaintiffs have not established that they are within the Economy Act's zone of interest, as the Act primarily deals with inter-governmental relations. *See Lexmark*, 572 U.S. at 127 (2014). Even if they were, the Economy

Act permits entities within the government, including the executive branch, to exchange goods and services. *See* 31 U.S.C. § 1535. This is not the stuff of egregious *ultra vires* review.

## CONCLUSION

For all the foregoing reasons, the Court should grant Defendants' Motion and dismiss Plaintiffs' First Amended Complaint.

Dated: February 28, 2025                    Respectfully submitted,

                                            YAAKOV M. ROTH
                                            Acting Assistant Attorney General
                                            Civil Division

                                            MARCIA BERMAN
                                            Assistant Branch Director
                                            Civil Division, Federal Programs Branch

                                            */s/Michael J. Gerardi*
                                            Michael J. Gerardi
                                            Senior Trial Counsel (DC Bar No. 1017949)
                                            Benjamin S. Kurland
                                            Trial Attorney (D.C. Bar No. 1617521)
                                            United States Department of Justice
                                            Civil Division, Federal Programs Branch
                                            1100 L St. NW
                                            Washington, DC 20005
                                            Tel: (202) 616-0680
                                            Fax: (202) 616-8460
                                            E-mail: Michael.J.Gerardi@usdoj.gov

                                            *Counsel for Defendants*