IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>DEPARTMENT OF LABOR et al.,<br><br>    Defendants. | Case No. 1:25-cv-00339-JDB<br><br>Judge John D. Bates |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR RECONSIDERATION**

**INTRODUCTION**

This Court has denied two motions for a temporary restraining order in this case on the basis of Plaintiffs' failure to demonstrate a substantial likelihood of success on any of their claims. The closest legal question, across those two orders, was Plaintiffs' contention that individuals detailed from the United States DOGE Service ("USDS") to the Defendant Agencies were not properly "employees" of those agencies for purposes of the Privacy Act, because USDS is not an "agency" under the Economy Act. The Court concluded that Plaintiffs had not met their burden on that question and denied the motion. But Plaintiffs requested, and obtained, permission to propound pre-answer, expedited discovery against Defendants in order to determine the existence and scope of irreparable harm caused by these detailees' exposure to personally identifiable information or personal health information on Defendants' systems.

The factual predicates that led the Court to this conclusion have now changed. As of March 5, 2025, USDS is no longer detailing employees to any of the agency Defendants in order to implement the President's Department of Government Efficiency Executive Order ("DOGE E.O."). Thus, all individuals performing such work will be employees of the agencies themselves or detailees from another agency that is indisputably subject to the Economy Act. That change, on Defendants' part, should obviate the need for expedited discovery prior to the resolution of a motion to dismiss. Plaintiffs resist this conclusion, but the justifications for pre-answer discovery were intimately connected to a set of facts that is no longer in play. And absent their assertions of present or future harm due to disclosure of sensitive information to non-employees under the Economy Act, Plaintiffs' alleged injuries are unlikely to constitute a sufficient basis for the extraordinary remedy of a preliminary injunction. *Alliance for Retired Ams. v. Bessent*, No. 25-cv-0313 (CKK), 2025 WL 740401, at *19–24 (Mar. 7, 2025). That conclusion is especially strong

1

as to the discovery directed to USDS, which is a component of the Executive Office of the President and should not be subjected to discovery over a practice in which it is no longer engaged.

For these reasons, the Court should grant Defendants' motion and issue a protective order from Plaintiffs' proffered discovery, or, at a minimum, stay these obligations until a more appropriate time.

## BACKGROUND

### I. Plaintiffs' Prior Motions for a Temporary Restraining Order

Plaintiffs filed suit on February 5, 2025. Compl., ECF No. 1 ("Original Complaint"). The Original Complaint included seven causes of action directed solely against the Department of Labor ("DOL") and the USDS:[1] two advancing *ultra vires* claims (Counts One and Two) and four pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 706 (Counts Three through Seven). On the same day, Plaintiffs moved for a temporary restraining order ("TRO"). The Court denied that motion on standing grounds. *See* Order, ECF No. 18 ("First TRO Order"). Plaintiffs subsequently amended their complaint on February 11, 2025, adding new plaintiffs as well as two new agency defendants, the Consumer Finance Protection Bureau ("CFPB") and Department of Health and Human Services ("HHS"), and their respective leaders. First Am. Compl., ECF No. 21 ("FAC"). Plaintiffs then renewed their motion for a temporary restraining order on February 12, 2025. ECF No. 29. The Court denied that renewed motion in an order dated February 14, 2025. ECF No. 34 ("Second TRO Order").

In its order, the Court acknowledged three types of employees implementing the DOGE E.O. at the agencies: (1) agency employees, (2) detailees from other federal agencies, and (3) detailees from USDS. Second TRO Order at 4. The Court's order primarily focused on this third

---

[1] The USDS is comprised of two entities: the U.S. DOGE Service and the U.S. DOGE Service Temporary Organization. For ease of reference, Defendants refer to both, combined, as USDS.

2

category of employee. *Id.* at 5–8. Indeed, this issue was central to the Court's resolution of the motion:

> In short, the record indicates that DOGE Team members are federal government "employees . . . who have a need for the record in the performance of their duties," § 552a(b)(1), and must follow protocols to ensure their access is contained within the bounds of the Privacy Act. But are they "employees <u>of the agency</u>" at which they are detailed? Plaintiffs argue that the USDS employees are not. In plaintiffs' view, under the Economy Act of 1932, only agencies can detail workers to other agencies. USDS is not an agency, plaintiffs continue, because it was not created by statute and is not accountable to an entity that was. Mot. at 34–37. Thus, the USDS employees working in the agencies are not "employees of the agenc[ies]" and, plaintiffs conclude, not permitted consistent with the Privacy Act to access the agency's record systems. If plaintiffs are right, a USDS employee's access to "records" at these agencies violates the Privacy Act no matter the data protections in place.

