# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

|  |  |
|---|---|
| AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, *et al.*,<br><br>*Plaintiffs*,<br>vs.<br><br>SOCIAL SECURITY ADMINISTRATION, *et al.*,<br>*Defendants*. | Civil Action No. 1:25-cv-00596 |

### DECLARATION OF FLORENCE FELIX-LAWSON

I, Florence Felix-Lawson, hereby declare upon penalty of perjury:

1. I am the Deputy Commissioner of Human Resources at the Social Security Administration (SSA), in Woodlawn, Maryland, and I have served in this role since November 17, 2024. I am a Career Senior Executive reporting directly to SSA's Acting Commissioner, Leland Dudek.

2. In my role as Deputy Commissioner of Human Resources, I am responsible for leading and overseeing human resource services to the agency, including but not limited to appointing and onboarding new personnel, including regular and special government employees and detailees.

3. I provide this declaration in support of the Defendants' opposition to the Motion for a Temporary Restraining Order, Preliminary Injunction, and/or 5 U.S.C. § 705 Stay in the above-captioned case. This declaration outlines how each individual associated with SSA's DOGE team has been onboarded with SSA. These statements are made with my

1

personal knowledge and review of documents and information furnished to me in the course of my official duties.

4. Pursuant to Executive Order 14,158 ("Establishing and Implementing the President's 'Department of Government Efficiency'"), there exists within SSA a "DOGE team" responsible for "implementing the President's DOGE agenda." *Id.* § 3(c). The SSA DOGE Team currently consists of ten SSA employees: four SSA special government employees (Employees 1, 4, 6, and 9) and six detailees to SSA from other government agencies and offices (Employees 2, 3, 5, 7, 8, and 10). To protect the privacy of these individuals, and to avoid exposing them to threats and harassment, I have not listed their names in this declaration.

5. On February 13, 2025, Employee 1, a software engineer, was appointed as an expert, special government employee under 5 U.S.C. § 3109 and 5 C.F.R. Part 304. 42 U.S.C. § 904(a)(2) further supports his appointment and states that the Commissioner of Social Security "may procure services of experts and consultants in accordance with the provisions of section 3109 of title 5." His duties currently relate to improper payments and SSA's Death Master File (records maintained by SSA on deceased individuals). SSA is currently working with the Small Business Administration (SBA) to effectuate an interagency agreement for Employee 1 to be detailed temporarily to SBA.

6. On February 18, 2025, we began onboarding and training Employee 3, a Schedule C Policy Advisor, detailed from the Department of Labor to SSA. The agreement finalizing his onboarding is dated February 22, 2025. His duties currently relate to improper payments and SSA's Death Master File (containing information about decedents from SSA records).

2

7. On February 18, 2025, we began onboarding and training Employee 5, an engineer, detailed from the United States DOGE Service to SSA. The agreement finalizing his onboarding is an Interagency Agreement with U.S. Digital Service (now U.S. DOGE Service) covering Fiscal Year 2025, which was amended February 20, 2025 to recognize the change to U.S. DOGE Service; extend the duration to July 4, 2026; and modify and supplement certain terms in the original agreement. The agreement authorizes work to include, but does not limit work to, increasing efficiency and the modernization of SSA IT infrastructure and systems, detecting waste, fraud, and abuse.

8. On February 18, 2025, we began onboarding and training Employee 2, Senior Advisor (Program Specialist AD-0301-00). He is in the process of being detailed from National Aeronautics and Space Administration (NASA) to SSA. The agency is waiting on final signature on the interagency detail agreement from NASA. His duties currently include serving as the DOGE lead at SSA.

9. On February 19, 2025, Employee 10, a software engineer, was detailed from the Office of the Administrator at the General Services Administration to SSA. His duties currently include supporting the leadership team with the assessment and enhancement of internal processes and operational procedures, specifically, focusing on identifying inefficiencies and areas for improvement and ensuring that the administrative and programmatic functions align with the best practices for effectiveness and accountability.

10. On February 26, 2025, Employee 8, an engineer, was detailed from Office of Personnel Management to SSA. His duties currently relate to improper payments and death data.

11. On February 27, 2025, Employees 4, 6, and 9 were each appointed as an expert, special government employee under 5 U.S.C. § 3109 and 5 C.F.R. Part 304. 42 U.S.C. §

904(a)(2) further supports their appointment and states that the Commissioner of Social Security "may procure services of experts and consultants in accordance with the provisions of section 3109 of title 5." All three of these individuals' duties currently relate to improper payments and death data.

12. On March 5, 2025, the agency began onboarding Employee 7, as a detailee from Department of Labor (DOL) to SSA. The agency is waiting on final signatures on the interagency detail agreement from DOL. His duties currently relate to improper payments.

13. Each of the special government employees and detailees listed above completed the following training and onboarding actions, in addition to any component specific training:

    a. Attended Privacy Training (either in-person or via MS Teams), which covered privacy laws applicable to agency data and penalties for improper use

    b. Attended Ethics Training (either in-person or via MS Teams), which covered ethics laws applicable to agency employees.

    c. Signed Acknowledgement of SSA Information Security and Privacy Awareness Training, which covers requirements for compliance with information security and privacy policies of SSA.

14. Each of the detailee agreements contained terms clarifying that detailee must not make unauthorized disclosures of SSA information and that detailee must follow SSA rules and policies while working for SSA.

15. For employees 3, 5, 8 and 10, the Executive Office of the President informed SSA that these individuals had favorable background investigations adjudicated. For the remaining employees, background investigations are still pending.

16. Under the U.S. DOGE Service interagency agreement described above (formerly with U.S. Digital Service), there are five additional individuals who have been onboarded. These include individuals onboarded in 2024, prior to creation of the U.S. DOGE Service. However, the agency has determined it does not need their services and is taking action to remove them from this agreement.

17. My office has worked to expedite onboarding of the above individuals and is working to ensure all onboarding requirements are met.

I declare the foregoing to be true and correct, upon penalty of perjury.


Date: March 12, 2025          Signed: *Florence Felix-Lawson /s/*

                              Florence Felix-Lawson
                              Deputy Commissioner
                              Human Resources
                              Social Security Administration

5