UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS, et al.,<br><br>    Plaintiffs,<br><br>        v.<br><br>DEPARTMENT OF LABOR, et al.,<br><br>    Defendants. | Civil Action No. 25-339 (JDB) |

## MEMORANDUM OPINION AND ORDER

Just about three weeks ago, this Court granted the plaintiffs in this case—a handful of labor unions, a think tank, and two nonprofits—limited expedited discovery to explore facts relevant to their alleged irreparable harm to inform their impending preliminary injunction motion. Now defendants have moved for reconsideration of the Court's order on the basis of a change of facts orchestrated by defendants that they contend obviates the Court's prior reasoning. However, the evidence defendants put forward is not the panacea they hoped it would be. Instead, the evidence supports plaintiffs' proposed minimal modifications to the limited expedited discovery the Court previously ordered. The Court therefore denies defendants' motion for reconsideration and grants plaintiffs' amended motion for expedited discovery.

## BACKGROUND

This case began on February 5, 2025, when plaintiffs filed their original complaint against the Department of Labor ("DOL") and USDS[1]. Compl. [ECF No. 1]. While the complaint

---

[1] The Court uses "USDS" to refer to both United States Digital Service and the United States DOGE Service Temporary Organization. For a very basic explanation of the origins of the DOGE version of USDS, see Mem. Op. & Order [ECF No. 18] at 2–3.

launched seven claims against defendants, the thrust of it was that USDS staff was improperly viewing sensitive data housed at DOL. See id. at 28–33. Plaintiffs moved for a temporary restraining order ("TRO") that same day, primarily based on their claim that defendants were violating the Administrative Procedure Act ("APA") by allowing USDS employees to access individual information in violation of the Privacy Act of 1974. See Mem. L. Supp. Mot. TRO [ECF No. 2] ("First TRO Mot.") at 22–29. Defendants opposed the motion and included with their opposition a declaration from Adam Ramada, who said he was a USDS employee detailed to and working at DOL. See Decl. of Adam Ramada [ECF No. 16-1] ("Ramada Decl.") ¶¶ 2, 5. The Court ultimately denied the TRO motion because plaintiffs failed to establish a substantial likelihood of standing. See Mem. Op. & Order [ECF No. 18].

So plaintiffs filed an amended complaint on February 11, 2025. See generally Am. Compl. [ECF No. 21]. While the complaint added the Department of Health and Human Services ("HHS") and Consumer Financial Protection Bureau ("CFPB") as defendants and two nonprofits as plaintiffs, the claims remained largely the same. See id. at 57–67.[2]

Shortly thereafter, plaintiffs filed a renewed motion for a TRO and included declarations from several members of the plaintiff unions. See Pls.' Mem. Supp. Renewed Mot. TRO [ECF No. 29-1] ("Renewed TRO Mot.") at 19, 21, 23–27. Along with their opposition to that motion, defendants filed three declarations, one from an employee of each defendant agency. See Defs.' Mem. Opp'n to Renewed TRO Mot. [ECF No. 31]. The declarants largely outlined the data protection policies and systems governing USDS employees detailed to their respective agency.

---

[2] Plaintiffs also bring other APA claims, including that the defendants' decisions to provide data access to USDS employees (what plaintiffs call the agencies' "DOGE Access Policies") violate the Confidential Information Protection and Statistical Efficiency Act of 2002 ("CISPEA"), the Federal Information Security Modernization Act, and various agency regulations, and that the DOGE Access Policies are arbitrary and capricious and were unlawfully promulgated without notice and comment. See Am. Compl. at ¶¶ 237–64. They also assert an ultra vires claim id. at ¶¶ 226–36; and a standalone Privacy Act claim, id. at ¶¶ 265–69.

See generally Decl. of Ricky J. Kryger [ECF No. 31-1] ("Kryger Decl."); Decl. of Garey Rice [ECF No. 31-2] ("Rice Decl."); Decl. of Adam Martinez [ECF No. 31-3] ("Martinez Decl."). The declarations also revealed that three types of workers formed the agency defendants' DOGE Teams—i.e., those implementing the DOGE agenda[3]—at the agencies: "(1) USDS employees 'detailed' to the relevant agency; (2) the relevant agency's own employees assigned to the team; and (3) employees of other agencies detailed to the relevant agency." Mem. Op. & Order [ECF No. 34] ("Renewed TRO Order") at 4. According to the declarants, at that time: DOL's DOGE Team consisted of "one relevant worker who is now a DOL employee," but the agency "intend[ed] to retain employees" who were "either direct DOL hires or employees detailed to DOL," Kryger Decl. ¶¶ 6, 13; HHS's DOGE Team had "at least one USDS employee" on detail, one detailee from another agency, and one HHS employee, Rice Decl. ¶ 5; and CFPB's DOGE Team had one USDS employee on detail and five detailees from other agencies, Martinez Decl. ¶ 6.

