**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

AFL-CIO, *et al.*,

   *Plaintiffs*,

v.

U.S. DEPARTMENT OF LABOR, *et al.*,

   *Defendants*.

Case No. 1:25-cv-00339-JDB

**MOTION TO COMPEL DISCOVERY**

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, Plaintiffs respectfully move

this Court to compel production of documents, written discovery responses, and 30(b)(6)

deposition testimony relating to members of the DOGE Teams at the Defendant Agencies who

were onboarded to the federal government after January 19, 2025.

This case concerns the alleged unlawful disclosure of protected data at the Defendant

Agencies to individuals affiliated with DOGE[1] who, Plaintiffs allege, are not authorized to access

it. Pursuant to the Court's February 27 and March 19, 2025 Orders ordering discovery in this

matter, Plaintiffs have sought discovery regarding this issue, including discovery about

individuals who may not be formally employed by DOGE but who work at Defendants Agencies

to advance DOGE's agenda.

Plaintiffs' discovery requests sought information about access by "DOGE Employees,"

which the requests define as "any individual who is employed by DOGE or otherwise works for

DOGE (including volunteers, if any), including any individual employed by DOGE but detailed

---

[1] In this Motion, Plaintiffs use "DOGE" to refer collectively to the U.S. DOGE Service and the
U.S. DOGE Service Temporary Organization.

to one or more federal agencies."[2] By its plain language, this definition includes individuals who do not have a formal employment relationship with DOGE, including individuals who were hired by Defendant Agencies for the specific purpose of working on their DOGE Teams.

Defendants have resisted in this matter at every turn: fighting Plaintiffs' initial discovery motion, moving the Court to reconsider its discovery order, refusing to provide discovery while its motion to reconsider was pending, and then failing to provide its objections and responses until March 26, after the original close of discovery. Now Defendants claim for the first time that Plaintiffs' definition of DOGE Employees includes only those with a formal employment relationship with DOGE, notwithstanding the plain language to the contrary. Defendants' cramped reading would exclude from discovery numerous individuals who are members of the DOGE Teams at the respective agencies, are widely and publicly acknowledged to be DOGE affiliates, including by the individuals themselves, and who were hired into the federal government for the purpose of executing the DOGE agenda. Regardless of formal employment relationship, it beggars belief to insist that these individuals do not "otherwise work for DOGE."

Plaintiffs have offered to limit their request to individuals who are members of the DOGE Teams at the Defendant Agencies and were hired into the federal government after January 19, 2025 (in addition to the individuals already included under Defendants' interpretation). This limitation would target those individuals most likely to be hired for the specific purpose of advancing DOGE's agenda at Defendants Agencies—in other words, those who otherwise work for DOGE—while excluding career agency personnel. Defendants have rejected that compromise. Plaintiffs therefore respectfully request that the Court compel

---

[2] Certain modest changes were made to the discovery requests as provided in the Court's March 19, 2025 Memorandum Opinion and Order, but this definition remained unchanged.

Defendants to produce documents, written discovery responses, and 30(b)(6) deposition testimony that relate to members of the DOGE Teams at the Defendant Agencies hired into the federal government since January 19, 2025 and that is otherwise responsive to Plaintiffs' discovery requests.[3]

## PROCEDURAL BACKGROUND

On February 19, 2025, Plaintiffs moved for limited expedited discovery, seeking information about individuals who worked for DOGE and who had accessed information at DOL, HHS, and CFPB (collectively, "Defendant Agencies"). ECF No. 44. Relevant here, the discovery requests defined "DOGE Employees" to include "any individual who is employed by DOGE or otherwise works for DOGE (including volunteers, if any), including any individual employed by DOGE but detailed to one or more federal agencies." ECF No. 44-2 at 3. After considering the specific discovery requests proposed by Plaintiffs, this Court ordered limited expedited discovery on February 27 and set the close of discovery on March 24. ECF No. 48. Plaintiffs served their discovery requests on February 28, and asked that Defendants complete written productions by March 14 in order to allow time for review before depositions began on March 18.

