# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF LABOR *et al.*, <br><br> Defendants. | Case No. 1:25-cv-00339-JDB <br><br><br> Judge John D. Bates |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY

On the eve of the deadline for completing discovery, Plaintiffs have filed a motion to compel seeking discovery that is unambiguously outside the scope of the requests that they drafted and issued, that does not relate to any plausible Economy Act issue, and with which Defendants could not comply by the current discovery deadline. Defendants respectfully request that the Court deny the motion. Denial is especially warranted in light of the D.C. Circuit's recent grant of a stay in another case against the United States DOGE Service (USDS), where the panel unanimously granted a stay in a mandamus posture against a discovery order issued prior to resolution of defendants' motion to dismiss. If the Court grants Plaintiffs' motion, Defendants respectfully request that the Court extend the discovery deadline by 14 days—as discussed further below, Plaintiffs' motion asks the Court to fundamentally redefine a term that is used literally dozens of times in their discovery requests, and that is relevant to nearly every document request,

1

interrogatory, and deposition topic. The Court should deny the motion to compel but, if the Court grants the motion, additional time to complete discovery would be needed.

ARGUMENT

## I.    The Court Should Deny Plaintiffs' Motion.

### A.    The Existing Discovery Requests Do Not Cover DOGE Team Members With No Connection to USDS

At issue here is the scope of the term "DOGE Employee." Does this term encompass members of agency DOGE Teams who are agency employees and who have no employment relationship (paid or otherwise) with "DOGE," defined by Plaintiffs as USDS or the USDS Temporary Organization? It plainly does not.

Plaintiffs' discovery requests define "DOGE Employee" as "any individual who is employed by DOGE or otherwise works for DOGE (including volunteers, if any), including any individual employed by DOGE but detailed to one or more federal agencies." ECF No. 55-1 at 3. Those requests also define "DOGE" as "refer[ing] collectively to the U.S. DOGE Service and U.S. DOGE Service Temporary Organization." *Id.* These are specific non-statutory Executive Branch components directly delineated by Executive Order. Executive Order 14,158 redesignated the United States Digital Service as the U.S. DOGE Service, and made it a free-standing component of the Executive Office of the President, reporting to the White House Chief of Staff. Exec. Order 14,158, § 3(a). Similarly, it established a "U.S. DOGE Service Temporary Organization" within USDS pursuant to 5 U.S.C. § 3161, which will terminate on July 4, 2026. *Id.* § 3(b). Thus, a DOGE Employee is any individual who is employed by or who otherwise works for the U.S. DOGE Service (USDS) or the U.S. DOGE Service Temporary Organization within USDS, including any volunteers for those entities. Defendants have relied on this definition throughout the course of assembling expedited discovery and preparing witnesses for 30(b)(6) depositions.

2

Plaintiffs now seek "production of documents, written discovery responses, and 30(b)(6) deposition testimony relating to members of the DOGE Teams *at the Defendant Agencies* who were onboarded to the federal government after January 19, 2025," even those who do not work for or have any employment relationship with the USDS entities. ECF No. 71 (Motion) at 1 (emphasis added). The individuals encompassed by Plaintiffs' motion are not the types of individuals this Court addressed in previous motion practice in this case. They are not detailed from USDS, were not previously detailed from USDS, and are not employees of both USDS and a defendant agency. Agency heads are required to "establish *within their respective Agencies* a DOGE Team of at least four employees, which may include Special Government Employees." Exec. Order 14,158, § 3(c) (emphasis added). Indeed, Plaintiffs' discovery also defines "Defendant Agencies" separately from DOGE as "the Department of Labor . . . , Department of Health and Human Services . . . , and Consumer Financial Protection Bureau." ECF No. 55 at 3. The members of Agency DOGE Teams with respect to whom Plaintiffs now seek discovery are thus employed by Defendant Agencies. They are not employed by, do not otherwise work for, and do not volunteer for USDS or the temporary organization within USDS, and thus do not fit within Plaintiffs' definition of "DOGE Employee."

