UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS, et al.,<br><br>    Plaintiffs,<br><br>        v.<br><br>DEPARTMENT OF LABOR, et al.,<br><br>    Defendants. | Civil Action No. 25-339 (JDB) |

### ORDER

Before the Court is [73] plaintiffs' motion to compel discovery. The motion turns on the interpretation of a definition in the limited expedited discovery that the Court previously approved. So, in this Order, the Court does nothing more than interpret that definition; it neither expands nor narrows the scope of the discovery the Court has already approved twice over. In the end, the Court grants plaintiffs' motion to the extent it is consistent with the Court's interpretation of the definition the Court previously approved.

In late February, the Court granted plaintiffs' motion for limited expedited discovery, see Order [ECF No. 48] ("Disc. Order"), and the Court denied defendants' motion for reconsideration and slightly modified the limited discovery earlier this month, see Mem. Op. & Order [ECF No. 71] ("Reconsideration Order").[1] Defendants have not taken any further action to challenge to the limited discovery since, before this Court or otherwise. Much of the limited discovery rests on the definition of "DOGE Employee," a definition that plaintiffs proposed with their initial motion for expedited discovery and the Court subsequently approved. See Pls.' Proposed Interrogs. & Reqs.

---

[1] The Court did not modify the definition that is the subject of this Order.

1

for Produc. of Docs. [ECF No. 44-2] at 2 (definition of DOGE Employee); see id. at 3–7 (initial proposed limited discovery relying on definition).  That definition reads:

> "DOGE Employee" refers to any individual who is employed by DOGE or otherwise works for DOGE (including volunteers, if any), including any individual employed by DOGE but detailed to one or more federal agencies.

Id. at 2.  In plaintiffs' view, this definition encompasses "members of the DOGE Teams at the Defendant Agencies who were onboarded to the federal government after January 19, 2025."  Mot. Compel Disc. [ECF No. 73] ("Mot.") at 1.  Defendants read the definition differently, contending that it reaches only individuals who have an employment relationship with USDS—e.g., a USDS direct hire or a person who volunteers directly with USDS.  See Defs.' Resp. Opp'n Pls.' Mot. Compel Disc. [ECF No. 74] ("Opp'n") at 1–2.  So defendants have not produced any discovery relating to individuals without such a relationship and plaintiffs now ask the Court to compel them to.  See Mot. at 1–2.

As the parties recognize, the resolution of plaintiffs' motion rests on the meaning of "or otherwise works for DOGE" in the definition.  It is evident whom this phrase does not include: those "employed by DOGE."[2]  Elsewise the phrase would do no work.  Also evident is one group that falls within the phrase's reach: "volunteers."  When someone says that a volunteer "works for" an entity, it's understood that the volunteer is not formally employed by the entity, but that he still does work on behalf of the entity.  See For, Merriam-Webster, https://www.merriam-webster.com/dictionary/for (last visited Mar. 30, 2025).

---

[2] Consistent with defendants' argument that individuals detailed to an agency are employed by the agency—and seemingly consistent with the discovery they have thus far produced—the Court concludes that "individuals employed by DOGE" include direct hires of other federal agencies who are detailed to USDS.  See, e.g., Resp. Mot. TRO [ECF No. 16] at 14; Defs.' Objections & Resps. Pls.' Requests Expedited Disc. [ECF No. 73-2] at 7 (explaining that an individual working "in furtherance of the DOGE EO" at HHS is "an employee of the General Services Administration (GSA) . . . detailed to HHS" and "also detailed to USDS from GSA").

As a result, "or otherwise works for DOGE" covers individuals who "work on behalf of DOGE" but are not formally employed by USDS. Those "who work on behalf of DOGE," in turn, include all individuals that defendant agencies have onboarded to implement the "DOGE Agenda"[3]—including those that the agencies have hired directly or through detail agreements. This is clear for two reasons. To start, the DOGE Executive Order reveals that the individuals "implementing the President's DOGE Agenda" at an agency do not simply work on behalf of the agency, but also on behalf of DOGE. The Executive Order directs agency heads to select the individuals to implement the DOGE Agenda "in consultation with the USDS Administrator" and requires the agencies to "coordinate [the DOGE Teams'] work with DOGE." See DOGE Executive Order § 3(c).[4] Next, the record shows that the individuals "implementing the President's DOGE Agenda" at the agency defendants include individuals directly hired by each agency (regardless of whether they are also directly hired by DOGE) as well as individuals detailed to each agency (whether from USDS or elsewhere). Defendants' declarations and briefing—both before and after plaintiffs' initial proposed discovery—have explicitly and repeatedly said as much. See, e.g., Decl. of Ricky J. Kryger [ECF No. 31-1] ("Kryger Decl.") ¶ 6 ("DOL intends to retain employees—who may either be direct hires or employees detailed to DOL—to perform work required by the Executive Order.").[5] As a result, the only definition of those "otherwise

---

[3] The Court uses "DOGE Agenda" to mean what it does in the Executive Order that established USDS and its duties (the "DOGE Executive Order"). See Establishing & Implementing the President's "Department of Government Efficiency," Exec. Order No. 14,158, 90 Fed. Reg. 8441, § 3(c) (Jan. 20, 2025).

