**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS, et al., Plaintiffs, v. DEPARTMENT OF LABOR, et al., Defendants. | Civil Action No. 25-339 (JDB) |

## MEMORANDUM OPINION

Nearly two months ago, the Court denied cross-motions for summary judgment in this case, citing ongoing disputes of material fact.  See Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. DOL ("AFL-CIO VII"), Civ. A. No. 25-339, 2026 WL 879518 (D.D.C. Mar. 31, 2026).  Now, plaintiffs move for leave to conduct supplemental discovery prior to further dispositive motion practice.  The Agency defendants oppose plaintiffs' motion, contending that the Agencies' forthcoming declarations will resolve all outstanding factual issues, so additional discovery is unwarranted.  For the reasons explained in this opinion, the Court grants plaintiffs' motion in part, authorizing only written discovery, narrowly tailored to the factual issues the Court has previously identified.

## BACKGROUND

The Court assumes familiarity with this case's factual background and extensive procedural history.[1]  But briefly—and as is relevant here—plaintiffs sued the Department of Labor (DOL) and the Department of Health and Human Services (HHS) in early February of 2025, alleging that the Agencies had arbitrarily and capriciously abandoned their prior data access

---

[1] For a complete recounting of that history see AFL-CIO VII, 2026 WL 879518, at *2–6.

1

policies and adopted a new policy allowing affiliates of President Trump's DOGE initiative unfettered access to their sensitive records. See Am. Compl. [ECF No. 21] at 59–62, 64–66. Plaintiffs further alleged that the Agencies' shift in policy violated both the Privacy Act and the Administrative Procedure Act. Id.

The Agencies denied plaintiffs' allegations, insisting that they had not altered their data access policies to accommodate DOGE. Because the case turned on whether the Agencies had adopted the policies plaintiffs plausibly alleged and challenged as unlawful—and because no traditional administrative record of the Agencies' actions existed—the Court authorized limited, expedited discovery prior to deciding plaintiffs' motion for a preliminary injunction. See Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. DOL ("AFL-CIO III"), 349 F.R.D. 243, 246 (D.D.C. 2025).

The Agencies did not appeal the Court's discovery order, and discovery proceeded, including Rule 30(b)(6) depositions of DOL, HHS, and the United States DOGE Service (USDS). After the Court denied plaintiffs' motion for a preliminary injunction and denied in part defendants' motion to dismiss, the parties agreed that the record created during the limited, expedited discovery period would constitute the record on review at summary judgment. See Pls.' Mot. for Summ. J. [ECF No. 93-2] at 5 n.2; Defs.' Opp'n [ECF No. 106] at 6.

But the record that the parties compiled through expedited discovery failed to resolve two factual disputes at the core of this case. First, it did not clarify whether DOGE affiliates were conducting software modernization projects on sensitive agency systems and were granted system access to complete those projects, consistent with longstanding policy. See AFL-CIO VII, 2026 WL 879518, at *18. Second, the record was incomplete as to whether DOGE affiliates' employment relationships were structured such that the affiliates were functionally internal agency

2

employees at DOL and HHS and were therefore permitted to access agency systems under the Privacy Act. See id. at *22–23.

Citing these material, disputed facts, the Court denied the parties' cross-motions for summary judgment. Id. at *25. The Court then ordered HHS to respond to an interrogatory it previously refused to answer regarding its DOGE affiliates' concurrent employment relationships, and informed the Agencies that it would permit them to supplement the record with (1) declarations addressing their data access policies for employees or detailees with concurrent employment at other agencies, and (2) evidence that DOGE affiliates needed and were granted sensitive system access because of their work on software modernization projects. Id. at *18, 23.

In light of the Court's denial of the parties' cross-motions for summary judgment, and the Agencies' forthcoming declarations, plaintiffs moved for leave of court to conduct supplemental discovery. Pls.' Mot. [ECF No. 105]. Specifically, plaintiffs request permission to issue three new interrogatories, three new requests for production, and to depose four former DOGE affiliates on the nature of their work at the Agencies and their reporting relationships. Id. at 9–10.