*Id.* at 5. The Court's order at no point questions that the other two groups of individuals are properly considered "employees" of the agency and thus not subject to an Economy Act analysis.

Although the Court expressed concerns about Defendants' position on USDS's authority to detail its employees to other agencies under the Economy Act, it nonetheless concluded that Plaintiffs had "not shown a substantial likelihood that USDS is not an agency," and thus had failed to show a likelihood of success on the merits. *Id.* at 8. The Court further held that Plaintiffs' remaining claims also lacked sufficient merit to justify relief, holding that concerns about the violation of the agencies' policies on sharing of confidential information fell by the wayside if the individuals in question were "employees" of the agency. *See id.* at 8 ("Some of the laws and regulations that plaintiffs put forth are only violated if USDS employees are not "employees" of their host agencies or are not independently violating the Privacy Act."); *id.* at 9 ("Because plaintiffs have not demonstrated a likelihood of success on the Economy Act claim, they have not demonstrated that sharing the information with the USDS employees embedded at each agency is a breach of confidentiality that triggers the reliance interests.").

3

## II.     The Plaintiffs' Request For Expedited Discovery

The Court then requested information from the parties as to the next procedural steps in the case. ECF No. 42 (status report of the parties). In an order issued February 19, the Court adopted, with modifications, Plaintiffs' scheduling proposal, which called for a period of expedited discovery prior to the filing of a motion for a preliminary injunction on April 1, 2025. ECF No. 43. In so ruling, it observed that "plaintiffs have thus far asserted theories of standing, likelihood of success on the merits, and irreparable harm that turn on whether individuals not permitted under the Privacy Act to view personal information are viewing or will view that information," and that "[e]xploring that subject through . . . discovery" would be "beneficial." *Id.* at 3. Plaintiffs then moved for expedited discovery to support an anticipated motion for a preliminary injunction, a motion which included Plaintiffs' proposed discovery requests. ECF No. 44.

Plaintiffs argued that the discovery was needed in order to create a record that would permit the Court to "assess[] [their] irreparable injuries." *Id.* at 1. Plaintiffs' motion describes uncertainty and concerns about the protections Defendants have put in place prior to sharing their information with those carrying out the USDS EO. *Id.* at 4–7. "A critical point of uncertainty in the record," Plaintiffs emphasized, was whether "whether DOGE is the kind of entity that can detail employees to Defendant Agencies under the Economy Act (and thus treat them as internal to the agencies for the purposes of evaluating whether unlawful disclosures are occurring)." *Id.* at 7–8. As such, "Discovery about the functional structure of DOGE—including who has decision-making authority over it—is," Plaintiffs argued, "directly relevant to being able to evaluate its status as an agency or instrumentality to whom Plaintiffs' sensitive data may be disclosed without causing injury." *Id.* at 9. The centrality of the detail-authority issue permeated Plaintiffs' arguments to justify specific requests, as well. For example, as to Interrogatory 1, Plaintiffs explained that the

4

interrogatory would not be overly burdensome to answer because "Defendants appear to have identified only five DOGE employees detailed to Defendant Agencies." *Id.* at 14.

The Court granted Plaintiffs' motion in an order dated February 27. Order, ECF No. 48 ("Discovery Order"). In doing so, the Court found the question of USDS's detailing authority to be directly tied to Plaintiffs' alleged irreparable harm. For example, in rejecting Defendants' argument that pre-answer, expedited discovery was overly burdensome and necessary to adjudicate Plaintiffs' Administrative Procedure Act ("APA") claims, the Court ruled that "the scope of the alleged policy" of granting information access to those working to carry out the USDS EO "also impacts the scope of the harm to plaintiffs—for, if the Privacy Act permits the USDS employees to view the individual information at issue, the theory of harm plaintiffs have thus far asserted fails." *Id.* at 5. In evaluating the purpose of the proposed discovery, the Court held "the facts that bear on irreparable injury remain opaque" and "include the structure of USDS and the scope of its authority, which the Court has said are not only unclear on the current record, but also critical to deciding the question of whether USDS is an agency within the meaning of the Economy Act of 1933—and thus whether its employees are permitted by the Privacy Act to view individual information." *See id.* at 8.