The Court denied plaintiffs' renewed TRO motion because they failed to establish that they were likely to succeed on the merits of their claims. See generally Renewed TRO Order. At base, the motion's merit turned on whether plaintiffs met their burden of establishing that USDS employees working at the defendant agencies were unlawfully detailed to those agencies. See id. at 3–8.

As the Court explained, plaintiffs' Privacy Act-based APA claim alleged that by providing USDS employees access to individual information—i.e., "records"[4]—the defendant agencies were

---

[3] See Exec. Order No. 14,158, 90 Fed. Reg. 8441 (Jan. 20, 2025) (requiring each agency to "establish within their . . . [a]genc[y] a DOGE Team" to carry out the DOGE agenda).

[4] The Privacy Act defines "record" as

any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or

3

violating § 552a(b) of the Privacy Act, which prohibits agencies from "disclos[ing] any record . . . by any means of communication to any person, or to another agency, except pursuant to written request by, or with prior written consent of, the individual to whom the record pertains." 5 U.S.C. § 552a(b); see Renewed TRO Order at 3; Renewed TRO Mot. at 25. But that section has several exceptions, one of which permits agencies to disclose records "to those <u>officers and employees of the agency</u> which maintains the record who have a need for the record in the performance of their duties." § 552a(b)(1) (emphasis added); see Renewed TRO Order at 3. Plaintiffs did not contest that the DOGE Team members who were direct hires of the defendant agencies or those who were detailed from other agencies were "employees of the agency" within the meaning of that exception. See Renewed TRO Order at 3–5. However, they argued that the USDS DOGE Team members were not employees because of a little known, barely-interpreted statute—the Economy Act of 1932. See id. at 5. That act, plaintiffs contended, only permits <u>agencies</u> to detail employees to other agencies, and USDS is not an "agency" within the meaning of the act. See id. As the Court noted, this argument not only determined the likelihood that plaintiffs would succeed on the merits of their Privacy Act/APA claim; it also undergirded plaintiffs' theory of standing, irreparable harm, agency action, and, in large part, their other claims. See id. at 3 n.1, 8–10; Disc. Order [ECF No. 48] at 5–6.

The Court ultimately concluded that, on the record before it, plaintiffs failed to establish that USDS was not an "agency" within the meaning of the Economy Act. Renewed TRO Order at 7–8. This was in part because the Court determined that the proper interpretation of the Economy Act's definition of agency—"a department, agency, or instrumentality of the United

---

employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph[.]

5 U.S.C. § 552a(a)(4). For the rest of this Opinion, the Court will use the term record to refer to this definition.

States Government," 31 U.S.C. § 101—likely depended on whether USDS was "wield[ing] substantial authority independently of the President." Renewed TRO Order at 5–6. (quoting Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity, 266 F. Supp. 3d 297, 315 (D.D.C. 2017)). And the record evidence showed USDS likely was. See id. at 6–7. So the Court concluded that USDS likely could detail its employees to the defendant agencies consistent with the Economy Act, in which case the USDS DOGE Team members would be "employees of the agency" to whom the defendant agencies could likely disclose records under the Privacy Act. See id. at 8. While denying the motion, the Court noted that it "will benefit from further briefing and analysis" on the Economy Act issue. Id. at 10.

After its second TRO denial, the Court set briefing schedules for an expedited discovery motion and the discovery itself, a motion to dismiss, and a preliminary injunction motion. See Order [ECF No. 43]. As relevant here, the discovery was to end by March 24, 2025, and the preliminary injunction motion was to be filed on April 1, 2025. See id. at 3.