On March 11, Defendants moved for reconsideration of this Court's February 27 order granting expedited discovery, arguing that no expedited discovery was necessary because Defendant Agencies were now directly employing DOGE personnel rather than receiving

---

[3] Although Plaintiffs propounded these discovery requests on February 28, 2025, and the Court affirmed Defendant's discovery obligations on March 19, 2025, Defendants did not produce documents to Plaintiffs until March 25, 2025 and did not serve written discovery requests until March 26, 2025. Given this late production, Plaintiffs are continuing to assess the completeness of Defendants' responses and production, but move the Court now to resolve this important and time sensitive issue. Plaintiffs reserve their right to object to other aspects of Defendants' responses once they have had sufficient time to complete that assessment.

detailees from DOGE. ECF No. 51. On March 19, 2025, the Court denied Defendants' motion

and again ordered discovery in this case, noting, among other reasons, that "there appear to be

USDS staffers employed by the agency defendants who defendants do not mention in their

motion for reconsideration and the attendant exhibits." ECF No. 17 at 13-14.[4] The Court's order

also extended deadlines for discovery and briefing on Plaintiffs' forthcoming motion for a

preliminary injunction by seven days. *Id.* at 18.

On March 25, nearly a full month after the Court's initial discovery order, Defendants

provided Plaintiffs with an initial document production. *See* Declaration of Aman T. George, Ex.

A ¶ 5. The next day, Defendants served written discovery responses and objections, including

interrogatory responses.

In these responses, Defendants objected for the for the first time to Plaintiffs' definition

of "DOGE Employee" as vague and ambiguous. Defs. Discovery Response, Ex. B at 2. Even

though Plaintiffs expressly defined "DOGE Employee" to include not only individuals

"employed by DOGE" but also those who "otherwise work for DOGE (including volunteers, if

any)," Defendants interpreted the term "to refer to individuals who have a formal employment

relationship with one of Defendant Agencies and who also have a formal employment

relationship with the U.S. DOGE Service (USDS), whether by being detailed to or from USDS at

any point in time, or by being an employee of USDS." Ex. B at 2. As a result, Defendants'

interrogatory responses and document productions omitted information regarding individuals

employed at Defendant Agencies for the specific purpose of advancing DOGE's agenda but

lacking a formal relationship with DOGE—in other words, people who "otherwise work for

---

[4] By the same order, the Court also granted Plaintiffs' Motion for Modification of This Court's
Discovery Order, ECF 55.

DOGE"—including people specifically discussed in the Court's March 19 order. *See* ECF No. 17 at 13-14.

To attempt to resolve this issue, Plaintiffs met and conferred with Defendants on March 27, 2025. Ex. A ¶ 6. Plaintiffs emphasized that their requests clearly extend beyond only those with formal employment relationships with DOGE and include members of Defendant Agencies' DOGE Teams. Ex. A-3 at 3. Defendants disagreed. Plaintiffs then proposed a compromise: defining DOGE Employees to include members of Defendant Agencies' DOGE Teams who had been onboarded to the federal government after January 19, 2025. Ex. A-3 at 2. This definition would reach those individuals most likely to be specifically hired to Defendant Agencies to advance DOGE's agenda, *i.e.* people who otherwise work for DOGE, while excluding career agency personnel. Defendants rejected that compromise as well. *Id.* at 1.

Having reached an impasse with Defendants, Plaintiffs now file this motion to compel.

## ARGUMENT

The limited information that Plaintiffs seek to compel is (1) directly responsive to the requests Plaintiffs have propounded, (2) entirely consistent with the intended scope of the expedited discovery the Court has laid out in its orders, and (3) necessary to prevent Defendants from avoiding discovery by changing the facts on the ground in response to this lawsuit in a way that allows them to escape their discovery obligations without addressing the actual illegality Plaintiffs seek to prevent.

*First*, the limited discovery that Plaintiffs seek to compel is directly responsive to the discovery requests they propounded. As noted above, Plaintiffs sought in discovery various information regarding "DOGE Employees," which was defined as "any individual who is employed by DOGE or otherwise works for DOGE (including volunteers, if any), including any

individual employed by DOGE but detailed to one or more federal agencies." ECF No. 44-2 at 3 (proposed discovery requests); ECF No. 55-1 at 4 (proposed modifications to discovery requests). In context, "otherwise works for DOGE" should be easily understood to encompass, at a minimum, individuals who were hired into the federal government by this Administration to perform work for DOGE and who serve on the DOGE Teams at the Defendant Agencies, regardless of whether these individuals have a formal employment relationship with DOGE.