What's more, Plaintiffs themselves drew a distinction in their discovery requests between DOGE Employees, as they defined them, and members of Agency DOGE Teams. Their 30(b)(6) deposition topics for the Defendant agencies include "the supervision of DOGE Employees and other members of DOGE Teams." ECF No. 55-1 at 11.

No less importantly, in seeking discovery Plaintiffs also clearly indicated that the discovery's reference to DOGE employees applied only to USDS employees who were detailed to the agencies (and by implication, that the term did not apply to all members of agency DOGE

Teams). In particular, in their motion for expedited discovery, Plaintiffs argued that their first then-proposed interrogatory was not overly burdensome because it "concern[ed] a limited number of individuals." ECF No. 44, at 14. To support that claim, Plaintiffs noted that "across all declarations submitted in this case, Defendants appear to have identified only five DOGE employees detailed to Defendant Agencies." *Id.* Plaintiffs then cited, inter alia, a declaration as "identifying one DOGE detailee to CFPB," "identifying one DOGE detailee to HHS," and "identifying three DOGE detailees to DOL."[1] Plaintiffs identified these detailees as the relevant individuals even though they knew there were members of agency DOGE Teams who were not detailed from USDS. For example, one underlying declaration explains that there were "six employees at the CFPB who serve as the core team helping to advance the executive order's initiatives." ECF No. 31-3 ¶ 4. "One is on detail from USDS, and five are on detail from other federal agencies." *Id.* ¶ 5. In other words, in moving for this discovery, Plaintiffs did not take the position that the term DOGE employee in the first interrogatory covered all employees on the "the core team helping to advance the executive order's initiatives." That history confirms what the language of their requests also makes clear: agency DOGE Team members who are not also USDS employees are not within the scope of the term DOGE Employee.

Urging otherwise, Plaintiffs repeatedly claim that the definition of "DOGE Employee" extends beyond those with a "formal employment" relationship with USDS. That misses the point. Plaintiffs' definition purports to encompass those who "work[] for" USDS and the USDS Temporary Organization but do not enjoy what is colloquially considered a formal employment

---

[1] Though not relevant to this opposition, we note that Defendants previously advised the Court that none of these three individuals were actually detailed to DOL.

relationship—such as volunteers.[2] But those individuals are not the subject of Plaintiffs' motion to compel. As Plaintiffs themselves frame it, the subjects of their motion are "individuals who were hired by Defendant Agencies for the specific purpose of working on their DOGE Teams." Motion at 2. Plaintiffs thus seek to extend the term "DOGE Employees" to individuals who are agency employees and who have no status whatsoever within DOGE, as Plaintiffs define the term DOGE.

Plaintiffs relatedly argue that the definition of DOGE Employee applies "to individuals who do not have a formal employment relationship with DOGE but functionally work to advance DOGE's agenda at the Defendant Agencies." Motion at 9; *see also id.* at 6 (contending that "'otherwise works for DOGE' should be easily understood to encompass, at a minimum, individuals who were hired into the federal government by this Administration to perform work for DOGE and who serve on the DOGE Teams at the Defendant Agencies").[3] This functional argument also fails.

---

[2] Plaintiffs correctly note that Defendants objected to the term "DOGE Employee" as vague and ambiguous. And they note Defendants' representation that they would interpret the term "to refer to individuals who have a formal employment relationship with one of Defendant Agencies and who also have a formal employment relationship with the U.S. DOGE Service (USDS), whether by being detailed to or from USDS at any point in time, or by being an employee of USDS." Motion, Ex. B at 2. But contrary to Plaintiffs' suggestion, Defendants did not suggest in this objection that members of Agency DOGE Teams were within the scope of the term "DOGE Employee" and Defendants were carving them out. Rather, the purpose of this objection was to highlight that the concept of informal employees envisioned by this language was vague, which is a distinct issue.