[4] Defendants' analogy to "attorneys working for two companies named in a lawsuit [who] coordinate their work in defending against the lawsuit" fails. See Opp'n at 6. Unlike the attorneys in that scenario, DOGE Team members are also selected in part by USDS, and USDS helps form the contours of their duties. The better analogy is thus to just one attorney: she works for her firm and for her client; they both have influence over her assignment and the work she completes.

[5] Decl. of Adam Martinez [ECF No. 31-3] ("Martinez Decl.") ¶¶ 4–5 (explaining that "the core team helping to advance the executive order's initiatives" includes detailees from USDS and other agencies); Decl. of Garey Rice [ECF No. 31-2] ("Rice Decl.") ¶ 5 ("I understand that at least one USDS employee and one employee from another

work[ing] for DOGE" that the record supports includes individuals directly hired by or detailed to the agency defendants to implement the DOGE Agenda. These individuals are the only non-USDS employees defendants have mentioned, and defendants have consistently referred to these individuals and the USDS employees operating at the agency defendants as one and the same.[6] See Opp'n at 4 (recognizing that, before plaintiffs' motion for discovery, defendants' evidence showed that "there were members of agency DOGE Teams who were not detailed from USDS").

In sum, the definition of DOGE Employee—and thus the limited expedited discovery the Court previously ordered—reaches beyond individuals with an employment relationship with USDS to cover some others implementing the DOGE Agenda. So the Court orders defendants to produce discovery consistent with the following: "or otherwise works for DOGE" means

---

federal agency have been detailed to HHS within the last three weeks in furtherance of the EO."); Decl. of Ricky J. Kryger [ECF No. 51-2] ¶ 6 ("[O]ther individuals have now been brought onboard as employees of DOL . . . to help implement the DOGE EO."); Defs.' Mem. Opp'n Pls.' Renewed Mot. TRO [ECF No. 31] ("TRO Opp'n") at 2–4 (explaining the structure of the DOGE Teams to include "direct . . . hires, detailees, or a mix of both," and saying that "[e]ither way," defendant agencies have "established guidelines to cover employees carrying out the USDS E.O."); Letter from Michael J. Gerardi to Aman George (Mar. 5, 2025) [ECF 73-1 at 6 of 16] at 2 ("All employees working to implement the President's DOGE Executive Order are now employees of the agencies at which they work, or detailees from [other] agencies.").

Contrary to defendants' argument to the contrary, see Opp'n at 3–4, plaintiffs explained from the beginning that they sought limited expedited discovery regarding individuals at the defendant agencies beyond those formally employed by USDS. See, e.g., Pls.' Mot. Expedited Disc. [ECF No. 44] at 1 (explaining that they seek information regarding "the scope of DOGE personnel's ongoing access to protected systems"); id. at 5 (raising concerns that Kryger said he was only "personally aware of a single DOL employee working on the President's DOGE Agenda"); id. at 13 (explaining that their theory of irreparable harm rests on not just "the disclosure of sensitive information . . . to individuals outside of the Agencies" but also on disclosure of said information "on terms no[t] contemplated by applicable laws concerning data access"); see also Reply Supp. Pls.' Mot. Modification Court's Disc. Order [ECF No. 70] at 2–3 (noting that the Privacy Act prohibits disclosure to employees unless they "have a need for the record"); Reconsideration Order at 10 n.12 (explaining that the Privacy Act issue is not necessarily resolved even if all individuals carrying out the DOGE Agenda are employees of the agency defendants).

Lastly, the Court's reasoning for granting limited expedited discovery covers individuals working at defendant agencies who are not formally employed by USDS. See, e.g., Disc. Order at 9 (stating that "how USDS is operating at the defendant agencies" is relevant to plaintiffs' theory of irreparable harm); Reconsideration Order at 10 n.12, 11–13 (explaining open questions remain about employees' need for records and about the reporting structure for individuals carrying out DOGE Agenda).

[6] See, e.g., Kryger Decl. ¶¶ 7–13; Martinez Decl. at ¶¶ 6–11; Rice Decl. ¶ 6; TRO Opp'n at 2–4.

individuals that the defendant agencies have onboarded for the purpose of carrying out the DOGE Agenda, including those the agencies have directly hired or received as detailees.[7]  It is therefore

- **ORDERED** that [73] plaintiffs' motion to compel discovery is **GRANTED** to the extent consistent with this Order; it is further

- **ORDERED** that, in light of the delay the disagreement about the definition of DOGE Employee has caused, the discovery shall be extended until April 8, 2025, and the preliminary injunction briefing schedule shall be amended as follows:
    - Plaintiffs shall file their preliminary injunction motion by not later than April 15, 2025;
    - Defendants shall respond to the preliminary injunction motion by not later than April 22, 2025; and
    - Plaintiffs shall file their reply to defendants' response to the preliminary injunction motion by not later than April 25, 2025.

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated: <u>March 31, 2025</u>

---

[7] Necessarily, these individuals must have been onboarded to the agency defendants after the DOGE Executive Order was promulgated on January 20, 2025.