Plaintiffs' proposed interrogatories seek information on what software modernization projects DOGE affiliates worked on, the channels DOGE affiliates used to communicate with each other and DOGE leadership, a summary of how DOGE affiliates used sensitive agency systems, and an update, if any, on the Agencies' prior interrogatory responses. Proposed Suppl. Disc. [ECF No. 105-1] at 4–5. Plaintiffs' proposed requests for production seek records of DOGE affiliates' sensitive system access requests, work within those systems, and correspondence with a broad swath of federal employees and officers. Id. at 7.

The Agencies oppose plaintiffs' motion to conduct additional discovery, and object to their proposed discovery requests as irrelevant and burdensome. Defs.' Opp'n at 1–3.

3

## LEGAL STANDARDS

Three foundational legal rules guide the Court's consideration of plaintiffs' motion for supplemental discovery.

First, although judicial review of agency action generally takes place within the confines of the administrative record, extra-record discovery is appropriate in APA actions where "the record is so bare that it prevents effective judicial review." Theodore Roosevelt Conservation P'ship v. Salazar, 616 F.3d 497, 514 (D.C. Cir. 2010) (citation modified); see also Camp v. Pitts, 411 U.S. 138, 142–43 (1973). This may occur in the rare case where, as here, the administrative record is nonexistent because the government denies that it adopted the policy or practice that is challenged. See, e.g., Hisp. Affs. Project v. Acosta, 901 F.3d 378, 388 (D.C. Cir. 2018); Escobar Molina v. DHS, Civ. A. No. 25-3417, 2026 WL 1256234, at *19–23 (D.D.C. May 7, 2026).

Second, courts may not award summary judgment by default. Winston & Strawn, LLP v. McLean, 843 F.3d 503, 507–08 (D.C. Cir. 2016). Accordingly, where disputed, material facts preclude the entry of summary judgment, a district court has broad discretion to give the parties an opportunity to supplement the record to address the disputed facts, or to "issue any other appropriate order." Fed. R. Civ. P. 56(e); see, e.g., Am. Ctr. for Int'l Lab. Solidarity v. Chavez-DeRemer, 789 F. Supp. 3d 66, 102 (D.D.C. 2025). Re-opening the factual record after the denial of cross-motions for summary judgment is especially prudent in APA cases, which must be decided by judges not juries, see Fed. R. Civ. P. 39 (prohibiting jury trials by consent against the United States, unless authorized by federal statute), and generally do not proceed to trial. Furthermore, courts may authorize limited discovery to accomplish such record supplementation in APA cases. See, e.g., Am. First Legal Found. v. Cardona, 630 F. Supp. 3d 170, 187–88 (D.D.C.

2022).  And record supplementation through discovery is particularly appropriate where, as here, the record on review was itself created through discovery.

Finally, relevancy and proportionality are the lodestars of civil discovery.  Litigants may only seek discovery of nonprivileged matters "relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1), (2)(C)(iii).  To assess proportionality, courts must weigh: (1) the importance of the issues at stake, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6) whether the burden of the proposed discovery outweighs its likely benefit.  Id. 26(b)(1).

## ANALYSIS

This case has been—and continues to be—the unusual APA action subject to civil discovery.  AFL-CIO III, 349 F.R.D. at 248–49.  Because the Agencies and DOGE did not memorialize the conduct plaintiffs challenge, no traditional administrative record exists, and the parties agreed to treat materials produced in discovery as the record on review.  See Pls.' Mot. for Summ. J. at 5 n.2; Defs.' Opp'n at 6.  Thus far, the Court has concluded that discovery has not resolved certain factual disputes essential to determining whether the Agencies arbitrarily and capriciously abandoned their "need-to-know" data privacy policies or adopted a policy of granting non-agency personnel access to sensitive agency systems, in violation of the Privacy Act of 1974. So the Court has authorized the parties to supplement the factual record.  AFL-CIO VII, 2026 WL 879518, at *18.  Now, the Court considers whether plaintiffs should be permitted to do so through

additional discovery, or if that process should instead be limited to declarations filed by the Agencies.[2]

## I.    Additional, Limited Written Discovery Is Proper

Supplemental discovery is warranted here because discovery requests narrowly tailored to produce material relevant to specific disputed factual issues will likely aid in the just resolution of this case. Furthermore, limited supplemental discovery will likely mitigate any prejudice plaintiffs might otherwise suffer from the Agencies' introduction of declarations containing post hoc explanations for their DOGE data access grants.