Turning to the scope of the proposed requests, the Court also found that the proposed interrogatories "seek information about the extent of access to sensitive systems agencies have given USDS employees, who at the agencies authorized such access, and any training USDS employees received," which "goes to irreparable harm because, if USDS employees are not permitted by the Privacy Act to view these systems, plaintiffs argue they are injured." *Id.* at 10. Likewise, "the interrogatories to USDS," in the Court's view, "focus on facts relevant to irreparable

5

harm: the structure, chain of command, and sharing policies of USDS go to the question of whether USDS is an agency permitted to detail employees to the three agency defendants." *Id.* at 10–11.

The Court also found other discovery requests to be properly scoped due to their connection to the issue of whether USDS can detail employees out under the Economy Act. As to the document requests, the Court held that, "like the USDS interrogatories, these documents are relevant to the scope of USDS employees' assignments, their relationship to the defendant agencies at which they're working, and USDS's authority to detail them." *Id.* at 11. The Court agreed that Plaintiffs' requests for Rule 30(b)(6) depositions of the agencies properly examined "how, if at all, the agencies' systems-access procedures changed following USDS's creation, the role of USDS employees at the agencies, and those employees' use of sensitive systems"—which, as the Court explained, go to irreparable harm "if USDS employees are not permitted by the Privacy Act to view those systems" as an initial matter. *Id.* at 11. Similarly, as to the proposed 30(b)(6) deposition of USDS, the Court found the topics would "focus on USDS's structure and authority, as well as the role and responsibilities of USDS employees working at defendant agencies," which the Court acknowledged were relevant to determining USDS's agency status. *Id.*

### III. Defendants' Modification to Onboarding Practices at the Defendant Agencies

Plaintiffs formally propounded their discovery on Defendants on February 28, 2025. On Wednesday, March 5, 2025, Defendants informed Plaintiffs by letter that all three of the Agency Defendants had completed the steps necessary to ensure that none of the employees carrying out the USDS EO DOGE agenda are doing so pursuant to a detail from USDS to those agencies.[2]

---

[2] Defendants note that there are USDS employees retained by USDS prior to January 20, 2025, currently working on legacy projects at several agencies, including at least one Agency Defendant. This includes several "legacy" employees detailed from USDS to the Agency Defendant. These employees are responsible for preexisting projects unrelated to the President's DOGE Agenda. As

6

The factual basis for this change in status is set forth in the declarations attached to this motion, as well as the documents Defendants have moved to lodge under seal with the Court. In total, three individuals—two at HHS, and one at CFPB—were previously working at these agencies through a detail from USDS to the agency; all are now direct employees of the agency, in addition to being employees of USDS. *See* Rice Decl. ¶¶ 8–10; Martinez Decl. ¶4. Although it initially intended to bring on USDS employees as detailees, DOL stopped this process shortly after this lawsuit was filed, and did not subsequently onboard any USDS employees as detailees.[3] Kryger Decl. ¶ 6. Today, all employees working to implement the DOGE E.O. at the Agency Defendants are now direct employees of the agencies at which they work, or detailees from agencies that no one disputes fall within the definition of "agency" under the Economy Act.

Defendants subsequently provided Plaintiffs with additional information about the employment arrangements of former USDS detailees. Specifically, on Friday, March 7, Defendants provided Plaintiffs with the SF-61s, or oath of office, for each former USDS detailee, which establishes their relationship as a direct employee of the relevant agency. On Monday, March 10, 2025, Defendants provided unredacted versions of these agreements to Plaintiffs so they could evaluate Defendants' request to lodge the materials under seal.

---

their responsibilities are not related to the activities that are the subject of the current litigation, they are irrelevant to the current discovery requests.