So plaintiffs moved for limited expedited discovery, which the Court granted in part on February 27, 2025 (hereinafter, the "Discovery Order"). See Disc. Order. The Court determined that, with some alterations, plaintiffs' proposed expedited "discovery [wa]s narrowly tailored to the issues that this Court ha[d] already indicated would be essential to deciding plaintiffs' impending preliminary injunction motion." Id. at 1. Of the five reasonableness factors that guided the Court's analysis,[5] most if not all factors at least slightly favored granting plaintiffs' motion. Id. at 7. Those that most strongly favored plaintiffs were the purpose for requesting expedited

---

[5] To guide the discretionary decision of whether to permit discovery under Federal Rule of Civil Procedure 26(d)(1), the Court uses the reasonableness approach, in which "the Court considers the 'reasonableness of the request in light of all of the surrounding circumstances' . . . which include: '(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made.'" Guttenberg v. Emery, 26 F. Supp. 3d 88, 98 (D.D.C. 2014) (quoting In re Fannie Mae Deriv. Litig., 227 F.R.D. 142, 142–43 (D.D.C. 2005)).

5

discovery, the breadth of the discovery requests, and, as a result of the first two, the burden on the defendants to comply with the requests. See id. at 8–14. The purpose of plaintiffs' motion was not to "reveal information related to . . . the case as a whole," id. at 8 (quoting Guttenberg v. Emery, 26 F. Supp. 3d 88, 98 (D.D.C. 2014)), but rather was focused "on the dispositive preliminary injunction issue of irreparable harm"—an issue that turned on factual issues that "remain opaque," id. "These include the structure of USDS and the scope of its authority, . . . [which is] not only unclear on the current record, but also critical to deciding the question of whether USDS is an agency within the meaning of the Economy Act of 193[2]—and thus whether its employees are permitted by the Privacy Act to view individual information." Id. And plaintiffs' requested discovery was properly scoped to address the issue of irreparable harm. The interrogatories and document requests probe USDS's structure and authority and the Federal Rule of Civil Procedure Rule 30(b)(6) depositions similarly "focus on USDS's structure and authority, as well as the role and responsibilities of USDS employees working at defendant agencies." Id. at 11.

In the end, the Court permitted limited expedited discovery consisting of a short interrogatory to each to the agency defendants and USDS, seven document requests, and one brief Rule 30(b)(6) deposition of each agency defendant and USDS. See id. at 10.

Discovery thus commenced and continued until March 11, 2025, when defendants filed the instant motion for reconsideration. See Mem. L. Supp. Defs.' Mot. Recons. [ECF No. 51-1] ("Defs.' Mot."). The Court will detail defendants' arguments later, but the gist is that defendants contend that the Court should reconsider its order granting plaintiffs' motion for expedited discovery because as of March 5, 2025, all USDS employees implementing the DOGE agenda at the agency defendants are now also direct hires of the relevant agency. See Defs.' Mot. at 1. This change, in defendants' view, "obviate[s] the need for expedited discovery prior to the resolution

6

of a motion to dismiss" because all DOGE Team members at the agency defendants are now either direct hires or detailees from other agencies—meaning (the argument goes) the team members are all employees of the relevant agency permitted to view individual information under the Privacy Act, and the Economy Act question doesn't even come into play. Id.

Plaintiffs oppose the motion and add one of their own. They agree with defendants that the new facts defendants put forward change some things—but not in the way defendants contend. In plaintiffs' view, the fact that USDS employees are now direct hires of the agency defendants does not obviate the need for the previously-ordered expedited discovery, see generally Pls.' Opp'n Defs.' Mot. Recons. [ECF No. 53] ("Pls.' Opp'n"), but actually tees up more factual questions and thus warrants a modest modification to that discovery, see generally Pls.' Mot. Modif. Ct.'s Disc. Order [ECF No. 55] ("Pls.' Mot.").

As the motions are now fully briefed, see Defs.' Joint Reply Supp. Defs.' Mot. Recons. & Resp. Pls.' Mot. Modif. Ct.'s Disc. Order [ECF No. 62] ("Defs.' Reply & Opp'n"); Pls.' Mot. Modif. Ct.'s Disc. Order [ECF No. 7] ("Pls.' Reply"), the Court now tackles each motion in turn.