Defendants' interpretation to the contrary cannot be squared with reality. Consider, for example, Aram Moghaddassi, who Defendants apparently believe does not "otherwise work for DOGE" in any capacity. Evidence in this case, including evidence produced by Defendants, confirms that Mr. Moghaddassi is apparently employed at both HHS and DOL,[5] but he was not included in Defendants' discovery responses. Yet on March 27, 2025—mere hours after Defendants insisted that DOGE Team members did not work for DOGE—Mr. Moghaddassi appeared on national television identified as a "DOGE Engineer" in an interview with Elon Musk and other DOGE staff about DOGE's work.[6] After the interview, the White House website posted an article about the interview, referring to Mr. Moghaddassi and others as "members of the Department of Government Efficiency (DOGE)." The article also highlighted Mr. Moghaddassi's comments about his work on behalf of DOGE at yet another agency—the Social Security Administration.[7] In these circumstances, Defendants' assertion that DOGE Team members like Mr. Moghaddassi do not "otherwise work for DOGE" is untenable.

---

[5] Decl. of Mark Samburg, ECF No. 53-4 (listed in HHS directory); Email from M. Elez to R. Kryger, Ex. C (onboarded to DOL).

[6] Fox News, "Elon Musk and DOGE team give behind the scenes look at their mission," YouTube (Mar. 27, 2025). https://www.youtube.com/watch?v=l7kQNwJ4H_w.

[7] *ICYMI: DOGE's Mission to Make Government Work Again,* White House (Mar. 28, 2025), *available at* https://www.whitehouse.gov/articles/2025/03/icymi-doges-mission-to-make-government-work-again/.

Indeed, Defendants' cramped interpretation of the requests would exclude from discovery several key individuals who are performing work on behalf of DOGE at the Defendant Agencies and who (1) Defendants have referred to as DOGE affiliates in their own declarations, and (2) have been publicly identified as working on behalf of DOGE in public reporting or in filings in other cases.

At the Department of Labor (DOL), for example, Defendants' discovery responses have included only *one* DOGE Employee, Marko Elez. *See* Ex. B at 12-13. Yet we know from Defendants' own disclosures and public information that there are or have been at least two other DOGE individuals at DOL. For example, Defendants produced a document that shows that Elez was onboarded to the agency jointly with two other individuals, Mr. Moghaddassi and Miles Collins. Ex. C. Both are known to be DOGE affiliates and have been publicly identified as working on behalf of DOGE.[8]

At the Department of Health and Human Services (HHS), Defendants identify five DOGE Employees: Amy Gleason, Luke Farritor, Edward Coristine, Marko Elez, and Kyle Schutt. As at DOL, this excludes Mr. Moghaddassi, who is listed in the HHS employee directory. *See* Decl. of Mark Samburg, ECF No. 53-4. It also excludes DOGE affiliates Rachel Riley, Conor Fennessy, and Jeremy Lewin, who are likewise publicly listed as HHS employees. *Id.*, Declaration of Alexa T. Milton, Ex. D.[9] Although he would appear to fit even their narrow

---

[8] *See, e.g.*, *supra* n. 6 (television interview with Mr. Moghaddassi); Juliana Kaplan and Jack Newsham, *A new DOGE staffer at the Department of Labor has helped run a fertility clinic and has pronatalist ties*, Business Insider (Mar. 5, 2025), https://www.businessinsider.com/doge-staffer-fertility-clinic-pronatalist-department-of-labor (identifying Elez, Moghaddassi, and Collins as people associated with DOGE at DOL).
[9] *See* Avi Asher-Shapiro, et al., "Elon Musk's Demolition Crew," Pro Publica, https://projects.propublica.org/elon-musk-doge-tracker/ (reporting that these individuals are working to advance DOGE's agenda).

definition of DOGE Employee, Defendants also fail to include in their written discovery Brad

Smith; Defendants themselves identified Mr. Smith as a DOGE affiliate in the filings that

accompanied their Motion for Reconsideration, but have produced no documents relating to him

whatsoever outside of the previously filed SF-61. *See* ECF No. 51-3 at ¶¶ 6-9 (describing a

DOGE employee detailed to HHS and later converted to a direct hire); ECF No. 65-3

(identifying the individual detailed from USDS to HHS as Mr. Smith).[10]