[3] Plaintiffs reference individuals hired by "this Administration" and they note that Defendants declined Plaintiffs' proposal that they treat the definition as "includ[ing] members of Defendant Agencies' DOGE Teams who had been onboarded to the federal government after January 19, 2025." Motion at 5. First, the concept of post-January 19 employees is nowhere to be found in Plaintiffs' propounded discovery. But, more so, Plaintiffs' focus on individuals hired by the current Trump Administration would seem to underscore that even they do not truly believe that members of Agency DOGE Teams are USDS/USDS Temporary Organization employees within the meaning of the definition they propounded. And Plaintiffs certainly provide no basis in either the text of the discovery requests or common sense to suggest that this question somehow turns on the administration that was in power when the agency employee was onboarded to the federal government.

Agency DOGE Team employees do not work for USDS in the sense Plaintiffs' theory hypothesizes. Plaintiffs contend that Agency DOGE Team employees "are performing work on behalf of DOGE at the Defendant Agencies." Motion at 7. But Agency DOGE teams are directed to "coordinate their work with USDS and advise their respective Agency Heads on implementing the President's DOGE Agenda." Exec. Order 14,158, § 3(c). Two entities may "coordinate" their work without the employees of one entity acting on behalf of the other, let alone "work[ing] for" the other. For example, if attorneys working for two companies named in a lawsuit coordinate their work in defending against the lawsuit, no one would claim that attorneys for one company in fact "worked for" the other company—either with respect to the litigation specifically or more generally. Agency heads are also charged with helping to implement the President's DOGE Agenda—indeed, they oversee Agency DOGE Teams. But it would not be reasonable to claim that this work and any common interest they share with USDS transforms agency heads into USDS Employees.

Plaintiffs ignore the relevant issue by referring generally to "DOGE" rather than DOGE *as defined* in their discovery requests: again, "the U.S. DOGE Service and U.S. DOGE Service Temporary Organization." The question is not whether Agency DOGE Teams help advance the President's DOGE agenda, which they clearly do. The question is whether such individuals are employed by or otherwise work for USDS or the USDS Temporary Organization, and are therefore "DOGE *Employees*" as defined in Plaintiffs' discovery requests. They are not.

Relatedly, "it is not unusual to consider the ordinary meaning of a defined term, particularly when there is dissonance between that ordinary meaning and the reach of the definition." *Bond v. United States*, 572 U.S. 844, 861 (2014). There is no such dissonance here, but if there were, the term being defined is "employee." As discussed, that term means someone is employed by USDS

or the USDS Temporary Organization. It is not consistent with the ordinary meaning of employee to read it as Plaintiffs do to include individuals who are employed by a separate entity, and who do not report to the alleged employing entity, on the theory that, at some level of generality, they are advancing the same agenda as the assertedly employing entity.

### B.      The Court Should Not Expand Plaintiffs' Discovery Requests

It is hardly surprising that Plaintiffs' discovery requests did not include members of Agency DOGE Teams in their definition, since information concerning them is irrelevant to this case—and at the very least, does not follow the logic of this Court's Order granting expedited discovery and denying Defendants' motion for reconsideration. Plaintiffs contend that "the information Plaintiffs seek to compel is entirely consistent with the Court's reasoning for twice granting Plaintiffs' discovery requests." Motion at 9. But in granting expedited discovery, this Court found particularly important "the structure of USDS and the scope of its authority," which the Court concluded were "critical to deciding the question of whether" the U.S. DOGE Service (USDS) "is an agency within the meaning of the Economy Act of 1933—and thus whether its employees are permitted by the Privacy Act to view individual information." ECF No. 48 at 8. The Court went on to explain that the interrogatories Plaintiffs proposed were appropriate because the interrogatories "to the agencies seek information about the extent of access to sensitive systems agencies have given *USDS employees*, who at the agencies authorized such access, and any training *USDS employees* received." *Id.* at 10 (emphases added); *see also id.* (stating that "this information goes to irreparable harm because, if USDS employees are not permitted by the Privacy Act to view these systems, plaintiffs argue they are injured"). The proposed document requests were also appropriate, the Court ruled, because they "are relevant to the scope of USDS employees' assignments, their

relationship to the defendant agencies at which they're working, and USDS's authority to detail them." *Id.* at 11.