The Court has identified two material, factual disputes that the record—as it currently stands—does not resolve. The first dispute pertains to whether the Agencies' abandoned their need-to-know data access policies for DOGE affiliates. The Agencies insist that they did not, pointing, in part, to an executive order creating the DOGE initiative and vesting it with government-wide software modernization duties. See Defs.' Mot. for Summ. J. [ECF No. 95-1] at 30, 33. But as the Court observed when denying the parties' cross-motions for summary judgment, the Agencies have yet to support their assertion that DOGE affiliates needed sensitive system access to carry out software modernization projects with any evidence that: "the sensitive systems DOGE affiliates accessed were scoped for [such] projects, that DOGE affiliates were staffed to work on those projects, or that Agency employees granted the affiliates access because of their involvement in those projects." AFL-CIO VII, 2026 WL 879518, at *18.

At least two of plaintiffs' proposed discovery requests bear directly on the existence of software modernization projects at the Agencies and would therefore aid the Court in resolving

---

[2] The Court disagrees with the Agencies' characterization of plaintiffs' motion as one to reopen discovery. See Defs.' Opp'n at 8–9. The Court has determined that factual issues persist, and that supplementation of the record would aid resolution of plaintiffs' remaining claims. The question, then, is the proper scope of the supplementation—not whether the factual record may be expanded—because the Court has already determined that it may.

this factual dispute. See Proposed Suppl. Disc. at 5 (Interrog. No. 4), 7 (Req. for Produc. No. 8). These requests seek descriptions of any software modernization projects, the systems scoped for those projects, the DOGE affiliates staffed to them, and any documents related to DOGE affiliates' system access requests and the Agencies' decisions to grant them. Id.

Similarly, three of plaintiffs' proposed discovery requests are relevant to the second material factual dispute the Court identified—whether the DOGE affiliates were functionally employees of DOL and HHS entitled to access agency systems under the Privacy Act. See Proposed Suppl. Disc. at 4 (Interrog. No. 3), 7 (Reqs. for Produc. Nos. 9 & 10). These requests seek updated information about DOGE affiliates' concurrent employment relationships—as the Court previously ordered—as well as records of communications between DOGE affiliates at the defendant Agencies and leadership at the Agencies and USDS that bear on the reporting structures governing the affiliates. Id. These materials, too, would aid the Court in resolving the outstanding factual dispute over what agency, as a practical matter, employed the DOGE affiliates.

The Agencies' resist the Court's conclusion that some additional discovery is appropriate, asserting that discovery is unwarranted because their declarations can resolve all outstanding questions. Defs.' Opp'n at 10. There are two threads to the Agencies' argument. The first asserts that the Agencies are in the best position to answer the Court's questions, id., and the second implies that the answers the Agencies give must be the sole and definitive source of facts bearing on these questions, see id. at 18–19. The Court agrees with the Agencies only as to the former.

The Agencies hold most, if not all, of the information necessary to resolve the factual disputes the Court has identified. This is a reason to permit supplemental discovery, not bar it. See Fed. R. Civ. P. 26(b)(1) (requiring courts to consider "the parties' relative access to relevant information"). Allowing the Agencies to leverage the facts available to them by submitting new

declarations, while prohibiting plaintiffs from probing any of the factual bases for those declarations, risks significant prejudice to plaintiffs.

Courts have long acknowledged the risks of unexamined post hoc justifications of government action. "Permitting agencies to invoke belated justifications . . . forc[es] both litigants and courts to chase a moving target" and denies plaintiffs a fair opportunity to respond fully to an agency's exercise of authority. DHS v. Regents of the Univ. of Cal., 591 U.S. 1, 23 (2020). As a result, in APA cases without discovery, courts are categorically barred from relying on government declarations containing post hoc rationalizations. Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins., 463 U.S. 29, 50 (1983); Regents of the Univ. of Cal., 591 U.S. at 21. Here, limited discovery can mitigate the prejudice such declarations would otherwise cause.