[3] Defendants acknowledge that the Declaration of Adam Ramada, ECF No. 16-1, stated that he and two other USDS employees had been detailed to DOL. These three employees, while identified for a detail to DOL by USDS, were never fully onboarded at DOL, and did not access sensitive systems at the agency. Kryger Decl. ¶ 5. Instead, DOL processing of these employees was paused pursuant to the agreement by the parties reached on February 5, 2025 on a call with Chambers pending briefing and resolution of Plaintiffs' first Motion for a TRO. *Id.* ¶¶ 4–5. After the TRO was resolved, these three individuals were ultimately not onboarded at DOL. *Id.* ¶ 6. DOL has subsequently brought individuals into the agency to help implement the DOGE EO, but those individuals have been onboarded as employees of DOL, not as detailees from USDS or any other agency. *Id.* ¶ 6.

7

Defendants met and conferred with Plaintiffs on the substance of this motion to them, explained to them the substance of the agencies' changes to the onboarding of USDS detailees, and shared the unredacted versions of the SF-61s that have now been lodged with the Court. Plaintiffs have declined to withdraw or modify their discovery requests in response to these changes. Defendants therefore move for reconsideration of the Court's discovery order based on these changed facts, as discussed below.

## LEGAL STANDARD

Defendants move for reconsideration of the Court's prior order pursuant to Rule 54(b) and entry of a protective order from the discovery requests propounded by Plaintiffs pursuant to Rule 26(c). Reconsideration of a prior order is fully "within the discretion of the trial court." *Pinson v. U.S. Dep't of Justice*, 396 F. Supp. 3d 66, 76 (D.D.C. 2019); *see* FED. R. CIV. P. 54(b) ("Any order or other decision, however designated, that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment."). These circumstances are met "where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the court." *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C.2004).

In light of the fact that discovery has already been propounded, pursuant to the Court's order permitting it, the standard for a protective order from discovery may also be applicable. Courts are empowered to issue protective orders from discovery requests upon a showing of "good cause" to guard against, *inter alia*, undue burden or expense. FED R. CIV. P. 26(c)(1). They have "broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). As the D.C. Circuit has affirmed, the "'good cause' standard . . . is a flexible one that requires an individualized balancing of the many interests that may be present in a particular case." *United States v. Microsoft Corp.*, 165 F.3d 952, 960 (D.C. Cir. 1999). To show good cause for entry of a protective order, Defendants

"must make a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one." *Alexander v. FBI*, 186 F.R.D. 71, 75 (D.D.C. 1998). In reviewing such claims, courts have "generally employed a balancing test[,]" *id.*, "weighing the movant's proffer of harm against the adversary's 'significant interest[.]'" *Jennings v. Fam. Mgmt.*, 201 F.R.D. 272, 275 (D.D.C. 2001).

While courts often look to the relevance of proposed discovery, and Rule 26's broad definition of relevance, in assessing the propriety of discovery, "the relevance standard of Rule 26 is not without bite and may dictate no other choice" than for an "appellate court to overturn a district court's decision to allow discovery[.]" *Food Lion, Inc. v. United Food & Com. Workers Int'l Union, AFL-CIO-CLC*, 103 F.3d 1007, 1012 (D.C. Cir. 1997). Thus, "even very slight inconvenience may be unreasonable if there is no occasion for the inquiry and it cannot benefit the party making it." Wright & Miller, *Grounds for Protective Orders*, 8A Fed. Prac. & Proc. Civ. § 2036 (3d ed.). In this particular case, that balance of relevance and burden must be made against the backdrop of Plaintiffs' unusual request for expedited discovery ahead of an anticipated motion for a preliminary injunction, which is "not the norm" in civil cases. *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97–98 (D.D.C. 2014). It should also be mindful, with respect to USDS, of the "separation-of-powers considerations" that accompany discovery into the President and his close advisors. *In re Cheney*, 406 F.3d 723, 727 (D.C. Cir. 2005) (en banc).

## ARGUMENT

**I.    No Further Discovery Should Be Permitted In This Case.**

In its scheduling order, the Court preliminarily agreed that Plaintiffs' "theories of standing, likelihood of success on the merits, and irreparable harm . . . turn on whether individuals not permitted under the Privacy Act to view personal information *are viewing or will view that*

9

*information*," and then authorized discovery to assess those theories. Scheduling Order, ECF No. 43 at 2 (emphasis added). That need to evaluate present or future disclosure of information to USDS detailees who, arguably, could not receive such information under the Privacy Act has now passed. As Defendants' submissions establish, they are no longer relying on the placement of USDS detailees at the Agency Defendant to implement the DOGE E.O. All such employees are either direct employees of the agency they work in, or detailees from an agency who no one disputes has authority to detail employees under the Economy Act. That obviates the Economy Act issue which concerned the Court in its order denying Plaintiffs' renewed motion for a TRO.