## ANALYSIS

### I.  Motion for Reconsideration of the Court's Order Granting Expedited Discovery[6]

The question whether to grant a motion for reconsideration is committed to the district court's discretion. See Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996). As a result, a district court doesn't need to grant such a motion "unless the district court finds that there is an

---

[6] In their motion for reconsideration, defendants also request that the Court issue a protective order pursuant to Federal Rule of Civil Procedure 26(c). See Defs.' Mot. at 2. Plaintiffs go on to respond to defendants' motion for reconsideration using the legal standard for granting a protective order. See Pls.' Opp'n at 3–4. The Court treats the motion simply as one for reconsideration because, even when it comes to the protective order request, defendants are really asking the Court to examine plaintiffs' motion for expedited discovery anew based on a change of facts and then vacate the Court's previous order granting that motion. See Defs.' Mot. at 8; Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (explaining standard for motion for reconsideration).

intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Id. (internal quotation marks omitted). In other words, a district court should grant a motion for reconsideration "[o]nly if the moving party presents new facts or a clear error of law which 'compel' a change in the court's ruling." State of New York v. United States, 880 F. Supp. 37, 39 (D.D.C. 1995) (quoting Nat. Res. Def. Council, Inc. v. U.S. EPA, 705 F. Supp. 698, 702 (D.D.C.1989)).

Here, the Court finds that nothing that defendants put forward compels the Court to rehash the dispute over expedited discovery that it has already resolved.

The Court already summarized defendants' argument, so let's turn to the new facts they argue merit reconsideration of the Discovery Order. Defendants explain that, as of March 5, 2025, "none of the employees carrying out the USDS [Executive Order] DOGE agenda are doing so pursuant to a detail from USDS to" the agency defendants. Defs.' Mot. at 6. Instead, the agencies have turned to directly hiring USDS employees. Id. at 7.

According to three new declarations, HHS and CFPB have each directly hired USDS employees who had been working as detailees at the agencies—two in the case of HHS, and one in the case of CFPB. Id. Defendants establish as much through these three employees' SF-61s.[7] On March 4, 2025, HHS hired Amy Gleason—who has identified herself as Acting USDS

---

[7] An SF-61, otherwise known as an appointment affidavit, is a form that certifies a person's appointment to an employment position with the federal government and requires that person to swear to an oath that is administered by an officer of the relevant federal entity. For an example, see Appointment Affidavits, U.S. Off. Personnel Mgmt., https://www.opm.gov/forms/pdf_fill/sf61.pdf (last visited Mar. 19, 2025). Along with their motion for reconsideration, defendants moved for leave to file under seal the three SF-61s discussed in this Opinion, or alternatively to redact the names of the affiants and the agency officials who administered their oaths. See Sealed Mot. Leave to File Under Seal or Redact Certain Docs. Supp. Defs.' Mot. Recons. [ECF No. 52] at 1, 6. The Court denied that motion except as to the redaction of the names of the agency officials. See Order [ECF No. 59].

Administrator[8]—as an "Expert/Consultant," see Appointment Affs., Amy Gleason [ECF No. 65-1] ("Gleason SF-61"), and Brad Smith—who news reports have identified is a senior DOGE member and advisor[9]—as a "Senior Advisor," see Appointment Affs., Brad Smith [ECF No. 65-3] ("Smith SF-61"). And on March 5, 2025, CFPB hired Jordan Michael Wick—another reported DOGE member[10]—as an "Expert/Consultant." See Appointment Affs., Jordan Michael Wick [ECF No. 65-2] ("Wick SF-61"). In addition to being employed by HHS and CFPB, these three people remain USDS employees. Decl. of Garey Rice [ECF No. 51-3] ("Second Rice Decl.") ¶ 8; Decl. of Adam Martinez [ECF No. 51-5] ("Second Martinez Decl.") ¶ 4.

DOL, for its part, reports that it never onboarded any USDS employees as detailees but has directly hired an unknown number of unknown individuals to form its DOGE Team. See Defs.' Mot. at 7 & n.3; Decl. of Ricky J. Kryger [ECF No. 51-2] ("Second Kryger Decl.") ¶ 6. Defendants present no SF-61s for DOL hires.

The declarants also all say some variant of the same thing: that he or his agency is not aware of plans to onboard new detailed employees, or at least employees detailed from USDS. See id. ¶ 7 ("DOL is unaware of any plans to onboard detailed employees from USDS in the future to work on DOGE [Executive Order] projects."); Second Rice Decl. ¶ 11 ("I am not aware of any plans to onboard new detailed employees in the future to work on DOGE projects at HHS.");

---

[8] See Decl. of Amy Gleason, Citizens for Resp. & Ethics in Wash. v. U.S. Doge Serv., Civ. A. No. 25-511 (CRC) [ECF No. 69-1] ("Gleason Decl.") ¶¶ 13–14; Citizens for Resp. & Ethics in Wash., Civ. A. No. 25-511 (CRC), 2025 WL 752367, at *2 (D.D.C. Mar. 10, 2025).