At the Consumer Financial Protection Bureau (CFPB) Defendants identify four

individuals working for DOGE: Jordan Wick, Christopher Young, Nikhil Rajpal, and Luke

Farritor. But previous sworn declarations submitted in this case have attested that there are or

have been at least six DOGE employees performing work at the CFPB. *See*, *e.g.*, Martinez Decl.,

ECF No. 51-5 at ¶ 4 (noting that there are six DOGE employees at CFPB, but only explaining

the employment status of one of the six). Indeed, Defendants expressly state that they are

withholding responses regarding two members of the CFPB DOGE Team referred to in Adam

Martinez' February 13, 2025 declaration pursuant to their objection regarding the definition of

DOGE Employee. *See* Ex. B at 13.[11] Defendants have not disclosed the names of those two

individuals. One may be Jeremy Lewin, who Martinez named as a "member of DOGE" at the

CFPB in his sworn testimony in a separate case. *See* ECF No. 53-7 at 10.

---

[10] Defendants may assert that Mr. Smith has not yet accessed sensitive systems at HHS. Even if
that is the case, certain document requests would clearly encompass documents related to him.
For example, as a federal employee, Mr. Smith should have undergone privacy and cybersecurity
training, as requested in Plaintiffs' Request for Production No. 6. ECF 55-1 at 7.
[11] Discovery about these individuals is responsive to Plaintiffs' discovery requests even if they
are no longer employed at or detailed to the CFPB because the discovery requests expressly
permitted by this Court stated that "the time period covered by these discovery requests is
January 20, 2025 until March 24, 2025." Dkt. 44-2 at 2.

*Second*, the information Plaintiffs seek to compel is entirely consistent with the Court's reasoning for twice granting Plaintiffs' discovery requests. Plaintiffs do not seek to change the scope or terms of their discovery requests. Instead, they seek only an order confirming that their requests apply to individuals who do not have a formal employment relationship with DOGE but functionally work to advance DOGE's agenda at the Defendant Agencies. This information is relevant to Plaintiffs' forthcoming motion for a preliminary injunction for the same reasons information about formal USDS employees is relevant: it illuminates Plaintiffs' likelihood of success on the merits and irreparable harm. As the Court reasoned in granting Plaintiffs' original motion for expedited discovery, Plaintiffs interrogatories seek information about "the extent of access to sensitive systems agencies have given USDS employees, who at the agencies authorized such access, and any training USDS employees received." ECF No. 48 at 10. Similarly, the 30(b)(6) topics to Defendant Agencies "focus on how, if at all, the agencies' systems-access procedures changed following USDS's creation, the role of USDS employees at the agencies, and those employees' use of sensitive systems." *Id.* at 11. This information "goes to irreparable harm" because, if people who work for DOGE "are not permitted by the Privacy Act to view these systems," then Plaintiffs are injured. *Id.* at 10. This same reasoning applies equally to individuals formally onboarded to Defendant Agencies to advance DOGE's agenda as it does to DOGE's formal employees.

In particular, discovery about DOGE Team members' access to records is relevant to whether individuals working for DOGE are accessing records without a need. In denying Defendants' motion for reconsideration, this Court recognized that Plaintiffs' discovery was "relevant to whether the USDS staffers working at defendant agencies (direct hires or otherwise) have 'a need for the record[s]' they are or were accessing" as required by the

Privacy Act, 5 U.S.C. § 552a(b)(1). ECF No. 71 at 10 n.12. So too discovery about individuals on DOGE Teams at Defendant Agencies. The fact that Mr. Moghaddassi is on the DOGE Teams at DOL and HHS (and, apparently, SSA) but is not, it seems, officially employed by DOGE neither establishes that he has a need for any records at those agencies nor precludes him from functionally working on behalf of DOGE. Discovery about his role—and that of any as-yet-unidentified DOGE Team members—goes directly to whether Defendant Agencies have violated the Privacy Act.

*Third*, the information Plaintiffs seek to compel is necessary to prevent Defendants from avoiding discovery by changing the facts on the ground in response to this lawsuit in a way that allows them to escape their discovery obligations without addressing the underlying illegality of their actions.