In denying Defendants' motion for reconsideration, the Court similarly focused on individuals previously detailed from USDS and individuals employed by both USDS and a Defendant agency, and how the presence of those individuals affected the Economy Act issues in the case. ECF No. 71 at 3 (characterizing prior TRO motion and explaining that "At base, the motion's merit turned on whether plaintiffs met their burden of establishing that USDS employees working at the defendant agencies were unlawfully detailed to those agencies"); *id.* at 10 ("The Economy Act issue continues to be relevant to plaintiffs' upcoming preliminary injunction—and specifically their theory of irreparable harm—even if USDS is not currently, and will not in the future, detail its employees to other agencies to implement those agencies' DOGE agendas."); *id.* at 11 ("So whether USDS *could lawfully* detail employees to the agency defendants *when USDS was doing so* still matters."); *id.* at 12 (stating that "how and to whom the dual employees report will undoubtedly be relevant if this argument is raised in the upcoming preliminary injunction briefing").

There is, however, no Economy Act issue associated with Agency DOGE Team members who are not detailed from, *and* who are not dual employed by USDS and a Defendant Agency. Indeed, Plaintiffs do not contend otherwise. Their motion does not even mention the Economy Act. ECF No. 73-1 at 12-16. Plaintiffs also reference this Court's reconsideration decision, and briefly contend that "discovery about DOGE Team members' access to records is relevant to whether individuals working for DOGE are accessing records without a need." Motion at 9. But the Court "agree[d] with plaintiffs that the discovery is also relevant to the question of whether *the USDS staffers* working at defendant agencies (direct hires or otherwise)" had a need to access the

information. ECF No. 71 at 10 n.12 (emphasis added). The Court did not suggest that non-USDS employees are in any way relevant to the Economy Act issue in this case.

Indeed, Plaintiffs' motion is inconsistent with both this Court's prior analysis of the scope of proper discovery and the way Plaintiffs have litigated this issue. As reflected above, this Court's discovery decisions focused on dual USDS and agency employees, and individuals previously detailed from USDS. And as the Court (correctly) characterized Plaintiffs argument, "Plaintiffs did not contest that the DOGE Team members who were direct hires of the defendant agencies or those who were detailed from other agencies were 'employees of the agency' within the meaning of" the Privacy Act. ECF No. 71 at 4. Yet on Plaintiffs' current telling, this exclusive focus on USDS staffers was *entirely irrelevant* because anyone on an Agency DOGE Team is also a USDS Employee within the meaning of the discovery that this Court approved. The Court should reject that contention.

Plaintiffs also discuss individuals that, on their telling, "are performing work on behalf of DOGE at the Defendant Agencies." Motion at 7. But Plaintiffs again err by conflating the general term DOGE, which is often used to describe the government-wide DOGE Agenda, with DOGE as Plaintiffs defined it in their discovery requests—*i.e.*, USDS and the USDS Temporary Organization. To take just a few of Plaintiffs' examples, that Aram Moghaddassi was identified as a "DOGE Engineer" in a Fox News interview and as a "member[] of the Department of Government Efficiency (DOGE)" by the White House, *id.* at 6; that there are "DOGE individuals" at DOL who "work[] on behalf of DOGE," *id.* at 7; and that there are individuals at HHS who news articles have characterized as "working to advance DOGE's agenda," *id.* at 7 & n.9, simply reflect that members of Agency DOGE Teams are working on implementing the DOGE agenda— something Defendants have never denied and that is a central feature of the Executive Order

reestablishing the former United States Digital Service as USDS and directing the creation of Agency DOGE Teams as separate entities within and reporting to agency heads, not USDS.