Furthermore, the presumption of regularity does not command exclusive reliance on the Agencies' declarations. Contra Defs.' Opp'n at 18. In the litigation context, the presumption of regularity rests on dual premises: that government counsel is fully apprised of the facts underlying their case and that government counsel is candid with the court when discussing those facts. The Court does not doubt government counsel's candor. But as the Court and the parties have repeatedly observed in this matter, the facts on the ground have proven fast-evolving and difficult for government counsel to discern. See, e.g., Pls.' Mot. at 4–5; Defs.' Opp'n at 19; Defs.' Interrog. Resps. [ECF No. 80-5] at 9, 18 (supplying contradictory answers for the number of agencies a DOGE affiliate was concurrently working for). The Agencies state that their own efforts to supplement the record are proper because they have new information "not previously available about current circumstances." Defs.' Opp'n at 19. The availability of new information is a reason to permit plaintiffs to seek updates on defendants' prior discovery responses, see Proposed Suppl.

8

Disc. at 4 (Interrog. No. 3); see also Fed. R. Civ. P. 26(e)(1), not a reason to bar their reasonable follow-up questions.

While the Court concludes that additional limited discovery would be helpful at this juncture, it is also cognizant that it must balance the burden of the proposed discovery against its likely benefit. Fed. R. Civ. P. 26(b)(1). As to written discovery, the Agencies have not shown a substantial burden. On the contrary, Federal Rule of Civil Procedure 11(b) likely already requires the Agencies to research the questions plaintiffs wish to pose and review the documents plaintiffs request, as the Agencies prepare their declarations. But the plaintiffs' request to depose four DOGE affiliates who no longer work for either HHS or DOL presents a different question.

Although the Court agrees that the DOGE affiliates who plaintiffs seek to depose could possess information relevant to HHS and DOL's policies regarding sensitive system access, as well as DOGE and the Agencies' concurrent employment practices, the Court ultimately concludes that the burden of the proposed depositions likely outweighs their benefit. These DOGE affiliates are neither parties to this action nor currently employed by the defendant Agencies. Their non-party status imposes a burden on the Agencies above and beyond that of a typical employee fact witness deposition. Cf. Wyoming v. U.S. Dep't of Agric., 208 F.R.D. 449, 454 (D.D.C. 2002) (finding deposition of witnesses at non-party civic organizations unduly burdensome in a suit alleging unlawful agency action).

It is also far from clear that plaintiffs cannot obtain the information they seek in a less burdensome way. As this Court has explained, plaintiffs may conduct written discovery regarding the basis for the Agencies' sensitive system access grants, and the existence of software modernization projects that could justify those grants. They may also take written discovery regarding the reporting structures governing DOGE affiliates' work at HHS and DOL, including

disclosure of the number of agencies the DOGE affiliates concurrently worked for and emails exchanged between DOGE affiliates and leadership at HHS, DOL, or USDS pertaining to the DOGE affiliates' work directives within those sensitive systems.

The Court further notes that plaintiffs had a previous opportunity to conduct Rule 30(b)(6) depositions of HHS, DOL, and USDS regarding both DOGE reporting structures and the Agencies' rationales for granting DOGE affiliates sensitive system access. True, in these depositions, Agency representatives testified that they lacked knowledge of decisionmaking and reporting structures outside their respective Agencies. See Pl.'s Mot. at 8 (citing DOL and HHS 30(b)(6) depositions). But plaintiffs have not only had the opportunity to question representatives of each relevant Agency regarding DOGE affiliates' sensitive system access and reporting obligations within their respective agencies—plaintiffs have actually done so. See DOL 30(b)(6) Dep. [ECF No. 80-9] (deposing DOL on its data access policies and supervision of its DOGE affiliates); HHS 30(b)(6) Dep. (Wendel) [ECF No. 82-4] (deposing HHS on its data access policies); HHS 30(b)(6) Dep. (Rice) [ECF No. 80-6] (deposing HHS on its supervision of its DOGE affiliates); DOGE 30(b)(6) Dep. [ECF No. 82-7] (deposing USDS on its supervision of DOGE affiliates).

Given these alternative, less burdensome avenues to obtain the information plaintiffs seek, and the unique burden that non-party depositions would place on the government, the Court denies plaintiffs' request for additional depositions.[3]  The Court grants, however, plaintiffs' motion to

---

[3] The Court's denial of plaintiffs' request should not be construed as a determination that these former DOGE affiliates lack information relevant to this dispute. To the contrary, as the witnesses closest to the case, the affiliates likely know highly relevant facts. The Court thus expects that the Agencies will make reasonable efforts to contact the affiliates and obtain those facts prior to responding to plaintiffs' interrogatories or drafting their declarations. If it becomes apparent that the Agencies have not conducted such reasonable inquiries or that material factual disputes remain, the Court may consider a renewed request from plaintiffs to depose the former DOGE affiliates.

take supplemental written discovery.  To be sure, this does not mean that plaintiffs may set off on a fishing expedition.  As this opinion next clarifies, they may not.