To be sure, Plaintiffs' discovery requests go beyond factual questions immediately relevant to the issue of whether USDS is an "agency" for Economy Act purposes. Although Defendants continue to maintain that discovery is not appropriate in an APA case, and should not go forward unless Plaintiffs can demonstrate some exception to that general rule after the resolution of threshold defenses and production of an administrative record, some of the discovery topics might overlap with the contents of a hypothetical administrative record in the event the Court concludes there is a reviewable final agency action. But the purpose of the Court's discovery order was not to authorize merits discovery, but to, in theory, create a record that would allow the Court to evaluate Plaintiffs' forthcoming motion for a preliminary injunction. And, as the table below demonstrates, the central justification for th requested discovery is clarification of the legal status of those detailed from USDS to other agencies to carry out the DOGE E.O.:

| Discovery Request | Justification |
|---|---|
| Interrogatory No. 1 (DOL, HHS, CFPB) | "The information sought in Interrogatory 1 and its subparts concern a limited number of individuals across all declarations submitted in this case, Defendants appear to have identified only five DOGE employees detailed to Defendant Agencies." Pls.' Mot for Expedited Disc. at 14. |

| **Discovery Request** | **Justification** |
|---|---|
| | "The interrogatories to the agencies seek information about the extent of access to sensitive systems agencies have given USDS employees, who at the agencies authorized such access, and any training USDS employees received. *See* Proposed [Discovery] at 3. As the Court has explained, this information goes to irreparable harm because, *if USDS employees are not permitted by the Privacy Act to view these systems*, plaintiffs argue they are injured." Discovery Order at 10 (emphasis added) |
| Interrogatory No. 2 (USDS) | "Similarly, the interrogatories to USDS focus on facts relevant to irreparable harm: the structure, chain of command, and sharing policies of USDS go to the question of whether USDS is an agency permitted to detail employees to the three agency defendants." Discovery Order at 10–11. |
| Requests for Production | "Like the USDS interrogatories, [the document requests] are relevant to the scope of USDS employees' assignments, their relationship to the defendant agencies at which they're working, and USDS's authority to detail them." Discovery Order at 11. |
| 30(b)(6) Deposition of Agencies | "For the agency defendants, the Rule 30(b)(6) topics focus on how, if at all, the agencies' systems-access procedures changed following USDS's creation, the role of USDS employees at the agencies, and those employees' use of sensitive systems." Discovery Order at 11. |
| 30(b)(6) Deposition of USDS | "And like the interrogatories, the topics for the Rule 30(b)(6) deposition of USDS focus on USDS's structure and authority, as well as the role and responsibilities of USDS employees working at defendant agencies." Discovery Order at 11. |

As to USDS, the Court's discovery order explicitly justified interrogatories and a deposition notice directed to USDS on the basis that they were relevant to the question of whether USDS had detail authority under the Economy Act. USDS's decision not to rely on such authority obviates that issue. As to the interrogatories and deposition notices served on the agencies, Plaintiffs themselves pitched the discovery as reasonable in scope precisely because it would be limited to "DOGE employees detailed to Defendant Agencies," Pls. Mot for Expedited Disc. at 14, and the Court's order explicitly links the relevance of the discovery to the disposition of the Economy Act issues discussed in the denial of the second TRO motion. Finally, the Court justified

11

the document requests by analogy to USDS's interrogatories, noting their relevance to "USDS's authority to detail" employees. Discovery Order at 11. Now that USDS is no longer relying on such authority with respect to the Agency Defendants, and has proffered documents and declarations proving as much, further expedited discovery on this topic is not warranted.