[9] See Decl. of Mark B. Samburg [ECF No. 53-4] ¶ 8 (citing Will Steakin & Anne Flaherty, Key Musk DOGE adviser meets with leaders of Medicare agency, ABC News (Feb. 14, 2025), https://abcnews.go.com/Politics/key-musk-doge-adviser-meets-leaders-medicare-agency/story?id=118843035 (last accessed Mar. 19, 2025)). Defendants do not contest the truth of this reporting.

[10] See Revolving Door Project, DOGE Agent: Jordan Wick (Feb. 20, 2025), https://therevolvingdoorproject.org/doge-agent-jordan-wick/ (last accessed Mar. 19, 2025). Defendants have not contested the truth of this reporting.

Second Martinez Decl. ¶ 6 ("I am not aware of any plans to onboard new detailed employees in the future to work on DOGE projects" at CFPB.).

As defendants see it, this information obliges the Court to change its ruling on plaintiffs' motion for expedited discovery because it resolves any potential Economy Act issue. See Defs.' Mot. at 9–12; see also Defs.' Reply & Opp'n at 7 (arguing that the Samburg declaration even "establishes [] that these individuals are employees of HHS for purposes of the Privacy Act"). Not the case. Even if the Court were to accept as conclusive these declarations and SF-61s, the question of whether USDS is an agency under the Economy Act would not be put to bed.[11] But there are also good reasons for the Court to view defendants' new evidence with caution—or at least not take that information as set in stone.[12]

The Economy Act issue continues to be relevant to plaintiffs' upcoming preliminary injunction—and specifically their theory of irreparable harm—even if USDS is not currently, and will not in the future, detail its employees to other agencies to implement those agencies' DOGE agendas. As plaintiffs explain, the preliminary injunction they will seek isn't limited to directing the agency defendants to stop sharing records with USDS employees. See Pls.' Opp'n at 6. They also ask the Court to require that USDS "personnel [] immediately return or destroy all copies of material unlawfully accessed from agency systems and records." Am. Compl. ¶ 272; see Renewed

---

[11] To be clear, the Court has not held and does not at this juncture hold that the individuals employed by both USDS and the agency defendants are necessarily "employees of the agency" under the Privacy Act. See 5 U.S.C. § 552a(b)(1). That issue has not yet been properly presented to the Court, and the Court expresses no views on it. For the purposes of this Opinion, the Court assumes those individuals are "employees of the agency" because defendants' arguments rest on that premise.

[12] Importantly, a determination that these individuals are employees of the agency isn't dispositive of plaintiffs' Privacy Act claim. Section 552a(b)(1) also requires that the employee "have a need for the record in the performance of their duties." Id. The Court focuses on the Economy Act issues because it did so in its Discovery Order. But the Court agrees with plaintiffs that the discovery is also relevant to the question of whether the USDS staffers working at defendant agencies (direct hires or otherwise) have "a need for the record[s]" they are or were accessing. See Pls.' Reply at 3 ("Employment at an agency is necessary but not sufficient for an individual to access records held by that agency.").

TRO Mot. at 42.  So whether USDS <u>could</u> lawfully detail employees to the agency defendants <u>when USDS was doing so</u> still matters: If USDS was not an agency under the Economy Act, records USDS employees working at the agency defendants may have taken or copied may have been unlawfully accessed.  And if USDS employees—whether now employees of the agency defendants or not—have records they unlawfully obtained as detailees, plaintiffs' theory of irreparable harm, standing, and final agency action may survive, as there could be a continuing violation of plaintiffs' expectation of privacy and an ongoing risk that USDS employees will share the records with third parties.[13]  <u>See</u> Disc. Order at 5, 8; Second TRO Order at  3 n.1; Renewed TRO Mot. at 18–24, 38–39.  In other words, defendants' new evidence does not mean that plaintiffs alleged harm is exclusively in the past.  <u>But see</u> Defs.' Reply & Opp'n at 6.

All of this is to say that the question of whether USDS is an agency that could detail employees pursuant to the Economy Act—and thus "the structure of USDS and the scope of its authority"—remains "critical" to plaintiffs' upcoming preliminary injunction, <u>see</u> Disc. Order at 8, notwithstanding defendants' argument to the contrary, <u>see</u> Defs.' Reply & Opp'n at 3 ("The structure of USDS—and in particular, whether it may exercise detailing authority under the Economy Act—is simply no longer relevant.").