At the initiation of this case, Defendants filed a sworn declaration from Adam Ramada, who identified himself as a detailee from USDS to DOL, and who stated that there were three other such detailees in addition to himself. ECF No. 16-1 at ¶ 5. Since then, Defendants have said that none of those individuals were ever actually detailed, that those who had been detailed from USDS to the Defendant Agencies were subsequently directly employed, and that this fact made them entirely irrelevant to Plaintiffs claims. *See* ECF No. 51-1 at 1. The Court rejected that argument. ECF No. 71. Now, Defendants claim that another set of individuals who are, as described above, clearly performing work for DOGE at the agencies are also irrelevant to Plaintiffs' claims. This is likewise incorrect. Whether or not the individuals have a formal employment relationship with DOGE, outside of whatever relationship they have with the Defendant Agencies, is not dispositive of Plaintiffs' Privacy Act claims any more than the fact of Amy Gleason, Brad Smith, and Jordan Wick's formal employment relationships with Defendant

Agencies was. Whatever their formal relationship with DOGE, the individuals Defendants seek

to shield from inquiry are quite transparently "work[ing] for DOGE" to implement the DOGE

agenda at the Defendant Agencies. Their access to protected data and records at the Agencies

thus raises the same questions that are raised by the data access of the other DOGE staff covered

by Plaintiffs' discovery requests. Because those requests remain reasonable, precisely tailored to

address the issues relevant to Plaintiffs' upcoming preliminary injunction motion, and modest in

scope, Plaintiffs' motion to compel should be granted.


Dated: March 29, 2025                          Respectfully submitted,

                                               */s/ Alexa T. Milton*

                                               Mark B. Samburg (D.C. Bar No. 1018533)
                                               Aman T. George (D.C. Bar No. 1028446)
                                               Rachel F. Homer (D.C. Bar No. 1045077)
                                               Robin F. Thurston (D.C. Bar No. 462679)
                                               Somil B. Trivedi (D.C. Bar No. 1617967)
                                               Skye L. Perryman (D.C. Bar No. 984573)
                                               DEMOCRACY FORWARD
                                               FOUNDATION
                                               P.O. Box 34553
                                               Washington, D.C. 20043
                                               Telephone: (202) 448-9090
                                               Fax: (202) 796-4426
                                               msamburg@democracyforward.org
                                               ageorge@democracyforward.org
                                               rhomer@democracyforward.org
                                               rthurston@democracyforward.org
                                               strivedi@democracyforward.org
                                               sperryman@democracyforward.org


                                               Glenn Schlactus (D.C. Bar No. 475950)
                                               Zoila E. Hinson (D.C. Bar No. 1766625)**
                                               Alexa Milton (D.C. Bar No. 155380)**
                                               RELMAN COLFAX PLLC
                                               1225 19th St. NW, Suite 600
                                               Washington, DC 20036

Telephone: (202) 728-1888
gschlactus@relmanlaw.com
zhinson@relmanlaw.com
amilton@relmanlaw.com
*Counsel for Plaintiffs*

Teague P. Paterson (D.C. Bar No. 144528)
Matthew S. Blumin (D.C. Bar No. 1007008)
AMERICAN FEDERATION OF STATE,
COUNTY, AND MUNICIPAL
EMPLOYEES, AFL-CIO
1625 L Street N.W.
Washington, DC 20036
Telephone: (202) 775-5900
Facsimile: (202) 452-0556
tpaterson@afscme.org
mblumin@afscme.org
*Counsel for American Federation of State,
County, and Municipal Employees, AFL-
CIO (AFSCME)*

Rushab B. Sanghvi (D.C. Bar No. 1012814)
AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES, AFL-CIO
80 F Street N.W.
Washington, DC 20001
Telephone: (202) 639-6426
Facsimile: (202) 329-2928
SanghR@afge.org
*Counsel for Plaintiff American Federation
of Government Employees, AFL-CIO
(AFGE)*

Steven K. Ury* (D.C. Bar 1643947)
SERVICE EMPLOYEES
INTERNATIONAL UNION
1800 Massachusetts Avenue, NW,
Legal Department, 6th Floor,
Washington, DC 20036
Telephone: (202) 730-7428
steven.ury@seiu.org
*Counsel for Plaintiff Service Employees
International Union*

Matthew Holder**
COMMUNICATION WORKERS OF
AMERICA, AFL-CIO
501 Third Street N.W.
Washington, D.C. 20001
Telephone: (202) 215-6788
mholder@cwa-union.org

* Admission pending
** Admitted *pro hac vice*