Finally, Plaintiffs appear to suggest that there may be documents that should have been produced concerning an individual (Brad Smith) who they assert qualifies as a DOGE Employee under Defendants' definition of the term.[4] To be clear, if Plaintiffs believe that Defendants omitted responsive information or documents and believe this based on some theory separate from the incorrect theory underlying this motion—that members of Agency DOGE Teams with no relationship to USDS fall within the definition of DOGE Employee in Plaintiffs' discovery requests—Defendants stand ready to meet and confer with Plaintiffs concerning any such contention, which Plaintiffs have not done to date. But that is not the subject of this motion. As to the motion Plaintiffs filed, this Court should deny it.

Notably, the D.C. Circuit recently granted a motion for an emergency stay in a mandamus posture under similar circumstances, holding that the district court erred in ordering discovery against USDS before deciding Defendants' motion to dismiss. *See In re Elon Musk in his Official Capacity et al.*, No. 25-5072 (Order filed March 26, 2025). Similarly, here, this Court has not yet resolved Defendants' motion to dismiss. At the very least, the D.C. Circuit's stay counsels strongly against *expanding* the discovery as Plaintiffs now demand, to cover information that is not relevant to any Economy Act issue in the case.

---

[4] HHS agrees with Plaintiffs that Brad Smith qualifies as a "DOGE Employee." The reason he is not mentioned in the interrogatory response is because he has not accessed any Sensitive Systems.

## II.    If the Court Grants Plaintiffs' Motion, it Should Extend the Discovery Deadline by 14 Days

For reasons previously stated, Defendants respectfully submit that the Court can and should swiftly deny the motion, which would allow for the prompt completion of previously ordered discovery. But if the Court grants Plaintiffs' motion, additional time will be required, and Defendants specifically request that the Court extend the discovery deadline by 14 days.

The question at issue in this motion—whether "DOGE Employee" encompasses employees at Defendant Agencies working on Agency DOGE teams—is not an interstitial or minor issue. To the contrary, the term "DOGE Employee" is used approximately *40 times* in Plaintiffs' discovery requests (not counting the definitional sections), including in virtually every interrogatory, document request, and deposition topic. Because that term and its scope is such a central feature of the discovery Plaintiffs served, adhering to Plaintiffs' atextual understanding of the term would potentially affect virtually all of Defendants' previous discovery responses to at least some degree, even if ultimately there would not be a large volume of additional documents to produce. And Defendants' deponents are not prepared to testify on topics concerning Agency DOGE Teams more generally (with the limited exception of the one sub-topic where Plaintiffs *did* identify Agency DOGE Teams, *see supra* p. 3). Nor would it be feasible to prepare those witnesses to testify on those topics by tomorrow.[5]

In short, if the Court were to grant Plaintiffs' motion, Defendants would need additional time to respond to the expanded scope of discovery. Defendants would need to search for additional documents to supplement their discovery responses and to educate their 30(b)(6) witnesses regarding the expanded "DOGE Employees'" employment status, roles, responsibilities, and

---

[5] For scheduling reasons, the parties have agreed to conduct the depositions on April 1 and April 2.

system access, among other topics identified in Plaintiffs' notices. The significant prejudice to Defendants of requiring such additional work when Defendants relied on the plain meaning of Plaintiffs' chosen language is itself grounds for denying the motion. But at the very least, Defendants respectfully submit that, if the Court grants Plaintiffs' motion, an additional 14 days is needed for Defendants to redo their previous discovery responses and prepare their deponents for expanded deposition topics.

## CONCLUSION

For all the foregoing reasons, the Court should deny Plaintiffs' motion to compel.

Dated: March 31, 2025                    Respectfully submitted,

                                         YAAKOV M. ROTH
                                         Acting Assistant Attorney General
                                         Civil Division

                                         MARCIA BERMAN
                                         Assistant Branch Director
                                         Civil Division, Federal Programs Branch

                                         /s/ Andrew M. Bernie
                                         Andrew M. Bernie
                                         Bradley Humphreys
                                         Benjamin S. Kurland
                                         Trial Attorney
                                         U.S. Department of Justice
                                         Civil Division, Federal Programs Branch
                                         1100 L Street, NW
                                         Washington, D.C. 20005
                                         (202) 353-7203
                                         andrew.m.bernie@usdoj.gov
                                         *Attorneys for Defendants*