II.       Any Additional Written Discovery Must Be Narrowly Tailored

Plaintiffs may conduct supplemental written discovery—but this discovery must be narrowly tailored to the specific factual issues the Court has identified.  As currently drafted, several of plaintiffs' proposed discovery requests either sweep too far or are wholly irrelevant.  The Court thus clarifies the permissible scope of the supplemental written discovery it authorizes today, reminding plaintiffs that they may not inquire into irrelevant persons or irrelevant subjects.

First, as this Court has twice explained and plaintiffs appear to concede in their reply, only DOGE affiliates working for the defendant Agencies are relevant to the claims and defenses in this case.  See Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. DOL, Civ. A. No. 25-339, 2025 WL 1129171, at *3 (D.D.C. Mar. 31, 2025) (defining the relevant individuals as persons "that the defendant agencies have onboarded for the purpose of carrying out the DOGE Agenda, including those the agencies have directly hired or received as detailees"); AFL-CIO III, 349 F.R.D. at 252 (emphasizing that "[w]hich other agencies may be hosting USDS employees is not relevant"); Pls.' Reply [ECF No. 108] at 11–12.  So just as during the earlier expedited discovery period, plaintiffs may not seek discovery regarding DOGE team members unconnected to either HHS or DOL. Contra Proposed Suppl. Disc. at 3, 7 (defining "DOGE Affiliate" more broadly).

Furthermore, identification of the channels of written communication between DOGE affiliates and administration officials, and clarification of DOGE's record retention practices, are not relevant to plaintiffs' claim that the Agencies arbitrarily and capriciously adopted sensitive system access policies that violate the Privacy Act.  See Proposed Suppl. Disc. at 5 (Interrog. No. 5).  Nor are the details of what DOGE affiliates did within sensitive agency systems after they were granted access, because this information does not bear directly on whether the Agencies

11

unlawfully altered their access policies. So to the extent that plaintiffs seek information about DOGE affiliates' usage of sensitive agency systems, beyond DOGE affiliates' general purpose for accessing those systems, their discovery requests are overbroad. See, e.g., Proposed Suppl. Disc. at 4 (Interrog. No. 3(e)); 7 (Req. for Produc. No. 8).[4]

The same principles apply to plaintiffs' requests for communications exchanged between DOGE affiliates granted access to sensitive systems and other government employees or officers. See Proposed Suppl. Disc. at 7 (Reqs. for Produc. Nos. 9 & 10). These communications are only likely to be relevant, and therefore discoverable during this supplemental period, to the extent that they either (1) address the reasons for the Agencies' sensitive system access grants, or (2) reveal reporting structures governing the DOGE affiliates. And communications are only likely to be relevant to DOGE affiliate reporting structures if they are exchanged between DOGE affiliates with sensitive system access and leadership at DOL, HHS, or USDS, and either include work directives or reports of work done—but not deliberations on future action. The Court further reminds the parties that only nonprivileged information is discoverable. And the Court encourages them to meet and confer on discovery requests so as to avoid issuing requests that sweep in large quantities of privileged material. See Pls.' Reply at 12 n.2.

In summary, the Court instructs plaintiffs that they must modify Proposed Interrogatory No. 3 and Proposed Requests for Production Nos. 8, 9, and 10 to comply with this opinion, and concludes that Proposed Interrogatory No. 5 impermissibly seeks irrelevant information.

## CONCLUSION

For the reasons discussed above, the Court grants in part and denies in part plaintiffs' motion to conduct supplemental discovery.

---

[4] Unlike general inquiries into system usage, inquiries about whether DOGE affiliates copied or shared records from sensitive agency systems are relevant to the Agencies' data access policies.

A separate order shall accompany this opinion.

/s/
_____
JOHN D. BATES
United States District Judge

Dated: <u>May 26, 2026</u>