Plaintiffs nonetheless insist that no modification is warranted, and have even suggested that they will *expand* the scope of discovery in light of Defendants' decision not to rely on detailing authority under the Economy Act. That position that cannot be squared with the Court's orders or their own request for expedited discovery. Even if one assumes that whatever past sharing between the agency Defendants and individuals detailed from DOGE technically violated the Privacy Act, that has no bearing on whether they "are viewing" or "will view" that information prospectively to support the declaratory and injunctive relief that Plaintiffs ultimately, and only, request. Scheduling Order at 2; *see also* Am. Compl. ¶¶ 270–77 (stating forms of relief sought). Those implementing the DOGE E.O. are subject to federal law and regulations regarding disclosure of protected information, and former detailees cannot be presumed to have violated these laws simply because they have a connection to USDS. *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001) (recognizing a "presumption of regularity [that] attaches to the actions of Government agencies"); *see also* Second TRO Order at 8–10. After introducing the Economy Act argument to this case, and framing much of their asserted need for discovery around the detailee issue, Plaintiffs cannot insist that the discovery must not only go forward, but be expanded, once the employment arrangement has been changed.

II. **Discovery Against USDS Is Especially Inappropriate In Light Of The Separation-of-Powers Concerns It Raises.**

Plaintiffs' proposed discovery against USDS, which is organized within the Executive Office of the President and reports directly to the Chief of Staff, is particularly inappropriate in

12

light of the separation-of-powers concerns it raises. *Establishing & Implementing The President's "Department Of Government Efficiency"*, 90 Fed. Reg. 8,441, § 3(b) (Jan. 20, 2025). The Supreme Court has long recognized "the paramount necessity of protecting the Executive Branch from vexatious litigation that might distract it from the energetic performance of its constitutional duties." *Cheney v. U.S. Dist. Ct. for the Dist. of Columbia*, 542 U.S. 367, 382 (2004). In *Cheney*, the D.C. Circuit declined to issue a writ of mandamus with respect to discovery requests to gain information about an energy policy development group that included the Vice President and other senior government officials. *Id.* at 396–97. The Supreme Court concluded that the D.C. Circuit had erred by "prematurely terminated its inquiry after the Government refused to assert privilege and did so without even reaching the weighty separation-of-powers objections raised in the case." *Id.* at 391.

This Court should similarly take pause before permitting discovery against USDS to go forward at this time. Even if one assumes discovery against USDS was permissible when the question of whether it was an "agency" with detailing authority for purposes of the Economy Act was squarely implicated by its use of detailees, that need is no longer present. The discovery order explicitly links the need for discovery against USDS to the question of whether it is "permitted to detail employees to the three agency defendants." Discover Order at 10–11. Such discovery was never appropriate to begin with, but it is especially misguided now that Defendants have ceased the practice of detailing employees to the three Agency Defendants. Given its obligation to carefully scrutinize discovery requests that intrude upon the separation of powers, and the already limited scope of the Court's inquiry to information necessary to decide a motion for a preliminary injunction, there is no basis for continuing to impose the burdens of discovery on USDS.

13

### III. At A Minimum, The Court Should Stay Further Discovery Until After Pending And Forthcoming Motions Are Fully Briefed

Defendants' decision to end the practice of USDS detailing employees to other federal agencies to implement the DOGE E.O. vitiates the need for pre-answer discovery to support Plaintiffs' motion for a preliminary injunction. But to the extent the Court continues to have reservations as to the need for a factual record prior to entertaining Plaintiffs' forthcoming motion for a preliminary injunction, Defendants respectfully request that discovery be stayed until the parties have had an opportunity to fully brief both the preliminary injunction motion and the now-pending motion to dismiss. At that time, the Court could assess the relevance of further discovery in light of the parties' arguments and Defendants' proffer of evidence regarding the employment status of those who were formerly detailed to the defendant agencies from USDS, and direct more targeted discovery if appropriate. Such an approach would be in keeping with the cautious approach to pre-merits, expedited discovery this Court has recognized in cases like *Guttenberg*, and the respect to the Executive Branch demanded by the Supreme Court's ruling in *Cheney*.

***

## CONCLUSION

For all the foregoing reasons, the Court should grant Defendants' Motion and disallow (or, in the alternative, limit or delay) the proposed discovery by entering a protective order pursuant to Rule 26(c).

Dated: March 11, 2025                                Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

MARCIA BERMAN
Assistant Branch Director
Civil Division, Federal Programs Branch

<u>/s/Michael J. Gerardi</u>
Michael J. Gerardi
Senior Trial Counsel (DC Bar No. 1017949)
Benjamin S. Kurland
Trial Attorney (D.C. Bar No. 1617521)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Tel: (202) 616-0680
Fax: (202) 616-8460
E-mail: Michael.J.Gerardi@usdoj.gov

*Counsel for Defendants*