Further, defendants' new evidence presents additional reasons why the structure of USDS is relevant to plaintiffs' upcoming preliminary injunction motion.  As previously mentioned, defendants acknowledge that Gleason, Smith, and Wick are simultaneously employed by USDS and either HHS or CFPB.  What defendants do not explain is how this dual employment operates—most acutely, they do not explain who these three employees ultimately report and answer to.  This is not the typical two-job situation where a person has one job—say as a teacher—that's unrelated

---

[13] The Court expresses no view on the merits of these theories.

11

to their other job—say as a barista.  In that situation, it's clear that when the person is teaching he reports to the school principal and when he's brewing he reports to the coffee shop manager.  Here, the USDS employees' jobs at the agency defendants entail carrying out the DOGE agenda at those agencies.  So do they answer to the USDS higher ups, or agency defendant higher ups?  If the answer is the former, the dual employees could be impermissibly sharing the defendant agencies' records with officials outside of the agency.  What's more, CFPB's testimony in another case in this District further muddies the dual-employment and chain-of-command waters.  See Pls.' Opp'n at 12.  Therein, Adam Martinez—CFPB Chief Operating Officer and two-time declarant in this case—testified that USDS employees working at CFPB were "designated" to be CFPB employees, but also that USDS and CFPB were "two tracks" at times.  See Tr. Evid. Hr'g at 136–38, Nat. Treasury Emps. Union v. Vought, Civ. A. No. 25-381 (ABJ) (2025) [ECF No. 53-7].  He also stated that DOGE at times directed him—as the Chief Operating Officer of CFPB—to perform certain work.  Id. at 9.

       Plus, the reporting structure relates to an argument that defendants themselves made earlier in this litigation.  In their opposition to plaintiffs' second TRO motion, defendants urged the Court to determine who the USDS detailees were in fact employed by through a functional approach that assesses "the subject matter and purpose of the individual's work, their supervision, and their physical worksite."  Defs.' Mem. Opp'n to Renewed TRO Mot. at 25 (emphasis added) (citing Jud. Watch v. Dep't of Energy, 412 F.3d 125, 131–32 (D.C. Cir. 2005)).  The Court has thus far not assessed this argument and expresses no view on it here.  But how and to whom the dual employees report will undoubtedly be relevant if this argument is raised in the upcoming preliminary injunction briefing.

So USDS's structure remains a crucial fact not only for the reasons the Court stated in the Discovery Order, but also because defendants' new evidence presents further reason that USDS's reporting structure needs clarifying. As a result, the previously ordered expedited discovery, narrowly scoped to clarify facts relevant to irreparable harm, remains appropriate. And defendants otherwise raise no new arguments as to why this discovery is improper. See State of New York, 880 F. Supp. at 38 ("A . . . motion to reconsider is not simply an opportunity to reargue facts and theories upon which a court has already ruled."). Hence, the Court's analysis of the reasonableness factors remains virtually the same as it was when the Court issued its Discovery Order.

The fact that the Court's previous reasoning survives even if the Court assumes as true all of defendants' new evidence is enough to deny defendants' motion for reconsideration. But there are also reasons to be cautious of concluding what defendants put forward is the whole story.

To begin, there appear to be USDS staffers employed by the agency defendants who defendants do not mention in their motion for reconsideration and the attendant exhibits. HHS's employee directory lists four individuals employed as executive engineers and one employed as a senior advisor who have all been reported to be USDS staffers. See Decl. of Mark B. Samburg [ECF No. 53-4] ("Samburg Decl.") ¶¶ 2–8 (containing screenshots of the HHS Employee Directory and sources identifying the relevant names as DOGE staffers).[14] However, defendants only identify Smith as a USDS/HHS employee carrying out the DOGE agenda.[15] Similarly, Martinez, CFPB's declarant here, only discusses one employee who was hired by the agency after being on detail from USDS: Wick. See Second Martinez Decl. ¶ 4. But in testimony in front of

---

[14] The Court executed the searches described in Samburg's declaration and obtained the same results. However, searches on the employee directory, which can be found at https://directory.psc.gov/employee.htm, do not appear to be susceptible to website preservation.

[15] Defendants argue that all the employee directory establishes is "that these individuals are employees of HHS" and are thus "sanctioned by the Privacy Act" to view HHS records. Defs.' Reply & Opp'n at 7. That may be true. But it certainly raises the question of when these four other employees started and in what positions.

13

another judge in this District, Martinez referred to "DOGE people" who had been working at CFPB and were later "designated . . . to be CFPB people" and specifically identified Christopher Young as one of these people.  Tr. Evidentiary Hr'g, Nat. Treasury Emps. Union v. Vought, Civ. A. No. 25-381 (ABJ) [ECF No. 53-7] ("Martinez Test.") at 7–9 (emphasis added).

When it comes to DOL, defendants themselves acknowledge inconsistencies across their evidence.  As noted earlier, in response to plaintiffs' first TRO motion defendants submitted a declaration from a person who identified himself as a USDS employee detailed to DOL.  See Ramada Decl. ¶¶ 2, 5.  Now, though, defendants aver that no USDS employees—including Ramada—were ever onboarded as detailees.  See Second Kryger Decl. ¶ 6.  Defendants recognize this about-face and attempt to explain it by saying that Ramada and other USDS employees were set to be onboarded but never were due to the agreement this Court helped the parties reach on the evening of February 5, 2025.  See id. ¶¶ 5–6.  Yet defendants Ramada's declaration is dated February 6.  This inconsistency, plus public reporting that DOGE staffers were working at DOL between February 5 and March 5, see Pls.' Opp'n at 8 n.3 (citing David Ingram, DOGE software approval alarms Labor Department employees, NBC News (Feb. 13, 2025), https://www.nbcnews.com/tech/security/doge-software-approval-alarms-labor-department-employees-data-security-rcna191583), raises doubts that there never were USDS detailees—or others implementing the DOGE agenda—working and accessing systems at DOL.

That brings up the next point of caution: the ever-evolving nature of this case.  In the briefing for nearly every motion thus far, defendants have presented an amended version of the status and details of USDS's operations and data access at the agency defendants.  Even now, the agency defendants do not aver that they will not receive USDS detailees again, even in the short time frame relevant to preliminary relief; their declarants merely say that, as far as they as

14

individuals know, the agency has no plans to do so.  See Second Kryger Decl. ¶ 7; Second Rice Decl. ¶ 11; Second Martinez Decl. ¶ 6; see also Pls.' Opp'n at 8–9.  The Court recognizes that USDS in its current form is not even two months old and that the approach to executing the DOGE agenda may evolve through trial and error.  But the consistent alterations and trickle of information cautions the Court against accepting as certain the present assertion that the USDS-detailee issue will not arise again.[16]

All told, the new evidence defendants contend compels the Court to deny the motion for expedited discovery does no such thing.[17]  The issues the Court identified as relevant to plaintiffs' upcoming preliminary injunction motion and the facts the Court identified as relevant to those issues are still critical and opaque.  If anything, the new evidence only provides more support for the Court's previous reasoning.  So the Court denies defendants' motion for reconsideration.[18]

## II.   Amended Motion for Expedited Discovery

In their motion, plaintiffs request the Court to make "limited modifications" to the Discovery Order.  Pls.' Mot. at 1.  Those proposed modifications amount to adding a question to the interrogatory directed at the agency defendants; several words to the interrogatory directed at

---

[16] Also cautioning the Court is that USDS Acting Administrator Gleason said on March 14, 2025, that "[e]very member of an agency's DOGE Team is an employee of the agency or a detailee to the agency," and that "[i]n some instances, members of agency DOGE Teams are detailees from USDS to the agency."  Gleason Decl. ¶¶ 13–14.

[17] Nor do separation of powers principles, contrary to defendants' arguments.  See Mot. at 12–13.  The Supreme Court's decision in Cheney v. United States District Court for the District of Columbia, 542 U.S. 367 (2004), is readily distinguishable.  In Cheney, the Supreme Court's reasoning rested on "a concern that forcing the Vice President to assert executive privilege in the context of broad discovery requests submitted during civil litigation would set 'coequal branches of the Government . . . on a collision course.'"  Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Homeland Sec., 532 F.3d 860, 866 (D.C. Cir. 2008) (quoting Cheney, 542 U.S. at 389).  "[N]o such danger exists" when the one who could possibly be held in contempt is an executive entity, not the President or Vice President.  Id. at 866.  Moreover, the limited expedited discovery the Court has ordered here "has little in common with the broad discovery order at issue" in Cheney.  Id. at 867.  Rather than "ask[ing] for everything under the sky," the discovery here is properly, and narrowly, scoped.  Id. (quoting Cheney, 542 U.S. at 387); Disc. Order at 9–14 (explaining how the expedited discovery is narrow in scope and imposes minimal burdens on defendants).

[18] In doing so, the Court also denies defendants' motion for a protective order.

USDS and to the requests for production; two words to the agency Rule 30(b)(6) deposition topics; and one clause to the topics for the USDS Rule 30(b)(6) deposition. Pls.' Proposed Modif. Disc. Reqs. [ECF No. 55-1] ("Disc. Reqs.") at 4–15.

To review, the factors that guide the Court's decision of whether to permit expedited discovery as reasonable are "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." Guttenberg, 26 F. Supp. 3d at 98. The Court finds that each modification request is reasonable.[19]

To start, the purpose of plaintiffs' modifications is to clarify (1) that "wherever previous discovery requests made reference only to DOGE detailees, the request is also intended to cover DOGE staff working at and ostensibly employed by Defendant Agencies," and (2) "the scope and terms of DOGE employees' multiple-concurrent-employment arrangements across agencies." Pls.' Mot. at 3. As the Court explained earlier, both of those facts may bear on plaintiffs' alleged irreparable harm, as well as standing and final agency action. See supra at 13; Disc. Order at 8–9 (explaining that plaintiffs' purpose for seeking expedited discovery is reasonable because it is focused on irreparable harm).

The proposed modifications are also narrow in scope and minimally burdensome. First, all but two of the modifications simply add "or otherwise deployed to" (or similar language) where the previously authorized discovery said something like "detailed to." See Disc. Reqs. at 5, 7, 11.

---

[19] The Court's analysis as to factors one and five remains the same as in its Discovery Order. The modification requests are made in preparation for plaintiffs' impending preliminary injunction motion and they come before the Court has resolved defendants' (now pending) motion to dismiss. See Disc. Order at 7–8 (explaining why factor one slightly favors granting the expedited discovery); id. at 14–16 (explaining why factor five does not outweigh the other four factors that favor permitting expedited discovery).

16

That is precisely tailored to the purpose of covering USDS staff working at the agency defendants who are not detailed there, and the burden of producing information related to those workers should not be substantially more than the burden of the previously-ordered discovery.

The other two proposed modifications are likewise properly scoped and minimally burdensome. To the interrogatory to the agency defendants, plaintiffs seek to add the question of what "number of federal agencies . . . the [USDS] Employee is concurrently detailed to or otherwise employed by." Disc. Reqs. at 4. This goes to the questions of how USDS employees' multiple-employment arrangement operates (including the reporting structure), as well as whether USDS employees hired by one agency may be improperly disclosing records outside of the agency that keeps them. Plus, the new question only requires the agency to provide a number for each USDS employee engaged at an agency defendant. Finally, plaintiffs seek a slight addition to the USDS Rule 30(b)(6) deposition topics. In addition to "the policies, procedures, and protocols pertaining to their detailing to and activities at the Agency"—a topic the Court already approved—plaintiffs wish to inquire about the policies and procedures "governing concurrent employment by DOGE and other agencies." Disc. Reqs. at 15. That is a necessarily limited topic that minimally expands the scope and burden of the topic the Court already approved. See Disc. Order at 11, 14.

In sum, the limited modifications plaintiffs seek to make to the already-limited expedited discovery are reasonable in light of the new evidence defendants have put forth. The Court thus grants plaintiffs' motion.

## CONCLUSION

This is undoubtedly "fast-paced litigation" in which things may and do change quickly. Defs.' Reply & Opp'n at 12. But, for the reasons above, the factual changes that defendants put forward do not compel the Court to reconsider its order granting plaintiffs' motion for limited

17

expedited discovery. Those facts do, however, justify slight alterations to that discovery and a modest change in schedule. Hence, it is hereby

**ORDERED** that [51] defendants' motion for reconsideration is **DENIED**; it is further

**ORDERED** that [55] plaintiffs' amended motion for discovery is **GRANTED**; it is further

**ORDERED** that, due to the delay in discovery that occurred pending the resolution of these motions, and pursuant to the parties' agreement, the deadline for discovery previously set shall be extended to March 31, 2025; and it is further

**ORDERED** that the preliminary injunction briefing schedule previously set shall be amended as follows:

- Plaintiffs shall file their preliminary injunction motion by not later than April 8, 2025;
- Defendants shall respond to the preliminary injunction motion by not later than April 15, 2025;
- Plaintiffs shall file their reply to defendants' response to the preliminary-injunction motion by not later than April 18, 2025.

**SO ORDERED.**

/s/<br>
JOHN D. BATES<br>
United States District Judge

Dated: <u>March 19, 2025</u>